# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| Vince Lawrence, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | Case No.: 22-cv-05660 |
| v. | ) | |
| | ) | Dist. Judge John J. Tharp, Jr. |
| Trax Records, Inc., et al., | ) | |
| | ) | Mag. Judge Young B. Kim |
| Defendants. | ) | |

**UNREPORTED OPINIONS CITED IN SUPPORT OF
DEFENDANTS TRAX RECORDS, INC. AND IRENE MAYZELS BARNES A/K/A
SANDYEE SHERMAN'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED
COMPLAINT**

Case: 1:22-cv-05660 Document #: 27-1 Filed: 03/06/23 Page 2 of 131 PageID #:210

PropertyThree Technology Group, Inc. v. Apartment..., Not Reported in Fed....

2008 WL 11374380

2008 WL 11374380
Only the Westlaw citation is currently available.
United States District Court, S.D.
Indiana, Indianapolis Division.

PROPERTYTHREE TECHNOLOGY
GROUP, INC., Plaintiff,
v.
APARTMENT HUNTERS, INC.,
Steven Shayan, Kevin Shayan,
Dennis Portnov, Defendants.

1:07–cv–356–RLY–JMS
|
Signed 05/19/2008
|
Filed 05/20/2008

**Attorneys and Law Firms**

Mark R. Waterfill, Attorney at Law, Michael A. Lang, Indiana Department of Transportation, Indianapolis, IN, for Plaintiff.

Jilbert Tahmazian, Pro Hac Vice, Law Offices of Jilbert Tahmazian, Glendale, CA, for Defendants.

**ENTRY ON DEFENDANTS' MOTIONS TO DISMISS**

RICHARD L. YOUNG, United States District Court Judge

**\*1** This matter is before the court on Defendants', Apartment Hunters, Inc., Steven Shayan, Kevin Shayan, and Dennis Portnov ("Defendants"), motion to dismiss Plaintiff's, PropertyThree Technology Group, Inc. ("Plaintiff"), complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6), and their separate motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2). Plaintiff filed an Amended Complaint on November 27, 2007, after Defendants had filed its first motion to dismiss under Rules 12(b)(1) and 12(b)(6) on October 12, 2007. Defendants' second motion to dismiss under Rule 12(b)(2) was filed on January 17, 2008, after Plaintiff filed the Amended Complaint. The Amended Complaint contains similar allegations to the original Complaint. Defendants' motion to dismiss the original Complaint is thus applicable to the Amended Complaint. As such, the court will treat both of Defendants' motions as those seeking to dismiss the Amended Complaint.

For the reasons set forth below, the court **GRANTS** in part and **DENIES** in part Defendants' motion to dismiss under Rules 12(b)(1) and 12(b)(6) and **DENIES** Defendants' Rule 12(b)(2) motion to dismiss or in alternative to transfer venue.

**I. Background**

Plaintiff operates several websites that offer services to landlords, tenants, prospective tenants, and others involved in the residential housing industry. (Amended Complaint ¶ 12). In connection with its websites, Plaintiff sells memberships to customers that allow those customers "to find and screen prospective tenants and to access many proprietary legal forms, business forms, and other tools that allow landlords to better manage their businesses." (*Id.* ¶ 13). Plaintiff conditions the use of its websites on compliance with its Service Agreement, which prohibits copying, redistributing, or publishing the material on Plaintiff's websites. (*Id.* ¶¶ 14, 17). Many of Plaintiff's legal and business forms are copyrighted. (*Id.* ¶ 18; Copyright Registrations, Ex. C to Amended Complaint).

Plaintiff alleges in its Amended Complaint that many of Defendants' legal and business forms on their website are similar to Plaintiff's forms and that Defendants posted those forms by copying them directly, posting them without the copyright notice, or posting derivative works of Plaintiff's forms. (Amended Complaint ¶¶ 21–22). Plaintiff's Amended Complaint consists of ten counts: copyright infringement (Count I), false advertising (Counts II and III), unjust enrichment (Count IV), misappropriation (Count V), breach of contract (Count VI), fraud (Count VII), violation of Computer Fraud and Abuse Act (Count VIII), violation of Digital Millennium Copyright Act (Count IX), and computer trespassing (Count X). Defendants now move to dismiss Plaintiff's Complaint on all claims, with the exception of Count III for false advertising and Count X for computer trespassing.[1]

**II. Defendants' Motion to Dismiss Pursuant to Rules 12(b)(6) and 12(b)(1)**

**A. Motion to Dismiss Standard**

**\*2** Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Rule

Case: 1:22-cv-05660 Document #: 27-1 Filed: 03/06/23 Page 3 of 131 PageID #:211

PropertyThree Technology Group, Inc. v. Apartment..., Not Reported in Fed....

2008 WL 11374380

12(b)(1) authorizes dismissal of a complaint for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). The legal standards on a motion to dismiss under Rule 12(b)(6) and a motion to dismiss under Rule 12(b)(1) are essentially the same. *Motor Transp. Underwriters, Inc. v. Specialty Nat'l Ins. Co.*, No. 1:06–cv–219–LJM–WTL, 2006 WL 1843339, at *2 (S.D. Ind. June 30, 2006).

On a Rule 12(b)(6) motion to dismiss, the court only examines the sufficiency of the complaint, not the merits of the lawsuit. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a motion to dismiss under Rule 12(b)(6), the court accepts all facts in the complaint as true and draws all reasonable inferences in plaintiff's favor. *Mallet v. Wis. Div. of Vocational Rehab.*, 130 F.3d 1245, 1248 (7th Cir. 1997).

In *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007), the Supreme Court clarified the standard a court must apply when considering a motion to dismiss for failure to state a claim. The *Bell Atlantic* Court abrogated the familiar language first set forth in *Conley v. Gibson*, 355 U.S. 41 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Bell Atlantic*, 127 S. Ct. at 1968 (quoting *Conley*, 355 U.S. at 45–46). The Court held that this language, when interpreted literally, would allow a wholly conclusory statement of a claim to survive a Rule 12(b)(6) motion to dismiss. *Id.* Instead, to survive a Rule 12(b)(6) motion to dismiss, the complaint should describe the claim in sufficient detail to give the defendant fair notice of the claim and to suggest plausibly that the plaintiff has a right to relief above the speculative level. *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007).

### B. Discussion

### 1. Count I—Copyright Infringement

Defendants first seek to dismiss Plaintiff's Count I under Rule 12(b)(1) and Rule 12(b)(6) because Plaintiff failed to allege the jurisdictional element of copyright registration. In support, Defendants cite 17 U.S.C. § 411(a), which states: "[N]o action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title." However, in its Amended

Complaint, Plaintiff alleged that it received the Certificates of Copyright Registration for the forms at issue and attached those copyright registrations. Plaintiff has thus complied with 17 U.S.C. § 411(a). Defendants' motion to dismiss Count I is **DENIED**.

### 2. Count II—False Advertising[2]

Defendants next move to dismiss Plaintiff's second claim for false advertising under the Lanham Act, 15 U.S.C. § 1125(a). Defendants argue that Plaintiff's reverse passing off claim under the Lanham Act is improper because its right to relief is limited to the Copyright Act.[3] In support, Defendants rely heavily on the Supreme Court case of *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003). In *Dastar*, the Supreme Court had to determine the meaning of "origin" in the phrase "false designation of origin" under § 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a), where defendant Dastar took a creative work (a television series), whose copyright had expired, from the public domain and copied it, modified it, and produced from that work its own series of videotapes without any mention of the original television series. *Dastar*, 539 U.S. at 26–27, 31. The Court held that Dastar had not violated the Lanham Act by not accrediting the original television series because the phrase "origin of goods" referred only to the producer of the tangible goods (i.e. Dastar, who produced the videotapes) and not to the author of the idea or concept embodied in those goods. *Id.* at 37. The Court reasoned: "To hold otherwise would be akin to finding that § 43(a) created a species of perpetual patent and copyright, which Congress may not do." *Id.*

**\*3** However, *Dastar* differs from the present case in one important aspect—Plaintiff's works in the present case are copyrighted. The crux of the issue in *Dastar* was the extent to which the Lanham Act would protect uncopyrighted works. As such, the Supreme Court's reasoning in *Dastar* sheds little light on the issue before the court of whether Plaintiff can state claims under both the Copyright Act and the Lanham Act.

In addition to *Dastar*, Defendant cites a Northern District of Illinois case, *Lacour v. Time Warner, Inc.*, No. 99 C 7105, 2000 WL 688946, at *5 (N.D. Ill. May 24, 2000), where the court held that under the facts of that case, the plaintiff's reverse passing off claim under the Lanham Act was preempted by the Copyright Act. *Id.* In so holding, the court noted that the plaintiff did not allege any affirmative misrepresentations made by the defendant that would make

Case: 1:22-cv-05660 Document #: 27-1 Filed: 03/06/23 Page 4 of 131 PageID #:212

PropertyThree Technology Group, Inc. v. Apartment..., Not Reported in Fed....

2008 WL 11374380

his Lanham Act claim qualitatively different from his claim for copyright infringement. *Id.* That case is distinguishable from the present case on the ground that Plaintiff here alleges affirmative misrepresentations by Defendants, namely, that Defendants removed Plaintiff's copyright notice when they posted Plaintiff's works on their website. Such an alleged misrepresentation is sufficient to distinguish Plaintiff's claims under the Copyright Act and the Lanham Act. *See Adams v. Jackson,* 218 F. Supp. 2d 1006, 1013 (N.D. Ind. 2002). As such, Plaintiff's claim for false advertising under the Lanham Act is not barred by the Copyright Act. Defendants' motion to dismiss Count II is **DENIED**.

### 3. Count IV—Unjust Enrichment

Defendant next argues that Plaintiff's claim for unjust enrichment is preempted by the Copyright Act. The preemption provision of the Copyright Act states:

> On and after January 1, 1978, all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103, whether created before or after that date and whether published or unpublished, are governed exclusively by this title. Thereafter, no person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State.

17 U.S.C. § 301(a). The Copyright Act grants copyright holders five exclusive rights: reproduction, adaption, publication, performance, and display. *Toney v. L'Oreal USA, Inc.,* 406 F.3d 905, 909 (7th Cir. 2005) (citing 17 U.S.C. § 106). A right is equivalent to one of the Copyright Act's exclusive rights if it "is infringed by the mere act of reproduction, performance, distribution or display." *Baltimore Orioles, Inc. v. Major League Baseball Players Ass'n,* 805 F.2d 663, 677 (7th Cir. 1986). "[T]o avoid preemption, a state law must regulate conduct that is qualitatively distinguishable from that governed by federal copyright law—i.e., conduct other than reproduction, adaption, publication, performance, and display." *Toney,* 406 F.3d at 910. Said another way, a state law claim must contain an "extra element" that changes the nature of the state law claim to make it inherently different from a federal copyright infringement claim. *DirecTV, Inc. v. Beecher,* 296 F. Supp. 2d 937, 944 (S.D. Ind. 2003).

To prevail on a claim for unjust enrichment under Indiana law, "a plaintiff must establish that a measurable benefit has been conferred on the defendant under such circumstances that the defendant's retention of the benefit without payment would be unjust." *Pond v. McNellis,* 845 N.E.2d 1043, 1056–57 (Ind. Ct. App. 2006). In the present case, Plaintiff's claim for unjust enrichment alleges that Defendants unjustly enriched themselves by "wrongfully exploiting" Plaintiff's copyrighted materials. While Plaintiff argues that the "wrongfully exploiting" language is an extra element to mere copyright infringement, the court disagrees. The crux of Plaintiff's unjust enrichment claim is that Defendants were enriched unjustly by using Plaintiff's copyrighted work for their commercial gain. This is qualitatively similar to Plaintiff's claim for copyright infringement in which Plaintiff alleges that Defendants infringed upon Plaintiff's copyright by using that work for their own business. *See Vaughn v. Kelly,* No. 06 C 6427, 2007 WL 804694, at *4 (N.D. Ill. Mar. 13, 2007) (finding unjust enrichment claim preempted by copyright infringement claim). Thus, Plaintiff's unjust enrichment claim is preempted by the Copyright Act. Defendants' motion to dismiss Plaintiff's fourth cause of action for unjust enrichment is **GRANTED**.

### 4. Count V—Misappropriation

**\*4** Defendants seek to dismiss Plaintiff's Count V for misappropriation because it is a mere restatement of Plaintiff's first claim for copyright infringement, which Defendant alleges is improper, or, in the alternative, because it does not assert a legally cognizable state law claim. However, Plaintiff responds that it is a claim arising under Sections 502 and 503 of the Copyright Act and is thus proper.

While Plaintiff's first claim is a claim for copyright infringement under the Copyright Act, in that Count Plaintiff seeks "actual damages and any gains, profits, and advantages earned by the Defendants because of their infringing use of the Copyrighted Forms." (Amended Complaint ¶ 41). In Count V, Plaintiff incorporates the previous paragraphs of the Amended Complaint, including the allegations in Count I, and seeks injunctive relief and impoundment and disposition of the infringing articles under 17 U.S.C. §§ 502, 503. (*Id.* ¶¶ 53, 58). As the court discussed in Section II.B.1, *supra,* Plaintiff's claim for copyright infringement is proper. Because Plaintiff's claim for misappropriation in Count V can be read as a claim for copyright infringement that seeks different

Case: 1:22-cv-05660 Document #: 27-1 Filed: 03/06/23 Page 5 of 131 PageID #:213

PropertyThree Technology Group, Inc. v. Apartment..., Not Reported in Fed....

2008 WL 11374380

remedies from those in Count I, Count V is also proper. While Plaintiff could have combined Counts I and V, the only inquiry at this stage in the proceedings is whether Plaintiff gives Defendants adequate notice of its claim. Count V meets this standard. Defendants' motion to dismiss Count V is therefore **DENIED**.

### 5. Count VI—Breach of Contract

Defendant next seeks to dismiss Plaintiff's sixth claim for breach of contract on the ground that it is preempted by the Copyright Act. As set forth above, a right under state law must be qualitatively distinguishable from the rights under the scope of the Copyright Act in order to avoid preemption. *Toney*, 406 F.3d at 910. Rights created by contract are generally not within the scope of the Copyright Act. *ProCD, Inc. v. Zeidenberg*, 86 F.3d 1447, 1454 (7th Cir. 1996). "A breach of contract claim should be preempted, however, if the allegations of breach are based on nothing more than the act of infringement." *Higher Gear Group, Inc. v. Rockenbach Chevrolet Sales, Inc.*, 223 F. Supp. 2d 953, 958 (N.D. Ill. 2002). In the present case, Plaintiff's breach of contract claim is based on Defendants' alleged breach of its Service Agreement, the agreement upon which Plaintiff conditions the use of its websites. (Amended Complaint ¶¶ 60–62). Plaintiff's breach of contract claim is not based solely on Defendants' act of infringement. Plaintiff's breach of contract claims is therefore not preempted by the Copyright Act. Defendant's motion to dismiss Plaintiff's Count VI for breach of contract is **DENIED**.

### 6. Count VII—Fraud

Defendant seeks to dismiss Plaintiff's seventh cause of action for fraud on two grounds: it is preempted by the Copyright Act, and it is not pled with particularity. The court addresses the second ground first. Federal Rule of Civil Procedure 9(b) requires that a plaintiff plead a claim of fraud with particularity. Fed. R. Civ. P. 9(b).

> To meet the particularity requirements of Rule 9(b), a complaint must specify the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff. A complaint that attributes misrepresentations

to all defendants, lumped together for pleading purposes, generally is insufficient.

\*5  *Sears v. Likens*, 912 F.2d 889, 893 (7th Cir. 1990). In the present case, Plaintiff alleges that by signing up for membership, Defendants "impliedly represented that they would only use the Copyrighted Forms in the business of renting real estate and not for another purpose, such as producing a compilation of forms for distribution." (Amended Complaint ¶ 66). Plaintiff further alleges that this "representation" was a false statement of material fact because Defendants allegedly had no intention of complying with that implied representation. (*Id.* ¶ 67).

Plaintiff's Amended Complaint does not state who made this implied representation, what part of the membership agreement gave rise to the implied representation, when this alleged misrepresentation occurred, or where it occurred. Plaintiff's general averment that Defendants' actions constituted fraud does not withstand the pleading requirements of Rule 9(b). Plaintiff argues that Rule 9(b)'s particularity requirements are relaxed when the relevant facts are in the defendant's control. *See Chisholm v. Foothill Capital Corp.*, 940 F. Supp. 1273, 1280 (N.D. Ill. 1996). Because the parties have not concluded discovery, Plaintiff argues that it does not have the relevant facts that would enable it to plead with particularity. However, the court finds little merit in this argument. The crux of Plaintiff's fraud claim is that Defendants made a material misrepresentation to Plaintiff upon which it relied. Thus, Plaintiff would have some information regarding this misrepresentation before discovery, such as when it was made and where and/or how it was made, because the misrepresentation was allegedly made to Plaintiff. However, Plaintiff has included none of these allegations in its Amended Complaint as required by the heightened pleading standard of Rule 9 of the Federal Rules of Civil Procedure.

Because the court finds that Plaintiff has failed to plead its fraud claim with particularity, the court need not address whether that claim is preempted by the Copyright Act. Defendants' motion to dismiss Plaintiff's fraud claim is therefore **GRANTED**.

### 7. Count VIII—Violation of Computer Fraud and Abuse Act[4]

Plaintiff brings its eighth claim under the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030, which Defendants

Case: 1:22-cv-05660 Document #: 27-1 Filed: 03/06/23 Page 6 of 131 PageID #:214

PropertyThree Technology Group, Inc. v. Apartment..., Not Reported in Fed....

2008 WL 11374380

seek to dismiss for failure to state a claim. As Plaintiff makes clear in its Response to the present motion to dismiss, Plaintiff alleges a violation of §§ 1030(a)(5)(A)(iii) and (B)(i), which state:

> Whoever (iii) intentionally accesses a protected computer without authorization, and as a result of such conduct, causes damage; and (B) by conduct described in clause (i), (ii), or (iii) of subparagraph (A), caused ...
>
> (i) loss to 1 or more persons during any 1–year period ... aggregating at least $5,000 in value ....

18 U.S.C. § 1030(a)(5)(A)(iii)–(B)(i). Under this statute, the plaintiff must allege both "loss" and "damage," which have distinct definitions under the CFAA, in order to state a valid claim. *Garelli Wong & Assocs., Inc. v. Nichols.,* No. 07 C 6227, 2008 WL 161790, at *5 (N.D. Ill. Jan. 16, 2008).

**\*6** The term "loss" is defined under the CFAA as:

> any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service.

18 U.S.C. § 1030(e)(11). "Damage" is defined by the CFAA as "any impairment to the integrity or availability of data, a program, a system, or information." 18 U.S.C. § 1030(e)(8).

Defendants argue that Plaintiff fails to allege "damage" under the CFAA and thus its claim thereunder should be dismissed. Plaintiff does not dispute that the specific allegations enumerated under its CFAA claim fail to allege "damage." However, it argues that facts alleged elsewhere in its Amended Complaint give Defendants sufficient notice of the claim and should thus survive dismissal. Specifically, Plaintiff argues that the portions of the allegations in its Amended Complaint discussing the removal of Plaintiff's copyright notice are allegations that the integrity of Plaintiff's information was impaired, satisfying the pleading requirement of "damage" under the CFAA.[5]

The CFAA does not define the word "integrity" as it is used in the definition of "damage." However, courts have interpreted it to require "some diminution in the completeness or useability of data or information on a computer system." *Garelli Wong,* 2008 WL 161790, at *6 (quoting *ResDev, LLC v. Lot Builders Ass'n, Inc.,* No. 6:04–CV–1374ORL31DAB, 2005 WL 1924743, at *5 (M.D. Fla. Aug. 10, 2005));

*Worldspan, L.P. v. Orbitz, LLC,* No. 05 C 5386, 2006 WL 1069128, at *5 (N.D. Ill. Apr. 19, 2006). The mere taking of information is insufficient to constitute damage under the CFAA. *Worldspan,* 2006 WL 1069128, at *5.

Plaintiff asserts that it suffered damage to the information contained in its copyrighted forms when Defendants removed Plaintiff's copyright symbol from those forms upon posting Plaintiff's forms on their infringing websites. This allegation does not constitute the type of damage contemplated under the CFAA. Plaintiff does not allege that Defendants' actions impaired the integrity or usability of Plaintiff's information *on its computer system*. Rather, as alleged, Plaintiff's damage came when Defendants removed its copyright symbol after Defendants had already acquired the relevant forms from Plaintiff. Plaintiff therefore fails to allege the requisite type of damage as required by the CFAA. Defendants' motion to dismiss Plaintiff's eighth claim under the CFAA is **GRANTED**.

## 8. Count IX—Violation of Digital Millennium Copyright Act

**\*7** Defendants last seek to dismiss Plaintiff's claim under the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 1201 et seq. Specifically, Plaintiff alleges a violation of § 1202(b), which sets forth: "No person shall, without the authority of the copyright owner or the law (1) intentionally remove or alter any copyright management information." 17 U.S.C. § 1202(b)(1). "Copyright management information" is defined in pertinent part as:

> [A]ny of the following information conveyed in connection with copies or phonorecords of a work or performances or displays of a work, including in digital form, except that such term does not include any personally identifying information about a user of a work or of a copy, phonorecord, performance, or display of a work:
>
> (1) The title and other information identifying the work, including the information set forth on a notice of copyright.
>
> (2) The name of, and other identifying information about, the author of a work.
>
> (3) The name of, and other identifying information about, the copyright owner of the work, including the information set forth on a notice of copyright. ...

17 U.S.C. § 1202(c).

2008 WL 11374380

Plaintiff alleges that Defendants violated the DMCA by intentionally removing or altering the information contained in Plaintiff's copyright notice that was located on the forms Plaintiff posted on its website. (Amended Complaint ¶¶ 83–86). Defendants argue that Plaintiff's allegations fall outside the purview of the DMCA because the DMCA only prohibits removal of copyright information embedded in a digital file.

No Seventh Circuit case discusses the meaning of "copyright management information" under the DMCA. However, in support of their position, Defendants cite *IQ Group, Ltd. v. Wiesner Publishing, LLC*, 409 F. Supp. 2d 587 (D.N.J. 2006), in which the court, on summary judgment, adopted a narrow interpretation of the term, stating: "To come within § 1202, the information removed must function as a component of an automated copyright protection or management system," i.e. it must be digital. *Id.* at 597. The Central District of California, on summary judgment, also adopted this narrowing interpretation in *Textile Secrets International, Inc. v. Ya–Ya Brand Inc.*, 524 F. Supp. 2d 1184, 1201 (C.D. Cal. 2007). However, that court refused to dismiss the case on a motion to dismiss due to the remaining factual issues regarding the use of a technological process in affixing the copyright information. *Id.* at 1201 n.15.

However, in *McClatchey v. The Associated Press*, No. 3:05–cv–145, 2007 WL 776103 (W.D. Pa. Mar. 9, 2007), the court adopted a broader interpretation of "copyright management information," extending the term to encompass non-digital information as well. *Id.* at *5. On summary judgment, the court held that where the plaintiff used a technological process to print the title of her work (a photograph), her name, and the copyright notice on the photograph, the information fell within the definition of "copyright management information." *Id.* The court reasoned: "To avoid rendering [the terms 'including in digital form'] superfluous, the statute must also protect non-digital information." *Id.*

At this stage in the present litigation, it is not clear exactly how Plaintiff inserted its copyright information onto its online forms or how Defendants allegedly removed such information. Plaintiff does not provide such detail in its Amended Complaint, nor is it required to do so under the federal notice pleading standards. While Defendants request that the court adopt such a narrow reading of the DCMA to require Plaintiff to allege in its Amended Complaint that the copyright information at issue was in digital form, the court is not inclined to place such stringent standards on

Plaintiff at this stage. The cases discussing the meaning of "copyright management information" contemplate the term at the summary judgment stage, when all the evidence in the case is before the court. None of the cases require the plaintiff at issue to allege the use of a technological process in its complaint. As such, Plaintiff's Complaint sufficiently states a claim under the DMCA. Defendants' motion to dismiss Plaintiff's DMCA claim is therefore **DENIED**.

### III. Defendants' Motion to Dismiss under Rule 12(b)(2) or in alternative to Transfer Venue

#### A. Motion to Dismiss under Rule 12(b)(2)

**\*8** After filing their motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, Defendants filed a second motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2). However, Rule 12(h)(1) states that a party waives a defense listed in Rule 12(b)(2)–(5) by not including such a defense in a previous motion made under Rule 12 when such a defense was available at the time. Defendants had available the defense of lack of personal jurisdiction under Rule 12(b)(2) at the time they filed their first motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) and failure to state a claim under Rule 12(b)(6). By not including their Rule 12(b)(2) defense in their first motion, Defendants waived that defense. Defendants' motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2) is therefore **DENIED**.

#### B. Motion to Transfer Venue

Defendants also seek to transfer venue to the Central District of California pursuant to 28 U.S.C. § 1404(a). Section 1404(a) states: "For the convenience of parties and witnesses, in the interest of justice, a district court my transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Considering the factors set out in § 1404(a) and the particular circumstances of the case, the moving party bears the burden to establish that the transferee forum is clearly more convenient than the transferor forum. *State Farm Mut. Auto. Ins. Co. v. Estate of Bussell*, 939 F. Supp. 646, 651 (S.D. Ind. 1996). The parties here do not dispute that both the Southern District of Indiana and the Central District of California are proper venues.

In support of their motion, Defendants cite the fact that Defendant Apartment Hunters, Inc. is incorporated in California; Defendants Kevin and Steven Shayan, officers of Apartment Hunters, Inc., are residents of California;

Case: 1:22-cv-05660 Document #: 27-1 Filed: 03/06/23 Page 8 of 131 PageID #:216

PropertyThree Technology Group, Inc. v. Apartment..., Not Reported in Fed....

2008 WL 11374380

Defendant Denis Portnov, an employee of Apartment Hunter, Inc., is a resident of Russia; Defendants' website lists apartment vacancies for the State of California only; and Defendants do not maintain any business in Indiana. (Affidavit of Kevin Shayan at ¶¶ 2–8, Defendants' Ex. 1). However, Plaintiff argues that it is incorporated in Indiana; Plaintiff operates its business out of Indianapolis; and the majority of its key witnesses reside in Indiana. (Amended Complaint ¶ 7; Plaintiff's Response Brief at 8). Further, this case has been pending in this court for a year; as set forth above, the court has ruled on a motion to dismiss, along with a number of non-dispositive motions; the Rule 26(f) conference has been held; and a settlement conference has been held.

Considering these facts, the court finds that Defendants have failed to meet their burden to show that transferring the present case to the Central District of California is clearly more convenient. While Defendants have shown that transferring the case to California may be more convenient for them, they have not shown that it would be clearly more convenient for Plaintiff or Plaintiff's witnesses. Additionally, because this court has already met with the parties and ruled on pending motions, the court finds that the interests of justice weigh against transferring this case to a new court unfamiliar with the pending litigation. Defendants' motion to transfer venue is therefore **DENIED**.

## IV. Conclusion

For the reasons set forth above, Defendants' motion to dismiss under Rules 12(b)(1) and 12(b)(6) (Docket # 33) is **GRANTED** in part and **DENIED** in part. Specifically, Defendants' motion is **GRANTED** with respect to Count IV (unjust enrichment), Count VII (fraud), and Count VIII (Computer Fraud and Abuse Act) of Plaintiff's Amended Complaint. Defendants' motion is **DENIED** with respect to Count I (copyright infringement), Count II (false advertising), Count V (misappropriation), Count VI (breach of contract), and Count IX (Digital Millennium Copyright Act) of Plaintiff's Amended Complaint. Defendants' motion is **DENIED** as **MOOT** with respect to Plaintiff's claims for conversion and violation of the Indiana Crime Victims Act included in Plaintiff's original Complaint but omitted from the Amended Complaint.

**\*9** Defendants' motion to dismiss under Rule 12(b)(2) or in alternative to transfer venue (Docket # 45) is **DENIED**.

**SO ORDERED** this 19th day of May 2008.

## All Citations

Not Reported in Fed. Supp., 2008 WL 11374380

## Footnotes

1    Plaintiff's original Complaint contained a claim for conversion and a claim under the Indiana Crime Victim's Act. However, those claims were omitted from Plaintiff's Amended Complaint. Defendants' present motion to dismiss under Rules 12(b)(1) and 12(b)(6) moves to dismiss those claims and is thus denied on those claims as moot.

Plaintiff's Amended Complaint adds a claim for computer trespassing (Count X). Because Defendants did not supplement their motion to dismiss after Plaintiff filed its Amended Complaint to address Plaintiff's additional claim, Count X of the Amended Complaint remains.

2    In its Amended Complaint, Plaintiff includes two counts of false advertising, Counts II and III. Defendants only move to dismiss Count II. Thus, Count III remains.

3    "Reverse passing off" occurs where the producer misrepresents someone else's goods or services as his own. *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 27 n.1 (2003). This is opposed to "passing off" where the producer misrepresents his own goods as someone else's. *Id.*

4    Defendants also seek to dismiss Plaintiff's claim under the CFAA on the ground that Plaintiff does not allege any dates and it thus falls outside the relevant statute of limitations. However, Plaintiff is correct in responding that the statute of limitation is an affirmative defense and need not be pled in the complaint. *United States v. N. Trust Co.*, 372 F.3d 886, 888 (7th Cir. 2004). Dismissal of Plaintiff's CFAA claim on that ground is improper.

5    Plaintiff cites specifically to paragraphs 21 and 23 of its Complaint (paragraphs 22 and 24 of the Amended Complaint). Paragraph 22 of the Amended Complaint states: "The Defendants posted several of the Plaintiff's legal and business

2008 WL 11374380

forms on the Infringing Website either by copying such works directly, simply removing the copyright notice, or by posting derivative works of such works." (Amended Complaint ¶ 22). Paragraph 24 states: "Plaintiff discovered that the Defendants had posted several of its legal and business forms on the Infringement Website while conducting a Due Diligence Check." (*Id.* ¶ 24).

---

**End of Document**

© 2023 Thomson Reuters. No claim to original U.S. Government Works.

2010 WL 1266810
Only the Westlaw citation is currently available.
United States District Court, D. Arizona.

PRESTIGE ADMINISTRATION,
INC., an Arizona corporation, Plaintiff,
v.
US FIDELIS, INC., a Missouri
corporation; et al., Defendants.

No. CV09–1804–PHX–DGC.
|
March 26, 2010.

**Attorneys and Law Firms**

Kurt Alan Johnson, Kurt Johnson Associates PC, Glendale, AZ, for Plaintiff.

Jacob Alexander Maskovich, Sean Keenan McElenney, Bryan Cave LLP, Robert R. Berk, Jones Skelton & Hochuli PLC, Phoenix, AZ, Drey A. Cooley, Spencer P. Desai, Stephen Todd Hamby, Capes Sokol Goodman & Sarachan PC, St. Louis, MO, for Defendants.

Darain Atkinson, Lake St. Louis, MO, pro se.

Mia Atkinson, Lake St. Louis, MO, pro se.

**ORDER**

DAVID G. CAMPBELL, District Judge.

**\*1** Defendant Mepco Finance Corporation ("Mepco") filed a motion to dismiss Prestige Administration's amended complaint against it pursuant to Rules 8(a), 9(b), and 12(b)(6) of the Federal Rules of Civil Procedure. Dkt. # 34. The motion is fully briefed. Dkt.36, 51. Neither party requested oral argument. For the reasons stated, the Court will grant the motion. The Court will also grant Plaintiff leave to amend the complaint to correct the deficiencies discussed below.

**I. Background.**

Plaintiff manufactures, distributes, and markets a coolant additive product under the "AUTOLIFE" trademark. Dkt. # 1 at ¶ 19. In Plaintiff's original complaint, which did not include Mepco as a Defendant, Plaintiff asserted claims against U.S.

Fidelis, Inc. and Crescent Manufacturing Company, LLC for unfair competition, dilution, and cyberpiracy under § 43(a) of the Lanham Act (15 U.S.C. § 1125), as well as state law claims for trademark infringement, fraudulent misrepresentation, injury to business reputation, and tortious interference with contract. Dkt. # 1. In the amended complaint, Plaintiff joined Mepco as a Defendant, and further alleges that Defendants are infringing on its AUTOLIFE mark by "selling automobile additive products using a deceptively similar mark in the product names, such as 'AUTOLIFEXTEND MOTOR 12000,' 'AUTOLIFEXTEND GAS 12000' and 'AUTOLIFEXTEND GAS CONDITIONER'[.]" Dkt. # 8 at ¶ 22. Plaintiff contends that Defendants are utilizing these trade names to capitalize on the reputation of Plaintiff's product and that Defendants are able to do so because, as Plaintiff's former customers, they have inside knowledge of Plaintiff's customer base. *Id.* at ¶ 27. In Plaintiff's words, Defendants took these actions "with full knowledge and conscious disregard of Plaintiff's prior and superior rights in the AUTOLIFE mark." *Id.* at ¶ 34; *see id.* at ¶ 21.[1]

Defendant Mepco has filed a motion to dismiss the claims against it in the second amended complaint on the ground that it fails to satisfy the pleading requirements of Rules 8(a)(2) and 9(b) and fails to "allege a single, specific fact against ... Mepco." Dkt. # 34.

**II. Analysis.**

When analyzing a complaint for failure to state a claim under Rule 12(b)(6), "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *Smith v. Jackson,* 84 F.3d 1213, 1217 (9th Cir.1996). A complaint need not allege detailed facts to survive a Rule 12(b) (6) motion; "rather, it must plead 'enough facts to state a claim to relief that is plausible on its face.' " *Clemens v. DaimlerChrysler Corp.,* 534 F.3d 1017, 1022 (9th Cir.2008) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). This standard requires "more than a sheer possibility that a defendant has acted unlawfully," demanding instead sufficient factual allegations to allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009).

**\*2** The amended complaint contains only three direct references to Defendant Mepco. Dkt. # 8 at ¶¶ 3, 11, 25. The first two references relate to Rule 8(a)(1)'s jurisdictional

2010 WL 1266810

requirements. *Id.* at ¶¶ 3, 11. The third reference is the only one of the three that makes a substantive factual allegation: "Defendant Mepco finances the warranty contracts for Defendants U.S. Fidelis and Crescent Manufacturing, and aided Defendants U.S. Fidelis and Crescent Manufacturing in selling the AUTOLIFEEXTEND products." *Id.* at ¶ 25. This single factual allegation against Defendant Mepco creates nothing more than a "sheer possibility that [Mepco] has acted unlawfully," and fails to notify Mepco of the nature of the claims against it. *Iqbal,* 129 S.Ct. at 1949. Neither this allegation nor any other allegation in the complaint explains how Mepco's financing or aid to U.S. Fidelis and Crescent Manufacturing violated the Lanham Act, infringed on Plaintiff's mark, or gave rise to any of the various state law causes of action. The allegation creates a loose connection between Mepco and the other Defendants, but it does not explain how that connection makes Mepco's actions illegal.

The amended complaint's remaining allegations speak generally of the "Defendants" and fail to specify exactly what each Defendant did to violate the law. For example, Plaintiff alleges that "Defendants have acted in bad faith and/ or deliberately and intentionally to infringe upon Plaintiff's mark [.]" Dkt. # 8 at ¶ 54. This allegation, and several others, simply groups the Defendants together and refers to them collectively. They do not enable the Court reasonably to infer that every Defendant is liable for every claimed wrong.

By its own admission, all of Plaintiff's references to the "Defendants" were not intended to include Defendant Mepco. Dkt. # 36 at 5. Specifically, Plaintiff acknowledges that its claims for constructive and actual fraud were not meant to apply to Mepco, despite the fact that those claims generically refer to "Defendants" *Id.; see* Dkt. # 8 at ¶¶ 74, 77, 82, 85, 89, 90, 94.[2] Plaintiff does not specify, however, which of the amended complaint's remaining references to "Defendants" does include Mepco. Accordingly, neither Mepco nor the Court can determine which claims in the amended complaint are asserted against Mepco and which are asserted against the other Defendants.

Moreover, several of these general allegations do not permit a reasonable inference that Mepco acted illegally. In one example, Plaintiff alleges that "Defendants ... wrongfully registered and used the confusingly similar AUTOLIFEXTEND.COM" as a domain name to market the infringing products. Dkt. # 8 at ¶ 48. Plaintiff also alleges that Defendants U.S. Fidelis and Crescent Manufacturing operated the offending website. *Id.* at ¶ 23. The complaint

does not allege at any point that Mepco was involved with operating the website. Thus, the reasonable inference from this allegation is that U.S. Fidelis and Crescent Manufacturing—not Mepco—violated Plaintiff's trademark rights by operating the website, despite the fact that Mepco is presumably one of the "Defendants" against whom the claim is made. This is but one of many instances where Plaintiff refers generally to "Defendants."

**\*3** Plaintiff contends that some of the allegations against the "Defendants," when assumed to be true and considered with the lone specific allegation against Mepco, sufficiently tie Mepco to illegal infringing activity. Plaintiff points to paragraph 21 of the amended complaint: "Defendants were aware of Plaintiff's long-standing use of the AUTOLIFE mark because Defendant U.S. Fidelis sold Plaintiff's products for several years and acted as one of Plaintiff's agents in marketing the products to both dealers and consumers." Dkt. 8 at ¶ 21. According to Plaintiff, this paragraph establishes a plausible claim against Mepco because Mepco knew Plaintiff owned the mark for five years and knew the other Defendants were infringing on the mark, but chose to continue financing the other Defendants' products. Dkt. # 36 at 2. The Court is not convinced. Plaintiff refers to "Defendants" generically at the beginning of the paragraph, but the language suggests that Defendant U.S. Fidelis—not Defendant Mepco —had knowledge that Plaintiff owned the AUTOLIFE mark "because *US Fidelis* sold Plaintiff's products for several years." Dkt. 8 at ¶ 21 (emphasis added).

Even if the Court assumed Mepco was one of the "Defendants" that allegedly had knowledge, the amended complaint does not contain any factual statements that explain why that knowledge was enough to make Mepco's financing activities illegal. In other words, Plaintiff does not show why Mepco's knowledge that Plaintiff owned the AUTOLIFE mark makes its financing of U.S. Fidelis' and Crescent Manufacturing's products illegal. Paragraph 21 simply does not allow the Court "to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Iqbal,* 129 S.Ct. at 1949, because it does not contain "enough facts to state a claim to relief that is plausible on its face," *Twombly,* 550 U.S. at 570.

Plaintiff attempts to cure these deficiencies in its response brief (Dkt. # 36), by alleging facts not contained in the amended complaint. Specifically, Plaintiff sets forth the circumstances by which Mepco learned that Plaintiff owned the AUTOLIFE mark and the circumstances by which Mepco

2010 WL 1266810

learned that the remaining Defendants were selling products under a similar mark. *Id.* at 2–4. Moreover, Plaintiff argues for the first time that Mepco is liable for "indirect infringement" for financing commercial purchases of products that it knew violated Plaintiff's mark. *Id.* at 2.

Generally, in analyzing a Rule 12(b)(6) motion, the Court is prohibited from considering material beyond the pleadings. *See Inlandboatmens Union of Pacific v. Dutra Group,* 279 F.3d 1075, 1083 (9th Cir.2009); *Lee v. City of Los Angeles,* 250 F.3d 668, 688 (9th Cir.2001). Indeed, "a court may not look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss." *Schneider v. Cal. Dep't of Corr.,* 151 F.3d 1194, 1197 n. 1 (9th Cir.1998). Therefore, the Court may not consider the new allegations in Plaintiff's response to Defendant Mepco's motion.

**\*4 IT IS ORDERED:**

1. Defendant Mepco Finance Corporation's motion to dismiss (Dkt.# 34) is **granted.**

2. Plaintiff's request for leave to amend its complaint (Dkt.# 36) is **granted.** Plaintiff shall file an amended complaint by **April 16, 2010.**

DATED this 25th day of March, 2010.

**All Citations**

Not Reported in F.Supp.2d, 2010 WL 1266810

---

Footnotes

1    Defendant Mepco raises for the first time in its reply brief an argument that Plaintiff may not actually own rights to the AUTOLIFE mark. Dkt. # 51 at 5 n. 2. The Court will not consider arguments made for the first time in a reply brief. *Delgadillo v. Woodward,* 527 F.3d 919, 930 n. 4 (9th Cir.2008).

2    In light of the concession that Plaintiff did not intend to assert claims for fraud against Defendant Mepco, the Court need not consider Mepco's argument that Plaintiff failed to satisfy the heightened pleading requirements for fraud under Rule 9(b).

---

**End of Document**

© 2023 Thomson Reuters. No claim to original U.S. Government Works.

Case: 1:22-cv-05660 Document #: 27-1 Filed: 03/06/23 Page 13 of 131 PageID #:221

Appalachian Enterprises, Inc. v. ePayment Solutions, Ltd., Not Reported in F.Supp.2d...

2004 WL 2813121

KeyCite Yellow Flag - Negative Treatment

Distinguished by F.T.C. v. Tax Club, Inc., S.D.N.Y., January 17, 2014

2004 WL 2813121
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

APPALACHIAN
ENTERPRISES, INC. Plaintiff,
v.
EPAYMENT SOLUTIONS LTD., ePayment
Solutions Inc., ePayment Solutions AVV, E
Commerce Service UK, Ltd., Smartcarde.com,
Bankkey.com, Tony Brown, Jerzy Jan
Kaminski, Shaun Lacey, Andrew Martin
Davies, Vicki Sayer, Simone Day, Anthony
Morris, Jason Field, Kate Martin, Carl
Bristow, and Katrina Davies, Defendants.

No. 01 CV 11502(GBD).
|
Dec. 8, 2004.

MEMORANDUM DECISION AND ORDER

DANIELS, J.

**\*1** In an action based on diversity, plaintiff Appalachian Enterprises, Inc., a Delaware corporation, seeks monetary damages for, *inter alia,* fraudulent inducement and breach of contract. The complaint names seventeen defendants including both individual and corporate entities, as well as two websites. Defendants Jason Field, Kate Martin and E Commerce Service, UK, Ltd. ("E Commerce") are moving to dismiss the complaint on the grounds of lack of personal jurisdiction, failure to meet the pleading specificity requirements, and failure to state a claim upon which relief can be grant.[1] Their motion is granted.

The amended complaint alleges that the following six defendants are affiliated companies and are working under a unified front: ePayment Solutions Ltd., a United Kingdom corporation; ePayment Solution, Inc., a St. Kitts corporation; ePayment Solution AVV, an Aruban corporation; E Commerce, a United Kingdom corporation; and Smartcarde.com and Bankkey.com, two different internet websites of unknown corporate status. In the complaint, these six defendants are collectively referred to by plaintiff as "ePayment." The individuals named as defendants are all residents of England, and are alleged to be directors, officers, managers, supervisors or secretaries of ePayment. Plaintiff alleges that each act of the defendants, as well as their respective employees, agents and representatives, is chargeable and binding as to all defendants.

The "Statement of Facts" portion of the complaint, with one minor exception, refers to acts allegedly committed by the "Defendants." It states therein that plaintiff provides subscription internet services. "Defendants run a credit card processing company which arranges with banks for merchants to open accounts for the processing of credit card charges for retail sales." (Am.Compl.¶ 27). At defendant Tony Brown's urging, plaintiff entered into a written contract for such processing service. On plaintiff's behalf, defendants opened a bank account in a bank in Aruba, and deposited the monies defendants received from processing the credit card transactions for sales to plaintiff's customers. After plaintiff received a few payments for the credit card sales, payment abruptly stopped. Defendants allegedly owe plaintiff in excess of $800,000.

Plaintiff makes no attempt, in its pleadings, to specifically allege what particular acts were taken by which of the defendants. Plaintiff does allege that Mr. Brown, on behalf of all defendants, orally represented to plaintiff's owners, that the monies plaintiff would entrust to defendants would be safe. Plaintiff claims that this was a misrepresentation made in an effort to induce plaintiff to enter into a contract with e-Payment. Plaintiff fails to allege the actual identity of the contracting party with whom plaintiff entered into the written agreement, nor does plaintiff indicate who signed the contract on behalf of that party. The complaint contains no allegations as to where the contract negotiations took place, nor where it was executed. Plaintiff also seeks to impose alter ego liability upon the individual defendants alleging they exercised control over e-Payment. Plaintiff alleges that ePayment's office is located at defendant Brown's home address.

**\*2** In support of their motion, movants submitted the affidavit of defendant Jason Field. He alleges that he worked as a salesman for ePayment Solution, Ltd., and he brought plaintiff in as a client. He claims that this was his sole

2004 WL 2813121

interaction with plaintiff, and he denies that defendant Kate Martin ever worked for ePayment Solution Ltd. There is no affirmative representation made by Mr. Field that ePayment Solution Ltd. was the party that entered into a contract with plaintiff. He does deny that E Commerce ever entered into a contract with plaintiff, or made any representations to plaintiff regarding the alleged bank account in Aruba, or the processing or safety of the subject funds. Although plaintiff acknowledges that "[w]hile E Commerce is not the entity with whom Plaintiff has a direct contractual relationship, it is Plaintiff's good faith belief that E Commerce, Field and Martin are officers and/or shareholders of E Commerce, is (sic) merely a successor-in-interest to Defendant E Payment Solution Ltd., for whom Field was an agent." (Pl.'s Mem. Opp. Summ. J. at 2). Additionally, Mr. Field asserts that ePayment Solution, Ltd. is a defunct company. Although plaintiff agrees that the company is "technically dissolved," plaintiff claims it "has good faith reasons to believe that the company E Payment, ... is still running and is now being fronted by E Commerce, Martin and Field." (*Id.* at 3, n. 1).

Defendant Field further alleges that E Commerce has no relationship with any of the codefendants other than for himself and Ms. Martin. He denies that E Commerce is now, or was ever, in possession or control of plaintiff's funds. Mr. Field further claims that he, E Commerce and Kate Martin have never exercised dominion or control over any of the other codefendants, and have never been officers, directors, or shareholders of the defendant-companies. Mr. Field further makes the following representations: none of the movants have transacted business in New York; derived any revenue from business conducted here; pay New York taxes; placed advertisements, maintained telephone listings, or had an office in New York; employed New York staff or sent personnel to New York; nor do they maintain or possess any bank accounts, or any real or personal property located in New York. Additionally, Mr. Field asserts that E Commerce has never been registered to do business in New York. He also denies that any of the movants regularly do or solicit business, or engage in any other persistent course of conduct in New York. Nor do they derive substantial revenue from goods used or consumed, or services rendered, in New York.

PERSONAL JURISDICTION

A reading of the complaint fails to reveal what is the legal basis upon which plaintiff is asserting jurisdiction over the defendants. The complaint states that "e-Payment" regularly conducts business in New York state. Additionally, plaintiff alleges, for purposes of venue, that defendants are doing business in this district, and that a substantial part of the events or omissions giving rise to the claims occurred in this district. The complaint itself contains no factual allegations as to any events that occurred in New York. The only two specific references to New York, in the complaint, are that it is the location of plaintiff's main office and that plaintiff does business in the state.

**\*3** When responding to a motion to dismiss for personal jurisdiction, pursuant to Fed.R.Civ.P. 12(b)(2), plaintiff bears the burden of establishing jurisdiction. *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez,* 171 F.3d 779, 784 (2d Cir.1999); *Cutco Indus., Inc. v. Naughton,* 806 F.2d 361, 365 (2d Cir.1986). Absent an evidentiary hearing, plaintiff need only make a prima facie showing by pleadings and supporting affidavits that the court possesses the requisite jurisdiction over the defendants. *Robinson v. Oversea Military Sales Corp.,* 21 F.3d 502, 507 (2d Cir.1994). All pleadings and affidavits are to be construed in plaintiff's favor, and any doubts should be resolved in its' favor as well. *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.,* 763 F.2d 55, 57 (2d Cir.1985).

When jurisdiction is based upon diversity, a federal court applies the choice-of-law rules of the forum state. *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496 (1941); *Jazini v. Nissan Motor Co., Ltd.,* 148 F.3d 181, 183–84 (2d Cir.1998) (citations omitted). Thus, to determine whether personal jurisdiction exists over the non-resident defendants, the Court must look to the forum state's long-arm jurisdictional statutes. *Savin v. Ranier,* 898 F.2d 304, 306 (2d Cir.1990). If the long-arm statutes do provide for personal jurisdiction, the focus of the court's inquiry must shift to whether exercising such jurisdiction comports with due process. *Whitaker v. American Telecasting, Inc.,* 261 F.3d 196, 208 (2d Cir.2001) (quoting *Bensusan Restaurant Corp. v. King,* 126 F.3d 25, 27 (2d Cir.1997)). Due process requires that the party, over whom personal jurisdiction is sought, has some minimum contacts with the forum state so that litigation of the action will not "offend traditional notions of fair play and substantial justice." *Fort Knox Music, Corp. v. Baptiste,* 203 F.3d 193, 196 (2d Cir.2000) (quoting *Calder v. Jones,* 465 U.S. 783, 788 (1984)).

Personal jurisdiction will exist over a foreign corporation, pursuant to N.Y. C.P.L.R. § 301 (McKinney 2001) ("CPLR"), if it is "doing business" in the state. *Wiwa v. Royal Dutch Petroleum Co.,* 226 F.3d 88, 95 (2d Cir.2000).[2] The

2004 WL 2813121

imposition of jurisdiction, under this section, does not require that the cause of action against the defendants arise from their New York business transactions. A corporation will be found to be "doing business" and present in New York, if it does business with a "fair measure of permanence and continuity" and not merely "occasionally or casually." *Hoffritz,* 763 F.2d at 58 (quoting *Tauza v. Susquehanna Coal Co.,* 115 N.E. 915, 917 (N.Y.1917)). In order to determine whether a foreign corporation is engaging in business on a continual basis, the following factors generally should be the focus: the existence of a New York office, solicitation of business in New York; corporate bank accounts or other properties located within the state; and the presence of corporate employees or agents in New York. *Landoil Resources Corp. v. Alexander & Alexander,* 918 F.2d 1039, 1043 (2d Cir.1990) (citing *Hoffritz,* 763 F.2d at 58).

**\*4** Plaintiff has failed to allege any facts to demonstrate that E Commerce ever conducted any business within New York. Additionally, the uncontested affidavit of Mr. Field reveals that neither E Commerce, nor for that matter any of the movants, maintains a New York office, solicit business here, have employees or agents in New York, or possess a bank account, or other real or personal property, in New York. Accordingly, there is no basis to find personal jurisdiction exists over the movants pursuant to CPLR § 301.

New York's long-arm statute also allows for personal jurisdiction over a non-domiciliary who in person or through an agent "(1) transacts any business within the state or contracts anywhere to supply goods or services in the state; or (2) commits a tortious act within the state ...; or (3) commits a tortious act without the state causing injury to person or property within the state ..., if he [or she] (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; or (4) owns, uses or possesses any personal property situated within the state." CPLR § 302(a). Personal jurisdiction may only be imposed provided the causes of actions against the defendants arise from the enumerated conduct set forth in CPLR § 302.

As already noted there has been no claim, much less a showing, that the movants possess or use personal or real property in New York that gives rise to the claims against them. Additionally, it cannot be concluded that any alleged tortious conduct occurred in New York. Although the complaint alleges, for venue purposes, that a substantial part of the events or omissions giving rise to the claims occurred in this district, it fails to specify what, if any, tortious acts occurred within the state. It cannot be inferred from reading the complaint that any of the wrongful conduct, which defendants allegedly committed, occurred in New York. The defendants are corporations situated in the United Kingdom, St. Kitt, and Aruba. The individual defendants reside in England. Defendants allegedly processed the credit card charges for plaintiff, and wrongfully withheld those funds, instead of depositing them in a bank in Aruba. There is no basis to suggest that such actions occurred in New York. Nor is there even any allegation that the contract, which defendants are accused of breaching, was negotiated or executed in New York. "To subject non-residents to New York jurisdiction under § 302(a)(2) the defendant must commit the tort while he or she is physically present in New York State." *Bensusan Restaurant Corp.,* 126 F.3d at 29 (citation omitted). Merely because plaintiff may have suffered injury in New York will not suffice in this regard. *Id.*

**\*5** Even if the tortious acts were committed outside of New York, plaintiff has failed to proffer any allegations showing that the acts complained of caused sufficient injury in New York to justify exercising personal jurisdiction over the movants. Generally, in order to determine whether there is sufficient injury in New York to warrant § 203(a)(3) jurisdiction, a "situs-of injury" test is to be applied requiring that the location of the "original event that caused the injury" be ascertained. *DeStafano v. Carozzi North America, Inc.,* 286 F.3d 81, 84 (2d Cir.2001) (quoting *Bank Brussels Lambert,* 171 F.3d at 791)). The "original event" is distinguishable from the initial tort, as well as from the final economic damages and resulting consequences flowing therefrom. "[T]he original event occurs 'where the first effect of the tort ... that ultimately produced the final economic injury' is located." *Id.* at 84–85 (quoting *Bank Brussels Lambert,* 171 F.3d at 792)). Plaintiff does not allege that the first effect, as a result of defendants purportedly withholding the plaintiff's monies instead of depositing them in the bank in Aruba, is located in New York. *See generally, Whitaker,* 261 F.3d at 209 ("[T]he situs of the injury for purposes of asserting long arm jurisdiction is the place where the underlying, original event occurred which cause the injury."); *see also, United Bank of Kuwait v. James M. Bridges, Ltd.,* 766 F.Supp.113, 166 (S.D.N.Y.1991) ("The occurrence of financial consequences in New York due to the fortuitous location of plaintiff[ ] in New York is not a

WESTLAW © 2023 Thomson Reuters. No claim to original U.S. Government Works.

Appalachian Enterprises, Inc. v. ePayment Solutions, Ltd., Not Reported in F.Supp.2d...
2004 WL 2813121

sufficient basis for jurisdiction under § 302(a)(3) where the underlying events took place outside New York.").

Furthermore, plaintiff has not made a sufficient showing as to the other prongs necessary to exercise jurisdiction pursuant to § 302(a)(3). Plaintiff does not allege that movants derive substantial revenue from interstate or international commerce. Moreover, plaintiff fails to controvert Mr. Field's claim that the movants' solicit no business in New York, derive no revenue from goods or services used or consumed in New York, and they do not engage in any other persistent course of conduct in New York.

The only arguable basis to assert jurisdiction over the moving defendants is under subdivision (1) of CPLR § 302, *i.e.,* that they transact business in New York. The burden of showing that a non-domiciliary "transacts business," and can be sued for claims arising from that transaction, is a considerably less onerous one than that needed to establish "doing business" to sue such defendant even on an unrelated cause of action pursuant to CPLR § 301. *Hoffritz,* 763 F.2d at 58–59 (citations omitted). Where defendants purposely avail themselves of the privilege of conducting business in this state, and the causes of action arose out of activities occurring within the state, jurisdiction may be exercised over them. *Henderson v. I.N.S.,* 157 F.3d 106, 123 (2d Cir.1998) (quoting *Kronisch v. United States,* 150 F.3d 112, 130 (2d Cir.1998)). "It is a 'single transaction statute' and proof of one transaction in New York is sufficient to invoke jurisdiction, even though the defendant never enters New York, so long as the defendant's activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted." *Kreutter v. McFadden Oil Corp.,* 527 N.Y.S.2d 195, 198–99 (N.Y.1988). A cause of action "arises out" of a defendant's activities where there exists an "articuable nexus" or a "substantial relationship" between the transactions occurring within New York and the claims upon which the defendant is being sued. *Sunward Elec., Inc. v. McDonald,* 362 F.3d 17, 23 (2d Cir.2004); *Kronisch,* 150 F.3d at 130. Among some of the factors to be considered to determine whether a non-domiciliary is "doing business," for purposes of CPLR § 302(a)(1), are whether there is an on-going contractual relationship with a New York corporation; whether the contract was negotiated or executed in New York; whether after executing the contract, defendant had business meetings in New York; and whether there was a choice-of-law clause in the contract. *Sunward,* 362 F.3d at 22–23; *Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp.,* 98 F.3d 25, 29 (2d Cir.1996) (citations omitted). Other factors may also

be considered, and no one factor is determinative. Rather, an examination of the totality of the circumstances is necessary to determine whether a foreign defendant is doing business in New York. *Id.*

**\*6** An examination of all of the circumstances, in the case at bar, fails to reveal that the movants engaged in purposeful activity in New York. In fact, there is no evidence that the moving defendants engaged in any activity, whatsoever, in New York. Moreover, this action is premised upon a contract to which the movants were not signatories.

Plaintiff also seeks to impose alter ego liability upon the individual defendants for the actions taken by e-Payment. Where jurisdiction exists over a corporation, the corporate officers will also be subject to jurisdiction where plaintiff has asserted factual allegations constituting a prima facie showing of alter ego status. *See, Packer v. TDI Sys.,* 959 F.Supp. 192, 203 (S.D.N.Y.1997). Plaintiff has not made a prima facie showing that personal jurisdiction over the defendant-companies[3] exists. None of the defendant companies are incorporated or have their principal place of business in New York. The complaint also fails to show that the companies have any ties to New York, or that they did, or were doing, any business in this state. Nor has plaintiff pled any specific factual allegations to support its conclusory assertions that Mr. Field or Ms. Martin exercised domination and control over the defendant companies. Therefore, jurisdiction over Mr. Fields and Ms. Martin cannot be obtained even if the corporate veil is pierced for jurisdictional purposes. Additionally, plaintiff has not made any showing that the defendant companies were merely acting as an agent on behalf of Mr. Field or Ms. Martin to warrant subjecting them to jurisdiction on an agency theory. *See, Mende v. Milestone Tech., Inc.,* 269 F.Supp.2d 246, 253 n. 5 (S.D.N.Y.2003); *Hypoxico, Inc. v. Colorado Altitude Training LLC,* 2003 WL 21649437, *3–4 (S.D.N.Y. July 14, 2003); *Kinetic Instruments, Inc. v. Lares,* 802 F.Supp. 976, 984 (S.D.N.Y.1992).

Accordingly, plaintiff is unable to meet it minimal burden of making a prima facie showing of personal jurisdiction over the movants.

SPECIFICITY OF THE CLAIMS

The moving defendants also maintain that the complaint should be dismissed for failure to comply with Fed.R.Civ.P.

2004 WL 2813121

8(a)(2) which requires pleadings to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Plaintiff argues that since it brought this action against all defendants involved in the conspiracy to defraud plaintiff both jointly and severally, plaintiff need only establish that it has pled a claim with the requisite specificity against any of the defendants. Plaintiff contends that it has alleged more than sufficient facts to meet this standard.

The complaint does not contain any specific allegations regarding the existence of a conspiracy amongst the defendants. Nor does the complaint even set forth a general allegation that the defendants had entered into any kind of agreement with one another. The complaint merely refers to the culpable acts committed by all seventeen defendants, without any attempt to differentiate which act was taken by which party, or how the parties are interrelated. Even plaintiff's opposition papers fail to elucidate the general claims set forth against the defendants. Rather, plaintiff asserts, "[i]t is the good faith belief of Plaintiff that all of the Defendants are interconnected as a unified front in their campaign of fraud such as to make them indistinguishable from one another legally." (Pl.'s Mem. Opp. Summ. J. at 2). Plaintiff offers no factual allegations to indicate the basis upon which its good faith belief is premised.

**\*7** To satisfy the simplified notice pleading standard of Fed.R.Civ.P. 8, the complaint must merely "give the defendant fair notice of what plaintiff's claim is and the grounds upon which it rests." *Swiekiewicz v. Sorema N.A.,* 534 U.S. 506, 512 (2002) (quoting *Conley v. Gibson,* 355 U.S. 41, 47 (1957); *Wynder v. McMahon,* 360 F.3d 73, 78 (2d Cir.2004). Such notice enables a defendant to answer and prepare for trial. *Salahuddin v. Cuomo,* 861 F.2d 40, 42 (2d Cir1988); *see also, Simmons v. Abruzzo,* 49 F.3d 83, 86 (2d Cir.1995) (quoting 2A *Moore's Federal Practice* ¶ 8 .13, at 8–58 (2d ed. 1994)) ("Fair notice is that which enables the adverse party to answer and prepare for trial, allow the application of res judicata, and identify the nature of the case so it may be assigned the proper form of trial."). Dismissal for failure to comply with the rule is generally "reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." *Salahuddin,* 861 F.2d at 42. A plaintiff fails to satisfy rule 8, where the complaint "lump[s] all the defendants together and fail[s] to distinguish their conduct" because such "allegations fail to give adequate notice to the[ ] defendants as to what they did wrong." *See, Median v. Bauer,* 2004 WL 136636, \*6 (S.D.N.Y. Jan. 27, 2004); *see also,*

*Glasheen v. City of Albany,* 1999 WL 1249409, \*1 (N.D.N.Y. Dec. 16, 1999); *Merrill Lych, Pierce, Fenner & Smith Inc., v. Young,* 1994 WL 88129, \*15 (S.D.N.Y. Mar. 15, 1994); *Rafferty v. Halprin,* 1991 WL 148798, \*8 (S.D.N.Y. July 26, 1991).

The complaint in this case does not identify any particular defendant that committed any specific act of wrongdoing against plaintiff. Rather, the complaint simply attributes the wrongful acts as being committed collectively by the seventeen defendants. Moreover, the complaint fails to reveal the specific relationship, if any, that these defendants share. Plaintiff attempts to excuse its pleadings based on difficulties it encounters as a result of the defendants' alleged convoluted structure of their business practices and plans. However, plaintiff pled a cause of action for breach of contract without even alleging the identity of its contracting party. The structure of defendants' business operations certainly would not preclude plaintiff from setting forth, in its pleadings, the name of the other contracting party. Accordingly, the complaint fails to meet the lenient pleading requirements of Rule 8.

## FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED

Movants are also seeking to dismiss the complaint pursuant to Fed .R.Civ.P. 12(b)(6). In reviewing a complaint for dismissal under Rule 12(b)(6), the Court must accept the factual allegations in the complaint as true and draw all reasonable inferences in plaintiff's favor. *Bolt Electric, Inc. v. City of New York,* 53 F.3d 465, 469 (2d Cir.1995). The complaint should only be dismissed where it appears beyond doubt that plaintiff can present no set of facts entitling it to relief. *Conley,* 355 U.S. at 46; *Ryder Energy Distribution Corp. v. Merrill Lynch Commodities, Inc.,* 748 F.2d 774, 779 (2d Cir.1984).

**\*8** Movants argue that the cause of action for fraudulent inducement is not pled in accordance with the dictates of Fed.R.Civ.P. 9(b) which provides that, "[i]n all averments of fraud ..., the circumstances constituting fraud ... shall be stated with particularity." The complaint alleges that Mr. Brown, on behalf of all of the defendants, made oral representations to plaintiff's owners regarding the safety of the monies plaintiff would be entrusting to defendants in order to induce plaintiff to enter into the contract. "Rule 9(b) requires plaintiff[ ] to allege (1) the specific statement or omission; (2) the aspect of the statement or omission that makes it

Case: 1:22-cv-05660 Document #: 27-1 Filed: 03/06/23 Page 18 of 131 PageID #:226
Appalachian Enterprises, Inc. v. ePayment Solutions, Ltd., Not Reported in F.Supp.2d...
2004 WL 2813121

false or misleading; (3) when the statement was made; (4) where the statement was made; and (5) which defendant was responsible for the statement or omission." *See, Odyssey Re (London) Ltd. v. Stirling Cooke Brown Holdings Ltd., 85 F.Supp.2d 282, 293 (S.D.N.Y.2000)* (internal quotation marks and citations omitted), *aff'd,* 2001 WL 46565 (2d Cir.2001); *see also, Cosmas v. Hassett,* 88, 11 (2d Cir.1989) ("To satisfy the particularity requirement of Rule 9(b), a complaint must adequately specify the statements it claims were false or misleading, give particulars as to the respect in which plaintiff contends the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements."). Plaintiff has failed to allege what the content of the misstatements were, how the statements were false or misleading, as well as when and where the statements were made. Moreover, Rule 9(b) cannot be satisfied merely by attributing the alleged misstatements to all the defendants. *Mills v. Polar Molecular Corp .,* 12 F.3d 1170, 1175 (2d Cir.1993).

Plaintiff has not set forth sufficient factual allegations that, if accepted as true, would show plaintiff's entitlement to recovery against any particular defendant under any of the asserted causes of action. It cannot be concluded that Mr. Brown's alleged false or misleading statements constituted material misrepresentations which served to induce plaintiff to enter into a contract with some undisclosed party. With regard to the breach of contract claim, plaintiff has not allege any specific party who was personally bound by the contract and had a duty to perform thereunder, yet failed to do so. Similarly, plaintiff has not identified any specific defendant who is in possession and control of the subject funds to support its claims for replevin and conversion. Finally, plaintiff has not proffered any factual allegations to support its conclusory assertion that the individual defendants

exercised complete domination and control over the corporate and website defendants in order to plead a viable claim for alter ego liability. Plaintiff merely offers a blanket statement that the individual defendants are the only officers and shareholders of "ePayment." Therefore, the complaint is defective in that no viable cause of action is asserted.

CONCLUSION

**\*9** In light of the foregoing, defendants E Commerce Service, UK, Ltd ., Jason Field, and Kate Martin's motion to dismiss the complaint against them, for lack of personal jurisdiction, is granted.

A court has the discretion to dismiss a complaint *sua sponte* for failure to plead with the necessary specificity to state a proper cause of action. *Kittay v. Kornstein,* 230 F.3d 531, 542 (2d Cir.2000) (A district court may *sua sponte* dismiss a complaint which does not comply with Fed.R.Civ.P. 8); *Citadel Management, Inc. v. Telesis Trust, Inc.,* 123 F.Supp.2d 133, 147 (S.D.N.Y.2000); *Smith v. Metro North Commuter R.R.,* 2000 WL 1449865 (S.D.N.Y. Sept. 29, 2000) (both cases finding that the court has discretion to dismiss a complaint *sua sponte,* pursuant to Fed.R.Civ.P. 12(b)(6), where plaintiff was given notice and an opportunity to be heard). The pleadings are woefully inadequate. The complaint lumps together all of the defendants in each claim without providing any factual allegations to distinguish their conduct, and accordingly dismissal of the complaint in its entirety is warranted.

**All Citations**

Not Reported in F.Supp.2d, 2004 WL 2813121

Footnotes

1   A joint amended answer was filed by three of the defendants, and no other defendant filed an answer. Two of the answering defendants were ePayment Solution AVV and Tony Brown. It is unclear whether the other defendant who answered is ePayment Solutions, Ltd. or ePayment Solutions, Inc. The document is entitled "AMENDED ANSWER OF DEFENDANT[ ] EPAYMENT SOLUTIONS, LTD ..." In the body of the amended answer, however, it refers to ePayment Solution, Inc. as the party who is filing the answer. Since plaintiff concedes that the company ePayment Solution, Ltd. has already been dissolved, logic would dictate that the answering party is ePayment Solutions, Inc.

2   Whether § 301 jurisdiction applies to individuals, as oppose to corporations, is unresolved under New York law. *Hoffritz,* 763 F.2d at 58; *Tyco Int'l Ltd. v. Walsh,* 2003 WL 553580, \*3 (S.D.N.Y. Feb. 27, 2003). "Even assuming it does apply with regard to natural persons, the plaintiff must still establish that the defendant conducted business in New York as an individual and not simply as a corporate officer." *See, Tyco,* 2003 WL 553580, at \*3 (citing *Laufer v. Ostrow,* 449 N.Y.S.2d 456, 460 (N.Y.1982)); *see also, Black v. USA Travel Auth., Inc.,* 2001 WL 761070, \*4 (S.D.N.Y. July 6, 2001). Plaintiff

**Appalachian Enterprises, Inc. v. ePayment Solutions, Ltd., Not Reported in F.Supp.2d...**

2004 WL 2813121

has not provided any factual allegations that Mr. Field or Ms. Martin were conducting their own, individual business in New York.

3    Plaintiff alleges that four corporate defendants and two defendant websites are affiliated companies. The complaint fails to set forth specific factual allegations to demonstrate, if accepted as true, that the websites are companies. "A 'site' is an internet address which permits users to exchange digital information with a particular host ..." *Bensusan Restaurant Corp.,* 937 F.Supp. 295, 297 n. 1 (S.D.N.Y.1996), *aff'd,* 125 F.3d 25. Plaintiff is not suing any party who owns, operates or maintains the websites, and hence plaintiff fails to establish that the websites are entities that can be properly named as defendants. *See generally,* Fed.R.Civ.P. 17(b).

---

**End of Document**

© 2023 Thomson Reuters. No claim to original U.S. Government Works.

2017 WL 2544046
Only the Westlaw citation is currently available.
United States District Court, W.D. Texas, Austin Division.

BOB DAEMMRICH PHOTOGRAPHY, INC.

v.

MCGRAW–HILL GLOBAL
EDUCATION HOLDINGS, LLC, et al.

1:15–CV–1098–LY
|
Signed 06/12/2017

**Attorneys and Law Firms**

Amanda Leigh Bruss, Harmon Seidman Bruss & Kerr, LLC, Denver, CO, Christopher Seidman, Harmon & Seidman LLC, Grand Junction, CO, for Bob Daemmrich Photography, Inc.

Ashley Kissinger, Levine Sullivan Koch & Schulz, LLP, Denver, CO, Christopher Perry Beall, Fox Rothschild LLP, New York, NY, Brett L. Myers, Michael Beylkin, Pro Hac Vice, Fox Rothschild LLP, Denver, CO, for McGraw–Hill Global Education Holdings, LLC, et al.

**REPORT AND RECOMMENDATIONOF THE UNITED STATES MAGISTRATE JUDGE**

TO: THE HONORABLE LEE YEAKEL UNITED STATES DISTRICT JUDGE

ANDREW W. AUSTIN, UNITED STATES MAGISTRATE JUDGE

 **\*1** Before the Court are Defendants' Motion to Partially Dismiss First Amended Complaint (Dkt. No. 33); Plaintiff's Memorandum in Opposition to Motion to Partially Dismiss First Amended Complaint (Dkt. No. 36); and Defendants' Reply (Dkt. No. 38). The District Court referred the above motion to the undersigned Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(A), FED. R. CIV. P. 72, and Rule 1(c) of Appendix C of the Local Rules.

**I. GENERAL BACKGROUND**

Plaintiff Bob Daemmrich Photography, Inc. (Daemmrich) brings this suit against McGraw–Hill Global Education Holdings, LLC and McGraw–Hill School Education Holdings, LLC (McGraw–Hill) alleging copyright infringement. Daemmrich is a stock photography agency that licenses the work of Bob Daemmrich to McGraw–Hill both directly and through a number of third-party stock photography agencies. Daemmrich had sold the limited licenses to use copies of stock photographs it owned in certain publications. The licenses were limited by number of copies, distribution area, language, duration, and media type. Daemmrich claims that McGraw–Hill exceeded the licenses, infringing on the copyrights in the stock photographs in a number of ways, including: printing more copies than licensed, distributing outside the distribution area, publishing international editions, and publishing outside the time limits prescribed by the licenses.

On February 13, 2017, Daemmrich filed an Amended Complaint, attaching two new exhibits, Exhibits 6 and 7, which added a number of claims from documents produced by McGraw–Hill during discovery. Exhibit 6 comes from McGraw–Hill's 1Step Database; Exhibit 7 comes from its CREATE database. The CREATE database was produced shortly before Daemmrich's amended pleadings were due. Both database reports provide information from McGraw–Hill's own records on stock photographs used in its publications. McGraw–Hill moves to partially dismiss the First Amended Complaint. It does not challenge the first five exhibits, but only challenges the adequacy of the pleadings for Exhibits 6 and 7. These exhibits do not include the same information, which McGraw–Hill argues is required to satisfy the pleading standard in Rule 8(a).

The first five exhibits have columns, in spreadsheet form, containing: (1) a thumbnail of the image, (2) the stock ID number of the photograph, (3) the copyright registration number, (4) the invoice number for any licenses, (5) where the photograph was published, and (6) the licencing information. Though not every column is complete for each image in Exhibits 1–5, all include at least the image, stock ID number, and copyright registration information. In contrast, Exhibit 6 lists the (1) ISBN number of the publication in which the infringing photograph is found, (2) title of the publication, (3) stock ID number, (4) photograph credit included in the publication, and (5) any invoice information available. It does not include either a thumbnail version of the image itself or the copyright registration number. Exhibit 7 then provides the (1) book unique identification number (from McGraw–

Bob Daemmrich Photography, Inc. v. McGraw–Hill Global..., Not Reported in Fed....

2017 WL 2544046

Hill's records), (2) author, title, edition, and ISBN number of the publication in which the photograph is printed, (3) exact location in the publication, and (4) licensor listed in McGraw–Hill's records. It does not provide a thumbnail image, stock ID number, or copyright registration number.

**\*2** As Exhibits 6 and 7 do not include the same information that was included in the five previous exhibits, McGraw–Hill moves to dismiss the claims in each of these exhibits. Specifically, McGraw–Hill moves to dismiss 338 of the 528 claims in Exhibit 6 and all 212 claims in Exhibit 7.[1] Daemmrich contends that it has sufficiently pled copyright infringement for each photograph, and therefore the claims provided in these exhibits should not be dismissed.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a party to move to dismiss an action for failure to state a claim upon which relief can be granted. Fed. R. Civ. P.12(b)(6). In deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the [nonmovant]." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotation marks omitted), *cert. denied*, 552 U.S. 1182 (2008). The Supreme Court has explained that a complaint must contain sufficient factual matter "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the [nonmovant] pleads factual content that allows the court to draw the reasonable inference that the [movant] is liable for the misconduct alleged." *Id.* The court generally is not to look beyond the pleadings in deciding a motion to dismiss. *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999).

## III. ANALYSIS

McGraw–Hill contends that Daemmrich failed to sufficiently plead copyright infringement for the claims listed in Exhibits 6 and 7 to the Amended Complaint. To succeed on a copyright infringement claim, a plaintiff must prove that: (1) he owns a valid copyright in the applicable work, and (2) the defendant copied constituent elements of the plaintiff's work that are original. *Positive Black Talk Inc. v. Cash Money Records, Inc.*, 394 F.3d 357, 367 (5th Cir. 2004). Federal Rule of Civil

Procedure 8(a), requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." However, McGraw–Hill argues that courts have applied a heightened pleading standard for copyright infringement claims, which requires plaintiffs to allege: "(1) which specific original works are the subject of the claim, (2) that the plaintiff owns the copyright, (3) that the works have been registered in compliance with the copyright laws, and (4) by what acts and during what time the defendant has infringed the copyright." *Sefton v. Jew*, 201 F. Supp. 2d 730, 747 (W.D. Tex. 2001) (citing *Kelly v. L.L. Cool J.*, 145 F.R.D. 32, 36 (S.D.N.Y. 1992)). *But see Arista Records, LLC v. Greubel*, 453 F. Supp. 2d 961, 964 (N.D. Tex. 2006) ("To the extent Gruebel is suggesting that there is a heightened pleading requirement for copyright litigation, that position does not comport with the liberal pleading requirements found in the Federal Rules of Civil Procedure."). McGraw–Hill contends that Daemmrich has failed to meet this standard because the complaint does not identify the specific original works at issue or plead a valid registered copyright in the works. Daemmrich maintains that, even if the heightened pleading standard applies, it has sufficiently alleged copyright infringement for these exhibits. The Court agrees.

## A. Specific Original Works

**\*3** First, McGraw–Hill argues that Daemmrich has not identified the works that are the subject of its claim in Exhibits 6 and 7 with sufficient particularity. McGraw–Hill challenges the sufficiency of (1) Exhibit 6 on the basis that it failed to include the thumbnail images of each of the copyrighted works, and (2) Exhibit 7 *on* the basis that it failed to provide either the Stock ID number or thumbnail image of each photograph. This argument is misguided. Courts simply do not require the level of specificity that McGraw–Hill insists upon to state a claim for copyright infringement. Rather, the purpose of the complaint is to give fair notice to the defendant of the claims that it must defend against. *Arista Records*, 453 F. Supp. 2d at 965. When applying the heightened pleading standard, courts have found that "copies of a portion of the works at issue and copies of [the defendant's] website" gave sufficient notice. *Sefton*, 201 F. Supp. 2d at 747. Even when the plaintiff "failed to provide a comprehensive list or set of copies of all the photographs at issue," courts have refused to dismiss the claims. *Id.*; *Young–Wolff v. McGraw–Hill Cos.*, No. 13–CV–4372(KMW)(JCF), 2014 WL 349711, \*12 (S.D.N.Y. Jan. 31, 2014) (finding sufficient an exhibit "which lists for each photograph at issue an image number and description, the publication title in which the photograph appears (for most photographs), and the licensing agent").

WESTLAW © 2023 Thomson Reuters. No claim to original U.S. Government Works.

Case: 1:22-cv-05660 Document #: 27-1 Filed: 03/06/23 Page 22 of 131 PageID #:230

Bob Daemmrich Photography, Inc. v. McGraw-Hill Global..., Not Reported in Fed....

2017 WL 2544046

Thus, the level of specificity McGraw–Hill argues is required has never been applied by the courts.

In fact, most courts have required much less. For example, courts have found that a computer printout of recording files found on the defendant's computer identified with sufficient specificity the allegedly infringing works—even when not every copyrighted recording was identified by name. See *Arista Records*, 453 F. Supp. 2d at 965; *Warner Bros. Records, Inc. v. Payne*, No. W–06–CA–051, 2006 WL 2844415, at *2 (W.D. Tex July 17, 2006). The courts found that the printouts gave the defendants fair notice of the claims alleged. *Arista Records*, 453 F. Supp. 2d at 965; *Warner Bros. Records*, 2006 WL 2844415 at *2. Even an invoice that identified the copyrighted photographs by titles—such as "Charlotte Dodds imagery," "Sensual Embrace," or "images from year 2004_campaign 1 and 2007_campaign 1. 2 beauty images / imagery of Kat from Karin Models"—was found to be sufficiently clear. *Bill Diodato Photography LLC v. Avon Products, Inc.*, No. 12 Civ. 847(RWS), 2012 WL 3240428, at *7 (S.D.N.Y. Aug. 7, 2012). In essence, courts only require enough information to give the defendant fair notice of the claims against it. See, e.g., *Arista Records*, 453 F. Supp. 2d at 965.

Here, Exhibits 6 and 7 have "identif[ied] with some specificity the work[s] at issue." *Terraspan, LLC v. Rave, LLC*, No. 3:12–CV–0816–K, 2012 WL 6115721, at *7 (N.D. Tex. Dec. 10, 2012). First, Exhibit 6 includes for each claim the (1) photograph's Stock ID number, (2) title and ISBN number of the publication in which it was printed, (3) photograph credit, and (4) invoice number for any licenses. The Stock ID number together with the publication information is clearly sufficient to identify with specificity which work is the basis of each claim. Daemmrich's failure to include thumbnails of each image—which appears to be the main difference between the identification information provided in Exhibits 1–5 and that in Exhibit 6—does not make the claim imprecise enough to merit dismissal. *Young–Wolff*, 2014 W 349711, at *4. Similarly, Exhibit 7 contains sufficient information to give McGraw–Hill fair notice of the claim. Though in this exhibit the photographs are not identified by a Stock ID number, Daemmrich identifies each photograph by its exact location in McGraw–Hill's publications and by the provided photograph credit. The location and publication information clearly identifies the work at issue. In a nearly identical case from the Eastern District of Pennsylvania, the court found that either the stock ID number or the exact location of the image was sufficient to

identify the photograph. See *Eastcott v. McGraw–Hill Glob. Edu. Holdings, LLC*, No. 2:16–CV–904(GAM) (E.D. Pa. Apr. 13, 2017) (attached as Exhibit to Dkt. No. 41). This Court sees no reason to find otherwise.

Moreover, this information was provided directly from McGraw–Hill's records. It is inconsistent to say that the Exhibits fail to give McGraw–Hill fair notice when Daemmrich uses McGraw–Hill's own record system to identify an image. McGraw–Hill's argument that Daemmrich cannot base its new claims on documents provided from McGraw–Hill because its "own internal photograph identifications are inaccurate, incomplete, and do not necessarily correspond to an actual use of a **particular** photograph by a photographer or agency" is unpersuasive, to say the least. Dkt. No. 38 at 5 (emphasis in original). The sheer number of publications in which the stock photographs have been used makes Daemmrich's reliance on records provided by McGraw–Hill in discovery—at least at this early stage—reasonable. See *Energy Intelligence Group*, 101 F. Supp. 3d at 339 (finding that knowledge of which employee accessed the works was knowledge within the sole authority of the defendant and therefore would be impracticable to require the plaintiff to allege). Further, determinations of the validity of Daemmrich's claims is better addressed through continued discovery and a motion for summary judgment. The exhibits give fair notice to McGraw–Hill, and that is all that is required to survive a motion to dismiss.

**\*4** On the other hand, courts do require that the list solely identify the works at issue; complaints which identify a number of copyrighted works, but do not specify which works are the subject of the lawsuit have been held insufficient under this standard. See *Cole v. John Wiley & Sons, Inc.*, No. 11 Civ. 2090(DF), 2012 WL 3133520, at *12 (S.D.N.Y. Aug. 1, 2012) ("Plaintiff, however, neither alleges that Wiley infringed his copyright in every photograph listed, nor alleges that Wiley infringed his copyright in any specific photograph on the list."). Thus, "a plaintiff may fail to meet this requirement if the [c]omplaint 'bases an infringement claim on *overly-inclusive* lists of copyrighted works' that amount to 'vague and expansive allegations regarding which works are the subject of [p]laintiff's claims.'" *Energy Intelligence Group, Inc. v. Jefferies, LLC*, 101 F. Supp. 3d 332, 339 (S.D.N.Y. 2015) (emphasis added) (quoting *Cole*, 2012 WL 3133520, at * 12); see also *Plunket v. Doyle*, No. 99 Civ. 11006(KMW), 2001 WL 175252, at *4 (S.D.N.Y, Feb. 22, 2001) (finding the complaint insufficient when the plaintiff stated that the copyright claims were not limited to the works provided).

Case: 1:22-cv-05660 Document #: 27-1 Filed: 03/06/23 Page 23 of 131 PageID #:231

Bob Daemmrich Photography, Inc. v. McGraw–Hill Global..., Not Reported in Fed....

2017 WL 2544046

Again, Exhibits 6 and 7 clearly satisfy this standard. In the complaint, Daemmrich contends that McGraw-Hill infringed on *each* of the photographs listed in all seven exhibits; thus it is clear which claims are at issue. As such, Daemmrich has sufficiently identified the copyrighted works.

**B. Registered Copyright**

McGraw–Hill also complains that Daemmrich has failed to plead registration for the works in Exhibits 6 and 7. Here, McGraw-Hill argues first that because Exhibits 6 and 7 do not specifically identify the copyright registration number or certificate of registration for each work, Daemmrich has failed to plead ownership of a registered copyright. McGraw-Hill is correct that a prerequisite to bringing a copyright claim under *17 U.S.C. § 411(a)* is that the plaintiff must have a copyright registration or preregistration in the works. *Creations Unlimited, Inc. v. McCain*, 112 F.3d 814, 816 (5th Cir. 1997). However, the Court has found no case in which the plaintiff is required to include copyright registration numbers or copies of the registration certificates in the complaint in order to meet the pleading standard. *See, e.g.*, *Arista Records*, 453 F. Supp. 2d at 966; *Bill Diodato Photography LLC*, 2012 WL 3240428, at * 8; *Young–Wolff*, 2013 WL 349711, at *3. Nor does McGraw–Hill point to a single case to support its argument. *See* Dkt. No. 33.

McGraw–Hill further argues that the language used in the complaint is insufficient to plead ownership of registered copyrighted works for Exhibits 6 and 7. Daemmrich stated in its Amended Complaint that "Daemmrich is the owner of copyrights in the photographic images ('Photographs') depicted and described in Exhibits 1–7 hereto" and that "[a]s set forth in Exhibits 1–5, the Photographs have been registered with the United States Copyright Office or have pending copyright registrations." Dkt. No. 31 at 2. McGraw–Hill contends that the language only indicates that Exhibits 1–5 have been registered. However, the Amended Complaint specifically states that the "Photographs"—which in the previous paragraph was defined as all of the images described in Exhibits 1–7—have been registered. Thus, though registration information was solely included for the first five exhibits, Daemmrich has sufficiently alleged that the photographs from all seven exhibits have registered copyrights. *See Eastcott*, *supra*, No. 2:16–CV–904. This argument therefore fails.

McGraw–Hill lastly argues that because Daemmrich uses McGraw-Hill's identification information for Exhibits 6 and 7 rather than information from its own records, it cannot possibly know whether it has a registered copyright in the photographs. Again, the Court finds this argument unpersuasive. Accepting all allegations as true, as is required by *Rule 12(b)(6)*, Daemmrich has provided a list of stock photographs that it claims are owned and registered by Daemmrich. This is all that is required at this stage. *Arista Records*, 453 F. Supp. 2d at 966 (allowing claims to move forward that pled registered copyrights even when the printouts did not identify the recordings by title); *Bill Diodato Photography*, 2012 WL 3240428, at * 8. This argument also fails.

**IV. RECOMMENDATION**

**\*5** Based upon the foregoing, the undersigned Magistrate Judge **RECOMMENDS** that the District Court **GRANT IN PART** and **DENY IN PART** Defendants' Motion to Partially Dismiss First Amended Complaint (Dkt. No. 33). Specifically, the Court **RECOMMENDS** that the District Court **GRANT** the motion and **DISMISS WITHOUT PREJUDICE** the claims listed in Exhibit 6, rows: 10, 14, 70, 75, 76, 77, 99, 103, 147, 176, 184, 186, 187, 210, 226, 233, 234, 235, 236, 237, 244, 246, 293, 296, 297, 304, 311, 314, 315, 316, 317, 320, 344, 346, 348, 353, 380, 381, 382, 383, 408, 416, 417, 419, and 465 and **DENY** the motion for all other claims.

**V. WARNINGS**

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from *de novo* review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(c); *Thomas v. Arn*, 474 U.S. 140, 150–53, 106 S. Ct. 466, 472–74 (1985); *Douglass v.*

Bob Daemmrich Photography, Inc. v. McGraw–Hill Global..., Not Reported in Fed....

2017 WL 2544046

*United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

**All Citations**

Not Reported in Fed. Supp., 2017 WL 2544046

Footnotes

1    McGraw states it was able to discern from Exhibits 1–5 the copyright registration information for the remaining 190 claims, because these photographs are the same as were provided in the previous exhibits. Daemmrich merely alleged additional instances of infringement for the photographs. Further, Daemmrich agrees that some of the claims in Exhibit 6 should be dismissed without prejudice as it could not locate the registration information for these claims. As such, the Court **RECOMMENDS** that the District Court **DISMISS WITHOUT PREJUDICE** the claims in Exhibit 6, rows: 10, 14, 70, 75, 76, 77, 99, 103, 147, 176, 184, 186, 187, 210, 226, 233, 234, 235, 236, 237, 244, 246, 293, 296, 297, 304, 311, 314, 315, 316, 317, 320, 344, 346, 348, 353, 380, 381, 382, 383, 408, 416, 417, 419, and 465.

---

**End of Document**

© 2023 Thomson Reuters. No claim to original U.S. Government Works.

KeyCite Yellow Flag - Negative Treatment

Distinguished by Energy Intelligence Group, Inc. v. Jefferies, LLC, S.D.N.Y., March 31, 2015

2012 WL 3133520
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Brandon COLE, Plaintiff,

v.

JOHN WILEY & SONS, INC.;

R.R. Donnelley & Sons Company;

and John Does 1–10, Defendants.

No. 11 Civ.2090(DF).
|
Aug. 1, 2012.

## CORRECTED MEMORANDUM AND OPINION

DEBRA FREEMAN, United States Magistrate Judge.

**\*1** In this copyright dispute, before me on consent pursuant to 28 U.S.C. § 636(c), plaintiff Brandon Cole ("Plaintiff") has filed an Amended Complaint against defendants John Wiley & Sons, Inc. ("Wiley") and Donnelley & Sons Company ("Donnelley") (collectively, "Defendants"), and John Does 1–10 (the "John Doe Defendants"), asserting claims for copyright infringement, fraud, and fraudulent inducement. (*See* First Amended Complaint, dated Sept. 29, 2011 ("Amended Complaint" or "Am. Compl.") (Dkt.31).[1]) Currently before the Court is a motion brought by Defendants pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss all claims asserted against them. (Dkt.28.) For the reasons discussed below, the motion (Dkt.28) is granted, and this action is dismissed in its entirety.

## BACKGROUND

The facts set forth below, which are accepted as true for purposes of this motion, are taken from the Amended Complaint and the exhibits attached thereto, and from the contents of a license agreement between the parties (Invoice Memo No. 2331, dated Dec. 28, 2009 (the "License

Agreement"), submitted by Defendants as Ex.1 to the Declaration of Ashima Aggarwal, Esq., dated Oct. 17, 2011 (Dkt.30)). While the License Agreement was not attached to the Amended Complaint, but rather was supplied by Defendants in connection with their motion, Plaintiff's pleading refers to and relies on the agreement's terms and effect (*see, e.g,* Am. Compl. at ¶¶ 50–58 (referring repeatedly to any "subsequent agreement" between the parties, which the Court understands to mean the License Agreement)), and the document is therefore appropriately deemed incorporated by reference in Plaintiff's pleading.[2]

### A. *Factual Background*

Plaintiff is a professional photographer and a resident of the State of Washington. (Am. Compl. at ¶¶ 1, 10.) Defendant Wiley, a New York corporation with its principal place of business in New Jersey (*id.* at ¶ 2), is a publishing company in the business of creating, publishing, marketing, and selling educational textbooks, instructional technology materials, reference works, travel books, and other similar materials and publications (*id.* at ¶¶ 11, 12). Defendant Donnelley, a printing company with various locations throughout the United States (*id.* at ¶ 4), was allegedly engaged by Wiley to print and produce certain of the publications at issue in this case (*see id.* at ¶ 14). Defendants John Does 1–10 (the "John Doe Defendants") are unidentified printing companies, which Wiley allegedly also engaged to print and produce publications referred to in the Amended Complaint. (*Id.* at ¶ 5.)

### 1. *Defendants' Alleged Infringement of Plaintiff's Copyrights in Five Specific Photographs Obtained by Wiley from Plaintiff*

Plaintiff claims to be the registered owner of copyrights in the following photographs (the "Five Photographs"):

1. "Hammerhead Shark" (referred to in the Amended Complaint as "nf92," and "registered with the U.S. Copyright Office as part of Copyright Registration VAu 572–709") (*id.* at ¶ 82);

**\*2** 2. "Manta Ray" (referred to in the Amended Complaint as "kg2066," and "registered with the U.S. Copyright Office as part of Copyright Registration VAu 465–978") (*id.* at ¶ 83);

3. "Moray Eel" (referred to in the Amended Complaint as "iy904," and "registered with the U.S. Copyright Office

Case: 1:22-cv-05660 Document #: 27-1 Filed: 03/06/23 Page 26 of 131 PageID #:234
Cole v. John Wiley & Sons, Inc., Not Reported in F.Supp.2d (2012)

2012 WL 3133520

as part of Copyright Registration VAu 465–978") (*id.* at
¶ 84);

4. "Common Dolphin" (referred to in the Amended
Complaint as "qc71193," and "registered with the U.S.
Copyright Office as part of Copyright Registration VAu
972–919") (*id.* at ¶ 85); and

5. "Humpback Whale" (referred to in the Amended
Complaint as "mv131," and "registered with the U.S.
Copyright Office as part of Copyright Registration VAu
510–870") (*id.* at ¶ 86).

Plaintiff claims that Wiley, at various times, infringed
Plaintiff's copyrights in the Five Photographs, sometimes
reproducing them without holding any valid license (*id.* at
¶ 32), sometimes reproducing them in types of publications
that were not provided for under the terms of license
agreements (*id.* at ¶ 43), and sometimes exceeding the print-
run limitations of license agreements (*id.* at ¶ 74).[3] Plaintiff's
specific allegations as to Wiley's infringement of the Five
Photographs are as follows:

### a. *Delivery Memo No. 3057*
Plaintiff alleges that, on or around May 27, 2009, Cherie
Cincilla ("Cincilla"), a Wiley photo editor, contacted Plaintiff
to determine whether Plaintiff had any photographs that might
fill Wiley's needs for a Costa Rica guide book that Wiley
was planning to publish. (*Id.* at ¶ 18.) Plaintiff claims that,
on May 29, 2009, after Cincilla informed Plaintiff that Wiley
was considering publishing the Five Photographs (and one
other photograph) in the Costa Rica guide book and also
stated to Plaintiff that Wiley's intended print run for this book
was "20k," Plaintiff sent high-resolution digital versions of
these six photographs to Wiley, so that Wiley could select
photographs to use in the upcoming guide book. (*Id.* at ¶¶ 22,
23.) Plaintiff sent these photographs to Wiley with a delivery
memorandum (Delivery Memo No. 3057 (the "Delivery
Memo")), which, *inter alia,* listed each photograph's code and
described the six photographs as "6 Marine Life for Costa
Rica Day by Day Country Guide, 20k print run." (*See id.* Ex.
1.) Plaintiff contends that the Delivery Memo did not actually
grant Wiley permission to reproduce any of the photographs
in any publication (*id.* at ¶¶ 25, 26), but rather stated that
Plaintiff would grant such rights only upon his receipt of
payment, in full, of an amount to be negotiated and invoiced
(*id.* at ¶¶ 29, 31).

### b. *The Costa Rica 2010 Publications*
Plaintiff alleges that, at some point after he issued the
Delivery Memo, Wiley proceeded to publish the Five
Photographs in its publication entitled *Frommer's Costa Rica
2010* (the "Costa Rica 2010 Book"), without having obtained
the requisite license, without having paid the requisite license
fees, and without having obtained Plaintiff's permission. (*Id.*
at ¶¶ 32–39.) Plaintiff further alleges that, although Wiley
eventually requested a license to use the Five Photographs
in the Costa Rica 2010 Book, Wiley did so only after it
had already published these photographs in distributed copies
of this book. (*Id.* at ¶¶ 45–47.) Plaintiff contends that, by
publishing the Five Photographs in the Costa Rica 2010
Book without first having obtained a license to do so, Wiley
infringed Plaintiff's copyrights in the Five Photographs. (*Id.*
at ¶ 43.)

### c. *The License Agreement*
**\*3** Plaintiff implicitly acknowledges that he eventually
did enter into an agreement with Wiley to license the
Five Photographs for use in the Costa Rica 2010 Book
(*i.e.,* the "License Agreement" referred to *supra,* at 2), but
contends that this was *after* Wiley had already published
the photographs in that book. (*See* Am. Compl. at ¶¶ 45–
58.) Plaintiff takes the position that this agreement was not
retroactive and that, to the extent it was effective, it granted
Wiley only the limited, prospective right to publish the Five
Photographs in a "20k" print run of the Costa Rica 2010 Book
that was to be distributed solely in North America. (*Id.* at ¶¶
53, 55.)

In this regard, the License Agreement states the following, in
relevant part

> **TERMS OF LICENSE**—Upon receipt of payment in
> full of $1100 USD, Cole Licenses FROMMER'S/WILEY
> AND SONS one time, non-exclusive editorial print
> reproduction rights to publish five (5) photos listed above
> once each in one printed version/edition only of a book
> titled "Frommer's Costa Rica 2010, by Eliot Greenspan" ....
> Photos to be reproduced at sizes and positions as detailed
> above. Print run: 20k copies. Distribution: North America
> only. Languages: English only. All other rights reserved.
> Photo credit "Photo © www.brandoncole.com" to be
> included. Advertising, promotion, internet, web, PDF, CD–
> Rom, e-book, archiving, and any other electronic or printed
> use are prohibited. No republication or reprint rights
> granted. No use by third parties. Additional use of any kind

Cole v. John Wiley & Sons, Inc., Not Reported in F.Supp.2d (2012)

2012 WL 3133520

whatsoever, in any media or by any means of distribution, requires an additional licensing fee—Please call us. (License Agreement.) Plaintiff does not suggest that Wiley failed to pay the $1,100 specified under this agreement, but does allege that Wiley then exceeded any rights that may have been granted to it under the agreement, by including the Five Photographs in more than 20,000 copies of the Costa Rica 2010 Book (Am. Compl. at ¶ 54), by publishing them in copies of the Costa Rica 2010 Book that were distributed outside of North America (*id.* at ¶ 56), and by publishing them in international, internet, web, PDF, CD-Rom, e-book, archiving, and other electronic versions of the Costa Rica 2010 Book (*id.* at ¶¶ 56, 58).

The License Agreement, which was apparently prepared by Plaintiff and which was printed on "Brandon Cole marine photography" letterhead, also contains an arbitration clause, which provides

> Any dispute in connection with this stock picture invoice including its validity, interpretation, performance, or breach shall be arbitrated in Spokane, Washington pursuant to the rules of the American Arbitration Association and the laws of Washington. Judgment on the Arbitration award may be entered on the highest Federal or State Court having jurisdiction. Any dispute involving $1500.00 or less may be submitted, without arbitration, to any Court having jurisdiction thereof. Client shall pay all arbitration and Court costs, reasonable Attorney's fees, plus legal interest on any award or judgment.

**\*4** (License Agreement at ¶ 9.) As discussed below, the parties dispute the scope of this clause and whether Wiley may rely upon it in this case.

### d. *The Costa Rica 2011 Publications*

Plaintiff claims that, on or about November 9, 2010, Wiley reproduced the Five Photographs in a publication entitled *Frommer's Costa Rica 2011* (the "Costa Rica 2011 Book") (Am. Compl. at ¶¶ 59–64), and that, on other dates in 2010, Wiley further published these photographs in international, "Kindle eBook," "electronic-mobile ('EMOBI'), electronic-PDF ('EPDF')," and "electronic-publication ('EPUB')" editions of the Costa Rica 2011 Book. According to Plaintiff, Wiley had neither a license to publish the Five Photographs in these 2011 publications, nor Plaintiff's permission to do so. (*Id.* at ¶¶ 68–72.)

### e. *Donnelley and John Does 1–10*

Plaintiff claims that Wiley engaged both Donnelley and the John Doe Defendants to print and produce the aforementioned infringing publications (*id.* at ¶¶ 14, 16, 126), and that those defendants thereby also infringed Plaintiff's copyright in the Five Photographs.

### 2. *Wiley's Alleged Fraud*

Plaintiff alleges that, both before and during Wiley's negotiations with him to obtain a license to publish the Five Photographs in the Costa Rica 2010 Book, Wiley failed to disclose that it had already reproduced these photographs in distributed copies of that book. (*Id.* at ¶¶ 45–47.) Plaintiff further alleges that, during these negotiations, Wiley was aware that it planned to commit all of the infringing acts described in the Amended Complaint, but intentionally concealed its plans. (*Id.* at ¶¶ 131–45, 154–67.) According to Plaintiff, Wiley concealed this information in order to obtain a better licensing price for publishing the Five Photographs. (*Id.* at ¶ 136.) Plaintiff contends that, if Wiley had timely disclosed this information to him, he would not have entered into any "subsequent" license agreement with Wiley with respect to the Five Photographs (*id.* at ¶ 50)—in other words, Plaintiff contends that, had he known of Wiley's past conduct and future intentions, he would not have entered into the License Agreement.

Moreover, Plaintiff alleges that, on or about February 25, 2011, Wiley's employee Ensley Eikenberg ("Eikenberg") admitted to Plaintiff that Wiley had infringed Plaintiff's copyright in the Five Photographs (*id.* at ¶¶ 78–79), but also provided Plaintiff with "misleading and false information" regarding Wiley's publication of the Five Photographs in the Costa Rica books (*id.* at ¶ 80). These allegations, along with Plaintiff's allegation that he "suffered damages as a result of Wiley's fraud" (*id.* at ¶ 146), form the principal basis for his fraud claims against Wiley.

### 3. *Wiley's Alleged Infringement of Plaintiff's Copyrights in Photographs Obtained by Wiley from Stock Photography Agencies*

**\*5** According to Plaintiff, in addition to licensing his photographs directly to publishing companies such as Wiley, he also licenses his photographs to such companies indirectly, through stock-photography licensing agencies. (*Id.* at ¶¶ 89, 94, 98.) Plaintiff alleges that he has registered copyrights in the photographs he supplies to such agencies, and that he is the sole owner of those copyrights. (*Id.* at 102–03.) He also alleges that he "is the direct and intended beneficiary

of all license agreements between Wiley and his licensing agents that pertain to the use of all such photographs" (*id.* at ¶ 104), and that he "receives benefits under the license agreements between Wiley and his licensing agents that pertain to the use of [his] photographs, including the payment of license fees and the provisions regarding the terms of use of his images" (*id.* at ¶ 103). Plaintiff claims that Wiley infringed his copyrights in photographs that he provided to three stock-photography licensing agencies, in particular: Visuals Unlimited, Getty Images, Inc. ("Getty"), and Corbis Corporation ("Corbis") (collectively, the "Stock Photography Agencies").

These claims appear to be based on assumptions made by Plaintiff upon learning that others (including stock photography agencies) have also asserted claims against Wiley, in other litigation. Plaintiff suggests in his Amended Complaint that the existence of this other litigation and "[e]vidence submitted to the courts in those [other] actions demonstrates that Defendant Wiley has engaged in a systematic pattern of fraud and copyright infringement." (*Id.* at ¶¶ 108–09.) Plaintiff also alleges that, in one of those other cases, "Wiley admitted that it used multiple photographs" of a particular photographer "in numerous publications without permission or a license." (*Id.* at ¶ 110; *see also id.* at ¶¶ 11–12.)

To the extent Plaintiff accuses Wiley of infringing his copyrights in photographs he had supplied to Visuals Unlimited, Plaintiff appears to base his claim on the fact that, in another action against Wiley, brought by another plaintiff in the District of Arizona, Wiley admitted that it had exceeded the scope of its licenses to use certain photographs that it had obtained from Visuals Unlimited. (*Id.* at ¶ 87.) Plaintiff alleges that Visuals Unlimited licensed many of his photographs to textbook publishers, including Wiley. (*Id.* at ¶ 90.) From this, Plaintiff appears to assume that Wiley must not only have obtained access to some of his photographs from Visuals Unlimited, but must have also exceeded any uses permitted by any acquired licenses, by publishing his photographs in some of the 40 publications that were identified in that Arizona case as containing unlicensed photographs. (*Id.* at ¶ 91.) As discussed further below, however, Plaintiff does not identify any specific photographs of his that were published by Wiley, without permission, in any specific publications referenced in the Arizona case.

**\*6** Plaintiff similarly claims that both Getty and Corbis licensed many of his photographs to textbook publishers,

including Wiley. (*Id.* at ¶¶ 95, 99.) According to Plaintiff, "a reasonable opportunity for further investigation and discovery will reveal evidence that Defendant Wiley made unauthorized uses of his images" that it obtained from each of these two stock photography agencies. (*Id.* at ¶¶ 96–100.)

**B.** *Procedural History*
On March 25, 2011, Plaintiff filed a Complaint against Wiley, seeking injunctive relief and monetary damages related to Wiley's alleged infringement of Plaintiff's copyrights in the Five Photographs. (Complaint, dated Mar. 25, 2011 (Dkt.1).) Plaintiff filed an Amended Complaint on September 29, 2011, adding Donnelley and John Does 1–10 as defendants to Plaintiff's original infringement claims, adding fraud claims against Wiley, and also adding copyright infringement claims against Wiley for alleged infringement of Plaintiff's copyrights in photographs that Plaintiff supplied to the Stock Photography Agencies. (*See* Am. Compl.) In his Amended Complaint, Plaintiff seeks, *inter alia,* (1) a preliminary and permanent injunction against all defendants precluding them from further infringing Plaintiff's copyrights in the Five Photographs and the photographs he supplied to the Stock Photography Agencies; (2) all allowable damages under the Copyright Act; (3) unspecified monetary damages for Wiley's allegedly fraudulent procurement of a license to publish the Five Photographs and fraudulent conduct that occurred after Plaintiff granted Wiley that license; and (4) the full costs that Plaintiff has incurred in pursuing and litigating this matter. (*Id.* at 23, ¶ 1.)

On October 17, 2011, after the parties had already commenced and engaged in a fair amount of discovery, Defendants filed their motion to dismiss the Amended Complaint. In their motion, Defendants argue that Plaintiff's infringement claims regarding the Five Photographs are subject to arbitration under the License Agreement, that Plaintiff's copyright claims regarding the photographs he supplied to the Stock Photography Agencies are overly vague and insufficient to satisfy the pleading requirements of Rule 8(a) of the Federal Rules of Civil Procedure, and that Plaintiff's fraud claims should be dismissed both because they fail to state with particularity the circumstances constituting Wiley's allegedly fraudulent conduct and thus fail to meet the pleading requirements of Rule 9(b), and because Plaintiff's fraud allegations fail to state a claim under Rule 12(b)(6). (*See* Memorandum of Law in Support of Motion to Dismiss, dated Oct. 17, 2011 ("Def.Mem.") (Dkt.29), at 4–5.) On October 31, 2011, Plaintiff filed an opposition to Defendants' motion. (*See* Plaintiff's Memorandum of Law

2012 WL 3133520

in Opposition to Defendants' Motion to Dismiss, dated Oct. 31, 2011 ("Pl.Mem.") (Dkt.37).) Defendants filed a reply memorandum on November 10, 2011. (*See* Reply Memorandum in Support of Motion to Dismiss, dated Nov. 10, 2011 ("Def.Reply") (Dkt.41).)

## DISCUSSION

### I. *APPLICABLE LEGAL STANDARDS*

#### A. *Rule 8(a)*

**\*7** Rule 8(a) of the Federal Rules of Civil Procedure requires that a pleading consist of "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). A pleading "does not have to set out in detail the facts in which the claim for relief is based, but must give the court and the defendant fair notice of what [the] plaintiff's claim is and the grounds upon which it rests." *Owens v. Suter,* 02 Civ. 8198 (SHS), 2003 U.S. Dist. LEXIS 3388, at *2–3, 2003 WL 942554 (S.D.N.Y. Mar. 7, 2003) (internal citations and quotations omitted). The statement should be plain because the principal function of pleadings under the Federal Rules is to give the adverse party fair notice of the claim asserted so as to enable him to answer and prepare for trial." *Salahuddin v. Cuomo,* 861 F.2d 40, 42 (2d Cir.1988). Failure to comply with this requirement may warrant dismissal of the complaint in its entirety. *Id.* Generally, however, when a court dismisses a complaint for failure to comply with Rule 8, the dismissal should be without prejudice to replead. *See id.* at 42–43 ("When a court chooses to dismiss [for failure to comply with Rule 8], it normally grants leave to file an amended pleading that conforms to the requirements of Rule 8.").

#### B. *Rule 9(b)*

Pursuant to Rule 9(b) of the Federal Rules of Civil Procedure, a plaintiff who alleges fraud "must state with particularity the circumstances constituting fraud or mistake." Fed.R.Civ.P. 9(b). "[I]n order to comply with Rule 9(b), 'the complaint must (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.' " *Lerner v. Fleet Bank, N.A.,* 459 F.3d 273, 290 (2d Cir.2006) (quoting *Mills v. Polar Molecular Corp.,* 12 F.3d 1170, 1175 (2d Cir.1993)).

#### C. *Rule 12(b)(6)*

A case is subject to dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure where the complaint is not legally sufficient to state a claim upon which relief can be granted. *See Kopec v. Coughlin,* 922 F.2d 152, 155 (2d Cir.1991). In deciding a Rule 12(b)(6) motion, the Court "accept[s] as true all factual statements alleged in the complaint and draw[s] all reasonable inferences in favor of the non-moving party." *McCarthy v. Dun & Bradstreet Corp.,* 482 F.3d 184, 191 (2d Cir.2007) (citation omitted); *accord Jaghory v. New York State Dep't of Ed.,* 131 F.3d 326, 329 (2d Cir.1997). A court should grant dismissal where, after considering plaintiffs' allegations in this generous light, "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Walker v. City of New York,* 974 F.2d 293, 298 (2d Cir.1992). At the same time, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to defeat a motion to dismiss." *Achtman v. Kirby, McInerney & Squire, LLP,* 464 F.3d 328, 337 (2d Cir.2006) (citation omitted). Rather, in order to withstand a motion to dismiss, a complaint must plead "enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007); *see also Iqbal v. Hasty,* 490 F.3d 143, 157–58 (2d Cir.2007) (A pleader is obliged "to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible.").

**\*8** On a motion to dismiss a complaint, the Court considers: (1) the factual allegations in the complaint; (2) documents attached to the complaint as exhibits or incorporated therein by reference; (3) matters of which judicial notice may be taken; and (4) documents that are "integral" to the complaint. *Calcutti v. SBU, Inc.,* 273 F.Supp.2d 488, 498 (S.D.N.Y.2003) (citing *Brass v. American Films Technologies,* 987 F.2d 142, 150 (2d Cir.1993); *Chambers v. Time Warner, Inc.,* 282 F.3d 147, 153 (2d Cir.2002)); *see also supra* at n. 2.

#### D. *The Federal Arbitration Act*

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1–16, which governs the enforceability of arbitration clauses, enunciates "a strong federal policy favoring arbitration as an alternative means of dispute resolution." *JLM Indus., Inc. v. Stolt—Nielsen SA,* 387 F.3d 163, 171 (2d Cir.2004). Under the FAA, federal courts must "uphold and enforce 'privately made agreements to arbitrate' as they would any other contract." *Cole v. Pearson Educ., Inc.,* No. 10 Civ. 7523(JFK)(RLE), 2011 WL 4483760, at *1 (S.D.N.Y. Sept. 28, 2011) (quoting *Dean Witter Reynolds, Inc. v. Byrd,* 470

Case: 1:22-cv-05660 Document #: 27-1 Filed: 03/06/23 Page 30 of 131 PageID #:238
Cole v. John Wiley & Sons, Inc., Not Reported in F.Supp.2d (2012)
2012 WL 3133520

U.S. 213, 219, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985)). Once a court determines that the parties before it have entered into an agreement to arbitrate certain presented claims, the court must either (1) "stay [the] action that is subject to arbitration until the arbitration is complete," *Borrero v. Ruppert Housing Co., Inc.,* No. 08 CV 5869(HB) 2009 WL 1748060, at *2 (S.D.N.Y. June 19, 2009), or " 'dismiss—rather than stay—an action when *all* of the issues in it must be arbitrated," *Id.* (quoting *Milgrim v. Backroads, Inc.,* 142 F.Supp.2d 471, 476 (S.D.N.Y.2001)).[4]

## II. PLAINTIFF'S COPYRIGHT INFRINGEMENT CLAIMS AGAINST WILEY AND DONNELLEY

### A. Claims Against Wiley, Relating to the Five Photographs Published in Wiley's Costa Rica 2010 and 2011 Books

Wiley moves to dismiss all of Plaintiff's infringement claims against it that relate to the Five Photographs, on the ground that those claims are subject to arbitration under the License Agreement. Plaintiff responds by arguing (a) that Wiley has waived the right to arbitrate Plaintiff's infringement claims, and (b) that, in any event, such claims fall outside the scope of the arbitration clause. For the reasons discussed below, Plaintiff's arguments cannot stand, and these claims are appropriately dismissed, without prejudice, in favor of arbitration.

### 1. Wiley's Alleged Waiver of the Right To Arbitrate
Plaintiff primarily argues that, by litigating this case for a period of time, Wiley has waived its right to arbitrate Plaintiff's copyright infringement claims. (Pl. Mem., at 19.) There is, however, "a strong presumption in favor of arbitration and that waiver of the right to arbitration is not to be lightly inferred." *Coca–Cola Bottling Co. v. Soft Drink & Brewery Workers Union Local 812, Int'l Bhd. of Teamsters,* 242 F.3d 52, 57 (2d Cir.N.Y.2001) (internal quotation marks and citation omitted). Accordingly, "any doubts concerning whether there has been a waiver are resolved in favor of arbitration." *Leadertex, Inc. v. Morganton Dyeing & Finishing Corp.,* 67 F.3d 20, 25 (2d Cir.1995) (citing *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24–25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983)). District courts determine waiver by examining the facts of the particular case and do not necessarily follow bright-line rules. *Id.* (citing *Cotton,* 4 F.3d at 179). "Generally, waiver is more likely to be found the longer the litigation goes on, the more a party avails itself of the opportunity to litigate, and the more that party's

litigation results in prejudice to the opposing party." *Thyssen, Inc. v. Calypso Shipping Corp., S.A.,* 310 F.3d 102, 105 (2d Cir.2002) (citing *Leadertex,* 67 F.3d at 25).

*9 On the facts presented here, the Court concludes that Wiley has not waived its right to arbitrate Plaintiff's claims for copyright infringement of the Five Photographs. Although the parties in this case have engaged in discovery, participated in telephone conferences with the Court, and argued an issue related to a protective order, these activities, neither individually nor collectively, equate to the type of protracted litigation that should result in a waiver, especially in the absence of a showing of meaningful prejudice to Plaintiff. *See Com–Tech Assocs. v. Computer Assocs. Int'l, Inc.,* 938 F.2d 1574, 1576–77 (2d Cir.1991) (holding that defendants had waived arbitration claim by engaging in protracted litigation that, *inter alia,* forced plaintiffs to litigate arbitrable issues); *see also ITT World Communications, Inc. v. Communications Workers of America,* 422 F.2d 77, 83 (2d Cir.1970) (stating that, in this circuit, a party who merely files an answer or waits several months to seek arbitration does not waive its right to arbitrate "in the absence of prejudice to the opposing party"); *Thyssen,* 310 F.3d at 105 (stating that waiver is found only in cases where the plaintiff has demonstrated substantive prejudice).

Plaintiff has not made any showing as to how the proceedings that have been conducted in this case thus far have caused it prejudice. The discovery obtained by the parties could likely be usable in an arbitration proceeding, and, although the litigation has moved forward for some time, the Court has not had occasion to consider the merits of any claims that could be subject to arbitration. Moreover, the Court notes that Plaintiff has presumably been well aware, from at least the date that he filed his Amended Complaint, that there was a strong likelihood that it would be dismissed in favor of arbitration, given that he had filed two extremely similar cases in this Court, involving identically-worded arbitration clauses and similar facts, and that both cases were dismissed, in whole or in part, so that Plaintiff's claims could be arbitrated. *See Cole v. Pearson Educ., Inc.,* No. 10 Civ. 7523(JFK) (RLE), 2011 WL 4483760 (S.D.N.Y. Sept. 28, 2011); *Cole v. Houghton Mifflin Harcourt Publishing Company,* No. 10 Civ. 9502(DLC) (unpublished Order, dated Mar. 17, 2011).[5] In fact, Plaintiff filed his Amended Complaint in this case one day after the Court issued its decision in the *Pearson* case, rejecting arguments raised by Plaintiff that were nearly identical to the arguments Plaintiff raises here.

Cole v. John Wiley & Sons, Inc., Not Reported in F.Supp.2d (2012)

2012 WL 3133520

Under these circumstances, Plaintiff cannot be found to have rebutted the " 'strong presumption in favor of arbitration' " of his infringement claims against Wiley. *Coca–Cola Bottling Co.,* 242 F.3d at 57 (quoting *Cotton v. Slone,* 4 F.3d 176, 179 (2d Cir.1993)).

**2. *Scope of the Arbitration Clause***

Other than arguing that Wiley has waived its right to arbitrate, Plaintiff offers no other arguments directed to the validity or enforceability of the parties' arbitration agreement.[6] Instead, as a fall-back argument as to why his claims should remain in this Court, Plaintiff argues that his infringement claims relating to the Five Photographs fall outside the scope of the arbitration clause. (Pl. Mem., at 22–25.) "The determination of whether any issues in this action are subject to the arbitration clause depends on the parties' intent when forming the license agreement, as reflected in the language of the [arbitration clause]." *Pearson,* 2011 WL 4483760, at *6 (citing *Desktop Images, Inc. v. Ames,* 929 F.Supp. 1339, 1345 (D.Colo.1996)). In this case, the arbitration clause at issue is broad, as it states that "[a]ny dispute in connection with [the License Agreement]" is subject to arbitration, including disputes regarding the agreement's "validity, interpretation, performance, or breach." (License Agreement at ¶ 9.) Where an arbitration clause in a copyright license agreement requires the parties to arbitrate "any" claim or dispute relating to or arising "in connection with" the parties' agreement, such a clause should be interpreted to require arbitration of copyright claims relating to the licensed works. *See Pearson,* 2011 WL 4483760, at *6 (citing *Kamakazi Music Corp. v. Robbins Music Corp.,* 684 F.2d 228, 229 (2d Cir.1982)); *see also North River Ins. Co. v. Allstate Ins. Co.,* 866 F.Supp. 123, 127 (S.D.N.Y.1994) (stating that "the use of the term *'any'* [in an arbitration clause] makes it clear that the parties intended the clause to be broad" (emphasis added)).

**\*10** Here, Plaintiff makes three arguments as to why his claims should not be considered within the scope of the arbitration clause. First, advancing the same type of analysis that the Court found unpersuasive in *Pearson,* Plaintiff argues that his copyright infringement claims regarding Wiley's reproduction of the Five Photographs in the Costa Rica 2011 publications are not subject to arbitration because, although those photographs were the subject of the License Agreement (which referenced the Costa Rica 2010 publications), there was no further agreement between the parties that specifically referenced the 2011 publications. (Pl. Mem., at 23–24.) In *Pearson,* the court reasoned that, because, at some point in time, the defendant had "licensed all of the works claimed by the Plaintiff to have been infringed," it was fair to conclude that "any dispute about the publication of the licensed photographs [was] a 'dispute in connection' with the license agreements," *Pearson,* 2011 WL 4483760, at *6, and thus within the scope of the arbitration clause contained within those agreements, *id.* On that basis, the Court dismissed, in favor of arbitration, all of Plaintiff's copyright claims regarding the licensed works. *See id* . at *6–7. Similarly, in this case, Plaintiff and Wiley entered into the License Agreement, which granted Wiley a limited license to publish the Five Photographs. (*See* License Agreement.) Plaintiff claims that, by proceeding to publish those photographs in publications outside the limitations set forth in the License Agreement (including in the Costa Rica 2011 publications), Wiley infringed his copyrights. Any such infringement claim is appropriately characterized as a "dispute in connection with" the License Agreement, which states that "[a]dditional use of any kind whatsoever" of the Five Photographs would require "an additional licensing fee." (*Id.; see also Pearson,* 2011 WL 4483760, at *6 .) Accordingly, such claims fall within the scope of the parties' arbitration agreement.

For his second argument, which is also similar to an argument he raised in *Pearson,* Plaintiff contends that his copyright infringement claims regarding Wiley's unlicensed publication of the Five Photographs in certain Costa Rica 2010 publications should not be seen as arising out of, or in connection with, the License Agreement, but, rather, should be seen as arising out of Wiley's alleged breach of the Delivery Memo, which preceded the License Agreement and contained no arbitration provision. (Pl. Mem., at 24–25.) The flaw in this argument is that it ignores the fact that Plaintiff, the drafter of the License Agreement, stated in that agreement: "Both parties agree that the following terms and conditions [of the License Agreement] embody all of the understandings and obligations between the parties hereto." (License Agreement.) Based on this unambiguous language, the License Agreement must be read to have incorporated or superceded any prior understandings of the parties, and thus Plaintiff's attempt to focus on the Delivery Memo in order to avoid arbitration is unavailing. *See Pearson,* 2011 WL 4483760, at *6 (holding that Plaintiff's "late permissioning" copyright infringement claims were within the scope of the arbitration clause).

**\*11** Finally, Plaintiff highlights the portion of the arbitration clause that states that " '[a]ny dispute involving $1500.00 or less may be submitted, without arbitration, to any Court having jurisdiction thereof.' " (Pl. Mem., at 25 (quoting

Cole v. John Wiley & Sons, Inc., Not Reported in F.Supp.2d (2012)
2012 WL 3133520

License Agreement at ¶ 9).) Plaintiff argues that, as each of his separate claims for copyright infringement of the Five Photographs does not individually meet the $1500 threshold for mandatory arbitration, these claims cannot be considered to fall within the scope of the arbitration clause. (*See* Pl. Mem., at 25 (arguing that, "because the invoiced fee was $1100, claims related to that invoice are not subject to arbitration").) Based on the plain text of the arbitration provision, however, the $1500 threshold relates to the *dispute,* not the invoice fee. Plaintiff has charged Wiley with multiple acts of infringement with respect to its allegedly unauthorized uses of the Five Photographs, and, although Plaintiff has not stated an overall damages demand, it is the Court's understanding that he is certainly not seeking less than $1500 in total damages on claims that, if successful, could result in an award of statutory damages and/or disgorgement of profits well in excess of that sum. For this reason, the Court finds that Plaintiff's claims against Wiley for infringement of Plaintiff's copyrights in the Five Photographs represent a dispute that involves more than $1500 in potential damages and that falls within the scope of the arbitration clause.

For all of these reasons, the Court concludes that Plaintiff's infringement claims against Wiley regarding the Five Photographs are covered by the parties' arbitration agreement, that Wiley's right to arbitration has not been waived, and that the claims should be dismissed in favor of arbitration.[7]

### B. *Claims Against Wiley Relating to Photographs That Wiley Obtained from Stock Photography Agencies*

Wiley challenges the sufficiency of Plaintiff's newly-alleged claims that it also infringed Plaintiff's copyrights in certain photographs (the "Stock Agency Photographs") that Wiley purportedly obtained from the Stock Photograph Agencies— Visuals Unlimited, Getty, and Corbis. To satisfy Rule 8(a), "[a] properly plead[ed] copyright infringement claim must allege (1) which specific original works are the subject of the copyright claim, (2) that plaintiff owns the copyrights in those works, (3) that the copyrights have been registered in accordance with the statute, and (4) by what acts during what time the defendant infringed the copyright." *Kelly v. L.L. Cool J.,* 145 F.R.D. 32, 36 (S.D.N.Y.1992), *aff'd without opinion,* 23 F.3d 398 (2d Cir.1994). For the reasons that follow, the Court finds that, even if Plaintiff owns registered copyrights in each of the photographs he supplied to the Stock Photograph Agencies, he has failed to meet the first and fourth of the requirements set out in *Kelly,* and his new claims, as pleaded, are therefore defective under Rule 8(a).

#### 1. *The Requirement of Pleading "Specific Original Works"*

**\*12** A first, critical flaw in Plaintiff's infringement claims relating to Wiley's purported use of photographs obtained from the Stock Photograph Agencies is that these claims do not sufficiently specify the works that are the subject of Plaintiff's claims.

As to Visuals Unlimited, Plaintiff has provided the Court with a four-page chart, which lists 66 photographs that Plaintiff licensed through Visuals Unlimited to textbook publishers, including Wiley. (*See* Am. Compl. Ex. 3.) Plaintiff, however, neither alleges that Wiley infringed his copyright in every photograph listed, nor alleges that Wiley infringed his copyright in any specific photograph on the list. Rather, Plaintiff asks the Court to make an inferential leap and conclude that, because Wiley allegedly obtained access to the 66 photographs listed in the chart and published certain of these photographs in some of the 40 publications that were identified in another action as containing unlicensed photographs, Wiley is likely to have infringed his rights in at least one of these 66 photographs. (*See* Am. Compl. at ¶¶ 87–92.) Plaintiff, however, does not specifically identify even one of these 66 photographs as being the subject of his copyright infringement claims. In addition, Plaintiff alleges that "Wiley's ... infringing ... of Plaintiff's images is not limited to the photographic works identified herein[ ]" (*Id.* at ¶ 115), but Plaintiff does not set forth any other works at issue.

As to Getty, Plaintiff has provided a two-page spreadsheet that lists the photographs that he licensed, through Getty, to textbook publishers, including Wiley. (*See id.* Ex. 4.) Once again, however, Plaintiff does not specify which of these photographs are the subject of his copyright infringement claims. Instead, Plaintiff merely claims that "[u]pon information and belief, a reasonable opportunity for further investigation and discovery will reveal evidence that Defendant Wiley made unauthorized uses of his images that it obtained from Getty Images."

Finally, as to Corbis, Plaintiff identifies two photographs that Wiley licensed through Corbis. (*See* Am. Compl. at ¶ 99; *see also id.* Ex. 5 (listing two photographs owned and created by Plaintiff that Corbis licensed to Wiley).) Yet, while Plaintiff alleges that Wiley infringed his copyright in each of these photographs (*id.* at ¶ 100), he also contends that "a reasonable opportunity for further investigation and discovery will yield evidence that Wiley's ... infringing ... of Plaintiff's images is

2012 WL 3133520

not limited to the photographic works identified herein" (*id.* at ¶ 115).

Courts have repeatedly rejected the use of the type of conclusory and vague allegations pleaded by Plaintiff as a substitute for allegations that specify the original works that are the subject of a copyright claim. *See Cole v. Allen,* 3 F.R.D. 236, 237 (S.D.N.Y.1942) (holding that plaintiff's allegations that defendant copied unspecified episodes, characters and dialogues from any of six books lacked sufficient specificity); *Plunket v. Doyle,* No. 99 Civ. 11006(KMW), 2001 WL 175252, at *4 (S.D.N.Y. Feb.22, 2001) (holding that plaintiff failed to specify which original works were the subject of her copyright claims where she provided a multi-page schedule of certain works, with copyright registration numbers for nine of those works, but also contended in her complaint that her copyright claims were not limited to those works (citing *Cole* )); *DiMaggio v. Int'l Sports Ltd.,* No. 97 Civ. 7767(HB), 1998 WL 549690, at *2 (S.D.N.Y. Aug.31, 1998) (concluding that plaintiff failed to specify which original works were the subject of the copyright claim, where plaintiff merely referred to "nebulous multiple images" (citing *Cole* )). Not only is it inadequate to base an infringement claim on overly-inclusive lists of copyrighted works, but it is also insufficient to list certain works that are the subject of an infringement claim, and then allege that the claim is also intended to cover other, unidentified works. *See Plunket,* 2001 WL 175252, at *4.

**\*13** As each of Plaintiff's infringement claims concerning photographs supplied to the Stock Photography Agencies contains vague and expansive allegations regarding which works are the subject of Plaintiff's claims, the Court finds that Plaintiff has not satisfied the first requirement necessary to render his pleading sufficient.

### 2. *The Requirement of Pleading Infringement "By What Acts During What Time"*

Plaintiff's allegations are also deficient because they do not include any statement of "by what acts during what time the defendant[s] infringed [Plaintiff's] copyright" in any Stock Agency Photographs. *Kelly,* 145 F.R.D. at 36.

As explained above, Plaintiff alleges that Wiley obtained access to Plaintiff's photographs through Visuals Unlimited and published certain of these photographs in some of the 40 publications that were identified in another case as containing unlicensed photographs. (*See* Am. Compl. at ¶ 91.) This allegation contains no detail as to any claimed infringing "acts," and is therefore insufficient.

*See, e.g., Lindsay v. R.M.S. Titanic,* 52 U.S.P.Q.2d 1609, 1612 (S.D.N.Y.1999) (requiring that "infringing acts be set out with some specificity," and dismissing copyright claim as a matter of law where plaintiff merely alleged that defendant " 'knowingly and willfully infringe[d] upon Plaintiff's copyright ... by unlawfully purchasing and/or otherwise obtaining copies of the Subject Work' and [that defendant] has and will 'exploit and profit from the Subject Work' "); *Lennon v. Seaman,* No. 99 Civ. 2664(LBS), 2002 WL 109525, at *6 (S.D.N.Y. Jan.28, 2002) (holding that defendant did not adequately identify "by what acts" and "at what time plaintiff infringed his copyright," where defendant alleged that plaintiff infringed 374 photographs "by copying, publishing, distributing, selling and transferring the Photographs" (citing *Reid v. Am. Soc. of Composers, Authors and Publishers,* No. 92 Civ. 270(SWK), 1994 WL 3409, at *2–3 (S.D.N.Y. Jan.5, 1994))). Furthermore, Plaintiff's allegations are inadequate because Plaintiff fails to identify the time period during which any infringing acts occurred. *See Lennon,* 2002 WL 109525, at *6; *see also Calloway v. Marvel Entertainment Group,* No. 82 Civ. 8697, 1983 WL 1141, at *3 (S.D.N.Y. June 30, 1983) (dismissing plaintiff's claims for failure to comply with the requirements of Rule 8(a), where the complaint failed, *inter alia,* to specify the dates on which the alleged infringements occurred).

The same defects are apparent in Plaintiff's claims regarding photographs purportedly licensed to Wiley through Getty and Corbis. As to Getty, Plaintiff merely asserts that, "[u]pon information and belief, a reasonable opportunity for further investigation and discovery will reveal evidence that Defendant Wiley made unauthorized uses of his images that it obtained from Getty Images" (Am. Compl. at ¶ 96), and that "[f]urther investigation and discovery is necessary to confirm the complete number of Plaintiff Cole's photographs that Defendant Wiley obtained from Getty Images and the full scope of Defendant Wiley's infringing use of those photographs" (*id.* at ¶ 97). Plaintiff makes substantively identical assertions as to Corbis. (*Id.* at ¶¶ 100, 101.) Such conclusory allegations fail to allege "by what acts" Wiley infringed Plaintiff's copyrights in any photographs, *see Lindsay,* 52 U.S.P.Q.2d at 1612, and also fail to allege "during what time" Wiley infringed Plaintiff's copyrights in those photographs, *see Calloway,* 1983 WL 1141, at *3.

**\*14** As Plaintiff has failed to satisfy at least two of the requirements for pleading copyright infringement claims regarding the photographs he supplied to the Stock Photography Agencies, *see Kelly,* 145 F.R.D. at 36, these

Cole v. John Wiley & Sons, Inc., Not Reported in F.Supp.2d (2012)

2012 WL 3133520

claims are hereby dismissed, *see DiMaggio,* 1998 WL 549690, at *1–2 (dismissing copyright infringement claim for failure to comply with the requirements of Rule 8(a), where plaintiff failed to specify what specific images were infringed (the first requirement set out in *Kelly* ), failed to allege with sufficient clarity that the copyrights in the images were registered pursuant to statutory requirements (the third requirement set out in *Kelly* ), and failed to allege by what acts and during what time defendant had infringed the copyrights (the fourth requirement set out in *Kelly* )).[8]

### C. *Infringement Claims Against Donnelley*

Plaintiff's asserted claims against Donnelley relate only to the alleged infringement of Plaintiff's copyrights in the Five Photographs that were published in the Costa Rica publications (*see* Am. Compl. at ¶ 121)—claims that, as to Wiley, are subject to arbitration (*see* Discussion *supra* at Section IIA). In the papers submitted to the Court, no party has addressed the question of whether the infringement claims against Donnelley are similarly arbitrable, given that this defendant was not a direct party to the License Agreement and, thus, to the arbitration agreement contained therein.

As Donnelley was not identified in the License Agreement as Wiley's agent,[9] the question of Donnelley's right to arbitrate Plaintiff's claims against it would typically be viewed as turning on whether, under all of the circumstances presented, Plaintiff could be estopped from resisting arbitration of those claims. More specifically, the issue is generally framed in terms of whether a "signatory" to an arbitration agreement may be estopped from resisting arbitration sought by a "non-signatory" to the agreement .[10] Although, in this case, the License Agreement was not signed by either Plaintiff or Wiley, those parties do not dispute that they entered into the agreement memorialized by that document. The question, then, is whether there is a sufficiently "tight relatedness" of Wiley and Donnelley and of the "contacts and controversies" that give rise to Plaintiff's claims against them, that Plaintiff should be held to be estopped from arguing that his claims against Donnelley cannot be arbitrated. *Choctaw Generation Ltd. P'ship v. Am. Home Assurance Co.,* 271 F.3d 403, 406–07 (2d Cir.2001).

Given the integral relationship between the merits of Plaintiff's claims against Wiley and of his claims against Donnelley, and given the fact that Plaintiff has not sought to distinguish between these two defendants in terms of their rights to invoke the arbitration clause, this Court

would be inclined to hold Plaintiff estopped from making such distinctions at this point. The Court, however, need not make a determination on the issue of estoppel, as the arbitration clause in the License Agreement is itself broad enough to cover any dispute as to whether Plaintiff's claims against Donnelley should be considered arbitrable. *See Contec Corp. v. Remote Solution Co.,* 398 F.3d 205, 209 (2d Cir.2005) (declining to reach the question of whether the signatories to an arbitration agreement were estopped from avoiding arbitration with a non-signatory, where the arbitration agreement broadly covered issues relating to the " 'existence, scope or validity' " of the agreement, and thus "arbitration of the issue of arbitrability [was] appropriate"); *see also Washington v. William Morris Endeavor Entm't, LLC,* 10 Civ. 9647(PKC)(JCF), 2011 WL 3251504, at *8–9 (S.D.N.Y. July 20, 2011) (analyzing the arbitration agreement and the relationship between the parties, and following *Contec* in concluding that the non-signatory defendants could enforce the terms of the agreement, so as to place before the arbitrator the question of whether the plaintiff was estopped from avoiding arbitration with those defendants).

* * *

**\*15** In sum, Plaintiff's copyright infringement claims against both Wiley and Donnelley regarding any use of the Five Photographs in any of the Costa Rica publications are dismissed, in favor of arbitration. Plaintiff's separate copyright infringement claims against Wiley regarding any use of photographs obtained by Wiley from the Stock Photography Agencies are also dismissed, for failure to comply with the pleading requirements of Rule 8(a). All of Plaintiff's infringement claims are, however, dismissed without prejudice. As to the claims regarding photographs supplied to Wiley through the Stock Photography Agencies, dismissal without prejudice is warranted, given that the basis for dismissal is the lack of specificity in Plaintiff's pleading, which Plaintiff may, at some point, be able to cure. As to the claims regarding the Five Photographs, Wiley and Donnelley should take appropriate and prompt steps to initiate arbitration, so as not to risk waiver of their right to arbitrate those claims. If either Wiley or Donnelley refuses to arbitrate any of the claims that are herein dismissed in favor of arbitration, Plaintiff may seek leave to reopen this case, so as to litigate the claims in question.

### III. *PLAINTIFF'S FRAUD CLAIMS AGAINST WILEY*

#### A. *Fraudulent Inducement Claims*

Cole v. John Wiley & Sons, Inc., Not Reported in F.Supp.2d (2012)

2012 WL 3133520

Plaintiff alleges that, both before and during Wiley's negotiations with him regarding the Five Photographs, Wiley fraudulently concealed its unauthorized reproduction of these photographs, fraudulently concealed its plans to infringe Plaintiffs's copyright in these photographs, and fraudulently misled Plaintiff as to its intended uses of these photographs. (Am. Compl. at ¶¶ 131–45, 154–67.) These allegations amount to a claim that any agreements by Plaintiff that were set forth in either the Delivery Memo or the later License Agreement were induced by fraud. (*See id.* at ¶ 145 (alleging that Wiley's conduct "reasonably deceived Plaintiff into believing that by duly entering and signing an enforceable licensing agreement, [Plaintiff's] creative rights would be respected and consideration would be correspondingly applied to any subsequent uses of his photographs"); *see also Eberle v. BMCA Insulation Products Inc.,* No. 95 Civ. 10378(SAS), 1996 WL 337262, at *2 (S.D.N.Y. June 19, 1996) (stating that "[r]espondent's allegations that [p]etitioners fraudulently misrepresented IP's true value, assets, and compliance with federal environmental legislation ... amount to a claim that the contract itself was induced by fraud").)

As noted above, however, the License Agreement, by its terms, superceded any understandings that may have been set forth in the Delivery Memo. (*See* License Agreement (providing that the parties "agree[d] that the ... terms and conditions [of the License Agreement] embody all of the understandings and obligations between the parties hereto").) Moreover, as the arbitration clause in the License Agreement covers "[a]ny dispute in connection with" the License Agreement, including any dispute over "its validity" (*id.* at ¶ 9), it must be read to cover any fraud-in-the-inducement claim.

 *16 Accordingly, to the extent Plaintiff's fraud claims are related to Wiley's procurement of the Five Photographs, or are based on any conduct by Wiley that led Plaintiff to provide either the Delivery Memo or the License Agreement, those claims fall within the scope of the arbitration clause, and, therefore, should be dismissed in favor of arbitration.

### B. *Additional Fraud–Based Claims*

Plaintiff has also asserted fraud claims against Wiley that relate to (1) conduct that occurred *after* the parties entered into the License Agreement (*see e.g.,* Am. Compl. ¶ 135 (alleging, as part of a fraud claim, that a Wiley employee, after the date that appears on the License Agreement, "provided Plaintiff Cole with misleading and false information about Wiley's

uses of [the Five Photographs] in the Costa Rica books in an effort to mislead him into compromising his claims")), and (2) Wiley's procurement of Plaintiff's photographs from third parties (*see e.g .,* id. ¶ 135 (alleging, as part of his fraud claim, that Wiley "obtained some of Plaintiff Cole's images from third parties without his knowledge or consent and used them without permission")). These claims are subject to dismissal under both Rule 9(b), based on Plaintiff's failure to plead fraud with the requisite particularity, and Rule 12(b)(6), based on Plaintiff's failure to state a claim upon which relief may be granted under the applicable state law.

First, as to Rule 9(b), Plaintiff's fraud claims relating to Wiley's conduct after the parties entered into the License Agreement are deficient because they rely entirely on the lone allegation that Eikenberg, a Wiley employee, "provided Plaintiff ... with misleading and false information about Wiley's uses of his photographs in the Costa Rica books in an effort to mislead him into compromising his claims." (*Id.* at 80.) This allegation fails to specify the content of Eikenberg's allegedly fraudulent statements, to state where Eikenberg made such statements, or to explain why such statements were fraudulent. As to allegedly fraudulent conduct related to the photographs that Plaintiff supplied to the Stock Photography Agencies, Plaintiff fails to specify even one fraudulent statement or omission that is attributable to a Wiley employee or agent, and also fails to allege where any purportedly fraudulent conduct took place. (*See generally* Am. Compl. ¶ 87–116, 129–73.) Consequently, it would be appropriate for this Court to dismiss these fraud claims under Rule 9(b). *See Lerner, N.A.,* 459 F.3d 291 (affirming dismissal of fraud claims for failure to comply with requirements of Rule 9(b)).

Second, as to Rule 12(b)(6), Plaintiff's allegations, even if read most favorably to him, are not legally sufficient to state a claim for fraud. Under New York law,[11] "damages are an essential element of a fraud claim." *Semerdjian v. McDougal Littell,* No. 07 Civ. 7496(LMM), 2008 WL 110942, at *2 (S.D.N.Y. Jan.2, 2008) (quoting *Abernathy–Thomas Eng'g Co. v. Pall Corp.,* 103 F.Supp.2d 582, 599 (E.D.N.Y. June 27, 2000)). Thus, a plaintiff cannot maintain a fraud claim where the damages attributable to the fraud are "speculative or undeterminable." *Id.* (quoting *Abernathy–Thomas,* 103 F.Supp.2d at 599). Rather, plaintiffs must allege pecuniary losses that are "the direct, immediate, and proximate result of the misrepresentation." *Kregos v. Associated Press,* 3 F.3d 656, 665 (2d Cir.1993). Moreover, such losses must be "independent of other causes." *Bennett v. United States Trust Co.,* 770 F.2d 308, 316 (2d Cir.1985) ("To establish the

required causation, the plaintiff must show that the loss was a direct result of the defendant's [fraudulent] actions and [that it was] independent of other causes.").

**\*17** In this case, with respect to conduct by Wiley subsequent to the License Agreement, and with respect to Defendants' alleged concealment of its improper use of Plaintiff's works obtained from third parties, it is not plausible that Plaintiff's alleged damages would have been either proximately caused by any fraudulent conduct by Wiley, or that the damages would have been sustained independent of other causes. There would have been no unauthorized uses of Plaintiff's works (and, hence, no injury to Plaintiff), had Wiley timely obtained the appropriate licenses and acted in accordance with the terms of each license. Therefore, but for Wiley's infringing conduct, Plaintiff would have suffered no harm from the alleged misrepresentations or concealment. *See Semerdjian,* 2008 WL 110942, at \*2–3 (holding that, absent any copyright infringement, defendant would not have exceeded the print run authorized in the contract, and, in such a case, there would be no fraud-related damages). Although Plaintiff cites certain decisions from other jurisdictions that have not accepted the reasoning of *Semerdjian* (*see* Pl. Mem., at 18), this Court does not find those decisions persuasive. Based on *Semerdjian* and the other cases cited above, Plaintiff has pleaded no facts capable of showing that Wiley's alleged fraudulent acts (to the extent separate from those acts that allegedly induced Plaintiff to enter into the Delivery Memo and License Agreement) led to any direct and proximate loss, "independent" of losses that would have been caused by Wiley's claimed copyright infringement. *See Semerdjian,* 2008 WL 110942, at \*2–3.

Although Plaintiff might be able to cure the Rule 9(b) pleading defects in these fraud claims, he cannot cure the substantive defects described above, and thus these claims are appropriately dismissed with prejudice, pursuant to Rule 12(b)(6).

## IV. *REMAINING CLAIMS AGAINST THE JOHN DOE DEFENDANTS*

There is no indication in the record that the John Doe Defendants have ever been identified or served, and Defendants' counsel does not claim to represent them on the pending motion to dismiss. Under Rule 4(m) of the Federal Rules of Civil Procedure

> If a defendant is not served within 120 days after the complaint is filed, the court—on motion or on its own after

notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed. R. Civ. P 4(m). This Rules applies to "John Doe" defendants, *see, e.g., Kearse v. Lincoln Hosp. (Bronx, N.Y.),* No. 07 Civ. 4730(PAC)(JCF), 2009 WL 1706554, at \*2 (S.D.N.Y. June 17, 2009), but courts often refrain from dismissing suits against such defendants "until the plaintiff has had some opportunity for discovery to learn the identities of the [unnamed defendants]," *Davis v. Kelly,* 160 F.3d 917, 921 (2d Cir.1998)); *see also Warren v. Goord,* 476 F.Supp.2d 407, 413–414 (S.D.N.Y.2007) (declining to dismiss the claim against "John Doe" defendant until plaintiff had engaged in sufficient discovery to name defendant).

**\*18** Here, well over 120 days have passed since Plaintiff filed his Amended Complaint, in which he referred to the John Doe Defendants as "yet-to-be ascertained printing companies" and stated that "further investigation and discovery" would be necessary to "confirm" their identities. (Am. Compl. at ¶ 5.) In his effort to defeat arbitration, however, Plaintiff now asserts that the parties have "engaged in extensive document discovery regarding these claims, fully briefed and argued multiple discovery motions, ... conducted depositions of the central fact witnesses" (Pl. Mem. at 1), and participated in "litigation that has resolved every aspect of liability related to these publications" (*id.* at 20). These assertions suggest that Plaintiff has had ample opportunity to learn the identities of those entities he wished to sue in this case.

Accordingly, the Court sees no reason to refrain from dismissing the claims against the John Doe Defendants *sua sponte,* without prejudice, pursuant to Fed.R.Civ.P. 4(m). *See Kearse,* 2009 WL 1706554, at \*2 (adopting magistrate judge's recommendation that plaintiff's claims against "John Doe" physician be dismissed, where, despite having had both time and access to medical records, plaintiff had failed to identify or serve the "John Doe" physician who treated him); *Heicklen v. United States Dep't of Homeland Sec.,* No. 10 Civ. 2239(RJH)(JLC), 2011 WL 3841543, at \*16 (S.D.N.Y. Aug. 30, 2011) (recommending *sua sponte* dismissal of claims against "John and Jane Doe" defendants, where plaintiffs, who were aware of the requirements of Rule 4(m), nonetheless failed to effect timely service of those defendants) (Report and Recommendation), *adopted by* 2011 WL 4442669 (S.D.N.Y. Sep 23, 2011).

Cole v. John Wiley & Sons, Inc., Not Reported in F.Supp.2d (2012)

2012 WL 3133520

*CONCLUSION*

For the foregoing reasons, Defendants' motion to dismiss the Amended Complaint (Dkt.28) is granted in its entirety, as set forth below:

1. The following claims are dismissed on the ground that they are subject to arbitration under the FAA:

a. Plaintiff's copyright claims against defendants Wiley and Donnelley, relating to their alleged infringement of Plaintiff's copyrights in the Five Photographs used in the Costa Rica 2010 and 2011 books; and

b. Plaintiff's fraud claims against Wiley, relating either to its procurement of the Five Photographs or to any conduct that allegedly induced Plaintiff either to provide the Delivery Memo or the License Agreement that reference the Five Photographs.

This dismissal is without prejudice to Plaintiff's right to seek to reopen this case, so as to litigate these claims, should Wiley and/or Donnelley refuse to proceed to arbitration.

2. Plaintiff's copyright claims against defendant Wiley, relating to Wiley's alleged infringement of Plaintiff's copyrights in photographs supplied by Plaintiff to the Stock Photography Agencies, are dismissed without prejudice, pursuant to Rule 8(a) of the Federal Rules of Civil Procedure.

**\*19** 3. Plaintiff's fraud claims against defendant Wiley, relating to

a. any conduct that allegedly occurred after Plaintiff and Wiley entered into the License Agreement, and

b. Wiley's procurement of Plaintiff's photographs from third parties,

are dismissed with prejudice, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

4. Plaintiff's copyright infringement claims against the John Doe Defendants are dismissed, *sua sponte* and without prejudice, pursuant to Rule 4(m) of the Federal Rules of Civil Procedure.

The Clerk of Court is directed to close this case on the Docket of the Court.

SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2012 WL 3133520

Footnotes

1   Plaintiff did not have leave of Court (or Defendants' consent) to file the Amended Complaint, and thus should have filed a motion for leave to amend under Rule 15 of the Federal Rules of Civil Procedure. Nonetheless, as Defendants have not objected to the amendment itself, but rather have filed a Rule 12 motion against the amended pleading, the Court will deem the Amended Complaint to have been properly filed and will proceed to consider Defendants' motion.

2   As Plaintiff was plainly aware of the License Agreement and referenced it in his own pleading, it is not necessary to convert this motion into a motion for summary judgment, in order to consider this document. *See Amy Axelrod, Inc. v. Simon & Schuster, Inc.,* No. 07 Civ. 891(DLC), 2007 WL 2412257, at *3 (S.D.N.Y. Aug.27, 2007) ("The necessity of transforming a Rule 12(b)(6) motion into a motion for summary judgment is 'largely dissipated' when the plaintiff is shown to have had actual notice of the document extrinsic to the complaint and to have relied upon the document to frame the complaint." (citing *Cortec Indus., Inc. v. Sum Holdings, L.P.,* 949 F.2d 42, 48 (2d Cir.1991))); *see also Chambers v. Time Warner, Inc.,* 282 F.3d 147, 152–53 (2d Cir.2002) (stating that, on a motion to dismiss, a court may consider, *inter alia,* documents incorporated in the complaint by reference, and " 'documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit,' " as long as plaintiffs relied on the terms and effect of the document in drafting the complaint (citing *Brass v. American Film Technologies, Inc.,* 987 F.2d 142, 150 (2d Cir.1993))).

3   A license agreement may provide for the number of copies of the copyrighted work that a publisher may print, a number which is referred to as the "print run."

4   "The determination of whether to dismiss or stay a claim governed by an arbitration clause depends on whether any 'useful purpose will be served by granting a stay of [the] proceedings." *Pearson,* 2011 WL 4483760, at *5 (quoting *Berger*

*v. Cantor Fitzgerald Secs.,* 967 F.Supp. 91, 96 (S.D.N.Y.1997)). "A stay issued pursuant to Section 3 of the FAA must last 'until such arbitration has been had in accordance with the terms of the agreement,' but a stay may be vacated by a party's 'default in proceeding with such arbitration." *Id.* (quoting 9 U.S.C. § 3).

5      The arbitration clauses at issue in these other cases, which, as noted above, are identical to the clause at issue here, can be found in the Declaration of Ezra D. Church in Support of Defendant's Motion To Dismiss Plaintiff's Complaint, (filed as Dkt. 7 in *Pearson* ), Ex. A at ¶ 9, and in the Declaration of J. Russell Jackson in Support of Defendant's Motion to Dismiss the Complaint (filed as Dkt. 8 in *Houghton Mifflin* ), Ex. A at ¶ 9.

6      Although Plaintiff has not raised the issue, the Court notes that Plaintiff's claim that he was fraudulently induced into entering into the License Agreement (Am. Compl. at ¶ 50) would not call into question the viability of the arbitration clause contained in that agreement, given that Plaintiff's fraud claim is directed to the License Agreement as a whole, not the arbitration clause, *see Pearson,* 2011 WL 4483760, at *5.

7      A stay of these proceedings, in lieu of dismissal, would not be appropriate here (*see supra* at 13 and n. 4), given that, for the reasons discussed below, Plaintiff's only remaining claims are also subject to dismissal, on other grounds.

8      It should be noted that the parties have not provided the Court with any license agreements under which the Stock Photography Agencies may have provided Plaintiff's photographs to Wiley. The Court thus cannot determine, at this point, whether Plaintiff's claims regarding any such photographs may also be subject to arbitration.

9      "[D]isclosed agents of an entity that is a party to an arbitration agreement are protected by that agreement." *Roby v. Corp. ofLloyd's,* 996 F.2d 1353, 1360 (2d Cir.1993).

10     "[U]under principles of estoppel, a non-signatory to an arbitration agreement may compel a signatory to that agreement to arbitrate a dispute where a careful review of the relationship among the parties, the contracts they signed ..., and the issues that had arisen among them discloses that the issues the non-signatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed." *JLM Indus. v. Stolt–Nielsen SA,* 387 F.3d 163, 177 (2d Cir.2004) (internal quotation marks and citation omitted); *see also Smith/Enron Cogeneration Ltd. Partnership, Inc. v. Smith Cogeneration International, Inc.,* 198 F.3d 88, 98 (2d Cir.1999) (holding that the party attempting to resist arbitration was estopped from doing so because it had treated arguably non-signatory companies and their signatory assignees "as a single unit" in its complaint in a related lawsuit).

11     Defendants rely exclusively on New York law to challenge the sufficiency of Plaintiff's state-law fraud claims (*see, e.g.,* Def. Mem. at 15), and, while Plaintiff cites some cases from other jurisdictions, he makes no argument that, under choice-of-law principles, these claims should be considered to have arisen under the law of a different state (*see generally* Pl. Mem. at 17–19). Indeed, neither party offers any choice-of-law analysis, and, in the face of their silence on the issue, "the Court may apply the law of the forum." *See Global Switching Inc. v. Kasper,* No. CV–06–412 (CPS), 2006 WL 1800001, at *11 n. 10 (E.D.N.Y. June 29, 2006) (citing *Michele Pommier Models v. Men Women N.Y. Model Mgmt.,* 14 F.Supp.2d 331, 336 (S.D.N.Y.1998)).

---

**End of Document**                                    © 2023 Thomson Reuters. No claim to original U.S. Government Works.

Case: 1:22-cv-05660 Document #: 27-1 Filed: 03/06/23 Page 39 of 131 PageID #:247
v. Amazon.com, Inc., Not Reported in Fed. Supp. (2015)
2015 WL 8489973, 117 U.S.P.Q.2d 1584, 44 Media L. Rep. 1250

2015 WL 8489973
United States District Court, N.D. Illinois, Eastern Division.

Reginald Hart, Plaintiff,

v.

AMAZON.COM, INC., Glenda Scales An
Individual, All Known and Unknown Third-
Party Agent Sellers of Amazon, Defendants.

No. 15-C-01217
|
Signed 12/08/2015

**Attorneys and Law Firms**

Reginald Hart, Chicago, IL, pro se.

Michael A. Hierl, Hughes Socol Piers Resnick & Dym Ltd.,
Chicago, IL, for Plaintiff.

Christopher Robert Hagale, Bartlit Beck Herman Palenchar
& Scott LLP, Chicago, IL, for Defendants.

Glenda Scales, Antioch, TN, pro se.

**MEMORANDUM OPINION AND ORDER**

Ruben Castillo, Chief Judge

 *1 Plaintiff Reginald Hart brings this action against
Defendants Amazon.com, Inc. ("Amazon"), Glenda Scales
("Scales"), and "All Unknown and Known Third Party Agent
Sellers of Amazon" ("Third-Party Sellers" and collectively
"Defendants") alleging direct, contributory, and vicarious
copyright infringement under the Federal Copyright Act,
17 U.S.C. § 101 *et seq.,* negligent spoliation of evidence,
aiding and abetting "wrongful acts," intentional infliction of
emotional distress, and a violation of the Illinois Right of
Publicity Act ("IRPA"), 765 Ill. COMP. STAT. 1075/1 *et seq.*
Before the Court is Amazon's motion for judgment on the
pleadings pursuant to Federal Rule of Civil Procedure 12(c).
(R. 42, Def's Mot.) For the reasons stated below, the motion
is granted.

**RELEVANT FACTS**

Plaintiff, a resident of Illinois, has authored three books: *My
Life as a Homeless Man, Vagabond Natural,* and *Vagabond
Spiritual.* (R. 1, Compl. at 3.) These books focus on Plaintiffs
experiences with homelessness and seek to "raise money
and bring an end to vagabondage ...." (*Id.*) Plaintiff sold his
books in a "few published private sales," but because he was
"creatively unhappy with his books," he "chose not to publish
them to the public at large." (*Id.*)

In September 2009, Plaintiff discovered that *Vagabond
Natural* was for sale on Amazon's website. (*Id.* at 11.)
Following this discovery, Plaintiff sent Amazon a letter
asking how it obtained his book, how long it had been
available for sale, who gave Amazon authorization to sell
the book, and how many copies had been sold. (*Id.*) Plaintiff
never received a response from Amazon. (*Id* at 11-12.) The
following year, Plaintiff learned that a relative had purchased
*Vagabond Natural* on Amazon's website. (*Id.* at 12.) In early
2014, Plaintiff learned that Amazon had also begun to sell
*Vagabond Spiritual,* and that the same relative had also
purchased this book on Amazon's website. (*Id.* at 13.) Thus,
on March 23, 2014, Plaintiff sent another letter to Amazon
asking for the books to be removed from its website. (*Id.* at
13-14; *see also* Ex. 8 to Compl.) In response to that letter,
Amazon sent Plaintiff a letter, in which Amazon informed
Plaintiff that it was "solely a search engine and not an online
retailer." (R. 1, Compl. at 14.) Plaintiff also submitted at least
one notification to Amazon through its "Report Infringement"
page asking for Amazon to remove Plaintiffs books and
reiterating that he has "never granted you and/or your third
party sellers[ ] authorization to publicize—post or sell my
titles through your website." (*Id.* at 16-17; *see also* Ex. 21
to Compl.) Plaintiff claims that, despite his repeated requests
to remove his books from its website, Amazon continues
to advertise and sell, both directly and through Third-Party
Sellers, the unlawfully copied books. (R. 1, Compl. at 27-28,
35, 43-44, 48-50.)

Scales, a resident of Tennessee, is a "third party agent seller"
of Amazon. (*Id.* at 2, 46.) In January 2015, Plaintiff alleges
that Scales copied the entirety of *Vagabond Natural* and that
Amazon processed and sold—through Scales as the third-
party seller—a counterfeit copy of the book. (*Id.* at 46-47.)

 *2 As a result of the above actions, on February 9, 2015,
Plaintiff filed a 64-page complaint (accompanied by 60
exhibits) alleging direct, contributory, and vicarious copyright
infringement, negligent spoliation of evidence, intentional
infliction of emotional distress, aiding and abetting the sale

Case: 1:22-cv-05660 Document #: 27-1 Filed: 03/06/23 Page 40 of 131 PageID #:248

v. Amazon, Inc., Not Reported in Fed. Supp. (2015)

2015 WL 8489973, 117 U.S.P.Q.2d 1584, 44 Media L. Rep. 1250

of his books, and a violation of the IRPA against Amazon. (R. 1, Compl. at 20-45, 48-63.) In addition, Plaintiff brought a claim against Scales for direct copyright infringement. (*Id.* at 46-47.) Currently before the Court is Amazon's motion for judgment on the pleadings as to Counts I, II, III, V, VI, VII, VIII, and IX.[1]

## LEGAL STANDARD

Rule 12(c) permits a party to move for judgment on the pleadings alone. FED. R. CIV. P. 12(c). The pleadings consist of the "the complaint, the answer, and any written instruments attached as exhibits." *N. Ind. Gun & Outdoor Shows, Inc. v. City of South Bend,* 163 F.3d 449, 452 (7th Cir. 1998) (citing FED. R. CIV. P. 10(c)). In addition, Rule 12(h)(2) specifically allows a party to argue in a 12(c) motion that the plaintiff has "fail[ed] to state a claim upon which relief can be granted." FED. R. CIV. P. 12(h)(2). Thus, a motion for judgment on the pleadings under Rule 12(c) is governed by the same standards as a motion to dismiss for failure to state a claim under Rule 12(b)(6). *Adams v. City of Indianapolis,* 742 F.3d 720, 727-28 (7th Cir. 2014). To survive a motion to dismiss under Rule 12(b)(6), a complaint must provide "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly* 550 U.S. 544, 570 (2007). Factual allegations are accepted as true at the pleading stage, but "allegations in the form of legal conclusions are insufficient to survive a Rule 12(b)(6) motion." *McReynolds v. Merrill Lynch & Co., Inc.,* 694 F.3d 873, 885 (7th Cir. 2012). "[T]hreadbare recitals of the elements of the cause of action, supported by mere conclusory statements, do not suffice." *Id.* (quoting *Ashcroft v. Iqbal* 556 U.S. 662, 678 (2009)). A court should grant a Rule 12(c) motion for judgment on the pleadings "[o]nly when it appears beyond a doubt that the plaintiff cannot prove any facts to support a claim for relief and the moving party demonstrates that there are no material issues of fact to be resolved." *Supreme Laundry Serv., L.L.C. v. Hartford Cas. Ins. Co.,* 521 F.3d 743, 746 (7th Cir. 2008) (alteration in original) (citation omitted).

Because Plaintiff is proceeding *pro se,* the Court construes the Complaint "liberally" and holds it "to a less stringent standard than formal pleadings drafted by lawyers." *See Bridges v. Gilbert,* 557 F.3d 541, 546 (7th Cir. 2009). However, while a *pro se* litigant's pleadings are held to a lesser standard, a *pro se* litigant must still comply with the Court's rules and procedures. *See McInnis v. Duncan,* 697 F.3d 661, 665 (7th Cir. 2012) ("As we often have reminded litigants, even those

who are *pro se* must follow court rules and directives."); *see also McNeil v. U.S.,* 508 U.S. 106, 113 (1993) ("While we have insisted that the pleadings prepared by *[pro se* litigants] ... be liberally construed ... we have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel.") (internal citations omitted).

## ANALYSIS

### I. Copyright Infringement (Counts I & II)

**\*3** To state a claim for copyright infringement, a plaintiff must prove: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Schrock v. Learning Curve Int'l, Inc.,* 586 F.3d 513, 517 (7th Cir. 2009) (quoting *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.,* 499 U.S. 340, 361 (1991)).

It is undisputed that Plaintiffs Complaint satisfies the first prong of a copyright infringement claim. (R. 1, Compl. at 3-4; *see generally* R. 43, Def.'s Mot.) Amazon asserts, however, that the claim must be dismissed because Plaintiff has not sufficiently alleged the second prong—that Amazon copied the protected works. (R. 43, Def.'s Mot. at 2-3.) Specifically, Amazon contends that Plaintiff has failed to state claims for direct infringement of *Vagabond Natural* and *Vagabond Spiritual* because: (1) a title of a book is not, by itself, subject to copyright protection and, thus, the posting of the books' titles on Amazon's website cannot form the basis of a copyright infringement claim; and (2) Plaintiff "has suggested that Amazon illegally copied [the] books," but there is "no factual or legal allegation of this in the complaint, and it cannot form a basis for relief." (R. 43, Def.'s Mot. at 2 n. 1.) The Court must therefore determine whether the Complaint includes factual content establishing that Amazon infringed on Plaintiffs copyrights by copying *Vagabond Natural* and *Vagabond Spiritual.* The Court finds that it does not and, therefore, the direct copyright infringement claims set forth in Counts I and II are dismissed.

As Amazon points out, Plaintiffs direct infringement claims focus largely on Amazon's posting of the titles *"Vagabond Natural"* and *"Vagabond Spiritual"* on its website. (R. 43, Def.'s Mot. at 2-3.) For example, Plaintiff alleges that Amazon: (1) "unlawfully copied the original element of[ ] *Vagabond Natural* [ ] by inputting into its catalog the copyrighted language: *Vagabond Natural* onto its computer(s) and/or its website(s)"; and (2) "directly infringed

v. Amazon.com, Inc., Not Reported in Fed. Supp. (2015)

2015 WL 8489973, 117 U.S.P.Q.2d 1584, 44 Media L. Rep. 1250

upon plaintiffs rights by inputting an exact reproduction, post and display to 'millions' viewing its website ... of the consecutive wording [ ] *Vagabond Natural*." (R. 1, Compl. at 21, 24-25 (emphasis omitted); *see also id.* at 32, 35-36 (repeating same allegations for *Vagabond Spiritual*).) Similarly, Plaintiff alleges that the titles of his books are copyright protected because if a user inputs the words *"Vagabond Natural"* or *"Vagabond Spiritual"* as a search term on the U.S. Copyright Office website, the search will reveal that those titles are only associated with Plaintiffs name. (R. 1, Compl. at 25-26; *see also id.* at 36-37 (repeating same allegations for *Vagabond Spiritual*).) These allegations are insufficient to support a copyright infringement claim.

A title of a copyrighted work "is not subject to copyright protection." *Wihtol v. Wells,* 231 F.2d 550, 553 (7th Cir. 1956); *see also Peters v. West,* 776 F. Supp. 2d 742, 749 (N.D. Ill. 2011) (stating that "titles by themselves are not subject to copyright protection" and concluding that the complaint "does not plausibly allege that the title of [the] Song is a protectable element of the work"); *Sweet v. City of Chi.,* 953 F. Supp. 225, 229 (N.D. Ill. 1996) ("It is well established that titles and short phrases are not protected by copyright."). Thus, regardless of how Plaintiff phrases these claims, he simply cannot maintain claims for direct copyright infringement based upon Amazon's posting of the titles *Vagabond Natural* and *Vagabond Spiritual*.

**\*4** The Complaint also lacks allegations that Amazon directly engaged in the copying of his books. In support of his claim that Amazon copied Plaintiffs books, Plaintiff alleges that: (1) the books "Amazon ... have sold ... are not only unauthorized infringements—they are counterfeits"; (2) he has witnessed "the theft and exploitation of his property on Amazon's website"; (3) Amazon failed to stop the "theft of [his] copyrighted property"; (4) "Amazon has converted [Plaintiffs] property without [his] consent into its own use"; and (5) "Amazon has intentionally burdened [Plaintiff] with its infringement by reproduction, publication and display of [his] copyrighted works ...." (R. 1, Compl. at 9, 12, 15, 16, 18, 29.) Simply put, these allegations are insufficient.

While Plaintiffs copyright infringement claims will not "be held to a particularity requirement akin to Federal Rule of Civil Procedure 9(b)," *Mid Am. Title Co. v. Kirk,* 991 F.2d 417, 421-22 (7th Cir. 1993), Plaintiff must plead sufficient facts to meet the requisite standards of *Iqbal* and *Twombly.* Plaintiff does not allege any factual content in support of his claims or articulate any circumstances whatsoever relating to

Amazon's direct copying of *Vagabond Natural* and *Vagabond Spiritual.* Instead, Plaintiff merely speculates that Amazon must have engaged in direct copyright infringement. In addition, Plaintiffs allegations of "theft," "'conversion," and "counterfeiting" are precisely the sort of "naked assertions[s] devoid of further factual enhancement" that do withstand a Rule 12(b)(6) or 12(c) challenge. *Iqbal.* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 557); *see also Flava Works, Inc. v. Clavio,* No. 11 C 05100, 2012 WL 2459146, at \*2 (N.D. Ill. June 27, 2012) (dismissing copyright claims and noting that the plaintiff "merely alleges labels and conclusions, and does not include operative facts, such as ... the means of its copying and/or distribution"). Thus, Plaintiffs Complaint does not sufficiently allege direct infringement of *Vagabond Natural* and *Vagabond Spiritual* by Amazon. As such, the Court grants Amazon's motion for judgment on the pleadings as to Counts I and II and dismisses Plaintiffs direct infringement claims against Amazon without prejudice.

## II. Vicarious and Contributory Copyright Infringement (Counts III & V) and Aiding and Abetting Wrongful Acts (Count VIII)

Plaintiff also brings claims against Amazon for vicarious and contributory infringement, as well as aiding and abetting the "wrongful acts" of Scales and Third-Party Sellers. (R. 1, Compl. at 43-45, 48-50, 59-60.) Because all of these claims are premised upon the alleged copyright infringement of Scales and Third-Party Sellers,[2] and Plaintiff fails to sufficiently allege a claim for direct copyright infringement against Scales and Third-Party Sellers, these claims must be dismissed.

**\*5** To state a claim for contributory and vicarious copyright infringement, a plaintiff must plead sufficient facts for a valid claim of direct copyright infringement. *See In re Aimster Copyright Litig,* 334 F.3d 643, 654-55 (7th Cir. 2003); *see also Monotype Imaging, Inc. v. Bitstream, Inc.,* 376 F. Supp. 2d 877, 883 (N.D. Ill. 2005) ("To support a claim for contributory copyright infringement, a plaintiff must demonstrate [ ] direct infringement by a primary infringer."). Likewise, for an aiding and abetting claim, Illinois law requires that a plaintiff plead the elements of aiding and abetting as well as an underlying tort or wrong. *See Heffernan v. Bass,* 467 F.3d 596, 601 (7th Cir. 2006) ("Under Illinois law, to state a claim for aiding and abetting, one must allege (1) the party whom the defendant aids performed a wrongful act causing an injury, (2) the defendant was aware of his role when he provided the assistance, and (3) the defendant

v. Amazon.com, Inc., Not Reported in Fed. Supp. (2015)

2015 WL 8489973, 117 U.S.P.Q.2d 1584, 44 Media L. Rep. 1250

knowingly and substantially assisted the violation."). Thus, while the Court has already determined that Plaintiff has failed to state a claim for direct infringement by Amazon, it is necessary to determine—for purposes of Plaintiff s vicarious and contributory infringement claims and his aiding and abetting claim—whether Plaintiff has stated a claim for direct copyright infringement against Scales or any Third-Party Seller.

Plaintiffs allegations against Scales for direct copyright infringement are sparse. Specifically, Plaintiff alleges that "[o]n or about January 4, 2015[,] Scales, the third-party agent seller of defendant Amazon, without authorization from [Plaintiff,] unlawfully copied in its entirety his original work of *Vagabond Natural.'"* (R. 1, Compl. at 46.) Like Plaintiffs allegations against Amazon for direct copyright infringement, this blanket assertion is insufficient. Plaintiff merely repeats that Scales "copied" his book, but that is all. Plaintiff provides no details whatsoever which would support his claim for the alleged wrongful copying of *Vagabond Natural* by Scales. Simply put, these claims are insufficient under *Iqbal* and *Twombly.* Because Plaintiff fails to allege a direct infringement claim against Scales or any Third-Party Seller, he cannot state claims for vicarious infringement, contributory infringement, or aiding and abetting against Amazon. *See, e.g., Zachman v. Vohra,* No. 1:15 CV 5293, 2015 WL 7423783, at *5-7 (N.D. Ill. Nov. 23, 2015) (dismissing aiding and abetting claim because the plaintiff "has failed to sufficiently allege the underlying tort"); *Flava Works,* 2012 WL 2459146, at *2-3 (dismissing vicarious and contributory infringement claims where complaint failed to state a direct infringement claim); *Sanchez & Daniels v. Koresko & Assocs.,~No. 04 C 5183.* 2006 WL 3253604, at *6 (N.D. Ill. Nov. 8, 2006) (dismissing aiding and abetting claims because the plaintiff failed to sufficiently allege underlying tortious interference and abuse of process claims). Thus, the Court grants Amazon's motion for judgment on the pleadings as to Counts III, IV, V, and VIII and dismisses them without prejudice.[3]

## III. Negligent Spoliation of Evidence Under State Law (Count VI)

**\*6** Plaintiff also brings a spoliation claim against Amazon premised upon the allegation that. prior to March 2014, Amazon had identified its own name as a seller of Plaintiff s books on its website but, after receiving Plaintiffs notice of infringement, Amazon "removed the identity of its name from its web-display of plaintiff s copyrighted text ...." (R. 1,

Compl. at 51-52.) Plaintiff further alleges that, as a result of Amazon removing its own name as a seller of Plaintiffs books, he has been injured because he is now unable to "ascertain a credible inventory source for the sale of [the] counterfeited books'" and, therefore, cannot "prove at trial that an untold number of units were unlawfully sold to the public." (*Id.* at 52.) Among other contentions, Amazon argues that Plaintiff has failed to plead at least one of the requisite elements of a negligent spoliation claim—a duty owed to Plaintiff to preserve the evidence. (R. 43, D e f s Mot. at 8-9.) Amazon is correct.

"The Supreme Court of Illinois has emphasized ... that the state does not recognize a tort of intentional spoliation of evidence, and that negligent spoliation is not itself an independent tort but rather a type of negligence." *Borsellino v. Goldman Sachs Grp., Inc.,* 477 F.3d 502, 509-10 (7th Cir. 2007) (collecting cases). Therefore, a claim for spoliation of evidence is analyzed "as an ordinary negligence claim." *Id.* at 510. "A plaintiff must plead the existence of a duty owed by the defendant to the plaintiff, a breach of that duty, an injury proximately caused by the breach, and damages." *Boyd v. Travelers Ins. Co.,* 652 N.E.2d 267, 270 (Ill. 1995). As to the first element of this claim, "[t]he general rule is that there is no duty to preserve evidence." *Id.* However, in certain circumstances, a duty can arise. *Id.* The Illinois Supreme Court has established a two-prong test to determine whether a party has a duty to preserve evidence. *Dardeen v. Kuehling,* 821 N.E.2d 227, 231 (Ill. 2004); *Boyd,* 652 N.E.2d at 270-71. First, a duty may arise through an agreement, contract, statute, special circumstance, or the defendant's voluntary assumption of a duty through affirmative conduct. *Dardeen,* 821 N.E.2d at 231. If a duty arises, then the Court must determine whether that duty extends to the evidence at issue, in other words, whether a reasonable person should have foreseen that the evidence was material to a potential civil action. *Id.* If the plaintiff fails to satisfy the first prong, there is no duty and the Court's analysis need go no further. *Id; see e.g., Grayson v. City of Aurora, Ill.,* No. 1:13-cv01705, 2014 WL 7466763, at *2-3 (N.D. Ill. Dec. 31, 2014) (granting motion to dismiss spoliation claim and stating "because [the plaintiff] does not fulfill the relationship prong, the Court need not discuss foreseeability").

Plaintiff does not allege in the Complaint, or in his response to Amazon's motion, that an agreement, contract, statute, or voluntary undertaking created a duty to preserve any evidence.[4] Accordingly, Plaintiff appears to be relying on the "special circumstances'" exception to the general rule

2015 WL 8489973, 117 U.S.P.Q.2d 1584, 44 Media L. Rep. 1250

that there is no duty to preserve evidence. *See Boyd,* 652 N.E.2d at 271. Illinois courts have not precisely defined what constitutes a "special circumstance," but "something more than possession and control are required, such as a request by the plaintiff to preserve the evidence and/or the defendant's segregation of the evidence for the plaintiffs benefit." *Martin v. Keeley & Sons, Inc.,* 979 N.E.2d 22, 31 (Ill. 2012). *See id.* (rejecting the plaintiffs argument that the defendant's exclusive possession, control, and destruction of evidence, coupled with lack of opportunity for the plaintiff to request the evidence be preserved, was sufficient to establish duty); *see also Chubb Indem. Ins. Co. v. 21 E. Cedar, LLC,* No. 10 CV 7111, 2013 WL 5663496, at *4 (N.D. Ill. Oct. 17, 2013) (holding that the counterclaim's allegation that the plaintiff "had the ability to preserve the premises" did not provide a basis for the existence of a duty, including a "special circumstance" giving rise to a duty). Similarly, courts have held that a potential defendant, despite being aware of the plaintiffs injury, has no duty to preserve evidence if the plaintiff does not specifically ask the defendant to preserve the evidence before it is destroyed in the ordinary course of business. *See, e.g., Olivarius v. Tharaldson Prop. Mgmt.,* 695 F. Supp. 2d 824, 830 (N.D. Ill. 2010) (finding no special circumstances where plaintiff merely notified defendant of the injury and defendant destroyed the evidence pursuant to ordinary business practices before litigation began); *Welch v. Wal-Mart Stores, Inc.,* No. 04 C 50023, 2004 WL 1510021, at *3-4 (N.D. Ill. July 1, 2004) (finding that Wal-Mart had no duty to preserve videotape of plaintiff who was injured on the premises even though Wal-Mart allegedly had notice of the injury and possession of the videotape).

 *7 Here, Plaintiff alleges that Amazon owed a duty to Plaintiff "by reason of its affirmative act of spoliation of evidence," and that because Amazon is a "tortfeasor," it has "[a] duty to assist [its] victim." (R. 1, Compl. at 51-52.) These allegations fail for numerous reasons. First, Plaintiffs claim that Amazon owed a duty to preserve any evidence based upon its own act of evidence destruction is circular and nonsensical. Plaintiff must allege the existence of a duty separate and apart from Plaintiffs own subjective belief that Amazon has a duty. His allegation is insufficient. Next, as previously stated, there is no general duty to preserve evidence. *Boyd,* 652 N.E.2d at 270-71. Alleging that Amazon is a "tortfeasor" and, therefore, has a duty to its victim (Plaintiff) is nothing more than an allegation that Amazon has a general duty to preserve evidence—which it does not.

Finally, the Complaint contains no other allegations demonstrating the "special circumstances" exception. Indeed, Plaintiff never alleges that he specifically asked Amazon to retain any evidence. While Plaintiff alleges that in March 2014 he wrote Amazon a letter regarding the sale of *Vagabond Natural* and *Vagabond Spiritual,* the letter—which is quoted in the Complaint and attached as an exhibit—contains no requests for Amazon to preserve any evidence. (R. 1, Compl. at 12-14.) In fact, the letter requests that Amazon "remove the aforestated [sic] titles from all of your websites ...." (R. 1, Ex. 8 to Compl.) In addition, there are no allegations that Amazon informed Plaintiff that it intended to preserve any evidence, or that Amazon voluntarily segregated any evidence for Plaintiffs benefit. By failing to allege "something more than possession and control," *Martin,* 979 N.E.2d at 31, or that he specifically requested Amazon to preserve evidence, Plaintiff fails to plead the special circumstances that gave rise to a duty by Amazon.

Because the Court finds that Plaintiff failed to plausibly allege that Amazon owed him a duty to preserve evidence, the Court need not address Amazon's remaining arguments regarding causation and damages. The Court grants Amazon's motion for judgment on the pleadings as to Count VI and dismisses Plaintiffs spoliation claim without prejudice.

**IV. Violation of Illinois Right of Publicity Act (Count VII)**
Plaintiff claims that, beginning in March 2014, Amazon violated the IRPA, and misappropriated Plaintiffs name and likeness when it ran ads for "Pampers Cruisers," "U-verse High Speed Internet," Amazon's own Kindle, "Trip Advisor, Urban Outfitters, and the Orbis Corporation" alongside Plaintiffs name. (R. 1, Compl. at 55-56.) Plaintiff claims that he never gave Amazon "consent to use the identity of his name or likeness with the [ ] Ad exhibits," and that these ads were for the benefit of "Amazon, Proctor and Gamble & AT&T." (*Id.* at 55.)

As Amazon argues, Plaintiffs claim is prohibited by the IRPA. (R. 43, Def.'s Mot. at 10.) The IRPA expressly "does not apply to ... use of an individual's name in truthfully identifying the person as the author of a particular work." 765 III. COMP. STAT. 1075/35(b)(3). Put simply, Plaintiffs claim is premised on Amazon running a series of ads alongside the postings of *Vagabond Natural* and *Vagabond Spiritual,* which lists Plaintiffs name as the author. Plaintiff admits that he is the author of these two books, and he does not make any additional allegations demonstrating how Amazon misappropriated his name or likeness. Plaintiffs response does

v. Amazon.com, Inc., Not Reported in Fed. Supp. (2015)

2015 WL 8489973, 117 U.S.P.Q.2d 1584, 44 Media L. Rep. 1250

not address the IRPA or direct the Court to any case law that would demonstrate that the exclusion does not preclude his claim. *(See generally* R. 48, PL's Resp. at 12.) Plaintiff cannot bring a claim under the IRPA merely based upon Amazon listing his name as an author of *Vagabond Natural* and *Vagabond Spiritual* alongside the ads that Amazon posts. Thus, the Court grants Amazon's motion for judgment on the pleadings as to Count VII and dismisses Plaintiffs Right of Publicity Act claim without prejudice.

### V. Intentional Infliction of Emotional Distress (Count IX)

**\*8** Finally, Plaintiff brings a state law intentional infliction of emotional distress claim against Amazon based upon its repeated posting of Plaintiff s books and failure to remove the postings. (R. 1, Compl. at 61-63.) However, Plaintiffs Complaint fails to state a cause of action for intentional infliction of emotional distress.

To state a claim for intentional infliction of emotional distress: (1) the conduct involved must be truly extreme and outrageous; (2) the actor must either intend that his conduct inflict severe emotional distress or know that there is at least a high probability that his conduct will cause severe emotional distress; and (3) the conduct must in fact cause severe emotional distress. *McGrath v. Fahey,* 533 N.E.2d 806, 809 (Ill. 1988). As to the first element of this claim, Illinois courts have consistently held that the conduct must be particularly egregious. Specifically.

> [i]t has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency.

*Pub. Fin. Corp. v. Davis,* 360 N.E.2d 765, 767 (Ill. 1976) (citation omitted); *see also Swearnigen-El v. Cook Cty. Sheriff's Dep't,* 602 F.3d 852, 864 (7th Cir. 2010) ("To meet the extreme and outrageous standard, the defendants' conduct must be so extreme as to go beyond all possible bounds of decency, and to be regarded as intolerable in a civilized community." (citation internal quotation marks omitted)). "The Illinois Supreme Court has offered the following examples of conduct satisfying the outrageousness element: a decade-long pattern of domestic abuse involving frequent physical injury; a police officer's refusal to break down a door

for a sexual assault victim while an intruder raped the victim's daughter on the other side; on-air comments by radio disc-jockeys that a caller's wife and child, sufferers of 'Elephant Man disease,' had abnormally large head and deformed heads." *Carroll v. YMCA of Metro Chi.*, 13-CV-9307, 2015 WL 149024, at \*5 (N.D. Ill. Jan. 9, 2015) (collecting Illinois Supreme Court case law) (internal citations omitted).

In support of his claim, Plaintiff alleges: (1) it is "outrageous that Amazon a wealthy company would take from [Plaintiff] who is financially poor"; (2) Amazon is "intentionally disregard[ing] ... [Plaintiff] as a legitimate inventory source, avariciously preferring unlawful means over the lawful"; (3) Amazon "having assumed a duty to know the credibility of its inventory source and with repeated notifications since March of 2014 through January of 2015 to remove its unauthorized listings, [Amazon] ... knew that its conduct would cause [Plaintiff] severe emotional distress"; and (4) Plaintiff has "experienced emotional distress which is ongoing at seeing the theft and exploitation of his property on Amazon's website." (R. 1, Compl. at 61-62.) In essence, Plaintiff is upset because Amazon allegedly failed—despite Plaintiffs repeated requests—to take down the postings of *Vagabond Natural* and *Vagabond Spiritual.*

**\*9** Put simply, these allegations would not cause the Court or "an average member of the community ... to exclaim 'Outrageous!'" *Van Stan v. Fancy Colours & Co.,* 125 F.3d 563, 567 (7th Cir. 1997) (citation omitted). "Under no circumstances [do] mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities qualify as outrageous conduct." *Feltmeier v. Feltmeier,* 798 N.E.2d 75, 80 (Ill. 2003) (internal citations and internal quotation marks omitted). While Amazon's alleged actions were no doubt upsetting, the Court agrees with Amazon that the conduct described by Plaintiff is not the type of extreme and outrageous conduct that would give rise to an intentional infliction of emotional distress claim. While Plaintiff claims that he asked Amazon to remove these listings at least three times, Amazon's alleged failure to remove the postings in a timely fashion does not demonstrate behavior that exceeds all bounds of human decency. As pled and in light of the case law, Amazon's actions simply do not rise to the level of truly extreme and outrageous conduct. Thus, because Plaintiff fails to allege sufficient extreme and outrageous conduct, the Court grants Amazon's motion for judgment on the pleadings as to Count IX and dismisses Plaintiffs intentional infliction of emotional distress claim without prejudice.

Case: 1:22-cv-05660 Document #: 27-1 Filed: 03/06/23 Page 45 of 131 PageID #:253

v. Amazon.com, Inc., Not Reported in Fed. Supp. (2015)

2015 WL 8489973, 117 U.S.P.Q.2d 1584, 44 Media L. Rep. 1250

## CONCLUSION

Amazon's motion for judgment on the pleadings (R. 42) is GRANTED. However, while the Court dismisses all of Plaintiff s claims, his failure to adequately plead his claims at this early stage in the litigation is not fatal. The U.S. Court of Appeals for the Seventh Circuit has directed that "if a district court dismisses for failure to state a claim, the court should give the party one opportunity to try to cure the problem, even if the court is skeptical about the prospects for success." *Bausch v. Stryker,* 630 F.3d 546, 562 (7th Cir. 2010). In the interest of justice, since Plaintiff is proceeding *pro se,* he will be granted leave to file an amended complaint consistent with this opinion by February 16, 2016. Plaintiff is again urged to consult with an attorney prior to filing any proposed amended complaint in this matter. Plaintiffs failure to file an amended complaint by the deadline will result in the dismissal of this case with prejudice.

Finally, the Court again requests that Amazon attempt to resolve this dispute with Plaintiff by making a formal settlement offer to Plaintiff. The Court understands why Plaintiff beliefs his works have been unfairly used, but this alone does not avoid the result herein.

### All Citations

Not Reported in Fed. Supp., 2015 WL 8489973, 117 U.S.P.Q.2d 1584, 44 Media L. Rep. 1250

### Footnotes

1   Plaintiffs Complaint has two claims titled "Count VI," but no claim titled "Count VII." (R. 1, Compl. at 51, 55.) For the sake of clarity, the Court will refer to Plaintiffs "Negligence—Spoliation of Evidence" claim as Count VI and his "Right of Publicity" claim as Count VII.

2   In support of his vicarious copyright infringement claim, Plaintiff alleges that: (1) Amazon "had the right and ability to supervise the infringing conduct of its sold ... counterfeits; for which Amazon's liability to [P]laintiff was [ ] foreseeable." (*See* R. 1, Compl. at 43-44; *see also id.* at 48-50 (In support of his contributory copyright infringement claim, Plaintiff alleges: (1) "Scales, a primary infringer, directly infringed on [Plaintiffs] copyrights"; and (2) "Amazon through its personal conduct assist[ed] in the primary infringements when it unlawfully processed an infringing sale of [Plaintiff s] book *Vagabond Natural* despite having received repeated notices of its infringements."); *id.* at 59-60 (In support of his aiding and abetting claim, Plaintiff alleges that: (1) Scales and Third-Party Sellers "performed the wrongful acts of producing counterfeit products not authorized by" Plaintiff; and (2) despite knowing that the listing of his books was "unauthorized," Amazon "assisted in the violation of selling counterfeit products when it processed" the sale of the books and provided "support services through its website[ ]" to Scales and Third-Party Sellers.).)

3   It is worth briefly discussing Plaintiffs contributory infringement claim so that he will be on notice of what is expected in an amended complaint should he choose to replead his claim. "[T]he succinct definition of contributory infringement [is] ... personal conduct that encourages or assists the infringement." *Flava Works, Inc. v. Gunter,* 689 F.3d 754, 757 (7th Cir. 2012) (citation and internal quotation marks omitted). Notably, the proper pleading of a contributory copyright infringement cause of action has been the subject of significant litigation leading to an array of conflicting opinions. *See Gordon v. Pearson Educ, Inc.,* 85 F. Supp. 3d 813, 817-23 (E.D. Pa. 2015) (collecting cases from numerous district courts, including the Northern District of Illinois, and discussing conflicting rulings in the face of similar contributory copyright infringement allegations). However, despite the conflicting case law, Plaintiffs claim fails to meet even the lowest threshold requirements. In support of Plaintiff s contributory infringement claim, he identifies two "material contributions" by Amazon to Scales' and Third-Party Sellers' direct copyright infringement. First, that "Amazon materially contributed to the infringement when it. ... copied [ ] and displayed on its website ... *Vagabond Natural.*" (R. 1, Compl. at 49.) However, this allegation fails because the Court has already ruled that the posting of a title alone does not constitute wrongful conduct and, thus, *assisting* in the posting of a title cannot form the basis for any claim. Second, Plaintiff alleges that Amazon materially contributed to infringement because it "processed an infringing sale of... *Vagabond Natural....*" (*Id.*) However, a claim that Amazon processed a sale of *Vagabond Natural,* even if it was aware of the infringement, is insufficient to support a claim for contributory infringement. *Perfect 10, Inc. v. Visa Int'l Serv., Ass'n,* 494 F.3d 788, 807 (9th Cir. 2007) (allegations that credit card company processed payment and provided "critical support to websites" were insufficient to state a claim for contributory infringement). At a minimum, if Plaintiff chooses to amend the Complaint, he

2015 WL 8489973, 117 U.S.P.Q.2d 1584, 44 Media L. Rep. 1250

must articulate how Amazon allegedly caused, induced, or encouraged Scales or Third-Party Sellers to infringe Plaintiffs books.

4    While not entirely clear, Plaintiffs response does reference the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 512, and *ALSScan, Inc. v. RemarQ Communities, Inc.*, 239 F.3d 619, 625 (4th Cir. 2001), to suggest that Amazon had a duty to preserve evidence. (R. 48, PL's Resp. at 11.) However, Plaintiff provides little discussion on this issue, and the Court has not found any case law holding that the DMCA imposes a statutory duty on online retailers to preserve evidence on behalf of a potential litigant.

End of Document                                        © 2023 Thomson Reuters. No claim to original U.S. Government Works.

Case: 1:22-cv-05660 Document #: 27-1 Filed: 03/06/23 Page 47 of 131 PageID #:255

Design Basics, LLC v. WK Olson Architects, Inc., Not Reported in Fed. Supp. (2018)

2018 WL 3629309

KeyCite Yellow Flag - Negative Treatment
Distinguished by Uniface B.V. v. Sysmex America, Inc., N.D.Ill., June 4, 2021

2018 WL 3629309
Only the Westlaw citation is currently available.
United States District Court, N.D. Illinois, Eastern Division.

DESIGN BASICS, LLC, and Carmichael
& Dame Designs, Inc., Plaintiffs,

v.

WK OLSON ARCHITECTS, INC., William
K. Olson, R&D Custom Homes, Daniel
DeVivio and Steven Spano, Defendants.

No. 17 C 7432
|
Signed 07/31/2018

**Attorneys and Law Firms**

Sean J. Quinn, Robert John Kuehn, Ladue, Curran & Kuehn LLC, South Bend, IN, for Plaintiffs.

Edward Fitzsimmons Dunne, Michelle M. Blum, Karbal, Cohen, Economou, Silk & Dunne, LLC, Chicago, IL, for Defendants.

**OPINION AND ORDER**

SARA L. ELLIS, United States District Judge

*1 Plaintiffs Design Basics, LLC ("Design Basics") and Carmichael & Dame Designs, Inc. ("CDD"), architectural design companies that create home plans and sell design licenses, discovered home plans on Defendants WK Olson Architects, Inc. ("WK Olson") and R&D Custom Homes' websites that appear to copy those of Design Basics and CDD. To protect their copyrights, Plaintiffs filed this suit against WK Olson, its controlling shareholder William K. Olson, R&D Custom Homes, and its controlling shareholders, Daniel DeVivio and Rocky Spano. In their first amended complaint, Plaintiffs bring claims for willful and non-willful copyright infringement in violation of the Copyright Act, 17 U.S.C. § 106, vicarious infringement against the controlling shareholders, and violation of the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 1202.[1]

WK Olson and Olson move to dismiss the first amended complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). Because Plaintiffs have not met their pleading burden, instead only setting forth conclusory allegations to support their claims, the Court dismisses the first amended complaint without prejudice.

**BACKGROUND**[2]

Design Basics, a limited liability company, creates, markets, publishes, and licenses the use of "architectural works." Doc. 31 at ¶ 2. CDD engages in similar work to Design Basics, and indeed, one of its principals purchased Design Basics with another individual in 2009. Olson controls WK Olson, another corporation involved in residential architecture and design.

Design Basics and CDD have created over 350 new home design plans since 2009, which they have registered with the United States Copyright Office. Design Basics and CDD offer single-build licenses for their home designs for a fee ranging from $700 to $6,000. Since 2009, they have generated over $6 million in licensing revenue from over 8,000 construction licenses. Each of Plaintiffs' designs takes between 55 and 90 hours to complete and involves creating a preliminary sketch, a redline, and a plan, and then drafting construction drawings. Plaintiffs have ample freedom to create whatever designs they choose, aside from building code requirements such as hallway width and window opening sizes.

In addition to creating its own designs, Design Basics advertises, markets, and facilitates the sale of several other companies' designs, including CDD's. Design Basics has used various methods to make its design plans available to the public, including design catalogs, displays at stores like Menards, conventions and shows, and websites, including its own, www.designbasics.com. While Design Basics has focused more on its online presence in recent years, it previously heavily marketed its designs through catalog distribution, sending them directly to businesses, including WK Olson.

*2 Design Basics has found that, as its marketing has increased, so has the piracy of its copyrighted home designs. For example, one lumberyard's employees admitted to copying Design Basics' works, and Design Basics also encountered a builder that did not even bother changing the names of three of Design Basics' plans that the builder used

Design Basics, LLC v. WK Olson Architects, Inc., Not Reported in Fed. Supp. (2018)

2018 WL 3629309

without a license. This has led Design Basics to bring lawsuits to discourage copyright infringement of its architectural works.

At the end of 2015, Paul Foresman, Design Basics' Director of Business Development, was researching infringement cases in Illinois and Indiana when he came across R & D Custom Homes' website, rdcustomhomes.net. That website's "Floor Plan" section directed him to another webpage run by WK Olson, www.olsonplans.com. Foresman found several designs on www.olsonplans.com that looked similar to Design Basics' and CDD's designs. Specifically, these plans, identified by plan number,[3] appeared to copy from eleven of Design Basics' plans and one of CDD's plans.[4]

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *Anchorbank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). To survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of a claim's basis but must also be facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L.Ed. 2d 868 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L.Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## ANALYSIS

### I. Copyright Infringement Claims (Counts 1-8)

To state a claim for copyright infringement under 17 U.S.C. § 106, Plaintiffs must plausibly allege that (1) they own a valid copyright, and (2) WK Olson copied "constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361, 111 S. Ct. 1282, 113 L.Ed. 2d 358 (1991). Here, Plaintiffs allege both willful and non-willful copyright infringement. In the case of willful infringement, the Copyright Act allows for an increased statutory damage award under 17 U.S.C. § 504(c)(2). Willful infringement occurs where a defendant "knows that its conduct is an infringement or if the infringer has acted in reckless disregard of the copyright owner's right." *Wildlife Exp. Corp. v. Carol Wright Sales, Inc.*, 18 F.3d 502, 511 (7th Cir. 1994) (citation omitted). Plaintiffs also seek to hold Olson vicariously liable for copyright infringement; however, they must first "plead sufficient facts for a valid claim of direct copyright infringement" against WK Olson. *Hart v. Amazon.com, Inc.*, No. 15-C-01217, 2015 WL 8489973, at *5 (N.D. Ill. Dec. 8, 2015).

First, although WK Olson and Olson acknowledge that Plaintiffs hold valid copyrights, they argue that Plaintiffs' claims fail to sufficiently set forth the required second prong of a copyright infringement claim. Plaintiffs may demonstrate copying of constituent elements in two ways: (1) through direct evidence, such as an admission of copying by the defendant; or (2) showing that the defendant had an opportunity to copy the original, referred to as "access," and that the works in question are "substantially similar" to each other, or, in other words, "that the two works share enough unique features to give rise to a breach of the duty not to copy another's work." *Peters v. West*, 692 F.3d 629, 633–34 (7th Cir. 2012).

 *3 Plaintiffs respond that they have established this second prong through direct evidence, alleging that WK Olson "*copied*" the works in question, and so they claim they need not allege access and substantial similarity. Doc. 45 at 7. But Plaintiffs must do more than simply allege copying in a conclusory manner; they must provide some facts in their first amended complaint to put WK Olson on notice of the factual basis for that allegation. *Twombly*, 550 U.S. at 555; *Hart*, 2015 WL 8489973, at *4 (although infringement claims are not held to Rule 9(b)'s particularity standards, plaintiff must plead some factual content to support direct infringement). Although Plaintiffs allege that WK Olson's plans infringe certain of Plaintiffs' plans, they do not provide even a representative example of how WK Olson's plans directly replicate theirs or include similar features, leaving WK Olson guessing as to what forms the basis of Plaintiffs' infringement claim.

The Court acknowledges that Plaintiffs may not have direct evidence of copying at the pleading stage, which is why plaintiffs often seek to allege copying circumstantially by demonstrating access and substantial similarity. *See Hobbs v. John*, 722 F.3d 1089, 1094 (7th Cir. 2013) (noting that

2018 WL 3629309

"defendants rarely admit to copying the works of others," meaning that at the pleading stage, plaintiffs may establish the second element of infringement by showing access and substantial similarity to allow the inference that the defendant copying the work at issue. Here, even assuming that Plaintiffs have sufficiently pleaded access, they have not pleaded sufficient facts to support the existence of a substantial similarity between their twelve design plans and the eighteen allegedly infringing plans designed by WK Olson. To determine substantial similarity, the Court considers whether "the two works share enough unique features to give rise to a breach of the duty not to copy another's work." *Peters,* 692 F.3d at 633–34. To make this determination, the Court "must first identify which aspects of [Plaintiffs'] work, if any, are protectable by copyright," and then analyze "whether the allegedly infringing work is so similar to [Plaintiffs'] work that an ordinary reasonable person would conclude that [WK Olson] unlawfully appropriated the protectable elements of the work." *Nova Design Build, Inc. v. Grace Hotels LLC,* 652 F.3d 814, 817–18 (7th Cir. 2011) (citations omitted) (internal quotation marks omitted). But the Court cannot even begin this analysis because Plaintiffs have not identified the elements of their copyrighted plans that they contend are protected by copyright law or those elements of WK Olson's plans that they claim infringe on their copyrights. *See Joint Comm'n on Accreditation of Healthcare Orgs. v. The Greeley Co.,* No. 14 C 10225, 2016 WL 1450051, at *6 (N.D. Ill. Apr. 13, 2016) (dismissing complaint where plaintiffs identified three instances (.27%) from defendants' work that allegedly infringed plaintiffs' over 700-page work, noting that such a "minimal degree of duplication is not a reproduction of a substantial portion of the plaintiffs' work" that would satisfy Rule 8); *cf. Joint Comm'n on Accreditation of Healthcare Orgs. v. Fortis Bus. Media LLC,* No. 14 C 10225, 2017 WL 3895593, at *6–8 (N.D. Ill. Sept. 6, 2017) (finding that, in amended complaint, plaintiff sufficiently alleged substantial similarity by presenting an extensive side-by-side comparison of its work with that of defendant's that included identical or paraphrased language). Nor have Plaintiffs attached their plans and WK Olson's plans to the first amended complaint, incorporating these elements by reference to the complaint.[5] Without any identification of similar elements and instead relying only on a blanket statement of copying without any factual basis for support, Plaintiffs have failed to sufficiently suggest substantial similarity. *Cf. TopstepTrader, LLC v. OneUp Trader, LLC,* No. 17 C 4412, 2018 WL 1859040, at *8 (N.D. Ill. Apr. 18, 2018) (plaintiff alleged infringement where it provided specific examples of copying of text, graphs, and tables from its site to defendant's); *Live Face on Web, LLC*

*v. Kam Dev., L.L.C.,* No. 16 C 8604, 2016 WL 7374279, at *3 (N.D. Ill. Dec. 20, 2016) (plaintiff sufficiently alleged substantial similarity by alleging that infringing version of software contained the same letters and prefixes in its code and plaintiff's code).

 **\*4** Plaintiffs argue that WK Olson asks the Court to apply too high of a standard at the motion to dismiss stage. But the Seventh Circuit in recent years has made clear that district courts can address the substantial similarity issue on a Rule 12(b)(6) motion, considering in great detail whether a plaintiff has plausibly alleged that a defendant's work infringes on a copyright. *See Hobbs,* 722 F.3d at 1096 (holding, "as a matter of law," that two songs are not "substantially similar," affirming dismissal of copyright claims on a motion to dismiss); *Peters,* 692 F.3d at 636 (concluding that plaintiff's "claim for copyright infringement fails as a matter of law" at the motion to dismiss stage); *Culver Franchising Sys., Inc. v. Steak N Shake Inc.,* No. 16 C 72, 2016 WL 4158957, at *8 (N.D. Ill. Aug. 5, 2016) (collecting cases). Here, the Court does not even engage in such a substantive analysis of the elements of Plaintiffs' and WK Olson's works. Instead, it dismisses the claims on a pleading failure, finding that Plaintiffs have not even provided WK Olson and the Court with sufficient allegations to determine whether substantial similarity exists. Although Plaintiffs need not provide an exhaustive list of each and every example of infringement, they must at least provide sufficient facts to make their copyright infringement facts plausible. Because Plaintiffs have not done so, the Court dismisses their copyright infringement claims without prejudice.[6]

## II. DMCA Violations (Count 9)

Plaintiffs also bring a claim under the DMCA. The DMCA makes it illegal for a person to knowingly falsify, remove, or alter copyright management information ("CMI"). 17 U.S.C. § 1202. CMI is defined as the information conveyed in connection with copies of a work, such as its title, author, copyright owner, the terms and conditions for use of the work, and identifying numbers or symbols referring to the work's copyright information. 17 U.S.C. § 1202(c). Plaintiffs claim WK Olson and Olson violated § 1202 by removing or omitting Plaintiffs' CMI from WK Olson's allegedly infringing plans. But as with their copyright infringement claims, Plaintiffs fail to sufficiently plead facts to support their boilerplate assertions of the elements of a DMCA claim. *Twombly,* 550 U.S. at 555. Plaintiffs do not identify the CMI at issue in the case, leaving WK Olson and Olson without a basis

**Design Basics, LLC v. WK Olson Architects, Inc., Not Reported in Fed. Supp. (2018)**

2018 WL 3629309

to understand the nature of the claim against them. Therefore, the Court also dismisses this claim without prejudice.

**CONCLUSION**

For the foregoing reasons, the Court grants WK Olson's and Olson's motion to dismiss [36]. The Court dismisses the first amended complaint without prejudice.

**All Citations**

Not Reported in Fed. Supp., 2018 WL 3629309

**Footnotes**

1      Only WK Olson and Olson have filed appearances in the case. The Court entered a default against the remaining defendants on January 11, 2018, before Plaintiffs filed the first amended complaint. *See* Doc. 23. The Court addresses solely the viability of the first amended complaint with respect to WK Olson and Olson.

2      The facts in the background section are taken from Plaintiffs' first amended complaint and are presumed true for the purpose of resolving WK Olson and Olson's motion to dismiss pursuant to Rule 12(b)(6). *See Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011); *Local 15, Int'l Bhd. of Elec. Workers, AFL CIO v. Exelon Corp.*, 495 F.3d 779, 782 (7th Cir. 2007).

3      Plaintiffs list these eighteen plans by plan number at paragraph 80 of the first amended complaint.

4      Plaintiffs list these plans by name and copyright registration number at paragraphs 66 and 67 of the first amended complaint.

5      The Court notes, however, that such incorporation by reference of thirty architectural plans, without any specific explanation of some similarities between them, would also not be an appropriate substitute for the requirement of setting forth a factual basis for copyright infringement.

6      Because the Court concludes that Plaintiffs have not sufficiently alleged the copying element of the copyright infringement claims, this requires the dismissal of both the non-willful and willful copyright infringement claims and the Court need not address whether Plaintiffs have sufficiently alleged the additional intent element for the willful infringement claims. Plaintiffs' vicarious copyright infringement claims against Olson fail as well without an underlying direct infringement claim.

**End of Document**

© 2023 Thomson Reuters. No claim to original U.S. Government Works.

Case: 1:22-cv-05660 Document #: 27-1 Filed: 03/06/23 Page 51 of 131 PageID #:259

Art of Design, Inc. v. Pontoon Boat, LLC, Not Reported in Fed. Supp. (2017)

2017 WL 3608219, 2017 Copr.L.Dec. P 31,139

KeyCite Yellow Flag - Negative Treatment

Distinguished by Gareaux v. Aronik LLC, D.Utah, November 22, 2021

2017 WL 3608219

United States District Court, N.D.
Indiana, South Bend Division.

The ART OF DESIGN, INC., Plaintiff,

v.

PONTOON BOAT, LLC, d/b/a

Bennington and Bennington Marine; and

Hawkeye Boat Sales, Inc., Defendants.

Case No. 3:16-CV-595 JD
|
Signed 08/22/2017

**Attorneys and Law Firms**

John D. Ladue, Sean J. Quinn, Ladue Curran & Kuehn LLC, South Bend, IN, for Plaintiff.

Ryan G. Milligan, Faegre Baker Daniels LLP, South Bend, IN, Amie Peele Carter, Louis T. Perry, Faegre Baker Daniels LLP, Indianapolis, IN, for Defendants.

**OPINION AND ORDER**

JON E. DEGUILIO, Judge

**\*1** Plaintiff, The Art of Design, Inc. ("Plaintiff"), alleges that it applied its Shatter Graphics designs to a limited number of pontoon boats for Pontoon Boat LLC, d/b/ a Bennington and Bennington Marine ("Bennington") in exchange for payment. Continuing thereafter, Plaintiff alleges that Bennington incorporated the Shatter Graphics designs, or substantially similar designs, on its products without Plaintiff's authorization. Plaintiff also alleges that Bennington passed along the Shatter Graphics designs to Hawkeye Boat Sales, Inc. ("Hawkeye"), and that Hawkeye likewise began selling products incorporating the Shatter Graphics designs or substantially similar designs.

Bennington and Hawkeye (collectively, "Defendants") have moved to dismiss Plaintiff's complaint pursuant to Fed. R. Civ. P. Rule 12(b)(6) for failure to state a claim upon which relief can be granted. [DE 13] Apart from arguing a lack of sufficiently pled allegations, Defendants raise the issue of preemption regarding the state law claims. For the reasons stated below, the Court grants Defendants' motion.

**FACTUAL ALLEGATIONS**

Plaintiff designs custom artwork that can be applied to a variety of "canvases," such as boats, motorcoaches, airplanes, helicopters, and recreational vehicles. [DE 1 ¶¶ 7-8] Plaintiff alleges that it is the sole author, creator, and owner of certain designs called "Shatter Graphics." *Id.* ¶ 12. The two Shatter Graphics designs at issue here are registered with the U.S. Copyright Office under registration numbers VA 1-979-388 (the "'388 design") and 1-982-002 (the "'002 design"). *Id.* ¶ 13. But while as of October 28, 2016, the '388 design appears to be authored by and registered to Plaintiff [DE 14-1], the '002 design is authored by and registered to an individual named Dean Loucks. *Id.*[1] Dean Loucks is not a party to this action.[2]

**\*2** Defendants sell products in the marine industry, including pontoon boats. [DE 1 ¶ 14] In or around 2011, Bennington reached out to Plaintiff and requested that Plaintiff propose a design for application to a limited number of Bennington's pontoon boats. *Id.* ¶ 17. Each of the designs presented to Bennington contained the following notice:

> TAOD DESIGNS ARE THE PROPERTY OF TAOD. THEY ARE NOT TO BE REPRODUCED, COPIED OR FORWARDED TO ANYONE WITHOUT WRITTEN PERMISSION.

*Id.* ¶ 18. After reviewing the proposed schemes, Bennington selected the Shatter Graphics designs, and the two parties entered into an agreement whereby Plaintiff would apply the designs to the exterior of a limited number of pontoon boats in exchange for payment. *Id.* ¶¶ 18-19. Pursuant to the agreement, Plaintiff painted a limited number of Bennington's boats, and the corresponding invoice indicates that Bennington tendered payment for these services. [DE 1 ¶ 20; DE 1-1]

Sometime after this transaction was completed, Plaintiff alleges that Bennington continued to market, sell, and distribute products displaying the Shatter Graphics design, or substantially similar designs, without Plaintiff's authorization. [DE 1 ¶ 21] According to Plaintiff, these products can be found on Bennington's website: www.benningtonmarine.com. *Id.* ¶ 24. Plaintiff also alleges that Bennington passed along the Shatter Graphics designs,

Art of Design, Inc. v. Pontoon Boat, LLC, Not Reported in Fed. Supp. (2017)

2017 WL 3608219, 2017 Copr.L.Dec. P 31,139

or substantially similar designs, to another marine products retailer, Hawkeye, without Plaintiff's authorization. *Id.* ¶ 22. Hawkeye then likewise allegedly marketed, sold, and distributed products displaying these designs without Plaintiff's consent, and these designs can apparently be found on Hawkeye's website: www.hawkeyeboatsales.com. *Id.* ¶¶ 23, 25.

It is against the backdrop of these facts and allegations that the Court conducts its analysis.

## STANDARD

In reviewing a motion to dismiss for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6), the Court construes the complaint in the light most favorable to the plaintiff, accepts the factual allegations as true, and draws all reasonable inferences in the plaintiff's favor. *Reynolds v. CB Sports Bar, Inc.*, 623 F.3d 1143, 1146 (7th Cir. 2010). A complaint must contain only a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). That statement must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and raise a right to relief above the speculative level. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). However, a plaintiff's claim need only be plausible, not probable. *Indep. Trust Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 935 (7th Cir. 2012). Evaluating whether a plaintiff's claim is " 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.' " *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678).

## DISCUSSION

Plaintiff asserts six total claims in its Complaint: breach of contract against Bennington (I), unjust enrichment against both Defendants (II), and unfair competition against both Defendants (IV) under Indiana state law; copyright infringement against both Defendants (III) and inducement of copyright infringement against Bennington (V) under the Copyright Act, 17 U.S.C. §§ 106, 106A, 501; and violation of the Digital Millennium Copyright Act (the "DMCA") against

both Defendants (VI), under 17 U.S.C. § 1202. The Court proceeds as follows:

## I. State Law Claims

### A. Breach of Contract—Count I

 **\*3** Plaintiff levies the state law claim for breach of contract against Bennington. The elements of breach of contract under Indiana law are: (1) the existence of a contract; (2) the defendant's breach thereof; and (3) damages. *Ruse v. Bleeke*, 914 N.E.2d 1, 11 (Ind. Ct. App. 2009). Plaintiff alleges that around 2011, Bennington requested that Plaintiff propose a design to be applied to a limited number of Bennington pontoon boats. [DE 1 ¶ 17] Plaintiff and Bennington thereby allegedly entered into an agreement under which Plaintiff would apply graphics to a limited number of Bennington's boats in exchange for payment by Bennington. *Id.* ¶ 19. Plaintiff performed this obligation and painted the Shatter Graphic design onto a limited number of boats. *Id.* at ¶ 20. Plaintiff sent an invoice for its services under the contract to Bennington, and Bennington paid Plaintiff for those services. [DE 1-1] (invoice stamped with "PAID"). Plaintiff does not allege that Bennington did not pay for the graphics applied to that limited number of pontoon boats. Thus, based on Plaintiff's own allegations, the contract was satisfied once Bennington paid Plaintiff for those services listed on the invoice. Plaintiff does not attach the contract at issue and does not allege any additional terms of the agreement; noticeably absent are any allegations of terms expanding the parties' performance beyond the transaction shown by the invoice, or any terms governing Bennington's future conduct and/or use of the designs provided to it. Put another way, Plaintiff here is alleging breach of contractual terms that it does not even allege to exist—its breach of contract claim is thus neither plausible nor one that raises a right to relief above speculation. *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 570. Therefore, Plaintiff's claim for breach of contract against Bennington is dismissed without prejudice.

### B. Unjust Enrichment—Count II

Plaintiff next brings a claim for unjust enrichment against both Bennington and Hawkeye. The Copyright Act, however, preempts state law claims, legal or equitable, "that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 ...." 17 U.S.C. §

Case: 1:22-cv-05660 Document #: 27-1 Filed: 03/06/23 Page 53 of 131 PageID #:261

Art of Design, Inc. v. Pontoon Boat, LLC, Not Reported in Fed. Supp. (2017)

2017 WL 3608219, 2017 Copr.L.Dec. P 31,139

301(a). Section 301(b) then adds: "Nothing in this title annuls or limits any rights or remedies under the common law or statutes of any State with respect to ... activities violating legal or equitable rights within the general scope of copyright as specified by section 106 ...." 17 U.S.C. § 301(b)(3) (emphasis added). This Circuit utilizes a two-pronged test to determine if a right under state law is preempted by the Copyright Act: "First, the work in which the right is asserted must be fixed in tangible form and come within the subject matter of copyright as specified in § 102. Second, the right must be equivalent to any of the rights specified in § 106." *Baltimore Orioles v. Major League Baseball Players*, 805 F.2d 663, 674 (7th Cir. 1986). Defendants do not appear to contest whether the designs are fixed in "tangible form" within the scope of section 102. So, the issue arises over the second prong of the *Baltimore Orioles* test and the language of section 301(b)(3), "which excludes from preemption claims that require an extra element for the state cause of action." *Micro Data Base Sys., Inc. v. Nellcor Puritan- Bennett, Inc.*, 20 F. Supp. 2d 1258, 1261 (N.D. Ind. 1998). In other words, to survive, Plaintiff's unjust enrichment claim must be based on at least one additional element not already covered by the alleged infringing or copying of the Shatter Graphics designs. Otherwise, the rights asserted by the unjust enrichment claim are equivalent to the rights specified in section 106 and are preempted. *See Baltimore Orioles*, 20 F. Supp. 2d at 677.

Under Indiana state law, "to prevail on a claim for unjust enrichment, a plaintiff must establish that a measurable benefit has been conferred on the defendant under such circumstances that the defendant's retention of the benefit without payment would be unjust." *Estate of Henry v. Woods*, —— N.E. 3d ——, (Ct. App. Ind. May 19, 2017). However, claims for unjust enrichment that essentially boil down to copyright infringement complaints will not survive. *See, e.g.*, *Micro Data Base Sys.*, 20 F. Supp. 2d at 1263 (dismissing unjust enrichment claim that contained no additional component that would otherwise set it apart from the exclusive rights set out in the Copyright Act); *Stereo Optical Co. v. Judy*, No. 08 C 2512, 2008 WL 4185689, at *4 (N.D. Ill. Sept. 8, 2008) (same); *Stephen & Hayes Const., Inc. v. Meadowbrook Homes, Inc.*, 988 F. Supp. 1194, 1200-01 (N.D. Ill. 1998) (same).

The elements of an unjust enrichment claim alone do not render such a claim preempted, but "because one can retain a benefit to the plaintiff's detriment in an infinite variety of ways," the Court "focuses on the factual basis underlying

the claims" to determine whether the unjust enrichment and copyright claims differ qualitatively. *Stephen & Hayes*, 988 F. Supp. at 1200. Here, Plaintiff alleges that Bennington and Hawkeye "receive[d] a measureable benefit by receiving the value of TAOD's *labor, services, and designs* without paying TAOD." [DE 1 ¶ 35] (emphasis added). Plaintiff distinguishes the "labor and services" contained in its unjust enrichment claim from the value of its designs, but the only "labor and services" allegedly to have been rendered by Plaintiff were those conferred when it painted the limited number of pontoon boats for Bennington. As discussed above, the facts as alleged show that those services were paid for by Bennington. That leaves only Plaintiff's theory that Defendants reproduced or prepared derivative works based upon the designs, which overlaps with the rights in the Copyright Act, hence preempting this state law claim. *See* 17 U.S.C. § 106; *see also Baltimore Orioles, Inc.*, 805 F.2d at 77 ("a right is equivalent to one of the rights comprised by a copyright if it 'is infringed by the mere act of reproduction, performance, distribution or display.' ") (citations omitted).

**\*4** Moreover, as Hawkeye was not privy to the contractual transaction alleged between Plaintiff and Bennington, it did not receive the labor and services alleged. Thus, Plaintiff's unjust enrichment claim, as alleged against Hawkeye, further fails the Rule 12(b)(6) analysis for lack of plausibility. *Iqbal*, 556 U.S. at 678. Plaintiff's unjust enrichment claim, with regard to both Defendants, is dismissed with prejudice.

**C. Unfair Competition—Count IV**

Plaintiff consents to the dismissal of Count IV without prejudice [DE 16 at 7] against all defendants, and the Court declines to substantively address it here. Plaintiff's state law claim for unfair competition is dismissed without prejudice.

**II. Copyright Act Claims**

Plaintiff alleges that Defendants committed copyright infringement (Count III), and further alleges that Bennington induced copyright infringement by actively and knowingly causing, encouraging, or urging Hawkeye to engage in infringing conduct (Count V). [DE 1 ¶¶ 38-43, 48-51] Plaintiff brings these claims with regard to both the '388 and '002 designs.

To state a claim for direct copyright infringement, Plaintiff must plead sufficient facts to plausibly suggest "(1) ownership

Art of Design, Inc. v. Pontoon Boat, LLC, Not Reported in Fed. Supp. (2017)

2017 WL 3608219, 2017 Copr.L.Dec. P 31,139

of a valid copyright, and (2) copying of constituent elements of the work that are original." *Peters v. West*, 692 F.3d 629, 632 (7th Cir. 2012) (quoting *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361, (1991)). To allege "copying" under the second element, Plaintiff's complaint must identify the work at issue produced by Defendants and describe the manner in which Defendants' work infringes upon Plaintiff's work. *See Nat'l Bus. Dev. Servs., Inc. v. Am. Credit Educ. & Consulting Inc.*, 299 Fed.Appx. 509, 511-12 (6th Cir. 2008) (affirming district court's dismissal of complaint that contained only bare legal conclusions and lacked factual allegations as to Defendants' allegedly infringing work).

Under the theory of inducement of copyright infringement, "one who distributes a device with the object of promoting its use to infringe copyright, as shown by clear expression or other affirmative steps taken to foster infringement, is liable for the resulting acts of infringement by third parties." *MGM Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 919, 125 S. Ct. 2764, 162 L.Ed.2d 781 (2005). "Implicit in the elements of both direct infringement and inducement is identification of an allegedly-infringed 'work.' " *Flava Works, Inc. v. Clavio*, No. 11 C 05100, 2012 WL 2459146, at *2 (N.D. Ill. June 27, 2012). Furthermore, because a party defending against a claim of inducement is liable for the infringing acts of another party, inducement, like direct infringement, also requires the identification of the infringing work. Thus, because direct infringement and inducement are both premised on the infringement of a work, both fail absent an identification of that infringement. *See id.*

Defendants argue that Plaintiff has failed to sufficiently identify its own copyrighted designs, much like the plaintiff in *Flava Works. See* 2012 WL 2459146, at * *2-3 (dismissing complaint where plaintiff failed completely to provide any identification of its works apart from noting that they were "videos"). Plaintiff here has at least provided the copyright registration numbers for its designs [DE 1 ¶ 13], but that does not suffice. Glaringly absent from the complaint are any descriptions or explanations as to what the designs are or look like.[3]

**\*5** Moreover, Plaintiff has neither identified an allegedly infringing work produced by Defendants, nor any description of how Defendants' work infringes on its own. *See Nat'l Bus. Dev. Servs*, 299 Fed.Appx. at 511-12 (affirming dismissal of plaintiff's infringement claim that contained "neither (1) an identification of a work produced by Defendants that infringes upon Plaintiff's copyrighted work, nor (2)

a description of the manner in which Defendants' works infringe upon Plaintiff's work...."). "While Plaintiff['s] copyright infringement claims will not 'be held to a particularity requirement akin to *Federal Rule of Civil Procedure 9(b)*,' *Mid Am. Title Co. v. Kirk*, 991 F.2d 417, 421-22 (7th Cir. 1993), Plaintiff must plead sufficient facts to meet the requisite standards of *Iqbal* and *Twombly*." *Hart v. Amazon.com, Inc.*, No. 15-C-01217, 2015 WL 8489973, at *4 (N.D. Ill. Dec. 8, 2015). Therefore, Plaintiff's claims for copyright infringement and inducement of copyright infringement with respect to the designs must be dismissed, without prejudice. *See id.* (dismissing copyright infringement claims as mere speculation where plaintiff failed to articulate the circumstances relating to defendant's alleged copying of the work); *see also Norman v. B.E.T. Television*, No. 2:16-CV-113 RLM-PRC, 2016 WL 7048894, at *2 (N.D. Ind. Dec. 5, 2016), *appeal dismissed sub nom. LASANDRA NORMAN v. B.E.T. TELEVISION* (Dec. 21, 2016) (dismissing amended complaint that failed to offer any facts suggesting how defendant allegedly infringed on the copyrighted work).

### III. Digital Millennium Copyright Act Claims

The DMCA seeks to combat copyright infringement in the digital age by protecting "copyright management information" ("CMI") in various ways. *See* 17 U.S.C. § 1202. Specifically, the DMCA forbids removing or altering CMI, or distributing works knowing the CMI has been removed or altered. *See id.* CMI, in turn, is defined as the information about the copyright that is "conveyed in connection with copies." § 1202(c). It can include any of the following: the title of the work; the author of the work; the name of the copyright owner; terms and conditions for use of the work; and identifying numbers or symbols referring to the work's copyright information. *See id.*

When Plaintiff provided the Shatter Graphics to Bennington in or around 2011, Plaintiff alleges that each design contained the following notice:

> TAOD DESIGNS ARE THE PROPERTY OF TAOD. THEY ARE NOT TO BE REPRODUCED, COPIED OR FORWARDED TO ANYONE WITHOUT WRITTEN PERMISSION.

[DE 1 ¶¶ 17-18] Plaintiff alleges that Defendants removed this CMI from its Shatter Graphics designs, and then distributed copies or derivatives of those designs knowing that the CMI had been removed without authorization. [DE 1 ¶¶ 54-55]

Art of Design, Inc. v. Pontoon Boat, LLC, Not Reported in Fed. Supp. (2017)

2017 WL 3608219, 2017 Copr.L.Dec. P 31,139

While the alleged CMI here claims that "TAOD" owns the labeled designs, the Copyright Office catalog entries for the '388 and '002 designs themselves do not refer to any entity called "TAOD." [DE 14-1] Instead, they note "The Art of Design, Inc." and "Dean Loucks" as the owners.[4] Importantly, the whole point of CMI is to "inform the public that something is copyrighted and to prevent infringement." *Pers. Keepsakes, Inc. v. Personalizationmall.com, Inc.*, No. 11 C 5177, 2012 WL 414803, at *6 (N.D. Ill. Feb. 8, 2012). Here, the purported CMI describes "TAOD" as the owner, but if one were to see these designs and the above label, and search for this owner to verify the graphics' copyright status, the search would come up empty because the actual owners are The Art of Design, Inc. and/or Dean Loucks. [DE 14-1] *See Pers. Keepsakes*, 2012 WL 414803, at * *6-8 (describing how titles and owners in purported CMI that do not match the actual titles and owners of the copyrighted work hinder the purpose of CMI because they frustrates others' attempts to avoid infringement). This problem is only magnified by the additional fact that there are *no* entities named simply "TAOD" registered in the state of Indiana.[5] [DE 14-2] Therefore, the notification Plaintiff placed on its designs does not qualify as CMI. *See Pers. Keepsakes*, 2012 WL 414803, at * *6-8 (dismissing plaintiff's DMCA

claims with prejudice because purported CMI did not qualify as such where it did not point the reader to the registered owner). "Allowing a plaintiff to make out a DMCA claim based on alleged CMI that does not link up in any way to the copyright registration is an invitation to unfair litigation against parties who have tried to tread carefully to avoid copyright infringement," and therefore, Plaintiff's DMCA claim must be dismissed with prejudice. *See id.* at *6.

## CONCLUSION

**\*6** For the reasons stated above, the Defendants' Motion to Dismiss [DE 13] is hereby **GRANTED**, and it is further **ORDERED** that:

Counts I, III, IV, and V are **DISMISSED** without prejudice; and Counts II and VI are **DISMISSED** with prejudice.

SO ORDERED.

**All Citations**

Not Reported in Fed. Supp., 2017 WL 3608219, 2017 Copr.L.Dec. P 31,139

Footnotes

1 The registrations for each design were not included with the complaint. However, Defendants attached two catalog entries from the U.S. Copyright Office's official website corresponding to each of the designs at issue. [DE 14-1] While not attached to the complaint, the Court may take judicial notice of these documents at this stage without converting the motion to one for summary judgment. *Ennenga v. Starns*, 677 F.3d 766, 773-74 (7th Cir. 2012) ("Taking judicial notice of matters of public record need not convert a motion to dismiss into a motion for summary judgment."). "A court may take judicial notice of facts that are (1) not subject to reasonable dispute and (2) either generally known within the territorial jurisdiction or capable of accurate and ready determination through sources whose accuracy cannot be questioned." *Id.* (citing *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1081 (7th Cir. 1997)). In particular, the Court may take judicial notice as public record information obtained from an official government website. *Betz v. Greenville Correctional Inst.*, 2014 WL 812403, at *1 (S.D. Ill. Mar. 3, 2014); *see also Denius v. Dunlap*, 330 F.3d 919, 926 (7th Cir. 2003) (taking judicial notice of military personnel records found online at www.archives.gov website); *Laborer's Pension Fund v. Blackmore Sewer Constr., Inc.*, 298 F.3d 600, 607 (7th Cir. 2002) (taking judicial notice of information from official website of the FDIC).

2 Plaintiff notes in its response to Defendants' motion that "[a]lthough registered copyright VA 1-982-002 is registered in the name of Dean Loucks, it had been assigned to TAOD." [DE 16 at 3 n. 1] Although this fact was not alleged in the complaint, in opposing a motion to dismiss under 12(b)(6), a nonmovant may elaborate on its factual allegations so long as the new elaborations are not inconsistent with the pleadings. *Atlas IP, LLC v. Exelon Corp.*, 189 F. Supp. 3d 768, 771 (N.D. Ill. 2016) (*citing Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012)). Here, Plaintiff added the statement about assignment of ownership, but that does not contradict its claim that it "owns" the '002 design copyright.

3 And, by merely providing the registration numbers to its copyrighted works, Plaintiff is not making the registrations themselves or the corresponding designs available to either the Defendants or the Court. Indeed, the process to retrieve the registrations from the U.S. Copyright Office is cumbersome and the process for retrieving deposits might not even bear

2017 WL 3608219, 2017 Copr.L.Dec. P 31,139

fruit because, as Defendants note, the "Copyright Office does not retain all works deposited for copyright registration." U.S. Copyright Office, Circular No. 6, Obtaining Access to and Copies of Copyright Office Records and Deposits, at 3 (2016).

4    Plaintiff's clarification that the '002 design "had been assigned to TAOD" does not remedy this deficiency. [DE 16 at 3 n. 1] Not only is this clarification lacking in details as to *when* and *how* this assignment took place, but the abbreviation "T-A-O-D" used by Plaintiff is simply used for purposes of the instant filings. [DE 1] Indeed, no business entity named "TAOD" is a party to this lawsuit.

5    The lack of any registered entity simply named "TAOD" in Indiana is supported by the business search attached to Defendants' motion. [DE 14-2] This search was conducted through an official Indiana government website. *See id.* Thus, as with the Copyright Office catalog records, the Court will take judicial notice of this exhibit and consider it without converting the instant motion into one for summary judgment. *See Ennenga*, 677 F.3d at 773-74; *Betz*, 2014 WL 812403, at *1. The only active registered business in Indiana with "TAOD" in its name is Toad Aviation LLC, but this entity does not appear relevant in any of the pleadings, nor is it even mentioned therein. [DE 14-2]

---

**End of Document**    © 2023 Thomson Reuters. No claim to original U.S. Government Works.

🚩 KeyCite Yellow Flag - Negative Treatment
Distinguished by Uniface B.V. v. Sysmex America, Inc., N.D.Ill., June 4,
2021

2012 WL 2459146
Only the Westlaw citation is currently available.
United States District Court,
N.D. Illinois,
Eastern Division.

FLAVA WORKS, INC., Plaintiff,

v.

Andrew CLAVIO, Defendant.

No. 11 C 05100.
|
June 27, 2012.

**Attorneys and Law Firms**

Meanith Huon, Huon Law Firm, Chicago, IL, for Plaintiff.

Daliah Saper, Saper Law Offices, Chicago, IL, for Defendant.

**Memorandum Opinion and Order**

EDMOND E. CHANG, District Judge.

**\*1** Plaintiff Flava Works, Inc. filed this case against
Defendant Andrew Clavio, alleging several forms of
copyright infringement pursuant to the Copyright Act, 17
U.S.C. § 101 et seq. R. 13 ¶ 1.[1] Clavio has moved to
dismiss, arguing that the complaint fails to state any claim.
Fed.R.Civ.P. 12(b)(6). R. 59. For the reasons explained below,
the Court grants the motion to dismiss, but without prejudice
to Flava Works proposing a new complaint within 14 days.

**I.**

The facts are taken as true from Flava Works' complaint. Flava
Works produces adult entertainment products (in other words,
pornography), including DVDs, streaming video, magazines,
photographs, and Internet website content, and distributes the
material through its own video websites as well as through
various distributors and licensees. R. 13 ¶¶ 9–10. Flava
Works alleges that Clavio violated the terms of Clavio's paid
membership with Flava Works' websites by downloading,

posting, and distributing copyrighted Flava Works' videos to
other websites, including those with peer-to-peer sharing and
"torrents" technology. Id. ¶ 15. As a result of Clavio's conduct,
Flava Works alleges, third parties were able to download the
copyrighted videos. Id. ¶ 16. Notably, Flava Works does not
identify what works were improperly shared or the method of
how they were shared.

Flava Works has brought claims against Clavio for direct,
contributory, vicarious, and induced copyright infringement.
R. 13. Clavio moves to dismiss Flava Works' complaint for
failure to state a claim.

**II.**

"A motion under Rule 12(b)(6) challenges the sufficiency
of the complaint to state a claim upon which relief may
be granted." Hallinan v. Fraternal Order of Police Chicago
Lodge No. 7, 570 F.3d 811, 820 (7th Cir.2009). "[W]hen
ruling on a defendant's motion to dismiss, a judge must
accept as true all of the factual allegations contained in the
complaint." Erickson v. Pardus, 551 U.S. 89, 94, 127 S.Ct.
2197, 167 L.Ed.2d 1081 (2007). A "complaint must contain
sufficient factual matter, accepted as true, to 'state a claim to
relief that is plausible on its face.' " Ashcroft v. Iqbal, 556 U.S.
662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting
Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct.
1955, 167 L.Ed.2d 929 (2007)). These allegations "must be
enough to raise a right to relief above the speculative level."
Twombly, 550 U.S. at 555. And the allegations that are entitled
to the assumption of truth are those that are factual, rather than
mere legal conclusions. Iqbal, 556 U.S. at 678–79.

**III.**

Clavio argues that Flava Works' second amended complaint
does not plead facts sufficient to satisfy the elements of direct,
contributory, vicarious, or induced copyright infringement,
and does not meet the standards of Iqbal and Twombly. R. 59
at 1–2. Specifically, Clavio contends that each infringement
claim must be dismissed because no specific copyrighted
work is identified to have been infringed. As the following
discussion shows, he is correct.

**A.**

2012 WL 2459146

**\*2** To state a claim for direct copyright infringement, a plaintiff must allege facts setting forth (1) ownership of a valid copyright in a work and (2) the copying of elements of the work that are original. *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.,* 499 U.S. 340, 361, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991). A contributory copyright infringement occurs when the defendant "with knowledge of the infringing activity, induces, causes, or materially contributes to the infringing conduct of another." *In re Aimster Copyright Litig.,* 252 F.Supp.2d 634, 654 (N.D.Ill.2002), *aff'd,* 334 F.3d 643 (7th Cir.2003); *see also Gershwin Publ'g Corp. v. Columbia Artists Mgmt.,* 443 F.2d 1159, 1162 (2d Cir.1971). Thus, to state a claim for contributory copyright infringement, a plaintiff must plead, "(1) direct infringement by a primary infringer, (2) the defendant's knowledge of the infringement, and (3) the defendant's material contribution to the infringement." *Monotype Imaging, Inc. v. Bitstream, Inc.,* 376 F.Supp.2d 877, 883 (N.D.Ill.2005). To state a claim for vicarious copyright infringement, a plaintiff must allege that the defendant: (1) at all material times possessed the right and ability to supervise the infringing activity, and (2) has a direct financial interest in the infringer's activity. *In re Aimster,* 252 F.Supp.2d at 654; *Gershwin,* 443 F.2d at 1162; *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n,* 494 F.3d 788, 802 (9th Cir.2007). Under the theory of inducement of copyright infringement, "one who distributes a device with the object of promoting its use to infringe copyright, as shown by clear expression or other affirmative steps taken to foster infringement, is liable for the resulting acts of infringement by third parties." *MGM Studios Inc. v. Grokster, Ltd.,* 545 U.S. 913, 919, 125 S.Ct. 2764, 162 L.Ed.2d 781 (2005).

Implicit in the elements of all of these claims is identification of an allegedly-infringed "work." Direct infringement requires copyright in and infringement of *a work.* Similarly, the other three derivative infringement claims are all premised on someone else's infringement of a work; thus, they too fail without identification of a copyrighted work. *Iqbal* and *Twombly* require that "the plaintiff plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 663. Here, the second amended complaint does not sufficiently do that. Instead, Flava Works merely alleges labels and conclusions, and does not include operative facts,[2] such as identifying the actual work that is being infringed and the means of its copying and/or distribution. The mere allegation that "Defendants downloaded copyrighted videos of Flava Works ... and posted and distributed the aforesaid videos on other websites," R. 13 ¶ 15, does not provide adequate notice to Clavio.

Although the complaint alleges that videos were posted and distributed on other websites, *id.,* these broad and conclusory allegations do not point to a specific copyrighted work that was infringed, and are not enough to put Clavio on notice. *See e.g., Nat'l Bus. Dev. Servs., Inc. v. Am. Credit Educ. & Consulting, Inc.,* 299 F. App'x 509, 511–12 (6th Cir.2008) (granting a motion to dismiss because the complaint failed to identify the work that was infringed). Flava Works argues that this is a relatively simple case, unlike *Iqbal* and *Twombly,* and thus Flava Works should not have to make specific factual allegations. R. 60 at 2–3. But the relative simplicity of this case actually undermines Flava Works. If this is in fact a "run of the mill" case, *id.* at 2, then Flava Works should have no trouble amending its complaint to include some operative facts sketching out the infringed work and the infringing act.

**\*3** Because the current complaint fails to allege the necessary operative facts, the motion to dismiss is granted on all counts. For now, the case is dismissed without prejudice, because the Court will give Flava Works 14 days to file a motion to amend the complaint with a proposed third amended complaint. If Flava Works does not file a motion to amend the complaint, then the dismissal will convert into a dismissal *with* prejudice without further order of the Court. If Flava Works does file a motion to amend, then the Court will set a response date.

### B.

In addition to insufficient factual detail, which applies to all of the current claims, it is worth discussing Clavio's additional claim-specific arguments so that Flava Works will be on notice of what is expected in the proposed amended complaint (if any amendment is offered). Flava Works will need to allege additional facts, specific to those claims, for the Court to authorize filing a third amended complaint.

### 1. Contributory Infringement

Specifically, the Copyright Act does not expressly impose liability on anyone other than direct infringers, although courts have recognized vicarious and contributory liability. *See Sony Corp. of Am. v. Universal City Studios, Inc.,* 464 U.S. 417, 435, 104 S.Ct. 774, 78 L.Ed.2d 574 (1984) (explaining that "vicarious liability is imposed in virtually all areas of

Flava Works, Inc. v. Clavio, Not Reported in F.Supp.2d (2012)

2012 WL 2459146

the law, and the concept of contributory infringement is merely a species of the broader problem of identifying the circumstances in which it is just to hold one individual accountable for the actions of another"). With regard to the claim for contributory copyright infringement (Count 2), there are inadequate factual allegations that would permit the Court to reasonably infer that Clavio knew of the infringing conduct of another person and materially contributed to it. Flava Works has alleged that "Defendants ... materially contributed to the infringement ... by copying, posting and/or distributing Flava Works' copyrighted videos," R. 13 (Count 2) ¶ 17,[3] and had knowledge of the infringing activity, *id.* (Count 2) ¶ 18. Clavio argues that Flava Works has failed to sufficiently allege the elements of the claim because contributory infringement requires direct infringement by a third-party. R. 59 at 4. Clavio is correct. Contributory infringement does require infringement by a third-party (and knowledge of that infringement by the person being pursued for contributory infringement). The complaint does not include a single factual allegation of some third-party— even if that third-party's specific identity is unknown—who was infringing with the assistance and knowledge of Clavio. An amended complaint would have to identify a third-party (or if the third-party's name is not known, at least provide some specifics as to a third-party infringer) who infringed with Clavio's assistance and knowledge.

### 2. Vicarious Liability

The same defect applies to the vicarious liability claim. Vicarious liability requires that some third-party infringe and that the defendant have some direct financial interest in the infringement. Again, there are zero allegations about a third-party (or third-parties) interacting with Clavio that could subject him to vicarious liability. Additionally, there are no allegations of a direct financial interest between the (unalleged) third-party and Clavio.

**\*4** The essential test for direct financial interest is whether "there is a causal relationship between the infringing activity and any financial benefit a defendant reaps...." *Ellison v. Robertson,* 357 F.3d 1072, 1079 (9th Cir.2004). The complaint simply alleges, "Defendants had ... the obligation and ability to control and stop the infringing activity." R. 13 (Count 3) ¶ 17. The complaint does not allege any facts to suggest that Clavio received a direct financial benefit as a result of the infringing activity. Those factual allegations will be necessary if Flava Works wants to pursue a claim for vicarious liability in its proposed third amended complaint.

### 3. Inducement

Third, the claim for inducing copyright infringement (Count 4) is lacking any factual allegations that Clavio took affirmative steps to induce infringement by others. (That hole in the complaint is not surprising in light of the absence of any allegations about any third-party.) The complaint merely alleges that "Defendants' conduct constitutes inducement copyright infringement," R. 13 (Count 4) ¶ 18, but it does not point to any facts plausibly suggesting that Clavio induced infringement, facts such as his use of advertisements or his making of statements urging others to infringe. *See MGM Studios,* 545 U.S. at 923–24 (explaining that each defendant clearly voiced their objective that recipients use their sites to download copyrighted works and took steps to encourage infringement).

### C.

Lastly, there is one additional, overarching concern with the complaint in its current form, and it is worth discussing in order to put Flava Works on notice of what would be required in a third amended complaint. In claims for direct copyright infringement, it has been noted in other Circuits that there is a difference between "posting" and "copying" a work to a website. For example, a post may just link to another website and not actually disseminate a copy. *See Perfect 10, Inc. v. Amazon.com, Inc.,* 508 F.3d 1146, 1155 (9th Cir.2007). The complaint alleges that Clavio "posted and distributed" videos. R. 13 ¶ 15. In a proposed third amended complaint, Flava Works should clarify the exact nature of the alleged infringing conduct, that is, what it means to allege that Clavio "posted and distributed" videos.

### IV.

Because the current complaint fails to allege the necessary operative facts, the motion to dismiss [R. 59] is granted on all counts. The case is dismissed without prejudice. Flava Works has 14 days to file a motion to amend the complaint, attaching a proposed third amended complaint. Clavio will have an opportunity to renew his arguments if he feels that Flava Works' proposed complaint still fails to state a claim. If Flava Works fails to file a motion to amend the complaint in that time period, the dismissal will convert to a dismissal with

**Flava Works, Inc. v. Clavio, Not Reported in F.Supp.2d (2012)**

2012 WL 2459146

prejudice. To track the case, a status hearing is set for July 12, 2012, at 9:30 a.m.

**All Citations**

Not Reported in F.Supp.2d, 2012 WL 2459146

## Footnotes

1    Citation to the docket is "R." followed by the docket entry. This Court has subject matter jurisdiction under 28 U.S.C. § 1331. The case was initially filed against several individual defendants. R. 13. The Court granted Flava Works' motion to sever five of the defendants. R. 58. But that inadvertently left 8 defendants unaddressed. Flava Works filed a second motion to sever some of the remaining 8 defendants, and to voluntarily dismiss the others. R. 67. That motion was granted, R. 69, leaving Clavio as the sole remaining defendant in this case.

2    *Lucien v. Preiner,* 967 F.2d 1166, 1168 (7th Cir.1992) ("A complaint must at least include the operative facts upon which a plaintiff bases his claim.") (internal quotation marks and citation omitted).

3    The paragraphs of the complaint, R. 13, are not numbered continuously. That is, with each count of the complaint, the paragraph numbers begin again at paragraph 17—paragraphs 1–16 being incorporated by reference into each count. As such, Counts 1–4 each have paragraphs that are labeled as the same paragraph number. The citation to "(Count 2) ¶ 17" refers to ¶ 17 found under Count 2 of the complaint.

**End of Document**        © 2023 Thomson Reuters. No claim to original U.S. Government Works.

2014 WL 4659266

🚩 KeyCite Yellow Flag - Negative Treatment

Distinguished by Dish Network L.L.C. v. Fraifer, M.D.Fla., January 31, 2020

2014 WL 4659266
Only the Westlaw citation is currently available.
United States District Court,
E.D. New York.

Liza LAMBERTINI, Plaintiff,

v.

Julie FAIN, Defendant.

No. 12–CV–3964 (DRH)(ARL).
|
Signed Sept. 17, 2014.

**Attorneys and Law Firms**

Lillie Law, LLC, by: James J. Lillie, Esq., Ronkonkoma, NY, for the Plaintiff.

Crosby & Higgins, LLP, by: Todd A. Higgins, Esq., New York, NY, for the Defendant.

**MEMORANDUM AND ORDER**

HURLEY, Senior District Judge.

**\*1** Plaintiff Liza Lambertini ("Plaintiff" or "Lambertini") filed the present action against defendant Julie Fann ("Defendant" or "Fann") alleging violations of the copyright laws of the United States, 17 U.S.C. § 101, et seq. Presently before the Court is Defendant's motion to dismiss the Complaint pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6), and for an award of attorneys' fees pursuant to 17 U.S.C. § 505. For the reasons stated below, Defendant's motion is granted in part and denied in part.

**BACKGROUND**

The following summary of the facts is taken from the Complaint. Plaintiff, a resident of Suffolk County, New York, is the sole creator of numerous pieces of artwork featuring fairies for which she has obtained copyright protection. (Compl.¶¶ 1, 9.) Plaintiff's works have been displayed, marketed, and sold locally and online. (Id. ¶¶ 12, 13.) Defendant has developed works of art that are claimed to

be substantially similar to Plaintiff's copyrighted works. (Id. ¶ 14.) Despite Plaintiff's communication to Defendant that Defendant's works were substantially similar to Plaintiff's, and Plaintiff's request "that Defendant avoid the substantial similarity of [P]laintiff's works, including the look and feel of [P]laintiff's line of works," a variety of websites offer for sale, and, in fact, have sold Defendant's works to the general public without Plaintiff's knowledge, in some cases, and without her consent. (Id. ¶¶ 15, 16.) In addition, it is claimed that "Defendant offers to license her infringing works on [an] array of interactive websites" without Plaintiff's knowledge in some cases, and without her consent. (Id. ¶ 17.)

**DISCUSSION**

**I. *Motion to Dismiss: Legal Standards***

Rule 8(a) provides that a pleading shall contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). The Supreme Court has recently clarified the pleading standard applicable in evaluating a motion to dismiss under Rule 12(b)(6).

First, in *Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007), the Court disavowed the wellknown statement in *Conley v. Gibson,* 355 U.S. 41, 45–46 (1957) that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly,* 550 U.S. at 562. Instead, to survive a motion to dismiss under *Twombly,* a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

**\*2** *Id.* at 555 (citations and internal quotation marks omitted).

More recently, in *Ashcroft v. Iqbal,* 556 U.S. 662 (2009), the Supreme Court provided further guidance, setting forth a two-pronged approach for courts deciding a motion to dismiss.

Lamberbili v. Fain, Not Reported in F.Supp.3d (2014)

2014 WL 4659266

First, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678 (citing *Twombly,* 550 U.S. at 555)).

Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. The Court defined plausibility as follows:

A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.' "

*Id.* at 678 (quoting *Twombly,* 550 U.S. at 556–57) (internal citations omitted).

In deciding a motion to dismiss pursuant to Rule 12(b)(6), a court must look to the allegations on the face of the complaint, but may also consider "[d]ocuments that are attached to the complaint or incorporated in it by reference." *Roth v. Jennings,* 489 F.3d 499, 509 (2d Cir.2007). *See also Gillingham v. GEICO Direct,* 2008 WL 189671, at *2 (E.D.N.Y. Jan. 18, 2008) (noting that a court considering a motion to dismiss "must limit itself to the facts stated in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint") (citation and internal quotation marks omitted).

## II. *Plaintiff Has Failed to Sufficiently Allege a Copyright Infringement Claim*

The Complaint contains only one count, i.e., a claim of copyright infringement. Plaintiff claims that Defendant "willfully infringed Plaintiff's copyright by copying portions of Plaintiff's works and preparing, reproducing, publishing, displaying and distributing such works or derivative works ... without Plaintiff's permission, license, or consent." (Compl.¶ 28.)

"A plaintiff must allege the following elements in order to state a valid claim for copyright infringement: '(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original.' " *Lumetrics, Inc. v. Blalock,* 2014 WL 2505517, at *3 (W.D.N.Y. June 3, 2014) (quoting *Feist Publ'ns, Inc. v. Rural Television Serv. Co.,* 499 U.S. 340, 361 (1991)). Moreover, "[t]o withstand a motion to dismiss pursuant to Rule 12(b)(6), a claim of copyright infringement must meet the pleading requirements of Rule 8." *Ritani, LLC v. Aghjayan,* 880 F.Supp.2d 425, 440 (S.D.N.Y.2012). Thus, a plaintiff asserting a copyright infringement claim must allege: "[1] which specific original works are the subject of the claim, [2] that plaintiff owns the copyright, [3] that the works have been registered in accordance with the copyright statute, and [4] by what acts and during what time defendant has infringed the copyright." *Id.* (citations and internal quotation marks omitted); *accord Patrick Collins, Inc. v. John Doe 1,* 945 F.Supp.2d 367, 374 (E.D.N.Y.2013). Since the complaint "need only give the opposing party fair notice of what the plaintiff's claim is and the grounds on which it rests," a plaintiff is not required "to plead specific evidence or extra facts beyond what is needed to make the claim plausible." *Ritani,* 880 F.Supp.2d at 440 (quoting *Capitol Records, Inc. v. Wings Digital Corp.,* 218 F.Supp.2d 280, 284 (E.D.N.Y.2002); *Ellis v. Jean,* 2011 WL 6368555, at *4 (S.D.N.Y. Dec. 16, 2011)) (internal quotation marks omitted).

**\*3** Here, Plaintiff's allegations are lacking in numerous respects. To begin with, as Defendant notes, the Complaint fails to allege which specific original works are the subject of this action. (Def.'s Mem. at 4–5.) Instead, the Complaint contains general, non-specific allegations, such as that "Defendant began developing works that are substantially similar to [P]laintiff's copyrights" (Compl.¶ 14), and that Plaintiff asked Defendant to "avoid the substantial similarity of [P]laintiff's works" (*id.* ¶ 15). Contrary to Plaintiff's argument that "[i]t should be obvious to Defendant that the [w]orks in question are those annexed to the Complaint,"[1] (Pl.'s Mem. in Opp'n at 10), Plaintiff has the burden of identifying the specific works at issue in her pleading. Notably, the Complaint describes the Certificates of Registration attached as an exhibit to the Complaint as follows: "Plaintiff has registered many of her works in her portfolio with the U.S. Copyright Office. Exhibit A." (Compl.¶ 10.) Significantly lacking from this allegation, however, is any indication as to which, if not all, of the registered works identified in the exhibit are the specific works at issue in this lawsuit. The fact that Plaintiff has copyright protection for several of her works does not

necessarily indicate that the copyright registrations she has procured are for the specific works that are the subject of this suit. Indeed, by failing to allege which specific original works are at issue in this case, the Court also cannot determine whether Plaintiff has properly alleged ownership in the copyrights that have allegedly been infringed.

In addition to Plaintiff's failure to allege which specific original works are the subject of this action and to allege ownership of valid copyrights for those works, Plaintiff fails to sufficiently allege the acts constituting the infringement or when the alleged infringement occurred. *See Ritani,* 880 F.Supp.2d at 441 (finding that the plaintiff's pleading burden had not been met where the complaint lacked allegations "as to how or when [the defendant] violated any of the listed copyrights"); *Calloway v. Marvel Entm't Grp.,* 1983 WL 1141, at *3 (S.D.N.Y. June 20, 1983) (finding that the complaint required dismissal where, *inter alia,* there were no allegations as to when the alleged infringement occurred); *see also Plunket v. Doyle,* 2001 WL 175252, at *5 (S.D.N.Y. Feb. 22, 2001) (finding the plaintiff's claim that the defendants "entered into, or have offered, licenses purporting to grant third parties the right to exploit [subject works] in various media" insufficient to allege the infringing acts or the time period in which the acts occurred (citation and internal quotation marks omitted)). Indeed, Plaintiff seemingly concedes that the Complaint lacks these required allegations by arguing, albeit mistakenly, that she "is not required to make ... specific[ allegations]" as to "exactly which individual works were sold or offered for sale and in what specific time period each individual act occurred." (Pl.'s Mem. in Opp'n at 9.)

**\*4** Plaintiff argues that the following allegations set forth the acts and time frame constituting the infringement: "Plaintiff ... requested that Defendant avoid the substantial similarity of [P]laintiff's works, including the look and feel of [P]laintiff's line of works" (Compl.¶ 15); "Defendant offers for sale her infringing works on an array of interactive websites, which has been sold to the general public, some without the [P]laintiff's knowledge, all without authorization, or consent" (*id.* ¶ 16); "Defendant offers to license her infringing works on an array of interactive websites, which has been sold to the general public, some without the [P]laintiff's knowledge, all without authorization, or consent" (*id.* ¶ 17); "Plaintiff has purchased several of these items through these websites here in the State of New York, and the items were shipped to a New York address" (*id.* ¶ 18); "Several of the websites are controlled by the Defendant

directly, www.juliefain.com, www.fantasysilhouettes.com, www.juliefainart.com" (*id.* ¶ 19); and "Etsy.com lists about eighty (80) pieces of work by the Defendant" (*id.* ¶ 23). (Pl .'s Mem. in Opp'n at 8–10.) However, even if these broad allegations were sufficient to satisfy Plaintiff's pleading burden as to how and when the alleged infringement occurred, Plaintiff has failed to plead that Defendant actually copied her works.

A plaintiff is required to allege that the defendant copied her protected expression. *See Hogan v. DC Comics,* 983 F.Supp. 82, 85 (N.D.N.Y.1997). To do so, the plaintiff is required to allege that: "(1) [the] defendant has actually copied the plaintiff's work; and (2) the copying is illegal because a substantial similarity exists between the defendant's work and the protectable elements of plaintiff's." *Ritani,* 880 F.Supp.2d at 441–42 (citation and internal quotation marks omitted).

Because proof of actual copying by direct evidence is uncommon as a plaintiff rarely witnesses the physical act of copying, "[c]opying may be inferred where a plaintiff establishes that the defendant had access to the copyrighted work and that substantial similarities exist as to protectible material in the two works." *Walker v. Time Life Films, Inc.,* 784 F.2d 44, 48 (2d Cir.1986). In sum, a plaintiff must show that her work "was 'copied,' by proving access and substantial similarity between the works, and also show that [her] expression was 'improperly appropriated,' by proving that the similarities relate to copyrightable material." *Id.* (citations omitted).

Here, Plaintiff has alleged Defendant's access to her works by claiming that she has shown and marketed her works "locally and online," including on Plaintiff's own website and on E-bay, Amazon, Etsy.com, Amazon, E-bay, Zazzle, Facebook and LinkedIn. (Compl.¶¶ 12, 13.) However, Plaintiff has failed to allege substantial similarity in order to allege that Defendant copied. The only discernable allegation as to the similarities between Plaintiff's and Defendant's works is Plaintiff's claim that Defendant's works have "the look and feel of [P]laintiff's line of works." (Compl.¶ 15.) In the Court's opinion, this vague and broad allegation does not state a claim of actual copying. Moreover, the Complaint is devoid of any allegations as to which elements of Plaintiff's works were protected. While Plaintiff correctly argues that she is not required to prove her claim at the pleading stage (Pl.'s Mem. in Opp'n at 10–11), she nevertheless has the burden of properly alleging her claim, which includes, *inter alia,* alleging that Defendant copied her work, and identifying with some

2014 WL 4659266

degree of specificity how Defendant's works are substantially similar to her own. *See Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.,* 602 F.3d 57, 69 (2d Cir.2010) ("[B]ecause plaintiffs have failed to allege that a substantial similarity exists between defendants' work and the protectible elements of [plaintiffs'], the district court properly dismissed plaintiffs' federal copyright claim." (internal citation and quotation marks omitted)); *Ritani,* 880 F.Supp.2d at 442 (S .D.N.Y.2012) ("[E]ven assuming [defendant] copied [plaintiff's] work, the failure to plead facts regarding how the [works] are 'substantially similar,' including identifying the protectable elements of the works as part of its claim, will result in the dismissal of the copyright claim."). Accordingly, Plaintiff's Complaint requires dismissal. Nonetheless, in the exercise of its discretion, the Court will grant Plaintiff the opportunity to replead. In addition, Defendant's request for

attorneys' fees pursuant to 17 U.S.C. § 505 is denied without prejudice to renew.[2]

### CONCLUSION

 **\*5**  For the foregoing reasons, Defendant's motion to dismiss the Complaint is granted and Defendant's request for attorneys' fees is denied. Plaintiff is granted leave to amend. Plaintiff may serve and file an Amended Complaint on or before October 10, 2014.

**SO ORDERED.**

**All Citations**

Not Reported in F.Supp.3d, 2014 WL 4659266

Footnotes

1    Plaintiff apparently refers to Exhibit A of the Complaint which contains several Certificates of Registration issued by the Copyright Office for Plaintiff's works.

2    Although Defendant also argues that Plaintiff's infringement claim should be dismissed as a matter of law because, *inter alia,* "Plaintiff's infringement claim is premised on the assumption that Plaintiff owns the copyright to the entire genre or idea of fairy art," (Def.'s Mem. at 10), the Court need not address this additional argument in support of dismissal as it finds that dismissal is warranted under Rule 12(b)(6) for the reasons discussed in the decision *supra.* Nevertheless, in the event that Plaintiff serves and files an Amended Complaint that remedies the pleading deficiencies noted in this decision, which would include properly alleging the protectable elements of her works, Defendant's argument that Plaintiff seeks copyright protection of the entire genre of fairy art will likely be rendered moot.

**End of Document** © 2023 Thomson Reuters. No claim to original U.S. Government Works.

2012 WL 1065578
Only the Westlaw citation is currently available.
United States District Court, D. Massachusetts.

Dmitriy SHIROKOV, on behalf of himself
and all other similarly situated, Plaintiff,

v.

DUNLAP, GRUBB & WEAVER,
PLLC, et al., Defendants.

Civil Action No. 10–12043–GAO.
|
March 27, 2012.

**Attorneys and Law Firms**

Daniel G. Booth, Jason E. Sweet, Nazli A. Saka, Booth Sweet
LLP, Cambridge, MA, for Plaintiff.

Kara G. Thorvaldsen, Wilson, Elser, Moskowitz, Edelman
& Dicker, LLP, Harvey Weiner, Kevin C. Cain, Kiley
M. Belliveau, Peabody & Arnold LLP, Boston, MA, for
Defendants.

*ORDER*

O'TOOLE, District Judge.

 **\*1** After careful review of the magistrate judge's thorough
and meticulous Report and Recommendation (dkt. no. 79),
the parties' respective objections thereto, and other relevant
pleadings and submissions, including particularly the original
motion papers, I ADOPT the Report and Recommendation
without change. Accordingly, for the reasons set forth in the
Report, the following orders are made:

1. The motion of the defendant GuardaLey, Limited,
to dismiss the Second Amended Complaint as to it is
GRANTED.

2. The motions to dismiss the Second Amended Complaint of
the defendants Dunlap, Grubb & Weaver PLLC, United States
Copyright Group, Thomas Dunlap, and Nicholas Kurtz (dkt.
no. 28) and Achte/Neunte Boll Kino Beteiligungs GmbH &
Co. KG (dkt. no. 46) are GRANTED as to Counts 4, 6, 7, 9,
10, 12, 14–17, and 19, but are otherwise DENIED, provided,

however, that Count 11 stands only as a claim for declaratory
judgment and not a claim for damages.

3. The motion for sanctions (dkt. no. 30) is DENIED.

It is SO ORDERED.

***REPORT AND RECOMMENDATION ON
DEFENDANTS' MOTIONS TO DISMISS THE SECOND
AMENDED COMPLAINT** [Docket Nos. 28, 42, and 46]*

BOAL, United States Magistrate Judge.

In this proposed class action, Plaintiff Dmitriy Shirokov
("Shirokov") alleges that the defendants defrauded him and
thousands of similarly situated individuals. He alleges that
the defendants entered into a scheme to profit from copyright
infringement allegations through fraud and extortion, which
caused members of the class to make millions of dollars in
excess settlement payments to the defendants. According to
Shirokov, with the help of defendants GuardaLey, Limited
("GuardaLey") and the United States Copyright Group
("USCG"), defendants Thomas Dunlap ("Dunlap"), Nicholas
Kurtz ("Kurtz") and law firm Dunlap, Grubb & Weaver
PLLC ("DGW"), misrepresented defendant Achte/Neunte
Boll Kino Beteiligungs Gmbh & Co KG's ("Achte") rights
in the movie Far Cry to the United States Copyright Office
(the "Copyright Office"), federal courts and class members.
In summary, Shirokov alleges that the defendants told him and
class members that Achte was entitled to statutory damages
and attorneys' fees for Shirokov and others' alleged copyright
infringement, knowing that Achte was not entitled to those
remedies.

All of the defendants have moved to dismiss the Second
Amended Complaint. For the following reasons, this Court
recommends that the District Judge assigned to this case
GRANT the motions in part and DENY them in part.

*I. PROCEDURAL HISTORY*

Shirokov filed his original complaint on November 24, 2010.
(Docket No. 1). In response, the Dunlap Defendants filed a
motion to dismiss the complaint and a motion for sanctions
under Rule 11 of the Federal Rules of Civil Procedure.
(Docket Nos. 4, 6).

On February 8, 2011, Shirokov filed a First Amended
Complaint. (Docket No. 10). The Dunlap Defendants filed

renewed motions to dismiss and for sanctions under Rule 11 on February 22, 2011. (Docket Nos. 15, 17).

**\*2** On March 9, 2011, the District Court granted Shirokov's motion to file a Second Amended Complaint and Shirokov filed such complaint on March 18, 2011. (Docket Nos. 25 and 26). All defendants have moved to dismiss the Second Amended Complaint. (Docket Nos. 28, 42, 46). The Dunlap Defendants have also filed a renewed motion for sanctions under Rule 11. (Docket No. 30). On May 13 and 24, 2011, the District Court referred the pending motions to this Court for a report and recommendation.

The pending motions have been the subject of extensive briefing by the parties. (*See* Docket Nos. 29, 36, 44, 48, 51, 55, 56, 64–66, 71–73, 77). The Court heard oral argument on February 15,2012.

## II. *FACTS*[1]

### A. *The Defendants*

Defendant DGW is a Virginia law firm with offices in Leesburg, Virginia, Washington, D.C., and Naples, Florida. (Second Amended Complaint ("Complaint"), ¶ 34). DGW holds itself out as having special expertise in intellectual property law, and in copyright law specifically. (Complaint, ¶ 58). Defendant Dunlap is an attorney and the managing partner at DGW and USCG. (Complaint, ¶ 36). Defendant Kurtz is an attorney at DGW. (Complaint, ¶ 37).

Defendant USCG is a Virginia corporation that acts as a registered alias for a partnership between DGW and GuardaLey. (Complaint, ¶ 35). USCG also acts as a registered alias of several corporations with ties to DGW. (*Id.*).

GuardaLey, a German company with offices in the United Kingdom, is a partner with DGW in managing USCG. (Complaint, ¶ 38). Defendant Achte is a German limited partnership in the business of motion picture creation and distribution. (Complaint, ¶ 39).

### B. *The Alleged "Copyright Scheme"*

Shirokov alleges that DGW, in connection with USCG, Dunlap, Kurtz, GuardaLey, and Achte, has developed a lucrative trade "in monetizing copyright infringement allegations." (Complaint, ¶ 2). GuardaLey monitors and records online instances of alleged copyright infringement of motion pictures. (Complaint, ¶ 4). USCG provides information of the alleged infringement to film industry clients, but cautions them that civil prosecution of copyright claims is not "practical," in light of the financial status of individual infringers. (*Id.*).

On the basis of GuardaLey's records, the Dunlap Defendants typically file a single civil complaint in the United States District Court for the District of Columbia against hundreds of John Does from all over the country, regardless of the jurisdiction where the alleged infringements took place. (Complaint, ¶ 6). The complaint alleges mass online infringement and petition the court to issue subpoenas to Internet Service Providers ("ISPs"), seeking contact information for the alleged infringers. (*Id.*).

The Dunlap Defendants use the information provided by the ISPs to send to the alleged infringers virtually identical "litigation settlement demand" letters. (Complaint, ¶ 7). The letters demand $1,500 from each recipient, increasing to $2,500 if not sent promptly, under deceptive threats of impending litigation. (*Id.*). The Dunlap Defendants and their clients, however, have no intention of litigating these claims to resolution, and indeed do not have the capacity to do so, should the alleged infringers not pay the amount demanded. (Complaint, ¶ 8).

**\*3** Shirokov alleges that he and the class members received these settlement demand letters from the Dunlap Defendants on behalf of Achte. (Complaint, ¶¶ 158–161 and Exhibit N thereto). Shirokov alleges that the defendants acted together in an effort to coerce him and other class members to pay the amounts demanded, even though the Dunlap Defendants knew that Achte could never prevail on its claims for statutory damages. (Complaint, ¶¶ 15, 24, 176, 178–182).

### C. *Achte's Copyright*

Achte is a German film production company that has made over twenty feature-length motion pictures. (Complaint, ¶ 91). One of its pictures, Far Cry, was filmed in Canada in the summer of 2007. (Complaint, ¶ 98). Far Cry was first released in theaters in Germany on October 2, 2008. (Complaint, ¶ 99). It premiered on over 200 different screens in the first week of release. (*Id.*).

Far Cry was first released in United States theaters on December 17, 2008. (Complaint, ¶ 100). The film was first

published on DVD on April 14, 2009, when the DVD was offered for sale in the Netherlands. (Complaint, ¶ 101). Far Cry was also offered for sale to the public in the United Kingdom and Italy on September 7, 2009 and October 14, 2009, respectively. (Complaint, ¶ 102–103). The film was commercially released on DVD in the United States and Canada on November 24, 2009. (Complaint, ¶ 104).

DGW submitted a copyright registration application for Far Cry to the Copyright Office. (Complaint, ¶ 111). The application falsely stated that Far Cry was first published on November 24, 2009. (*Id.*). Defendants knew that the statement that Far Cry was first published on November 24, 2009 was false. (Complaint, ¶ 115). Accordingly, Shirokov claims that Achte's registration for Far Cry is invalid. (Complaint, ¶ 22).

Shirokov alleges that DGW and Achte intentionally lied to the Copyright Office about the first publication date in order to maximize the infringement damage awards that Achte could pursue. (Complaint, ¶¶ 11–12). Properly registered works, asserts Shirokov, enjoy the benefits of statutory damage awards of between $750 and $30,000 for each infringed work and $150,000 for each infringed work if the infringement was committed willfully. (Complaint, ¶ 43). If DGW and Achte had been truthful about the first publication date, however, Achte would be limited to recovering actual damages for each alleged act of infringement. (*See* generally Complaint at ¶¶ 44–57, 90–130). For every act of infringement allegedly committed by Shirokov and Class members, the most that Achte could recover is $26.99, the list price of a new DVD of Far Cry. (Complaint, ¶¶ 219–221).

D. *The Underlying Achte Lawsuit*

On March 18, 2010, DGW filed a suit in the United States District Court for the District of Columbia on behalf of Achte against 2,094 anonymous individuals ("John Doe Defendants"), alleging infringement of Far Cry (the "Achte Lawsuit").[2] (Complaint, ¶ 134). The Achte Lawsuit alleged that the John Doe Defendants had infringed Achte's copyright in Far Cry. (*Id.*). On the same date, DGW sought leave of court to serve subpoenas on ISPs across the country to determine the identity of the John Doe Defendants and their contact information. (Complaint, ¶ 135). The court granted leave on March 23, 2010. (*Id.*).

**\*4** Pursuant to the subpoenas, DGW obtained the names and contact information of the John Doe Defendants. (Complaint,

¶¶ 136–137). Shirokov was identified as one of the John Doe Defendants. (Complaint, ¶ 139).

On May 12, 2010, DGW filed a First Amended Complaint for Copyright Infringement on behalf of Achte, raising to 4,577 the alleged number of infringers of Far Cry. (Complaint, ¶ 142). DGW repeatedly sought to extend the time for serving the complaint, prolonging the pendency of the Achte Lawsuit against the class members. (Complaint, ¶ 195). More than six months after filing the original complaint, Achte asserted through DGW that the class members (who had not been yet formally served and had not been named) were "not yet named parties" and therefore had no standing to seek dismissal. (Complaint, ¶ 197).

On September 10, 2010, the court in the Achte Lawsuit ordered Achte to show cause why class members who had submitted affidavits regarding their locations should not be dismissed on the basis of lack of personal jurisdiction. (Complaint, ¶ 204). On the same date, certain John Doe Defendants filed an omnibus motion to quash a subpoena issued by Achte and to dismiss the moving defendants from the Achte Lawsuit. (*Id.*). The motion sought dismissal on jurisdictional grounds and explained that geographic location information available in the IP addresses, which served as the basis for the Achte Lawsuit, revealed that each of the moving defendants was located outside of Washington, D.C. at the time of the alleged infringement. (*Id.*). In opposition to the motion, Achte argued that "it would not make practical sense to dismiss particular Doe Defendants on a piecemeal basis" before the court-ordered deadline to name and serve all defendants. (Complaint, ¶ 205).

On November 18, 2010, the last day of its already extended time to name and serve defendants, Achte filed a motion asking the court to extend the deadline for service for five years, arguing that it should not be forced to litigate its case against any class member until every class member had been identified. (Complaint, ¶ 207).

On November 19, 2010, the court ordered Achte to file a second amended complaint "identifying by name and address Defendants over whom it reasonably believes the Court has personal jurisdiction and who it wants to sue," or if it did not have that information, the IP address of those over whom Achte continued to claim the court had jurisdiction. (Complaint, ¶ 208). The court also ordered Achte to file a status report by February 18, 2011 as to any class members

for whom it did not yet have identifying information from the ISPs. (*Id.*).

In response to the November 19, 2010 order, Achte filed a second amended complaint on December 6, 2010. (Complaint, ¶ 209). The second amended complaint named only one class member as a defendant, along with 139 unnamed John Doe Defendants, out of the 4,577 class members Achte had identified in the first amended complaint. (*Id.*). Achte also filed a notice of dismissal without prejudice of its claims against all other members of the class. (*Id.*). On December 14, 2010, the court entered an order approving Achte's dismissal of its claims against all other members of the class. (Complaint, ¶ 212).

 **\*5**  After voluntarily dismissing the claims against 4,437 of the members of the Class, Achte filed suit against eight class members as named defendants in individual lawsuits in other courts. (Complaint, ¶ 214). Since the dismissal of most of the John Doe Defendants in the Achte Lawsuit, Achte has not refiled any claims against any member of Subclass I (defined below) and has filed only one case against a named member of Subclass II (defined below). (Complaint, ¶ 215). At oral argument, the parties confirmed that Shirokov has not been named in any lawsuit.

E. *The Settlement Demand Letters*

On or about May 19, 2010, Defendant Kurtz sent a letter to Shirokov, accusing him of infringing the copyright in Far Cry (the "Letter"). (Complaint, ¶ 158 and Exhibit N thereto). The Letter stated that DGW had filed suit on behalf of Achte in the District of Columbia and that Shirokov's ISP had supplied DGW with Shirokov's contact information, identifying him as "one of the Defendants who has illegally obtained or shared our client's copyrighted motion picture through a peer-to-peer network ..." (Complaint, ¶ 162 and Exhibit N thereto). The Letter also stated, in relevant part:

> We are sending you this letter as a courtesy before we are required to take more formal legal action which would involve adding you as a named Defendant to the lawsuit.

\* \* \*

> The law provides protection for copyright owners through the Federal copyright statute found at 17 U.S.C. §§ 501–506, which allows the copyright owner to impound

your material, recover their attorney's fees, and seek damages of $750–150,000 per work, depending on the circumstances surrounding the infringement....

> In exchange for a *comprehensive release* of all legal claims which will enable you to avoid becoming a named Defendant in the lawsuit, our firm is authorized to accept the sum of **$1,500** as full settlement for its claims. **This offer will expire at 5pm EST on June 11, 2010.** Thereafter, our client will accept no less than the sum of **$2,500** to settle this matter, but this increased settlement offer will expire on June 30, 2010. In addition, you must remove the file from the shared folder or location where our client's film can be shared or copied within three (3) days of paying a settlement. If you have chosen not to settle by June 30th, we may add you to the list of defendants to be served with a lawsuit.

\* \* \*

> We look forward to resolving this without further action on our part, however if you do not comply with the above requests we may be forced to name you as a Defendant to the lawsuit and proceed directly against you on behalf of our client. If forced to do so, our client will be seeking to recover the maximum amount of fees provided under the Copyright Act for copyright infringement, which is up to $30,000 per illegally downloaded film, plus attorneys' fees and costs of litigation. Because torrent-file sharing requires *deliberate* action by the uploader or downloader of a movie, we may be able to prove that your actions were intentional, rather than just negligent. In the event we are able to prove that the infringement was intentional, our client will be seeking the maximum statutory damages allowed by the Copyright Act in the amount of $ 150,000 per infringement, attorneys' fees and costs.

\* \* \*

 **\*6**  **We strongly encourage you to consult with an attorney to review your rights and risk exposure in connection with this matter.** You should also visit the Frequently Asked Questions web page we have posted at www.farcry-settlement.com, which will provide additional information and hopefully answer many of the questions you have....
(Exhibit N to Complaint) (emphasis in original).

The Letter directed Shirokov to a "Frequently Asked Questions" website. That website included the following information:

*2. I have received a letter in the mail about a lawsuit. Why did I get this letter?*

This letter is a demand letter. A lawsuit has been filed against you in the United States Federal District Court for the Federal District of Columbia for copyright infringement as a result of information about your infringing download of a motion picture. If you pay the settlement amount and accept the terms of the settlement agreement proposed on your case then you will be dismissed from the lawsuit and your information will remain anonymous. If you do not accept the settlement agreement you may subsequently be served with the lawsuit and expected to defend the claim of copyright infringement as alleged in the complaint.

* * *

*4. What are the consequences or damages that can be awarded in a copyright infringement case?*

Statutory damages are available to the owner of a registered work under Title 17, Section 504 of the United States Code in an amount of between $750 and $30,000 per infringed work, if the infringement was not willful. If the infringement was willful, as asserted in the Complaint filed in this case, damages may be as much as $150,000 per infringed work.

*5. Are there potential benefits to settling this claim?*

We are not your attorneys and we are not providing you legal advice. We strongly recommend that you seek advice from an attorney. There are several aspects of settling the copyright infringement claim against you that you might find beneficial. Settling the claim allows you to pay a relatively nominal, onetime lump sum payment to completely resolve the claim, without having to defend yourself in court. The legal fees incurred in defending a copyright infringement claim will almost always exceed the settlement amount demanded by our client. Second, your settlement, identity and contact information will remain private, in that we will not release your information to any third party unless legally required to do so. Third, by settling, you will avoid

the potential for a jury verdict against you that could exceed the amount of the settlement (up to $150,000, for willful infringement) and include an award of our client's attorneys' fees, which will be certainly be several thousand dollars more. Finally, settling allows you to resolve the claim quickly and easily, over the Internet or by mail.

(Exhibit P to Complaint). Beyond factually specific allegations, the defendants have sent substantially identical letters to the members of the class. (Complaint, ¶¶ 159–160).

**\*7** Shirokov did not pay to settle the claims. (Complaint, ¶ 232). However, he alleges that he has incurred costs in retaining counsel "in reliance on the false allegations of the Letter and in order to determine the merits of its claims ... Plaintiff would have avoided those costs had the Letter been truthful." (Complaint, ¶ 232).

Based on his allegations, Shirokov has brought nineteen causes of action, including conspiracy, Computer Fraud and Abuse Act claims, RICO violations, fraud on the court, abuse of process, malicious prosecution, fraud on the copyright office, copyright misuse, and unfair and deceptive practices under Chapter 93A.

F. *The Putative Class*

Shirokov brings this action on behalf of a class of all 4,577 persons who defendants allege infringed Achte's copyright in Far Cry prior to May 12, 2010, the date on which Achte filed its amended complaint in the Achte Action. (Complaint, ¶ 239). The class is further divided into two subclasses: (1) a subclass of all 917 persons ("Subclass 1") who defendants allege infringed Achte's copyright prior to its claimed date of publication, November 24, 2009; and (2) a subclass of all 3,644 persons ("Subclass II") who defendants allege infringed Achte's copyright prior to its effective date of registration, January 19, 2010. (*Id.*). Shirokov alleges that he is a member of Subclass II. (Complaint, ¶ 139).

III. *ANALYSIS*

A. *GuardaLey's Motion To Dismiss For Lack Of Personal Jurisdiction*

In addition to moving to dismiss the Complaint for failure to state a claim, defendant GuardaLey also argues that the Complaint must be dismissed against it pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, because this

Shirokov v. Dunlap, Grubb & Weaver, PLLC, Not Reported in F.Supp.2d (2012)

2012 WL 1065578

Court does not have personal jurisdiction over GuardaLey. (Docket No. 44 at 4–14). "[A] federal court generally may not rule on the merits of a case without first determining that it has jurisdiction over the category of claim in suit (subject-matter jurisdiction) and the parties (personal jurisdiction)." *Sinochem Int'l Co., Ltd. v. Malaysia Int'l Shipping Corp.,* 549 U.S. 422, 430–31, 127 S.Ct. 1184, 167 L.Ed.2d 15 (2007). Therefore, the Court first addresses the jurisdictional issue before reaching GuardaLey's motion to dismiss for failure to state a claim. For the reasons that follow, this Court recommends that the motion to dismiss for lack of personal jurisdiction be ALLOWED.

*1. Documents Outside Of The Complaint*

In order to determine precisely which materials are properly before the Court for purposes of deciding the defendants' motions to dismiss, this Court must first decide GuardaLey's motion to strike. (Docket No. 58). Shirokov has submitted certain exhibits in connection with his opposition to GuardaLey's motion to dismiss the Complaint. (*See* Ex. A through L to Docket No. 56). In addition, he has included a section entitled "Statements of Facts Specific to GuardaLey" on pages 5 through 9 of his opposition. (Docket No. 56 at 5–9). For the reasons set forth below, the Court denies in part and grants in part GuardaLey's motion to strike. The Court will consider those materials only in connection with GuardaLey's motion to dismiss the Complaint for lack of personal jurisdiction but not in connection with the motion to dismiss the Complaint for failure to state a claim.[3]

**\*8** GuardaLey is correct that, generally, the Court may not consider documents outside of the complaint in connection with a motion to dismiss under Rule 12(b)(6). *Nollet v. Justices of the Trial Court of Mass.,* 83 F.Supp.2d 204, 208 (D.Mass.2000) (Harrington, J.), *aff'd,* 248 F.3d 1127 (1st Cir.2000). Nevertheless, on a motion to dismiss for lack of personal jurisdiction, the court may consider facts outside of the complaint. *Boit v. Gar–Tec Prods., Inc.,* 967 F.2d 671, 675 (1st Cir.1992) (citations omitted) (In order to sustain burden of proving personal jurisdiction, "plaintiff must go beyond the pleadings and make affirmative proof."); *Callahan v. Harvest Board Int'l, Inc.,* 138 F.Supp.2d 147, 152–53 (D.Mass.2001) ("The consideration of materials outside the complaint is appropriate in ruling on a motion to dismiss for lack of personal jurisdiction."). This Court, therefore, declines to strike any of the challenged submissions but will consider them only in connection with GuardaLey's

motion to dismiss for lack of personal jurisdiction under the following framework:

> On a motion to dismiss for want of *in personam* jurisdiction, Fed.R.Civ.P. 12(b)(2), the plaintiff ultimately bears the burden of persuading the court that jurisdiction exists ... In conducting the requisite analysis under the prima facie standard, we take specific facts affirmatively alleged by the plaintiff as true (whether or not disputed) and construe them in the light most congenial to the plaintiffs jurisdictional claim ... We then add to the mix facts put forward by the defendants, to the extent that they are uncontradicted ... We caution that, despite the liberality of this approach, the law does not require us struthiously to credit conclusory allegations or draw farfetched inferences.

*Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n,* 142 F.3d 26, 34 (1st Cir.1998) (internal citations omitted). As part of this analysis, the Court does not act as a fact finder. Rather, the Court must determine "whether the facts duly proffered [when] fully credited, support the exercise of personal jurisdiction." *Rodriguez v. Fullerton Tires Corp.,* 115 F.3d 81, 84 (1st Cir.1997). However, "allegations in a lawyer's brief or legal memorandum are insufficient, even under the relatively relaxed prima facie standard, to establish jurisdictional facts." *Barrett v. Lombardi,* 239 F.3d 23, 27 (1st Cir.2001).

*2. Standard of Review*

Although GuardaLey filed the motion to dismiss, Shirokov ultimately bears the burden of persuading the Court that it has personal jurisdiction over GuardaLey. *Hannon v. Beard,* 524 F.3d 275, 279 (1st Cir.2008). In considering a motion to dismiss for lack of personal jurisdiction, a court may choose from three methods for determining whether the plaintiff has met his burden of establishing personal jurisdiction. *Adelson v. Hananel,* 510 F.3d 43, 48 (1st Cir.2007). These methods include the *prima facie* method, the "preponderance of the evidence" method, and the "likelihood" method. *Foster–Miller, Inc. v. Babcock & Wilcox* Can., 46 F.3d 138, 145–47 (1st Cir.1995). When, as here, a court rules on a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, the *"prima facie"* standard governs its determination. *United States v. Swiss Am. Bank, Ltd.,* 274 F.3d 610, 618 (1st Cir.2001). Under the *prima facie* standard, Shirokov must "go beyond the pleadings and make affirmative proof to demonstrate the existence of personal jurisdiction. *Id.* at 619. However, the Court "accept[s] the plaintiff's (properly documented) evidentiary proffers as true"

Shirokov v. Dunlap, Grubb & Weaver, PLLC, Not Reported in F.Supp.2d (2012)

2012 WL 1065578

and construes those facts "in the light most congenial to the plaintiffs jurisdictional claim." *Hannon,* 524 F.3d at 279 (internal quotation marks and citations omitted).

**\*9** In his Complaint, Shirokov stated that this Court had jurisdiction over the subject-matter of the dispute on the basis of both diversity of citizenship, 28 U.S.C. § 1332, and the existence of federal questions, 28 U.S.C. § 1343. (Complaint, ¶¶ 27–28). "When the district court's *subject-matter jurisdiction* rests wholly or in part on the existence of a federal question, the constitutional limits of the court's *personal* jurisdiction are drawn in the first instance with reference to the due process clause of the fifth amendment." *Lorelei Corp. v. Cntv. of Guadalupe,* 940 F.2d 717, 719 (1st Cir.1991) (emphasis in original). In such circumstances, the Fifth Amendment requires only that the defendant have "minimum contacts" with the United States, rather than with the particular forum state (as would be required in a diversity case). *Id.; United Elec., Radio and Mach. Workers of Am. v. 163 Pleasant St. Corp.,* 960 F.2d 1080, 1085 (1st Cir.1992) (citations omitted).

"Nevertheless, while courts in federal question cases have found 'that sufficient contacts [to justify the assertion of personal jurisdiction] exist whenever the defendant is served within the sovereign territory of the United States,' the basis for service of process returnable to a particular court must be grounded within a federal statute or Civil Rule." *United Elec., Radio and Mach. Workers of Am.,* 960 F.2d at 1085 (quotation omitted). "In other words, though personal jurisdiction and service of process are distinguishable, they are inextricably intertwined, since service of process constitutes the vehicle by which the court obtains jurisdiction." *Id.* (citations omitted).

Rule 4 of the Federal Rules of Civil Procedure is the principal mechanism for service of process in federal courts. *Id.* Under most circumstances, Rule 4(f) limits service of process "to the territorial limits of the state in which the court is held." *Id.* at 1085–86 (quoting *Johnson Creative Arts, Inc. v. Wool Masters, Inc.,* 743 F.2d 947, 950 (1st Cir.1984)). However, "a number of federal laws provide for either nationwide or worldwide service, and Rule 4(e) authorizes extraterritorial service in such circumstances." *Id.* at 1086 (internal citations omitted).

The Racketeer Influenced and Corrupt Organizations Act ("RICO") allows broader service of process than Rule 4. 18 U.S.C. § 1965(d); *see also Omni Video Games, Inc. v. Wing Co., Ltd.,* 754 F.Supp. 261, 263 (D.R.I.1991). Here, Shirokov

brings a RICO claim (Count 6). However, RICO authorizes nationwide, not international, service of process. *In re Lupron Mktg. and Sales Practice Litig.,* 245 F.Supp.2d 280, 288 n. 23 (D.Mass.2003); *Omni Video Games, Inc.,* 754 F.Supp. at 263. Defendant GuardaLey was served under the Hague Convention in the United Kingdom and Germany. (Docket Nos. 27–2, 27–3). Accordingly, RICO's nationwide service of process provision does not allow the Court to exercise jurisdiction over defendant GuardaLey.[4]

**\*10** Hence, the Court's analysis comes full circle. "When insufficient statutory authorization for extraterritorial service exists, Rule 4(e) allows such service 'only to the extent permitted by the law of the state in which the district court sits.' " *United Elec., Radio and Mach. Workers of Am.,* 960 F.2d at 1086. Because there is no federal statute permitting service of process on GuardaLey in Germany or the United Kingdom, the Court's inquiry must focus on Massachusetts law concerning personal jurisdiction, notwithstanding that this is a federal question case. Id "And because state law is subject to Fourteenth Amendment limitations, the minimum contacts doctrine, while imposing no direct state-by-state constraint on a federal court in a federal question case, acts indirectly as a governing mechanism for the exercise of personal jurisdiction." *Id.* Accordingly, the Court's analysis must focus on GuardaLey's contacts with Massachusetts.

### 3. The Court Does Not Have General Jurisdiction Over GuardaLey

A court may exercise authority over a defendant by virtue of either general or specific jurisdiction. *Mass. Sch. of Law,* 142 F.3d at 34. Here, Shirokov argues that the Court has both general and specific jurisdiction over GuardaLey. (Docket No. 56 at 11). This Court disagrees.

General jurisdiction exists when the defendant has engaged in "continuous and systematic activity" in the forum, even if the activity is unrelated to the suit. *United Elec., Radio & Mach. Workers of Am.,* 960 F.2d at 1088. "In evaluating whether the exercise of personal jurisdiction is warranted, courts concentrate on the 'quality and quantity of contacts between the potential defendant and the forum.' " *Swiss Am. Bank,* 274 F.3d at 619 (quoting *Phillips Exeter Acad. v. Howard Phillips Fund, Inc.,* 196 F.3d 284, 288 (1st Cir.1999)). In addition to showing that the defendant has "continuous and systematic" contacts with the forum, the plaintiff must also show that the exercise of jurisdiction would be reasonable. *Id.* "As a threshold matter, 'the standard for evaluating whether

Shirokov v. Dunlap, Grubb & Weaver, PLLC, Not Reported in F.Supp.2d (2012)

2012 WL 1065578

these contacts satisfy the constitutional general jurisdiction test is considerably more stringent than that applied to specific jurisdiction questions.' " *Id.* (quotation omitted).

In arguing that GuardaLey's contacts are "continuous and systematic," Shirokov focuses on GuardaLey's contacts with the United States as a whole. However, as stated *supra,* the proper focus is on GuardaLey's contacts with Massachusetts. Shirokov only identifies the following contacts between GuardaLey and Massachusetts: that GuardaLey has tracked and identified "at least thirty [alleged infringers'] at IP addresses located in Massachusetts" in connection with the Acthe Lawsuit and more than one hundred alleged infringers in cases other than the Achte Lawsuit. (Docket No. 56 at 13–14). The Court finds these contacts insufficient to satisfy general jurisdiction.

**\*11** The Supreme Court's decision in *Perkins v. Benguet Consol. Mining Co.*[5] "remains '[t]he textbook case of general jurisdiction appropriately exercised over a foreign corporation that has not consented to suit in the forum.' " *Goodyear Dunlop Tires Ops. v. Brown,* ––– U.S. ––––, ––––, 131 S.Ct. 2846, 2856, 180 L.Ed.2d 796 (2011) (citation omitted). Sued in Ohio, the defendant in *Perkins* was a Philippine mining corporation that had ceased activities in the Philippines during World War II. *Perkins.* 342 U.S. at 447–48. To the extent that the company was conducting any business, it was doing so in Ohio. The corporation's president maintained his office there, kept the company files in that office, and supervised from the Ohio office the limited activities of the company. *Id.* Although the claim-in-suit did not arise in Ohio, the Supreme Court ruled that it would not violate due process to submit the defendant to the jurisdiction of the Ohio court. *Id.* at 448.

Later, in *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984), the Supreme Court addressed the exercise of general jurisdiction over a Colombian corporation. In *Helicopteros.* survivors of United States citizens who died in a helicopter crash in Peru brought a wrongful death action in a Texas state court against the owner and operator of the helicopter, a Colombian corporation. 466 U.S. at 410. The Colombian corporation had no place of business in Texas and was not licensed to do business in Texas. *Id.* at 416. "[The company's] contacts with Texas consisted of sending its chief executive officer to Houston for a contract-negotiation session, accepting into its New York bank account checks drawn on a Houston bank; purchasing helicopters, equipment,

and training services from [a Texas enterprise] for substantial sums; and sending personnel to [Texas] for training." *Id.* The Supreme Court found that those contacts were not continuous and systematic and were insufficient to support the exercise of general jurisdiction over the defendant. *Id.* at 418–19.

"For an individual, the paradigm focus for the exercise of general jurisdiction is the individual's domicile; for a corporation it is an equivalent place, one in which the corporation is fairly regarded as at home." *Goodyear Dunlop Tires Ops.,* 131 S.Ct. at 2853–54 (citation omitted). Shirokov has presented no evidence (or even unsupported allegations) that GuardaLey is a resident of Massachusetts, owns property in Massachusetts, regularly transacts business in Massachusetts, or has otherwise engaged in continuous and systematic activity in Massachusetts. "Measured against *Helicopteros* and *Perkins,* [Massachusetts] is not a forum in which it would be permissible to subject [GuardaLey] to general jurisdiction." *Id.* at 2857. GuardaLey is in no sense at home in Massachusetts. Therefore, this Court finds that GuardaLey's attenuated connections with Massachusetts fall short of the "continuous and systematic general business contacts" necessary to empower a federal court in Massachusetts to entertain a suit against it there.

*4. The Court Does Not Have Specific Jurisdiction Over GuardaLey*

**\*12** "In the absence of general jurisdiction, a court's power depends upon the existence of specific jurisdiction." *Mass. Sch. of Law,* 142 F.3d at 34. To establish specific jurisdiction, Shirokov must demonstrate that the Massachusetts long-arm statute grants jurisdiction over GuardaLey and that the exercise of that jurisdiction comports with the Due Process Clause of the Fourteenth Amendment. *Lorelei Corp.,* 940 F.2d at 720.

The Court need not pause to consider the particulars of the Massachusetts long-arm statute because even if that statute, correctly applied, would purport to grant jurisdiction over GuardaLey, Shirokov must still demonstrate that "the exercise of jurisdiction pursuant to that statute comports with the strictures of the Constitution." *Mass. Sch. of Law,* 142 F.3d at 35; *see also Hannon,* 524 F.3d 275, 280 (1st Cir.2008) ("Because we have construed the Massachusetts long-arm statute to be coextensive with the limits allowed by the United States Constitution, we often 'sidestep the statutory inquiry and proceed directly to the constitutional analysis.' "). The constitutional analysis has three distinct

components: "relatedness, purposeful availment (sometimes called 'minimum contacts'), and reasonableness." *Hannon.* 524 F.3d at 282 (internal quotations and citations omitted).

To satisfy the relatedness component, Shirokov's claims must "arise out of, or be related to, the defendant's in-forum activities." *Hannon,* 524 F.3d at 282. This standard is flexible and focuses on the nexus between the defendant's contacts with the forum and the plaintiff's cause of action. *Id.* However, there are some constraints on its application. The First Circuit has described the relatedness standard as follows:

> The relatedness requirement is not an open door; it is closely read, and it requires a showing of a material connection. This court steadfastly rejects the exercise of personal jurisdiction whenever the connection between the cause of action and the defendant's forum-state contacts seems attenuated and indirect. Instead, the defendant's in-state conduct must form an important, or at least material, element of proof in the plaintiff's case. A broad but-for argument is generally insufficient. Because "but-for" events can be very remote, due process demands something like a "proximate cause" nexus.

*Harlow v. Children's Hosp.,* 432 F.3d 50, 61 (1st Cir.2005) (internal citations, quotations and modifications omitted).

As described above, the only conceivable contacts with Massachusetts consist of GuardaLey's "tracking" of IP addresses of alleged infringers who happened to be located in Massachusetts. (Docket No. 56 at 13–14). Shirokov has presented no evidence that GuardaLey performed such tracking anywhere other than its place of business in the United Kingdom. Shirokov also alleges that GuardaLey provided that information to the Dunlap Defendants, who then used that information to file the Achte Lawsuit, obtain subpoenas, obtain the alleged infringers' contact information and, ultimately, send the Letter to Shirokov and others. (*See generally* Complaint at 4. 133–137, 156–160). The Court finds that such a chain of events does not satisfy the relatedness requirement. To be sure, it could be argued that the Achte Lawsuit and subsequent Letter would not have been possible without the information provided by GuardaLey. However, a "but-for" argument that DGW would not have sent a settlement demand letter to Shirokov had GuardaLey not documented his downloading of Far Cry is insufficient to satisfy the relatedness prong because it is too attenuated and too remote in the causation link. Although GuardaLey's alleged activities may have provided the other defendants with information that they in turn used to perpetrate the alleged copyright scheme, those activities

are not a material element of Shirokov's case. Shirokov has provided no evidence (and has not even alleged) that GuardaLey itself knew of or participated in the copyright scheme. *See* Section III(B)(6) below.

**\*13** Even if Shirokov could demonstrate that GuardaLey's contacts with Massachusetts were related to his cause of action, he must also show that GuardaLey's contacts "represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's presence before the state's courts foreseeable." *Hannon,* 524 F.3d at 284. This requirement "ensures that jurisdiction is not based on merely random, isolated or fortuitous contacts with the forum state, and is based upon the 'cornerstones of voluntariness and foreseeability.'" *Id.* (internal modifications and citations omitted). The defendant's contacts "must be voluntary and not based on the unilateral actions of another party" and "must be such that [the] defendant could reasonably anticipate being haled into court there." *Id.* (internal modifications omitted). "Even if a defendant's contacts with the forum are deemed voluntary, the purposeful availment prong of the jurisdictional test investigates whether the defendant benefitted from those contacts in a way that made jurisdiction foreseeable." *Id.* (citing *Phillips Exeter Acad.,* 196 F.3d at 292).

Again, Shirokov alleges only that GuardaLey "tracked" the internet usage of alleged infringers. (Docket No. 56 at 13–14). He argues that such tracking constitutes purposeful availment because it was foreseeable that the effects of such tracking would be felt in each state, including Massachusetts, and GuardaLey did not make any efforts to exclude Massachusetts from its targeted conduct. (Docket No. 56 at 21). Shirokov states that in order to track infringement, GuardaLey had to actively participate in the infringement by offering files for download. (Docket No. 73 at 3). GuardaLey, on the other hand, characterizes its activities as simple observation and monitoring of infringement activity. (Docket No. 65 at 4, n. 3). Therefore, the key issue is whether GuardaLey purposefully availed itself of the privilege of conducting business in Massachusetts if its internet activities interacted with Massachusetts residents. In making their respective arguments for and against the exercise of personal jurisdiction, both parties rely on caselaw regarding website owners. (Docket No. 65 at 4; Docket No. 73 at 3). While that caselaw may not be directly on point, the Court nevertheless finds it useful for purposes of its analysis.

Shirokov v. Dunlap, Grubb & Weaver, PLLC, Not Reported in F.Supp.2d (2012)

2012 WL 1065578

Most circuits and lower courts have adopted a test developed in *Zippo Mfg. Co. v. Zippo Dot Com, Inc.,* a 1997 trademark infringement case involving an internet domain name. 952 F.Supp. 1119 (W.D.Pa.1997); *see also Sportschannel New England Ltd. Partnership v. Fancaster, Inc.,* No. 09cv11884– NG, 2010 WL 3895177, at *5 (D.Mass. Oct.1, 2010) (collecting cases); *Hasbro, Inc. v. Clue Computing, Inc.,* 994 F.Supp. 34, 40 (D.Mass.1997) (collecting cases). One judge describes the Zippo test as follows:

**\*14** ¢=BQP:0085Zippo creates a sliding scale in which the likelihood of personal jurisdiction is 'directly proportionate' to the level of interactivity of the website. At one end of the spectrum, personal jurisdiction is clearly established where a defendant conducts regular business over the internet, for example by entering into contracts with foreign users to transmit files to their home computers for a fee. At the other end of the spectrum are passive websites that do no more than share information.

And in the middle of the spectrum are interactive websites where a user exchanges information with a host computer. Here, the *Zippo* court examines the 'level of interactivity' and the 'commercial nature of the exchange of information' on the site. Mere interactivity is not enough. Something more is required.

*Zippo* and its progeny do not provide much guidance to courts in determining what kind of 'something more' is required to render an interactive website subject to a court's personal jurisdiction. While courts have found that passive websites do not expose themselves to jurisdiction of every forum, they have been less clear about how much interactivity does.

*Sportschannel New England Ltd. Partnership,* 2010 WL 3895177 at \* 5 (internal citations omitted).

Shirokov compares GuardaLey's activities to an interactive website, while GuardaLey compares it to a passive website. The activities appear to be somewhere in between. In any event, the Court finds that GuardaLey's activities are not sufficient to satisfy the purposeful availment requirement. In this case, GuardaLey is not selling a product or providing information to the public via the internet. Although it may be interacting in some sense with the alleged infringers, in doing so, it only identifies IP addresses and adds them to a list of copyright infringers. The fact that GuardaLey then provided that information to the Dunlap Defendants does not equate with purposeful availment of the benefits and protections of Massachusetts laws. Indeed, "[i]n the era of Facebook ...

most websites now allow users to 'share' an article, choose to 'like' a particular page, add comments, and email the site owners ... If virtually every website is now interactive in some measure, it cannot be that every website subjects itself to litigation in any forum-unless Congress dictates otherwise." *Id.* at *6. "Interactivity alone cannot be the linchpin for personal jurisdiction." *Id.*

Perhaps because GuardaLey's contacts with Massachusetts are so attenuated, Shirokov attempts to impute other defendants' activities in Massachusetts to GuardaLey by invoking the doctrine of piercing the corporate veil as a basis for its argument that the Court has personal jurisdiction over GuardaLey. (Docket No. 56 at 15). He also argues that USCG is an agent of GuardaLey. (Docket No. 73 at 7–8). In support of this argument, Shirokov points out that at least one of the managers of USCG, Benjamin Perino, is also a managing director of GuardaLey. In addition, Shirokov argues that GuardaLey and DGW are both partners in USCG. (Docket No. 56 at 15). Shirokov fails to recognize, however, that the mere existence of a business relationship between two corporate entities does not establish an agency relationship or a basis for disregarding the corporate form. *Am. Home Assurance Co. v. Sport Maska, Inc.,* 808 F.Supp. 67, 72 (D.Mass.1992). In addition, Shirokov has not proffered sufficient evidence of an agency relationship between GuardaLey and any of the other defendants.

**\*15** Although Shirokov argues in his brief that GuardaLey has been a primary participant in structuring the Achte Lawsuit and similar litigation and that USCG acts for GuardaLey (*see* Docket No. 56 at 14; Docket No. 73 at 8), he has put forth no competent evidence to support those arguments. In order to defeat a motion to dismiss for lack of personal jurisdiction, Shirokov "must do more than simply surmise the existence of a favorable factual scenario; he must verify the facts alleged through materials of evidentiary quality." *Barrett v. Lombardi.* 239 F.3d 23, 27 (1st Cir.2001). His lawyers' unsupported arguments in the opposition to the motion to dismiss are insufficient, even under the relaxed prima facie standard, to establish jurisdictional facts. *Id.* Accordingly, the Court finds that Shirokov has failed to show that GuardaLey substantially directed its activities to Massachusetts to constitute purposeful availment.

Because Shirokov has failed to establish the relatedness and purposeful availment components, this Court need go no further in its jurisdictional analysis. *Swiss Am. Bank.* 274 F.3d at 625. Accordingly, this Court recommends that the District

2012 WL 1065578

Judge find that there is no jurisdiction over GuardaLey in this District Court.

### 5. *Jurisdiction Under Rule 4(k)(2)*

The Court's findings above do not end the matter. Shirokov also argues that GuardaLey is subject to the Court's jurisdiction under Rule 4(k)(2) of the Federal Rules of Civil Procedure. (Docket No. 73 at 4–5). Rule 4(k)(2) provides:

> (2) **Federal Claim Outside State–Court Jurisdiction.** For a claim that arises under federal law, serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant if:

> (A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and

> (B) exercising jurisdiction is consistent with the United States Constitution and laws.

Fed.R.Civ.P. 4(k)(2). Rule 4(k)(2) serves as "a species of federal long-arm statute." *Swiss Am. Bank,* 191 F.3d 30, 40 (1st Cir.1999). Before this rule was enacted, "foreign defendants who lacked single-state contacts sufficient to bring them within the reach of a given state's long-arm statute ... but who had enough contacts with the United States as a whole to make personal jurisdiction over them in a United States court constitutional, could evade responsibility for civil violations of federal laws that did not provide specifically for service of process." *id.* Rule 4(k)(2) closed that loophole. *Id.*

In order for Rule 4(k)(2) to apply, three requirements must be met: (1) the plaintiff's claim must be one arising under federal law; (2) the putative defendant must be beyond the jurisdictional reach of any state court of general jurisdiction; and (3) the federal court's exercise of personal jurisdiction over the defendant must not offend the Constitution or other federal law. *Id.* at 38.

**\*16** Here, Shirokov has presented evidence that GuardaLey operates a sales division in Los Angeles, California since at least early 2010, headed by Barbara Mudge. (Docket No. 56 at 7, Docket No. 56–1, Docket No. 56–9 at 3–4). The presence of a business office in California would likely subject GuardaLey to personal jurisdiction there. Accordingly, Shirokov has failed to carry his burden of proving that Rule 4(k)(2) applies to this case.

For the foregoing reasons, this Court finds that it does not have personal jurisdiction over GuardaLey and recommends

that the District Judge allow GuardaLey's motion to dismiss for lack of personal jurisdiction and dismiss all claims against GuardaLey.[6]

### B. *Motions To Dismiss For Failure To State A Claim*

### 1. *Standard Of Review*

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (citing *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

The Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiffs' favor. *Langadinos v. Am. Airlines, Inc.,* 199 F.3d 68, 69 (1st Cir.2000). While the court must accept as true all of the factual allegations contained in the complaint, that doctrine is not applicable to legal conclusions. *Iqbal,* 129 S.Ct. at 1949. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.; see also Sanchez v. Pereira–Castillo,* 590 F.3d 31, 48 (1st Cir.2009) ("In other words, a plaintiff must offer 'more than an unadorned, the-defendant-unlawfully-harmed-me accusation,' in order to claim a 'plausible entitlement to relief.' ") (citations omitted). Accordingly, a complaint does not state a claim for relief where the well-pleaded facts fail to warrant an inference of any more than the mere possibility of liability. *Iqbal,* 129 S.Ct. at 1950.

### 2. *The Plaintiff Has Standing To Bring This Action*

The defendants argue that Shirokov has no standing to bring this action because he has not suffered any injury in fact. Specifically, they argue that because Shirokov did not pay to settle Achte's claims, he does not have an injury sufficient to confer Article III standing. (Docket No. 29 at 8–10; Docket No. 44 at 27–31; Docket No. 48 at 6–7). Shirokov argues that the threat of litigation and his subsequent incursion of attorneys' fees establishes standing. (Docket No. 32 at 5–7).

**\*17** If Shirokov lacks standing to bring this matter before the Court, the Court lacks jurisdiction to decide the merits of the case. *Libertad v. Welch,* 53 F.3d 428, 436 (1st Cir.1995) (citation omitted). "Thus, standing is a threshold issue, determining whether the court has the power to hear the case, and whether the putative plaintiff is entitled to have the court decide the merits of the case." *Id.*

"Standing involves 'a blend of constitutional requirements and prudential considerations.' " *N.H. Right to Life Political Action Comm. v. Gardner,* 99 F.3d 8, 13 (1st Cir.1996) (quoting *Valley Forge Christian Coll. v. Americans United for Separation of Church and State,* 454 U.S. 464, 471, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982)). A federal court is empowered only to decide "cases" and "controversies." *Id.* (citing U.S. Const. art. III). "Not every dispute is a case or controversy. 'The presence of a disagreement, however sharp and acrimonious it may be, is insufficient by itself to meet Art. Ill's requirements.' " *Id.* (citation omitted).

In order to establish standing, Shirokov must show that (I) he personally has suffered some actual or imminent injury as a result of the challenged conduct; (2) the injury can fairly be traced to that conduct; and (3) the injury likely will be redressed by a favorable decision from the court. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). An injury in fact must be concrete and particularized rather than conjectural or hypothetical. *Summers v. Earth Island Inst.,* 555 U.S. 488, 493, 129 S.Ct. 1142, 173 L.Ed.2d 1 (2009).

The injury must be real but not necessarily economic. *United States v. A VX Corp.,* 962 F.2d 108, 113–14 (1st Cir.1992). "A mere interest in an event-no matter how passionate or sincere the interest and no matter how charged with public import the event-will not substitute for an actual injury." *Id.* at 114.

In a putative class action, the named plaintiff must individually fulfill the standing requirement at the time of the filing before he can represent class members. *Cavallaro v. UMass Memorial Health Care, Inc.,* No. 09–40152–FDS, 2011 WL 2295023, at \* 2 (D.Mass. June 8, 2011). The fact that "a suit may be a class action ... adds nothing to the question of standing, for even named plaintiffs who represent a class 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.' " *Simon v. Eastern Ky.*

*Welfare Rights Org.,* 426 U.S. 26, 40 n. 20, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976) (quotations omitted). The plaintiff must allege a distinct and palpable injury to himself, even if it is an injury shared by a large class of other possible litigants. *Warth v. Seldin,* 422 U.S. 490, 501, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975).

Shirokov bears the burden of establishing Article III standing. *Lujan,* 504 U.S. at 561. "Since [the elements of standing] are not mere pleading requirements but rather an indispensable part of the plaintiffs case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.,* with the manner and degree of evidence required at the successive stages of the litigation." *Id.; see also AVX Corp.,* 962 F.2d at 114. The First Circuit has held that "where standing is at issue, heightened specificity is obligatory at the pleading stage." *AVX Corp.,* 962 F.2d at 115. The complainant must set forth reasonably definite factual allegations regarding each material element needed to sustain standing. *Id.* Accordingly, "the facts necessary to support standing must clearly appear in the record and 'cannot be inferred argumentatively from averments in the pleadings.' " *Id.* (quotations omitted).

**\*18** The Complaint alleges that the defendants' copyright scheme has caused damages to the class members in the form of payment of inflated settlements and/or related expenses in defending themselves against the copyright scheme. (Complaint, ¶ 324). However, Shirokov alleges that he did not pay anything to the defendants in response to the Letter. Instead, Shirokov alleges that he incurred legal costs "in reliance on the false allegations of the Letter and in order to determine the merits of its claims." (Complaint, ¶ 232). Shirokov also alleges that he would have avoided those costs had the Letter been truthful. (*Id.*).

Based on the allegations in the Complaint, Shirokov argues that three distinct "injuries" confer standing: (I) the threat of potential litigation against him; (2) the fees incurred by him in determining the merits of Achte's copyright claims; and (3) the legal fees incurred by him in this action. As detailed below, only the second category confers standing on Shirokov.

Shirokov argues that he has suffered an injury-in-fact based on the threat of potential litigation against him. He states that Achte, via DGW, "has already sued Plaintiff and the entire Class in 2010, and Moving Defendants threatened to sue each member of the Class individually." (Docket No. 32 at 5). However, the case cited by Shirokov to support

2012 WL 1065578

this proposition arises out of the limited context of First Amendment rights that are inapplicable to the present case. *See Gardner,* 99 F.3d at 11–12 (declaratory judgment action seeking ruling that state campaign finance statutes unlawfully abridged plaintiff's free speech rights).

In any event, any potential threat of litigation against Shirokov is speculative and too remote to support a finding of standing.[7] In order to comply with Article Ill's requirements, "a plaintiff must face a threat of injury that is both 'real and immediate,' not 'conjectural' or 'hypothetical.' " *In re New Motor Vehicles Canadian Export Antitrust Litig.,* 522 F.3d 6, 14 (1st Cir.2008) (citation omitted). Shirokov's own Complaint alleges that Achte abandoned its claims against 4,437 of the Class members. He does not allege that he is one of the remaining defendants in the Achte Lawsuit. (Complaint, ¶¶ 209–212). He has also alleged that the defendants' alleged scheme is based on obtaining settlements, not judgments, and that the defendants do not actually intend to prosecute the vast majority of the copyright claims they bring. (Complaint, ¶ 5, 8, 152–153). Indeed, eighteen months after receiving the Letter, Shirokov has not been named as a defendant in the Achte Lawsuit or any other lawsuit by Achte.[8]

To the extent that Shirokov claims that the legal fees incurred in this action constitute an injury sufficient to confer Article III standing, he is wrong. (Docket No. 32 at 6). "[A] plaintiff cannot achieve standing to litigate a substantive issue by bringing suit for the cost of bringing suit."*Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 107, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998). "The litigation must give the plaintiff some other benefit besides reimbursement of costs that are a byproduct of the litigation itself. An 'interest in attorney's fees is ... insufficient to create an Article III case or controversy where none exists on the merits of the underlying claim.' " *Id.* (citations omitted).

**\*19** Nevertheless, Shirokov has standing to bring this action based on his allegations that he incurred legal fees in connection with the Letter. Shirokov's out-of-pocket loss of money is an injury. The natural and probable consequences of the defendants' alleged actions include the costs incurred in defending the copyright claims. As such, fees incurred in connection with the Letter would be considered compensatory damages, not attorneys' fees. *See, e.g., Millenium Equity Holdings, LLC v. Mahlowitz,* 456 Mass. 627, 645, 925 N.E.2d 513 (2010) ("The 'natural and probable' consequences of an abuse of process lawsuit

include the costs incurred in successfully defending the charge. As such, fees incurred for defending such a lawsuit are considered compensatory damages, not attorney's fees.") (citation omitted). Accordingly, the Court finds that Shirokov has standing to bring this suit.

### 3. *The Noerr–Pennington Doctrine Does Not Bar Shirokov's Claims*

The Dunlap Defendants and Achte rely on the *Noerr–Pennington* doctrine as a ground for dismissal of all of Shirokov's claims. (Docket No. 29 at 14–16; Docket No. 48 at 8–11). Although, as set forth below, the Court ultimately concludes that there are independent bases supporting dismissal of most of Shirokov's claims, the Court finds that the *Noerr–Pennington* doctrine does not bar Shirokov's claims.

The *Noerr–Pennington* doctrine, which derives from *United Mine Workers of America v. Pennington,* 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965), and *Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc.,* 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961), shields from antitrust liability entities who join together to influence government action, even if they seek to restrain competition or to damage competitors. *Davric Maine Corp. v. Rancourt,* 216 F.3d 143, 147 (1st Cir.2000) (citations omitted). The doctrine applies to petitions before legislatures, administrative agencies, and the courts. *Id.* (citations omitted). In addition, some courts have extended the doctrine to pre-litigation activities, such as threats to sue and demand letters. *See, e.g., Primetime 24 Joint Venture v. Nat'l Broad. Co., Inc.,* 219 F.3d 92, 100 (2nd Cir.2000) (collecting cases).

There is some debate, however, as to whether the *Noerr–Pennington* doctrine applies outside of the antitrust field. *Compare Sosa v. DirecTV, Inc.,* 437 F.3d 923, 931 (9th Cir.2006) (*Noerr–Pennington* is "a generic rule of statutory construction, applicable to any statutory interpretation that could implicate the rights protected by the Petition Clause.") *with Cardtoons, L.C. v. Major League Baseball Players Ass'n,* 208 F.3d 885, 891 (10th Cir.2000) (holding that prelitigation threats communicated solely between private parties are not afforded immunity from suit by the right of petition guaranteed by the First Amendment). Shirokov argues that the doctrine only applies to antitrust claims. (Docket No. 32 at 16–18). The First Circuit has not addressed the issue directly but its decisions indicate that it may view the *Noerr–Pennington* doctrine expansively. *See, e.g., Tomaiolo v. Mallinoff,* 281 F.3d 1, 11 n. 9 (1st Cir.2002). Nevertheless,

2012 WL 1065578

this Court declines to extend the doctrine to include the conduct at issue here at this stage of the case. This Court finds the Tenth Circuit's analysis in *Cardtoons* persuasive.

**\*20** The *Noerr–Pennington* doctrine, as originally formulated by the Supreme Court, rests on two separate grounds. First, it relies on a statutory interpretation of the Sherman Act that limits the scope of the Act so as to not reach activity associated with the political process. *Noerr,* 365 U.S. at 137–38. Second, it rests on the First Amendment right of citizens to petition the government. *Id.*

Because the instant dispute is not regulated by the Sherman Act, this Court is reluctant to apply the *Noerr–Pennington* doctrine. A number of courts have acknowledged the incongruity of applying the *Noerr–Pennington* doctrine outside of the antitrust context where immunity is cognizable only on First Amendment grounds. *See generally Cardtoons,* 208 F.3d at 891. In *Cardtoons,* the Tenth Circuit explained:

> While we do not question the application of the right to petition outside of antitrust, it is a bit of a misnomer to refer to it as the *Noerr–Pennington* doctrine; a doctrine which was based on *two* rationales. In our view, it is more appropriate to refer to immunity as *Noerr–Pennington* immunity only when applied to antitrust claims. In all other contexts ... such immunity derives from the right to petition. *Cardtoons,* 208 F.3d at 889–90 (emphasis in original). This Court therefore concludes that the clearest, if not most legally accurate, manner to examine the defendants' claim of immunity is under the Petition Clause of the First Amendment.

The First Amendment guarantees "the right of the people ... to petition the Government for a redress of grievances." U.S. Const. amend. I. The right to petition "is implicit in '[t]he very idea of government, republican in form.' " *McDonald v. Smith,* 472 U.S. 479, 482, 105 S.Ct. 2787, 86 L.Ed.2d 384 (1985) (quotations omitted). The right to petition, however, is not absolute. The Petition Clause "neither enjoys 'special First Amendment status' nor confers an 'absolute immunity' for privilege.' " *We, Inc. v. City of Philadelphia,* 174 F.3d 322, 327 (3rd Cir.1999) (quoting *McDonald,* 472 U.S. at 484–85). Accordingly, a claim of immunity under the Petition Clause must be evaluated under the same First Amendment principles that apply to other constitutionally protected activity.

In *Cardtoons,* the Tenth Circuit found that written, prelitigation threats between private parties are not entitled

to immunity under the First Amendment. *Cardtoons,* 208 F.3d at 891. The plaintiff contracted with a printing company to create parody baseball cards containing images of major league players. The Major League Baseball Players Association ("MLBPA") sent cease and desist letters to both the plaintiff and the printing company. Upon receiving its letter, the printing company informed the plaintiff it would not print the cards. The plaintiff then filed suit alleging that the MLBPA had tortuously interfered with its printing contract. Both the district court and an appeals panel found the MLBPA was immune from liability under the *Noerr–Pennington* doctrine even though the case did not involve antitrust law. *Cardtoons, L.C. v. Major League Baseball Players Ass'n,* 182 F.3d 1132 (10th Cir.1999). On rehearing, however, an *en banc* panel found the prelitigation threats in the cease and desist letter were not afforded immunity by either the First Amendment right to petition or the *Noerr–Pennington* doctrine. *Cardtoons,* 208 F.3d at 886. The Tenth Circuit reasoned that if the plaintiff had sued MLBPA for libel, the suit similarly would be allowed to proceed. *Id.* at 891. "Statements made in a letter threatening litigation are not absolutely protected by the petition clause of the First Amendment and are subject to the principles of state common law and state statutory law." *Id.* at 892. The court concluded by noting that "[w]hile there are many persuasive policy arguments in favor of granting immunity to private threats of litigation, these do not override the clear language of the First Amendment. Such arguments are best addressed to state legislative bodies." *Id.*

**\*21** Here, it is difficult to see how subjecting the defendants to liability for their conduct, if appropriate, would satisfy the policy objectives of the doctrine. At issue in this motion is not the defendants' right to use demand letters as a means of encouraging settlement, but rather their use of false or misleading statements in the demand letters. If Shirokov's allegations were to be proven at trial, punishing the defendants will not deter future use of demand letters. At best, it will encourage the defendants to investigate carefully their accusations and to be precise in the language they use when attempting to settle with suspected infringers. Accordingly, this Court finds that the *Noerr–Pennington* doctrine does not apply under the circumstances of this case at this time.

Even if the Court were to find the *Noerr–Pennington* doctrine applicable to this case, the doctrine is also limited by the "sham" exception. *Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.,* 508 U.S. 49, 60, 113 S.Ct. 1920, 123 L.Ed.2d 611 (1993). In order to qualify as a

Shirokov v. Dunlap, Grubb & Weaver, PLLC, Not Reported in F.Supp.2d (2012)

2012 WL 1065578

"sham," "the lawsuit must be objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits." *Id.* "Only if challenged litigation is objectively meritless may a court examine the litigant's subjective motivation." *Id.* In the Ninth Circuit, which has extended *Noerr–Pennington* to cases such as this one, the "sham exception" may apply in three circumstances: (1) where the lawsuit is objectively baseless and the defendant's motive in bringing it was unlawful; (2) where the conduct involves a series of lawsuits brought pursuant to a policy of starting legal proceedings without regard to the merits and for an unlawful purpose; and (3) if the allegedly unlawful conduct consists of making intentional misrepresentations to the court, litigation can be deemed a sham if a party's knowing fraud upon, or its intentional misrepresentations to, the court deprive the litigation of its legitimacy. *Sosa,* 437 F.3d at 939 (citations omitted).

Under the Copyright Act, a person who violates the exclusive rights of a copyright owner is an infringer of the copyright or right of the owner. 17 U.S.C. § 501(a). The legal or beneficial owner of an exclusive right under a copyright "is entitled ... to institute an action for any infringement of that particular right." 17 U.S.C. § 501(b). Achte is the holder of copyright of Far Cry, a fact that Shirokov does not dispute. Accordingly, Achte has the right to bring suit against an alleged infringer, assuming its copyright is valid.

Here, however, Shirokov alleges that DGW and Achte obtained a copyright registration for Far Cry by fraud. (Complaint, ¶¶ 90–125). Based on the fraudulently obtained copyright, they then filed the Achte Lawsuit knowing that Achte was not entitled to statutory damages. (Complaint, ¶¶ 134–155). Shirokov also alleges that the defendants used the process of the lawsuit, as opposed to the outcome of the lawsuit, to extort settlements from the class based on the threat of statutory damages. (Complaint, ¶ 156). They never intended to actually litigate the claims. (Complaint, ¶ 157). He has also alleged that the defendants acted in bad faith. (*See generally* Complaint at ¶¶ 24, 178, 236, 238). Therefore, Shirokov has alleged sufficient facts that, if proven, would establish that the Achte Lawsuit was a sham. Accordingly, at this early stage of the proceedings, the Court cannot conclude that the *Noerr–Pennington* doctrine, even if applicable, bars Shirokov's claims. Accordingly, the Court recommends that the District Judge deny the defendants' motions to dismiss to the extent that they are based on the *Noerr–Pennington* doctrine.

**4.** *Shirokov's Claims Are Not Barred By The Massachusetts Litigation Privilege*

**\*22** The Dunlap Defendants and Achte argue that Shirokov's claims are also barred by the absolute litigation privilege covering attorneys' statements made in connection with the conduct of litigation. (Docket No. 29 at 17–21; Docket No. 48 at 15–16). On a motion to dismiss, the Court finds that the defendants cannot show on the face of the Complaint and other materials properly before the Court that the litigation privilege bars Shirokov's claims.

"Under Massachusetts law,[9] an attorney's statements are absolutely privileged 'where such statements are made by an attorney engaged in his function as an attorney whether in the institution or conduct of litigation or in conferences and other communications preliminary to litigation.' " *Blanchette v. Cataldo,* 734 F.2d 869, 877 (1st Cir.1984) (quoting *Sriberg v. Raymond,* 370 Mass. 105, 109, 345 N.E.2d 882 (1976)). This doctrine was motivated by "the public policy of permitting attorneys complete freedom of expression and candor in communications in their efforts to secure justice for their clients." *Meltzer v. Grant,* 193 F.Supp.2d 373, 377 (D.Mass.2002) (quotation omitted). The privilege applies as a general bar to all civil liability based upon an attorney's statements, and it applies even if the offensive statements were uttered maliciously or in bad faith. *Doe v. Nutter, McClennen & Fish,* 41 Mass.App.Ct. 137, 140, 668 N.E.2d 1329 (1996). The litigation privilege applies not only to statements by attorneys but also to communications by a party as long as the other conditions for the privilege are present. *Giuffrida v. High Country Investor, Inc.,* 73 Mass.App.Ct. 225, 242, 897 N.E.2d 82 (2008).

The litigation privilege applies to communications made preliminary to proposed judicial proceedings if judicial proceedings are contemplated in good faith and under serious consideration. *Meltzer,* 193 F.Supp.2d at 381.[10] If judicial proceedings are already underway, the privilege applies if the statements are "pertinent" to the litigation. *Id.* at 378 (citing *Blanchette.* 734 F.2d at 877). In other words, the statements must have some reference to the subject matter of the litigation, although they need not be strictly relevant to any issue in the litigation. *Leavitt v. Bickerton,* 855 F.Supp. 455, 456–57 (D.Mass.1994).

"Whether an absolute privilege applies is determined on a case-by-case basis, after a fact-specific analysis." *Fisher v.*

*Lint,* 69 Mass.App.Ct. 360, 365–66, 868 N.E.2d 161 (2007) (citation omitted). In addition, as the parties asserting the privilege, the defendants have the burden of establishing entitlement to the privilege. *Meltzer,* 193 F.Supp.2d at 381. Here, Shirokov alleges that at the time that the Letter was written, litigation against him or the class members was not contemplated in good faith. Although DGW had filed the Achte Lawsuit on Achte's behalf, Shirokov alleges that it was filed for the improper purpose of extorting settlement and that the defendants never intended to actually prosecute the Achte Lawsuit. *Cf. Int'l Floor Crafts, Inc. v. Adams,* 477 F.Supp.2d 336, 340 (D.Mass.2007) (litigation privilege will not bar a claim for tortious interference on the basis of the filing of a lawsuit if it is alleged that the suit was filed for the ulterior purpose of interfering with a prospective business relationship). Indeed, in the twenty months since Shirokov received the Letter, he has not been sued.

**\*23** Accordingly, in this case, the application of the privilege is not properly resolved on a motion to dismiss. On a motion to dismiss, the Court must take all of the plaintiffs allegations as true. Thus, a motion to dismiss on the basis of the litigation privilege only succeeds when the entitlement to the privilege is demonstrated by the complaint itself. If the complaint construed in the plaintiffs favor does not support the application of the privilege, the issue is more properly resolved on a motion for summary judgment or at trial. Here, viewing all of the Complaint's allegations as true, the Court cannot rule as a matter of law that the litigation privilege applies and bars Shirokov's claims.[11]

Having found that Shirokov has standing and that the *Noerr–Pennington* Doctrine and the Massachusetts litigation privilege do not bar Shirokov's claims at this stage of the case, the Court now turns to the merits of each of the Counts of the Complaint.

*5. Shirokov Has Failed To State A Claim Under The Computer Fraud And Abuse Act Because He Has Not Alleged Damage Or Loss Within The Meaning Of The Statute*

In Count 4 of the Complaint, Shirokov pleads claims against the defendants under the Computer Fraud and Abuse Act, 18 U.S.C. §§ 1030, *et seq.* (the "CFAA"). "The CFAA is the centerpiece of federal enforcement efforts against computer based crimes." *Healthcare Advocates, Inc. v. Harding, Earley, Follmer & Frailey,* 497 F.Supp.2d 627, 646 (E.D.Pa.2007). Shirokov bases his claims on three subsections of the statute: Sections 1030(a) (4), 1030(a)(5)(C), and 1030(a)(2)

(C) (Complaint, ¶¶ 279, 283 and 284, respectively). The defendants move to dismiss Count 4 on the grounds that Shirokov has failed to plead that he has suffered "damage" or "loss" within the meaning of the statute. (Docket No. 29 at 23–26; Docket No. 44 at 25–27; Docket No. 48 at 18–20). This Court agrees.

Section 1030(a)(4) makes it unlawful to access a protected computer without, or beyond the scope of any, authorization, knowingly and with intent to defraud and as a result obtaining anything of value. 18 U.S.C. § 1030(4). Section 1030(a)(5)(C) makes it a crime to "intentionally access [ ] a protected computer without authorization, and as a result of such conduct, [to] cause[ ] damage and loss." 18 U.S.C. § 1030(a)(5)(C). Finally, Section 1030(a)(2)(C) makes it a crime to "intentionally access [ ] a computer without authorization or exceed[ ] authorized access, and thereby obtain[ ] ... information from any protected computer." 18 U.S.C. § 1030(a)(2) (C).

Although the CFAA is primarily a criminal statute, a person may bring a civil action against the violator so long as the person has suffered "damage or loss by reason of a violation" of the CFAA. 18 U.S.C. § 1030(g); *see also EF Cultural Travel BV v. Exolorica, Inc..,* 274 F.3d 577, 584 (1 st Cir.2001). The CFAA defines "damage" as "any impairment to the integrity or availability of data, a program, a system, or information." 18 U.S.C. § 1030(e)(8). "Loss" is defined as "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service." 18 U.S.C. § 1030(e)(11).

**\*24** Shirokov's allegations that he suffered damage or losses as a result of the alleged CFAA violations constitute nothing more than "a formulaic recitation of the elements." *Bell Atlantic Corp.,* 550 U.S. at 555. Shirokov has not alleged any damage to his computer or information or programs contained thereon, or loss of the use of his computer that fits within the statutory definition. *See* 18 U.S.C. § 1030(e)(8).

Similarly, he has not alleged any facts supporting a loss under the meaning of the CFAA. Courts have interpreted loss to include the cost of responding to a security breach, such as the cost of performing a computer system damage assessment and remedying the damage and any costs incurred because the computer cannot function while or until repairs are made.

*NCMIC Fin. Corp. v. Artino,* 638 F.Supp.2d 1042, 1063–64 (S.D.Iowa 2009); *Wilson v. Moreau,* 440 F.Supp.2d 81, 109–10 (D.R.I.2006). "[T]here is nothing to suggest that the 'loss' or costs alleged can be unrelated to the computer." Wilson, 440 F.Supp.2d at 109–10. Moreover, courts have held that legal fees do not constitute a loss under the CFAA. *See Wilson,* 440 F.Supp.2d at 110 (rejecting plaintiffs' argument that their loss met the $5,000 statutory threshold under the CFAA, because "plaintiffs litigation expenses are not directly attributable to Defendants' computer browsing, and are not economic damages in excess of $5,000 as required by the statute"); *see also NCMIC Fin. Corp.,* 638 F.Supp.2d at 1065; *Healthcare Advocates, Inc.,* 497 F.Supp.2d at 647.[12] Shirokov has not alleged that his ability to use his computer has been affected or impaired, or that he was required to repair his computer in any way. As discussed elsewhere in this opinion, the only injury that Shirokov alleges in the Complaint as a result of the defendants' conduct is the incursion of legal fees in evaluating the Letter's claims. Shirokov's legal fees are not directly attributable to the defendants' alleged access of his computer and, therefore, do not constitute a loss under the CFAA.[13]

Accordingly, this Court recommends that the District Court dismiss Count 4 of the Complaint.

*6. Shirokov Has Failed To State A Claim Of Conspiracy And Aiding And Abetting Against GuardaLey But Those Claims Survive Against the Dunlap Defendants And Achte*

Plaintiff brings a series of claims sounding in conspiracy: conspiracy to commit fraud (Count 3), aiding and abetting fraud (Count 5), and civil conspiracy (Count 13). The defendants have moved to dismiss these counts on a variety of bases. The Dunlap Defendants state that Shirokov has failed to state a claim for "true conspiracy." (Docket No. 29 at 28). They also argue that these claims all require liability for the predicate torts before liability can be apportioned to ultimate defendants, and, because the plaintiff's counts for the underlying torts fail, the plaintiff's claims for conspiracy or aiding and abetting must fail as well. (Docket No. 29 at 30–31). Achte argues that it may not be held vicariously liable for the acts of its attorneys and the Complaint fails to allege enough facts to impose vicarious liability on Achte as a knowing and intentional participant in the alleged copyright scheme. (Docket No. 48 at 11–14, 16–18). Finally, GuardaLey argues that the Complaint fails to allege any facts supporting that GuardaLey was a participant in the copyright scheme.

(Docket No. 44 at 16–20). The Court finds that Shirokov has failed to state a claim of conspiracy and aiding and abetting against GuardaLey but these claims survive as to the Dunlap Defendants and Achte.

**\*25** Massachusetts law recognizes two types of causes of action for civil conspiracy. The first, referred to as "true conspiracy," is a "rare" and "very limited" cause of action. *Aetna Cas. Sur. Co. v. P & B Autobody,* 43 F.3d 1546, 1563 (1st Cir.1994). In order to state a claim for true conspiracy, the plaintiff must allege and prove that by "mere force of numbers acting in unison," the defendants exercised "some peculiar power of coercion of the plaintiff which any individual standing in a like relation to the plaintiff would not have had." *Fleming v. Dane.* 304 Mass. 46, 50, 22 N.E.2d 609 (1939) (citations omitted). "This cause of action seems to have been applied principally to remedy direct economic coercion, as in 'the combined actions of groups of employers or employees, where through the power of combination pressure is created and results brought about different in kind from anything that could have been accomplished by separate individuals or in other kinds of concerted refusals to deal." *Mass. Laborers' Health & Welfare Fund v. Philip Morris, Inc.,* 62 F.Supp.2d 236, 244 (D.Mass.1999) (quoting *Fleming,* 304 Mass. at 50, 22 N.E.2d 609).

The second type of conspiracy claim is "more akin to a theory of common law joint liability in tort." *Aetna Cas. Sur. Co.,* 43 F.3d at 1564. To state a claim for this type of conspiracy, the plaintiff must allege "first, a common design or an agreement, although not necessarily express, between two or more persons to do a wrongful act and, second, proof of some tortious act in furtherance of the agreement." Id The plaintiff need not prove the existence of an agreement by direct evidence but the agreement may be inferred from conduct of the parties suggesting that they had an implied meeting of the minds. *Payton v. Abbott Labs,* 512 F.Supp. 1031, 1035 (D.Mass.1981) (citations omitted). Thus, the distinction between the two types of conspiracy claims has been described as follows:

> For 'true conspiracy,' the plaintiff must prove that concerted action gave the defendants a 'peculiar power of coercion' over the plaintiff enabling them to bring about results that are different in kind from what any of them could achieve individually. The exercise of this 'peculiar power of coercion' is itself the wrong, and no other tortious act need be shown. In contrast, the 'concerted action' version extends liability to those who assist or encourage others to commit torts without necessarily any proof either

of a 'peculiar power of coercion' or even of an explicit agreement among the defendants. Of course, there can be no joint liability for a tort unless there has been a tort, so the 'concerted action' version depends on proof of underlying tortious conduct for which liability can be assigned. While the term 'civil conspiracy' apparently has been used loosely to apply to both versions, only the 'true conspiracy' version defines an independent cause of action; the 'concerted action' version simply defines who may be liable for other torts.

**\*26** *Mass. Laborers' Health & Welfare Fund,* 62 F.Supp.2d at 244 (internal citations omitted).

Finally, aiding and abetting is another variation of joint tort liability. "Under Massachusetts law liability for aiding and abetting a tort attaches where: (1) the defendant provides 'substantial assistance or encouragement to the other party;' and (2) the defendant has 'unlawful intent, i.e., knowledge that the other party is breaching a duty and the intent to assist that party's actions.' " *Go–Best Assets Ltd. v. Citizens Bank of* Mass., 79 Mass.App.Ct. 473, 592, 947 N.E.2d 581 (2011) (citations omitted). Plaintiff "must at least demonstrate some measure of 'active participation' and the knowing provision of substantial assistance ... to the principal's ... alleged fraud." *Schultz v. R.I. Hosp. Trust Nat'l Bank,* 94 F.3d 721, 730 (1st Cir.1996) (citations omitted). A claim of aiding and abetting must meet the heightened pleading requirements of Fed.R.Civ.P. 9(b). *Bamberg v. SG Cowen,* 236 F.Supp.2d 79, 91 (D.Mass.2002).

In his Complaint, Shirokov appears to collapse "true" conspiracy with the "concerted action" theory of conspiracy. The Complaint alleges that the defendants "acted in concert and participated in a common plan to achieve" unlawful ends, and that the defendants, acting together, "exercise[d] coercive powers, over Shirokov and the Class, that they would not have had if acting independently." (Complaint, ¶¶ 385–386). Other than the conclusory mention of "coercive powers" (*see* Complaint at ¶ 386), Shirokov has not alleged any facts that would give rise to a plausible claim that by the force of their number, the defendants exercised some exceptional coercive power over him. He has not alleged that the defendants' combination was such that he was deprived of his ability to evaluate Achte's copyright claims against him. Indeed, he did not succumb to any coercive power because he did not pay to settle the claims. "There is no question that an allegation of a generally exerted and generally felt power of coercion is not sufficient to plead the independent tort of 'true conspiracy' as recognized in Massachusetts." *Mass. Laborers' Health &*

*Welfare Fund,* 62 F.Supp.2d at 245. Thus, the Court finds that Shirokov has failed to state a claim for true conspiracy.

The Dunlap Defendants have moved to dismiss the "concerted action" conspiracy claim on the basis that the underlying tort claims fail and therefore, the conspiracy claim must fail as well. (Docket No. 29 at 30–31). However, as explained in Sections III(B) (7) and (14) below, this Court has recommended that the District Court deny the defendants' motions to dismiss with respect to Shirokov's negligent misrepresentation and Chapter 93A claims.[14] Accordingly, the Court recommends that the District Court deny the Dunlap Defendants' motion to dismiss with respect to Shirokov's claim of conspiracy by concerted action.

Achte argues that it cannot be held vicariously liable for the acts of its attorneys and that Shirokov has failed to allege enough facts to show that Achte joined in the alleged copyright scheme. However, the Complaint alleges that Achte knew that its copyright registration contained false information and that Achte lied to the Copyright Office and the District Court for the District of Columbia in conjunction with its attorneys. *See generally* Complaint, ¶¶ 10–11, 22, 115, 156. Taking all facts in the Complaint as true and drawing all reasonable inferences in favor of Shirokov, as the Court must do at this stage, the Court finds that the Complaint alleges enough facts to make a plausible claim that Achte joined in the alleged copyright scheme or at least rendered substantial assistance to the Dunlap Defendants with knowledge of the fraudulent purpose of the scheme. Accordingly, the Court also recommends that the District Court deny Achte's motion to dismiss the conspiracy and aiding and abetting claims against it.

**\*27** GuardaLey stands in different footing. The only allegations against GuardaLey are that: (1) GuardaLey monitors and records online instances of copyright infringement (Complaint, ¶ 4); (2) GuardaLey is a partner with DGW in managing USCG (Complaint, ¶ 38); (3) at least one of the managers of USCG, Benjamin Perino, is also a manager of GuardaLey (Complaint, ¶ 73); and (4) Achte engaged USCG and, in turn, USCG retained GuardaLey to document instances of purported infringement of Achte's copyright in the motion picture Far Cry. (Complaint, ¶ 133). Shirokov does not allege that GuardaLey had any role in the filing of Achte's copyright registration application, in the filing of the Achte Lawsuit, or in the drafting or sending of the Letter. He does not allege that GuardaLey made any representations to him. In sum, the Complaint sets forth

Shirokov v. Dunlap, Grubb & Weaver, PLLC, Not Reported in F.Supp.2d (2012)

2012 WL 1065578

no facts, apart from conclusory allegations, that GuardaLey entered into any agreement with the other defendants in connection with the alleged copyright scheme, or that GuardaLey knew about the copyright scheme. Therefore, the Court finds that Shirokov has failed to state a claim of civil conspiracy or aiding and abetting against GuardaLey.[15]

Accordingly, the Court recommends that the District Court dismiss Counts 3, 5 and 13 against GuardaLey but not against the remaining defendants.

7. *Shirokov's Claims Of Fraudulent And Negligent Misrepresentation Survive Against The Dunlap Defendants And Achte But Not Against GuardaLey*

Shirokov brings a number of claims based on the defendants' alleged misrepresentations and failure to provide certain information: fraudulent misrepresentation (Count 1), fraudulent omission/nondisclosure (Count 2), and negligent misrepresentations and omissions (Count 8). GuardaLey has moved to dismiss those counts on the basis that the Complaint does not allege that GuardaLey made any representations to Shirokov or any class member. (Docket No. 44 at 23–24). Although the Dunlap Defendants and Achte have moved to dismiss the entire Complaint on a number of grounds, they have not moved to dismiss Counts 1 and 2 on the basis that the Complaint fails to state a claim for fraudulent misrepresentations or fraudulent omissions.[16] They have moved to dismiss the negligent misrepresentation claim on the basis that they owe no duty to Shirokov. (Docket No. 29 at 31–33; Docket No. 48 at 21).

To state a claim of fraud under Massachusetts law, the plaintiff must show that the defendants "made a false representation of a material fact with knowledge of its falsity for purposes of inducing the plaintiff to act thereon, and that the plaintiff actually relied on the representation." *Platten v. HG Bermuda Exempted, Ltd.,* 437 F.3d 118, 132 (1st Cir.2006) (citing *Slaney v. Westwood Auto, Inc.,* 366 Mass. 688, 322 N.E.2d 768 (1975)). For a claim of misrepresentation, the plaintiff must show that the defendants (1) made false statements of material fact (2) to induce the plaintiff to settle the copyright claims, and (3) that the plaintiff reasonably relied on those statements to his detriment. *Id.* (citations omitted).

 **\*28** GuardaLey is correct that the Complaint fails to state a claim against it under Counts 1, 2 and 8 of the Complaint. (Docket No. 44 at 23–24). The Complaint contains no

allegations of any representations by GuardaLey to Shirokov or any class member. There is no allegation that GuardaLey made any representations with respect to the copyright registration for Far Cry or brought or threatened to bring a lawsuit against Shirokov or anyone else. There is simply no allegation that GuardaLey made any statement to Shirokov upon which he could have relied.[17] The only basis for liability against GuardaLey appears to be that of joint liability under conspiracy or aiding or abetting theories. As discussed above, the Complaint fails to state a claim against GuardaLey under those theories. Accordingly, Shirokov has not stated a claim against GuardaLey under Counts 1, 2 or 8 of the Complaint.

The Dunlap Defendants move to dismiss the negligent misrepresentation and omissions claim on the basis that the defendant attorneys owed Shirokov no duty because there was no attorney-client relationship. (Docket No. 29 at 31). However, the Dunlap Defendants appear to confuse the torts of negligence and negligent misrepresentation. In their brief, the Dunlap Defendants only cite to cases regarding negligence and/or legal malpractice. (Docket No. 29 at 31–32). Those cases are inapposite.

Generally, negligent misrepresentation does require privity between the parties. *In re Bank of Boston Corp. Securities Litig.,* 762 F.Supp. 1525, 1536 (D.Mass.1991). Absent privity, however, a plaintiff can state a claim for negligent misrepresentation so long as the defendant had actual knowledge that its statements were going to be used and relied on by the plaintiff. *Id.; Craig v. Everett M. Brooks Co.,* 351 Mass. 497, 501, 222 N.E.2d 752 (1967); *Bamberg,* 236 F.Supp.2d at 91 (citations omitted). In addition, a lawyer may held liable for negligent misrepresentation to a nonclient where he or she knows that his or her representation will be relied upon by the nonclient. *Nova Assignments, Inc. v. Kunian,* 77 Mass.App.Ct. 34, 38, 928 N.E.2d 364 (2010); *Kirkland Constr. Co. v. James,* 39 Mass.App.Ct. 559, 562–63, 658 N.E.2d 699 (1995).

Moreover, "although mere nondisclosure by itself generally will not support a cause of action for negligent misrepresentation, it is well settled under Massachusetts law that 'a party who discloses partial information that may be misleading has a duty to reveal all the material facts he knows to avoid deceiving the other party.' " *Barden v. HarperCollins Publishers, Inc.,* 863 F.Supp. 41, 43 (D.Mass.1994) (internal citations omitted). Here, Shirokov has alleged that the Dunlap Defendants made a number of false statements to him and others, including statements regarding the potential fees

2012 WL 1065578

that may be incurred in connection with the defense of a copyright claim and statements regarding Achte's rights and the remedies Achte was entitled to receive were it to prevail on its claims. (Complaint, ¶¶ 337, 339). He also alleges that the information provided to him and other class members was materially incomplete. (Complaint, ¶ 337). At this stage of the litigation, the Court is not deciding liability but merely whether the Complaint contains enough allegations to state a plausible claim. The Dunlap Defendants grounds for dismissal of the negligent misrepresentation claim are incorrect and, accordingly, this Court recommends that the District Judge deny the Dunlap Defendants' and Achte's motion to dismiss with respect to the negligent misrepresentation claim.

### 8. *Shirokov Has Failed To Allege A Sufficient Injury To Support A Claim Under RICO*

**\*29** Defendants argue that Shirokov has no standing to bring a claim pursuant to the Racketeer Influenced and Corrupt Organizations Act ("RICO") because he has not alleged an injury caused by racketeering activity. (Docket No. 29 at 26–27; Docket No. 44 at 24–25; Docket No. 48 at 22). This Court agrees.

RICO creates a private right of action for individuals suffering an injury resulting from "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co., Inc.,* 473 U.S. 479, 496 (1985). An essential element of a RICO claim is an injury to business or property. *See Hemi Group, LLC v. City of New York,* —— U.S. ——, ——, 130 S.Ct. 983, 987, 175 L.Ed.2d 943 (2010). "[T]o state a claim under civil RICO, the plaintiff is required to show that a RICO predicate offense 'not only was a 'but for' cause of his injury, but was the proximate cause as well.' " *Id.* at 989 (quoting *Holmes v. Sec. Investor Prot. Corp.,* 503 U.S. 258, 268, 112 S.Ct. 1311, 117 L.Ed.2d 532 (1992)). "Proximate cause for RICO purposes ... requires 'some direct relation between the injury asserted and the injurious conduct alleged.' " *Id.* "A link that is 'too remote,' 'purely contingent,' or 'indirect' is insufficient." *Id.*

The Complaint alleges that the defendants' copyright scheme caused damages to the class members in the form of payment of inflated settlements and/or related expenses in defending themselves against the copyright scheme. (Complaint, ¶ 324–325). However, Shirokov alleges that he did not pay anything to the defendants in response to the Letter. Instead, Shirokov alleges that he incurred legal costs "in reliance on the false allegations of the Letter and in order to determine the merits of its claims." (Complaint, ¶ 232). Shirokov also alleges that he would have avoided those costs had the Letter been truthful. (*Id.*).

Shirokov has not alleged sufficient facts to establish that he suffered an injury under RICO. Shirokov claims that the defendants conspired to attempt to extort money out of individuals who may have infringed upon Achte's copyright. He alleges that Achte, through DGW, knowingly and intentionally made false representations to the Copyright Office in order to obtain a copyright registration. Then, based on the fraudulently procured copyright registration, DGW filed a copyright infringement claim and obtained a subpoena to obtain Shirokov and other Class members' identifying information. Using that information, DGW sent the Letter to Shirokov and other Class members in an effort to get Shirokov and the Class members to pay to settle the claims with the threat of statutory damages to which they knew Achte was not entitled. However, according to Shirokov's own allegations, he did not fall for the defendants' alleged scheme: he contacted an attorney, and afterwards did not pay to settle the claims. Instead, Shirokov filed this suit.

The only injury Shirokov alleges he suffered was the payment of legal fees to his attorney to determine the validity of DGW and Achte's claims.[18] (Complaint, ¶ 232). The expenditure of legal fees is ordinarily not considered an injury for RICO purposes, unless the legal fees were expended as an "intended consequence" of a defendant's racketeering activities. *Lemelson v. Wang Labs., Inc.,* 874 F.Supp. 430, 433 (D.Mass.1994) (citations omitted);[19] *see also Aramony v. United Way of America,* 969 F.Supp. 226, 233 (S.D.N.Y.1997) ("A plaintiff's prior expenditure of legal fees is only a sustainable RICO injury where defendant's underlying wrongful acts contemplate the victim responding in court."). Here, as alleged, the intended consequence of the racketeering activities was the payment of "inflated settlements." (Complaint, ¶ 324–325). While he may have spent money in the form of attorneys' fees in order to determine whether DGW and Achte's claims had any merit, those legal fees were not proximately caused by the defendants' alleged actions. He has not alleged that he incurred any fees in connection with the Achte Lawsuit itself, that he or his attorney entered an appearance in that case or that he did anything to defend Achte's claims against him. The object of the defendants' alleged wrongful is not a response in court and there is no allegation that the defendants intend or prefer that the alleged targets obtain legal representation and

Case: 1:22-cv-05660 Document #: 27-1 Filed: 03/06/23 Page 85 of 131 PageID #:293
Shirokov v. Dunlap, Grubb & Weaver, PLLC, Not Reported in F.Supp.2d (2012)

2012 WL 1065578

incur attorneys' fees.[20] Indeed, the alleged copyright scheme works because the victims generally settle the claims in order to avoid responding in court. *See, e.g., Sanchez v. Triple–S Mgmt. Corp.,* 492 F.3d 1, 14 (1st Cir.2007) ("The plaintiffs cannot press a RICO claim based on attempts at extortion that did not succeed in harming them."). Accordingly, the Court finds that Shirokov has failed to state a RICO claim.[21]

**\*30** Because the Court finds that Shirokov's RICO claim fails, it also finds that his conspiracy to violate RICO must fail as well. "[I]f the pleadings do not state a substantive RICO claim upon which relief may be granted, then the conspiracy claim also fails." *Efron v. Embassy Suites (Puerto Rico), Inc.,* 223 F.3d 12, 21 (1st Cir.2000). This Court therefore recommends that the District Court dismiss Counts 6 and 7 of the Complaint.

### 9. Fraud On The Court Is Not An Independent Cause Of Action

Count 9 of the Complaint asserts a claim for fraud on the court. "A 'fraud on the court' occurs where it can be demonstrated, clearly and convincingly, that a party has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by improperly influencing the trier or unfairly hampering the presentation of the opposing party's claim or defense." *Aoude v. Mobil Oil Corp.,* 892 F.2d 1115, 1118 (1st Cir.1989).

The defendants argue that fraud on the court is not an independent cause of action under Massachusetts law and should therefore be dismissed. (Docket No. 29 at 33). However, fraud on a federal court is governed by federal common law. *See Davidson v. Cao,* 211 F.Supp.2d 264, 276–77 (D.Mass.2002) (citing *Aoude,* 892 F.2d at 1117–18) ("Fraud on the court ... has its genesis in the federal court's inherent power to regulate and control abusive litigation tactics effecting the institutional integrity of the court."). Nevertheless, the result is the same.

Fraud on the court is not a recognized independent cause of action in the First Circuit. *See Barrett v. Ambient Pressure Diving, Ltd.,* No. 06–cv–240–SM, 2008 WL 4280360, at \* 4 (D.N.H. Sept.16, 2008). The cases cited by Shirokov do not universally support his argument to the contrary. In *Premier Homes & Land Corp. v. Cheswell, Inc.,* the court granted the defendant's motion to dismiss the complaint based on fraud on

the court and then assessed attorneys' fees against the plaintiff as a sanction. 240 F.Supp.2d 97, 99–100 (D.Mass.2002). In *Leber–Krebs, Inc. v. Capitol Records,* the circumstances were inapposite and involved a court's ability to vacate its own judgment. 779 F.2d 895, 900–01 (2d Cir.1985).[22] Finally, in *Canty v. Chase Home Finance, LLC,* the alleged fraud on the Court had been perpetrated in the same court. 2010 WL 1880710, at \*4 (N.D.Ala. May 7, 2010).[23]

Under federal common law, fraud on the court may form the basis for a motion to dismiss or for seeking relief from judgment. *See Davidson,* 211 F.Supp.2d at 277. Here, Shirokov does not seek to have the Achte Lawsuit dismissed. Neither is there a judgment against Shirokov in the Achte Lawsuit that could form the basis for an action seeking relief from judgment.

Accordingly, the Court recommends that the District Court dismiss Count 9 of the Complaint.

### 10. Shirokov May Seek A Declaration That Achte's Copyright Is Invalid Based On Fraud On The Copyright Office But He May Not Seek Damages Against The Defendants

**\*31** Shirokov has brought a claim for fraud on the Copyright Office (Count 11). He seeks a declaration that Achte's copyright in Far Cry is invalid. (Complaint, ¶ 373). He also seeks damages from the defendants. *Id.* The defendants seek dismissal of this claim on the grounds that fraud on the Copyright Office is not a recognized independent cause of action. (Docket No. 29 at 34; Docket No. 44 at 21; Docket No. 48 at 20–21). The Court finds that although Shirokov may seek a declaration that Achte's copyright is invalid based on fraud on the Copyright Office, he cannot seek damages against the defendants on that basis.

A party seeking to establish fraud on the Copyright Office must establish that the application for copyright registration is factually inaccurate, that the inaccuracies were willful or deliberate, and that the Copyright Office relied on those representations. *Lennon v. Seaman,* 84 F.Supp.2d 522, 525 (S.D.N.Y.2000) (citations omitted). Some courts also require that a party alleging fraud on the Copyright Office prove that it has been prejudiced, or suffered some damage, as a result of the alleged fraud. *Id.* (citations omitted). Ordinarily, fraud on the Copyright Office is an affirmative defense to copyright infringement, not a cause of action. *Id.* To the extent that courts have allowed infringers to assert such a claim,

Shirokov v. Dunlap, Grubb & Weaver, PLLC, Not Reported in F.Supp.2d (2012)

2012 WL 1065578

they have done so as a declaratory judgment action against the copyright holder. *See, e.g., Crew Knitwear, Inc. v. U.S. Textile Printing, Inc.,* No. 07–7658, 2009 WL 305526, at * 2–3 (C.D.Cal. February 6, 2009).

Here, in addition to declaratory relief, Shirokov seeks damages against the defendants for allegedly providing false information to the Copyright Office. Claims for damages are not available to an alleged infringer who claims that the copyright holder committed fraud on the Copyright Office. *See, e.g., Chivalry Film Prods. v. NBC Universal, Inc.,* No. 05 Civ. 5627(GEL), 2006 WL 89944, at *3 (S.D.N.Y. Jan.11, 2006)* (alleged infringer cannot state a claim for damages for fraud on the Copyright Office). Accordingly, the Court recommends that the District Court dismiss Count 11 of the Complaint except to the extent that it seeks a declaration of invalidity against Achte.

*11. Copyright Misuse Is Not An Independent Cause Of Action In This Circuit*

Count 12 of the Complaint asserts a claim of copyright misuse by which Shirokov seeks a declaration that Achte's copyright is invalid. (Complaint, ¶ 383). The defendants have moved to dismiss this Count on the grounds that copyright misuse has not been recognized as an independent cause of action. (Docket No. 29 at 35; Docket No. 44 at 21; Docket No. 48 at 20–21). This Court agrees.

"Copyright misuse occurs when a copyright owner restrains competition in the sale of an item that is not within the scope of the privilege granted under the copyright." *Broad. Music. Inc. v. Hampton Beach Casino Ballroom, Inc.,* No. CV–94–248–B, 1995 WL 803576, at *5 (D.N.H. Aug.30, 1995) (citing *Lasercomb Am. Inc. v. Reynolds,* 911 F.2d 970, 975 (4th Cir.1990)). A party may prove copyright misuse by either proving (1) violation of the antitrust laws, or (2) that the copyright holder otherwise illegally extended its monopoly or violated the public policies underlying the copyright laws. *Id.* Like fraud on the copyright office, copyright misuse is normally an affirmative defense to copyright infringement, not a cause of action. *See, e.g., Amaretto Ranch Breedables, LLC v. Ozimals, Inc.,* 790 F.Supp.2d 1024, 1033 (N.D.Cal.2011). Unlike a claim of fraud on the Copyright Office, a finding of copyright misuse does not invalidate the copyright but precludes its enforcement during the period of misuse. *Id.* (citing *Practice Mgmt. Info. Corp. v. Am. Med. Ass'n,* 121 F.3d 516, 520 (9th Cir.1997)).

**\*32** Although the First Circuit has not rejected the defense of copyright misuse, it has not yet recognized it either. *See Garcia–Goyco v. Law Envtl. Consultants, Inc.,* 428 F.3d 14, 21 n. 7 (1st Cir.2005). Other circuits have recognized misuse of a copyright as a defense to infringement. *See Broad. Music, Inc.,* 1995 WL 803576 at *8 n. 7 (collecting cases).

Shirokov argues that copyright misuse can be brought as a claim for affirmative declaratory relief. (Docket No. 32 at 38–40). The courts that have addressed this issue are divided on the matter. Some courts have found that copyright misuse may not be affirmatively asserted as a declaratory judgment action because pleading an affirmative defense as an independent claim seeks an illegitimate litigation advantage. *See Nielsen Co., LLC v. Truck Ads, LLC,* No. 08 C 6446, 2011 WL 221838, at * 7 (N.D.Ill. January 24, 2011) (collecting cases); *see also Amaretto Ranch Breedables, LLC,* 790 F.Supp.2d at 1033 ("There is no consensus on whether copyright misuse can be brought as an independent claim (as opposed to as an affirmative defense) and district courts come down on both sides of the issue."). Other courts have recognized copyright misuse as a claim, noting the analogous doctrine of patent misuse and recognizing that defendants may have reasons for seeking a declaration of their rights aside from the infringement claim they are defending. *See Nielsen Co., LLC,* 2011 WL 221838 at *7 (collecting cases).

This Court agrees with those courts that have found that copyright misuse may not be brought as an independent cause of action, especially in light of the fact that the First Circuit has not yet recognized the doctrine even as a defense to copyright infringement claims.[24] Accordingly, this Court recommends that Count 12 be dismissed.

*12. Shirokov Has Failed To State A Claim For Abuse Of Process And Malicious Prosecution*

The defendants argue that Shirokov has not pled facts which would establish abuse of process (Count 10) or malicious prosecution (Count 19) (Docket No. 29 at 36–38; Docket No. 44 at 21; Docket No. 48 at 21). The Court agrees.

To sustain an abuse of process claim, Shirokov must establish that "process was used 'to accomplish some ulterior purpose for which it was not designed or intended, or which was not the legitimate purpose of the particular process employed.' " *Millennium Equity Holdings, LLC v. Mahlowitz,* 456 Mass. 627, 636, 925 N.E.2d 513 (2010) (quoting *Quaranto v. Silverman,* 345 Mass. 423, 426, 187 N.E.2d 859 (1963)).

Shirokov v. Dunlap, Grubb & Weaver, PLLC, Not Reported in F.Supp.2d (2012)

2012 WL 1065578

Thus, the three elements of abuse of process are (1) "process" was used, (2) for an ulterior or illegitimate purpose, (3) resulting in damage. *Id.* (citations omitted); *Gutierrez v. Mass. Bay Transp. Auth.,* 437 Mass. 396, 407, 772 N.E.2d 552 (2002) (citations omitted); *Jones v.* Brockton Pub. *Mkts., Inc.,* 369 Mass. 387, 389, 340 N.E.2d 484 (1975).

"Process" refers to "the papers issued by a court to bring a party or property within its jurisdiction." *Jones,* 369 Mass. at 390, 340 N.E.2d 484. Massachusetts courts have limited process to three types: writs of attachment, the process used to institute a civil action, and the process related to the bringing of criminal charges. *Id.* at 389–90, 340 N.E.2d 484.

**\*33** Here, Shirokov has not alleged sufficient facts to support an abuse of process claim. Process never issued against him because he was never named in the Achte Lawsuit. The term process does not encompass a courtesy copy of the complaint and a settlement demand. *See* Complaint at ¶ 359 ("Defendants provided (without serving) the operative compliant to the class members by mailing them letter that direct them to the *Far Cry* website, where the complaint was posted."). Accordingly, he has failed to state a claim for abuse of process.

Similarly, he cannot maintain a malicious prosecution claim. In order to state a claim for malicious prosecution, Shirokov must allege that an action was brought maliciously and without probable cause and was terminated in his favor. *Hubbard v. Beatty & Hyde, Inc.,* 343 Mass. 258, 261, 178 N.E.2d 485 (1961); *MHA Fin. Corp. v. Varenko Inv. Ltd.,* 583 F.Supp.2d 173, 181 (D.Mass.2008) (citing *Chervin v. Travelers Ins. Co.,* 448 Mass. 95, 103, 858 N.E.2d 746 (2006)).

Unlike abuse of process, service of process is not an element of a malicious prosecution claim. *MHA Fin. Corp.,* 583 F.Supp.2d at 181. "An action can be 'commenced,' for purposes of a malicious prosecution claim, by the filing of a complaint without the service of process." *Id.* Nevertheless, Shirokov has failed to state a malicious prosecution claim. No action was ever

Case 1:10–cv–12043–GAO Document 90 Filed 03/27/12 Page 61 of 70 commenced against Shirokov. Although he presumably was one of the John Doe Defendants, he was never named in the Achte Lawsuit. *See Cuddy v. Sweeney,* 7 Mass.App.Ct. 880, 386 N.E.2d 805 (1979) (plaintiff who was

never a party to a lawsuit could not show that a claim was brought against her which was terminated in her favor).

Even if the Court were to hold that being one of the John Does is sufficient to establish that an action was commenced against Shirokov, he also could not establish that the action terminated in his favor. Achte dismissed its claims against most of the John Doe Defendants, including Shirokov, without prejudice. Thus, Achte could refile copyright infringement claims against Shirokov. As such, the Court finds that the Achte Lawsuit was not terminated in Shirokov's favor. *Cf. Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 396, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990) (dismissal without prejudice does not operate as an adjudication upon the merits).

Accordingly, the Court recommends that the District Court dismiss Counts 10 and 19 of the Complaint.

*13. Shirokov's Claims Of Unjust Enrichment, Money Had A nd Received, Conversion, And Constructive Trust Fail Because He Has Not Alleged That He Paid Any Money To The Defendants*

Shirokov brings four claims based on the alleged settlement payments by some members of the proposed class. These claims are as follows: unjust enrichment (Count 14); money had and received (Count 15); conversion (Count 16); and constructive trust (Count 17). Shirokov states that he has not paid to settle any claims. (Complaint, ¶ 232). Accordingly, defendants argue that because payment of funds from Shirokov to one or more of the defendants is an element of each of these claims, all of these claims are subject to dismissal for failure to state a claim. (Docket No. 29 at 39–40; Docket No. 48 at 21–22; Docket No. 44 at 24). Shirokov does not defend these claims on the merits but argues that he has sufficient standing to maintain these counts because he is not required to have standing to bring every count as long as he has standing for multiple counts.[25] (Docket No. 32 at 17). The Court finds that Shirokov has failed to state a claim under these counts.

**\*34** In Massachusetts, in order for a party to prevail on a claim for unjust enrichment, there must be "unjust enrichment of one party and unjust detriment to another party." *Mass. Eve and Ear Infirmary v. OLT Phototherapeutics, Inc.,* 552 F.3d 47, 57 (1st Cir.2009) (internal citations omitted). Unjust enrichment requires: (1) a benefit conferred upon the defendant by the plaintiff; (2) an appreciation or knowledge

Shirokov v. Dunlap, Grubb & Weaver, PLLC, Not Reported in F.Supp.2d (2012)

2012 WL 1065578

by the defendant of the benefit; and (3) acceptance or retention by the defendant of the benefit under the circumstances would be inequitable without payment for its value." *Id.* In addition, as unjust enrichment is an equitable remedy, it is not available to parties with an adequate remedy at law. *See Santagate v. Tower,* 64 Mass.App.Ct. 324, 329, 833 N.E.2d 171 (2005). Here, there is no evidence of a benefit conferred upon the defendants by Shirokov. Without proof of a benefit, it is not necessary to analyze the remaining elements of unjust enrichment. *See, e.g., Kerr v. Vince,* No. 07–30021–MBB. 2010 WL 1416511, at *19 (D.Mass. April 1, 2010).

Money had and received is essentially the same claim as unjust enrichment except that unjust enrichment is not limited to enrichment by money or its equivalent. *Jelmoli Holding, Inc. v. Raymond James Fin. Servs., Inc.,* 470 F.3d 14, 17 n. 2 (1st Cir.2006). Again, the Complaint contains no allegations that the defendants received any money from Shirokov.

In order to state a claim for conversion, a plaintiff must show:

(1) the defendant intentionally and wrongfully exercised control or dominion over the [plaintiff's] personal property; (2) the plaintiff had an ownership or possessory interest in the property at the time of the alleged conversion; (3) the plaintiff was damaged by the defendant's conduct; and (4) if the defendant legitimately acquired possession of the property under a good-faith claim of right, the plaintiff's demand for its return was refused.

*Evergreen Marine Corp. v. Six Consignments of Frozen Scallops,* 4 F.3d 90, 95 (1st Cir.1993); *see In re Brauer,* 452 Mass. 56, 67, 890 N.E.2d 847 (2008). Shirokov has not alleged that the defendants exercised control or dominion over any of his property. Therefore, Count 16 fails.

Finally, a constructive trust is not a theory of liability but rather an equitable remedy fashioned by courts to right a perceived wrong. *See Maffei v. Roman Catholic Archbishop of Bos.,* 449 Mass. 235, 246–47 n. 23, 867 N.E.2d 300 (2007). "A constructive trust is 'a device employed in equity, in the absence of any intention of the parties to create a trust, in order to avoid the unjust enrichment of one party at the expense of the other where the legal title to the property ... was obtained by fraud or in violation of a fiduciary relation or arose where information confidentially given or acquired was used to the advantage of the recipient at the expense of the one who disclosed the information.' " *Cox v. Cox,* 247 B.R. 556, 571 (Bankr.D.Mass.2000) (quotations omitted). In order to establish grounds for the imposition of a constructive trust, the plaintiff must be able to trace the proceeds or profits

of the corpus. *Id.* (citation omitted). Here again, there is no allegations that the defendants obtained any property from Shirokov and thus, he has not alleged sufficient facts that would entitle him to the imposition of a constructive trust.

**\*35** Accordingly, the Court recommends that the District Court dismiss Counts 14 to 17 of the Complaint.

*14. The Complaint States A Claim Under Chapter 93A*

Shirokov asserts a claim in Count 18 for unfair and/or deceptive acts and practices in violation of the Massachusetts Consumer Protection Act, M.G.L. c. 93A, § 9 ("Chapter 93A"). The defendants have moved to dismiss this count on the grounds that the defendants' alleged actions were not in connection with trade or commerce as required to support a claim under Chapter 93A. (Docket No. 29 at 40–41; Docket No. 48 at 22). In addition, the defendants argue that Shirokov cannot maintain a Chapter 93A action because he has not alleged an actual loss. (Docket No. 29 at 41–42; Docket No. 44 at 27; Docket No. 48 at 22). This Court disagrees.

Chapter 93A prohibits "unfair or deceptive acts or practices in the *conduct of any trade or commerce."* Mass. Gen. Laws ch. 93A, § 2(a) (emphasis added). A successful claim under Chapter 93A requires a showing of (1) a deceptive act or practice on the part of the defendant; (2) an injury or loss suffered by the consumer, and (3) a causal connection between the defendant's deceptive act or practice and the consumer's injury. *Casavant v. Norwegian Cruise Line, Ltd.,* 76 Mass.App.Ct. 73, 76, 919 N.E.2d 165 (2009), *aff'd,* 460 Mass. 500, 952 N.E.2d 908 (2011) (citing G.L. c. 93A, § 9); *Hershenow v. Enterprise Rent–A–Car Co. of Bos., Inc.,* 445 Mass. 790, 797, 840 N.E.2d 526 (2006)). "Chapter 93A liability is decided case-by-case, and Massachusetts courts have consistently emphasized the 'fact-specific nature of the inquiry.' " *Arthur D. Little, Inc. v. Dooyang Corp.,* 147 F.3d 47, 55 (1st Cir.1998) (citation omitted). "Although whether a particular set of acts, in their factual setting, is unfair or deceptive is a question of fact, the boundaries of what may qualify for consideration as a Chapter 93 A violation is a question of law." *Id.* at 54 (quoting *Ahern v. Scholz,* 85 F.3d 774, 797 (1st Cir.1996)).

Though Chapter 93A provides a broad remedy, it is only directed at unfair or deceptive acts that arose "in the course of trade or commerce."[26] *St. Paul Fire and Marine Ins. Co. v. Ellis & Ellis,* 262 F.3d 53, 66 (1st Cir.2001); (citing *Lantner v. Carson,* 374 Mass. 606, 607–08, 373 N.E.2d 973 (1978);

Shirokov v. Dunlap, Grubb & Weaver, PLLC, Not Reported in F.Supp.2d (2012)

2012 WL 1065578

*First Enters., Ltd. v. Cooper,* 425 Mass. 344, 680 N.E.2d 1163 (1997)). Thus, before liability may be imposed for an allegedly unfair or deceptive act, the plaintiff must establish that the act occurred in the conduct of trade or commerce. ' "Unfair or deceptive acts or practices' ... can only form the basis of a ch. 93A claim if those acts 'are perpetrated in a business context.' " *Id.* To determine whether a defendant is engaged in trade or commerce for Chapter 93A purposes, the court should consider (I) the nature of the transaction; (2) the character of the parties involved; (3) the activities engaged in by the parties; and (4) whether the transaction was motivated by business or personal reasons. *Feeney v. Dell, Inc.,* 454 Mass. 192, 212, 908 N.E.2d 753 (2009) (citations omitted).

**\*36** The defendants argue that any allegedly unfair or deceptive acts were not perpetrated in a business context because there was no commercial relationship between the parties and their only contacts occurred in the context of litigation. The Dunlap Defendants specifically argue that an attorney or law firm may not be liable to his client's adversary under Chapter 93A for acts performed on the client's behalf.[27] (Docket No. 29 at 33–34). The defendants are correct that the mere filing of litigation, without more, does not constitute trade or commerce. *See Arthur D. Little, Inc. v. East Cambridge Sav. Bank,* 35 Mass.App.Ct. 734, 743, 625 N.E.2d 1383 (1994). The Dunlap Defendants are also correct that, ordinarily, a lawyer is not liable under Chapter 93A for acts performed on the client's behalf. *Id.; First Enter., Ltd. v. Cooper,* 425 Mass. 344, 347, 680 N.E.2d 1163 (1997). However, the allegations here are more textured: Shirokov's Chapter 93A claim is based on allegations that the defendants were engaged in a scheme to defraud him and others and used the Achte Lawsuit to add a veneer of legitimacy to their claims that Achte was entitled to statutory damages. (Complaint, ¶¶ 12–15, 156–57: *see generally id.* at ¶¶ 195–217, 680 N.E.2d 1163). In addition, Shirokov alleges that the Dunlap Defendants were not only knowing participators in the alleged scheme, but in fact designed it. (Complaint, ¶¶ 2–3, 6–8, 72, 76–78). Under those circumstances, the Court cannot conclude that Shirokov has failed to allege enough facts to establish the trade and commerce requirement.

Indeed, the First Circuit has held that conduct in the context of litigation may form the basis for a Chapter 93A claim. In *Ellis & Ellis,* a workers' compensation insurer brought suit against an attorney and his law firm who had represented a claimant, asserting, *inter alia,* a Chapter 93A claim. 262 F.3d at 56. The plaintiff argued that the attorney had knowingly concealed the claimant's prior back injury. *Id.* at 60–61. The

defendants argued that any misrepresentations were made in the context of litigation and, as such, were not made in the conduct of trade or commerce and could not form the basis for a Chapter 93A claim. After the conclusion of the plaintiff's case-in-chief at trial, the defendants moved for judgment as a matter of law and the District Court granted the motion. *Id.* at 61. The District Court based its decision on the finding that any allegedly unfair acts were not perpetrated in a business context: "In this case, any representations made by the defendants to St. Paul were pursuant to a legal action, namely the adversarial workers' compensation litigation in which Formoso's benefits were determined." *Id.* at 67.

The First Circuit reversed the District Court's decision. In so doing, the First Circuit stated:

> We disagree with the court's characterization of the events at issue here. To be sure, the 'adversarial workers' compensation litigation' formed a backdrop to Ellis's actions. The jury could have easily concluded, however, that those actions were not vigorous advocacy in pursuit of Formoso's workers' compensation claim. Instead, the jury could have found that Ellis used the workers' compensation litigation to add a veneer of legitimacy to a fraudulent scheme to dupe St. Paul into paying benefits to which Formoso was not entitled. Such a scheme affects trade or commerce and can be a basis for ch. 93A liability.

**\*37** *Id.* at 67 (citations omitted).

In addition, an attorney or law firm may incur Chapter 93A liability to a nonclient or adversary if it joins its client in marketplace communications to the adversary rather than merely relays its client's positions, and those communications knowingly or carelessly turn out to be false, misleading, and harmful. *See Kirkland Constr. Co. v. James,* 39 Mass.App.Ct. 559, 561–564, 658 N.E.2d 699 (1995) (reversing Rule 12(b)(6) dismissal of 93A claim against a lawyer and firm). "In such situations the attorney has arguably crossed from traditional representation into active participation in trade and commerce. If the attorney or law firm confines itself to the functions of traditional representation, such as the commencement of litigation against the adversary or the counseling about and drafting of testamentary documents, it has not acted in a 'business context' or injected itself into trade or commerce so as to have Chapter 93A exposure." *Coggins v. Mooney,* No. Civ. A 94–0844, 1998 WL 156998, at \*5 (Mass.Super.Apr.3, 1998), *aff'd,* 431 Mass. 57, 725 N.E.2d 545 (2000). Again, here the Complaint alleges that the Dunlap Defendants not only knowingly made false representations on behalf of their clients but that they in

2012 WL 1065578

fact designed the allegedly fraudulent copyright scheme described in the Complaint. (Complaint, ¶¶ 2–3, 6–8, 72, 76–78). Accordingly, the Court finds that the Complaint alleges sufficient facts to survive a motion to dismiss based on the trade or commerce requirement.

The Court also finds that Shirokov has sufficiently alleged an injury cognizable under Chapter 93A. The defendants argue that the plaintiff cannot bring a claim under Chapter 93A because he claims no actual damages. (Docket No. 29 at 34). They further argue that the plaintiff must prove "reliance as 'an essential link in the proof of causation,' " and that he cannot do so because he has admittedly did not settle the Achte Lawsuit. (*Id.*). The Court disagrees.

As stated above, to state a claim under Chapter 93A, Shirokov must allege sufficient facts to establish an injury. *Casavant v. Norwegian Cruise Line Ltd.,* 460 Mass. 500, 503, 952 N.E.2d 908 (2011). In addition, there must be a causal connection between the alleged deceptive act and the consumer's injury or loss. *Id.* "If any person invades a consumer's legally protected interests, and if that invasion causes the consumer a loss—whether that loss be economic or noneconomic—the consumer is entitled to redress under our consumer protection statute." *Id.* (quoting *Hershenow.* 445 Mass. at 802, 840 N.E.2d 526.). However, contrary to the defendants' arguments, "the plaintiffs need not show proof of actual reliance on a misrepresentation in order to recover damages under G.L. c. 93A, but rather must show a causal connection between the deception and the loss and that the loss was foreseeable as a result of the deception." *Id.* (quoting *Iannacchino v. Ford Motor Co.,* 451 Mass. 623, 630–31 n. 12, 888 N.E.2d 879 (2008) (internal modifications omitted)): *cf. Advanced Sys. Consultants Ltd. v. Eng'g Planning and Mgmt., Inc.,* 899 F.Supp. 832, 834 (D.Mass.1995) (finding Chapter 93A violation and awarding attorneys' fees to target of unfair or deceptive act or practice that incurred legal expenses in obtaining and defending injunctive relief to safeguard itself against economic loss).

**\*38** Here, Shirokov has alleged that he was the target of a fraudulent scheme by the defendants. Although he did not pay any money to the defendants as a result of receiving the Letter, he did consult an attorney and paid legal fees in connection with the attorney's review and evaluation of the Letter. He is now worse off by having paid legal fees to evaluate the allegedly fraudulent claims. For purposes of Chapter 93A, it would be reasonably foreseeable to the defendants that Shirokov could incur legal fees in evaluating the allegedly

false claims. Indeed, the Letter invites its recipient to seek legal advice. Accordingly, the Court finds that Shirokov has sufficiently alleged an injury and a causal connection between the injury and the allegedly deceptive conduct and recommends that the District Court deny the defendants' motions to the extent that they seek dismissal of Shirokov's Chapter 93A claims.

## IV. *RECOMMENDATION*

For the reasons stated herein, this Court recommends to the District Judge to whom this case is assigned that the defendants' motions to dismiss be ALLOWED in part and DENIED in part as follows:

1. This Court recommends that the District Judge dismiss all Counts of the Complaint Against GuardaLey;

2. This Court recommends that the District Judge dismiss Counts 4, 6–7, 9–10, 12, 14–17, and 19 of the Complaint against the Dunlap Defendants and Achte;

3. This Court recommends that the District Judge dismiss Count 11 of the Complaint to the extent that Shirokov seeks damages against the Dunlap Defendants and Achte; and

4. Counts 1–3, 5, 8, 11 (to the extent that it seeks declaratory relief), 13, and 18 of the Complaint should survive against the Dunlap Defendants and Achte.

## V. *REVIEW BY DISTRICT JUDGE*

The parties are hereby advised that under the provisions of Fed.R.Civ.P. 72(b), any party who objects to these proposed findings and recommendations must file specific written objections thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the proposed findings, recommendations, or report to which objection is made, and the basis for such objections. *See* Fed.R.Civ.P. 72. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Fed.R.Civ.P. 72(b) will preclude further appellate review of the District Court's order based on this Report and Recommendation. *See Phinney v. Wentworth Douglas Hosp.,* 199 F.3d 1 (1st Cir.1999); *Sunview Condo. Ass'n v. Flexel Int'l, Ltd.,* 116 F.3d 962 (1st Cir.1997); *Pagano v. Frank,* 983 F.2d 343 (1st Cir.1993).

**All Citations**

Not Reported in F.Supp.2d, 2012 WL 1065578

## Footnotes

1   Because this case is presently before the Court on motions to dismiss, the Court sets forth the facts taking as true all well-pleaded allegations in the Second Amended Complaint and drawing all reasonable inferences in the plaintiff's favor. *See Morales–Tañon v. P.R. Elec. Power Auth.,* 524 F.3d 15, 17 (1st Cir.2008).

2   *Achte/Neunte Boll Kino Beteiligungs Gmbh & Co. Kg v. Does 1–2,094,* No. 10–cv–453 (D.D.C.).

3   Shirokov argues that the Court may also consider materials outside of the Complaint in connection with the defendants' motion to dismiss on the basis of subject-matter jurisdiction (standing). (Docket No. 66 at 9–10). However, none of the challenged materials have any relevance to the issue of subject-matter jurisdiction. As such, the Court does not consider them for that purpose. In addition, the Court finds that none of the exceptions regarding the prohibition against considering materials outside the Complaint in connection with a Rule 12(b)(6) motion apply to the challenged materials. *See Nollet,* 83 F.Supp.2d at 208.

4   Shirokov also asserts claims under the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. §§ 1030. *et seq.* (Count 4). However, the CFAA does not authorize nationwide service of process. *Id.; see U.S. Bioservices Corp. v. Lugo,* No. 08–2342–JWL, 2008 WL 4747473, at *1 (D.Kan. Oct.23, 2008).

5   342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485 (1952).

6   Although the Court finds that GuardaLey is not subject to personal jurisdiction in this Court, the Court also addresses GuardaLey's motion to dismiss based on the merits of Shirokov's claims should the District Judge disagree with this Court's conclusion regarding personal jurisdiction.

7   At oral argument, the parties confirmed that Shirokov has not been named or otherwise identified as a defendant in the Achte Lawsuit, which was filed almost two years ago.

8   In determining whether a plaintiff has standing, a court is required to look at the facts as they existed at the time when the lawsuit was filed. *Keene Corp. v. United States,* 508 U.S. 200, 207, 113 S.Ct. 2035, 124 L.Ed.2d 118 (1993); *Lujan,* 504 U.S. at 571 n. 4.

9   It is not clear whether Massachusetts law applies to Shirokov's claims. Other than the fact that Shirokov is a Massachusetts resident and presumably received the Letter in Massachusetts, the conduct of which he complains did not occur here. Shirokov's claims involve alleged conduct by Virginia lawyers in connection with the Achte Lawsuit pending in the United States District Court for the District of Columbia. Although the plaintiff has briefly referenced this issue (*see* Docket No. 32 at 14, n. 13), neither he nor any of the defendants have engaged in a choice of law analysis. Normally, the first step in applying choice of law principles is to ascertain whether the choice will affect the outcome; in other words, whether there is an actual conflict of laws. *See Williams v. Astra USA, Inc.,* 68 F.Supp.2d 29, 36 (D.Mass.1999). None of the parties have raised the substantive law of any jurisdiction other than Massachusetts. Given that the parties did not raise a conflict-of-laws issue, it is deemed that none exists. *Id.; see also Doricent v. Am. Airlines, Inc.,* No. 91–12084Y, 1993 WL 437670, at *8 (D.Mass. Oct.19, 1993).

10  The Massachusetts Appeals Court's statement in *Doe, supra,* that the litigation privilege applies even if a communication is in bad faith applies only in cases where the litigation is already underway. *See Meltzer,* 193 F.Supp.2d at 379–80. In *Doe,* the Appeals Court was dealing with a particular scenario in which the allegedly offending letter was written by an attorney for the defendants in reply to a letter from plaintiff demanding relief and threatening litigation if relief was not forthcoming. 41 Mass.App.Ct. at 141, 668 N.E.2d 1329. What the Appeals Court seems to have been saying is that in such situations, the reply is not subject to the test of whether the defendant was contemplating litigation in good faith and that litigation was under serious consideration. Rather, the test which is applies is the test applicable during the course

of litigation, i.e., whether the communication was pertinent to the proceedings, or, in that case, pertinent to the demand which was made. *Id.*

**11**    Even if the privilege applied, there remains an issue as to whether the privilege would bar anything more than Shirokov's state law causes of action. The Dunlap Defendants argue that all claims are barred. They further argue that the principle that a state privilege cannot bar a federal cause of action is limited to Fair Debt Collection Practices ("FDCPA") claims. *See* Docket No. 71 at 3. However, a number of cases undercut the Dunlap Defendants' arguments and refuse to apply state privileges to federal claims besides FDCPA claims. *See, e.g., Steffes v. Stepan Co.,* 144 F.3d 1070, 1074 (7th Cir.1998) (citations omitted) ("A state absolute litigation privilege purporting to confer immunity from suit cannot defeat a federal cause of action"); *Kimes v. Stone,* 84 F.3d 1121, 1127 (9th Cir.1996) (holding that the California absolute litigation privilege does not immunize attorneys from liability under 42 U.S.C. § 1983); *Conditioned Ocular Enhancement, Inc. v. Bonaventura,* 458 F.Supp.2d 704, 708 (N.D.Ill.2006) (Illinois litigation privilege cannot confer immunity against Lanham Act claims).

**12**    Shirokov cites these cases, along with *ResDev, LLC v. Lot Builders Ass'n, Inc.,* No. 6:04–cv1374, 2005 U.S. Dist. LEXIS 19099, at *10–12 (M.D.Fla. Aug. 10, 2005) for the proposition that although "attorneys' fees in *prosecuting* a CFAA action do not count toward the $5,000 statutory threshold ... attorneys' fees incurred *responding* to the CFAA violation do." (Docket No. 32 at 32 n. 54) (emphasis in original). These cases do not support Shirokov's argument. On the contrary, they all emphasize that a loss under the CFAA must be related to the computer itself.

**13**    Because the Court finds that Shirokov has failed to plead enough facts to support a loss or damage under the CFAA, it is not necessary to address whether the conduct alleged constitutes access without authorization or exceeding authorization under the CFAA.

**14**    In addition, although the Dunlap Defendants moved to dismiss the entire Complaint on the basis of standing, the *Noerr–Pennington* Doctrine, and the litigation privilege, the Dunlap Defendants did not move to dismiss the fraud and fraudulent omissions/nondisclosure claims (Counts 1 and 2) on the basis that they fail to state a claim.

**15**    In his opposition to GuardaLey's motion to dismiss, Shirokov requests leave to amend the Complaint "as needed" to incorporate recent information that he alleges provides sufficient basis for GuardaLey's liability "if this court deems it necessary." (Docket No. 56 at 24). The Court notes that Shirokov has twice amended his Complaint in this action, and that he could have amended it as of right within 21 days of GuardaLey's filing of its motion to dismiss. *See* Fed.R.Civ.P. 15(a)(1)(B). In any event, there is no present motion to amend the Complaint and all that is before this Court are certain specified motions.

**16**    Although Achte states in its motion that all claims related to misrepresentations and omissions, including Counts 1 and 2 of the Complaint fail to state a claim, it provides no basis for the dismissal of the fraudulent misrepresentation claims. (Docket No. 48 at 21). It simply states that it "adopts and incorporates herein the additional grounds for dismissal of the misrepresentation and omission claims that are presented in Part IIII/(G) of DGW's Memorandum of Law (Document No. 29 at pp. 24–26)." *Id.* However, DGW and the Dunlap Defendants did not move to dismiss Counts 1 and 2 on the basis that they fail to state a claim. At oral argument, counsel for the Dunlap Defendants suggested that they did not move to dismiss Counts 1 and 2 because of the twenty-page limit on legal briefs. However, the District Court granted them leave to file a brief in support of their motion to dismiss of thirty-five pages. (Docket No. 25). Under the circumstances, thirty-five pages was more than sufficient to set forth any arguments in support of their motion to dismiss, including any arguments regarding Counts 1 and 2. In the alternative, the Dunlap Defendants could have asked the District Court for a longer page limit.

**17**    Although Shirokov alleges that all of the defendants "made knowingly false statements in court concerning the copyright, the remedies available to Achte, and/or the basis for Achte's claims of jurisdiction over members of the Class, including Shirokov" (Complaint at ¶ 386), this is no more than a formulaic recitation of the elements of the cause of action in Count 13. Despite very detailed factual allegations in the rest of the Complaint with respect to the other defendants, Shirokov did not allege anywhere in the Complaint what false statements were made by GuardaLey. Again, other than the allegation that GuardaLey tracked the IP addresses of alleged infringers and provided that information to the other defendants, Shirokov has not made any factual allegations supporting GuardaLey's involvement in the alleged copyright scheme.

*See Iqbal,* 129 S.Ct. at 1949 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

18    Although Shirokov argues that the attorneys' fees incurred in this action are an injury sufficient to confer Article III standing (an argument that this Court rejected), he does not argue that attorneys' fees in this action are sufficient to satisfy the RICO injury requirement. In any event, such an argument would also be wrong. *See, e.g., Walter v. Palisades Collection, LLC,* 480 F.Supp.2d 797, 805 (E.D.Pa.2007) (citation omitted) ("It would be illogical to allow a plaintiff to have RICO standing based on damages incurred by the plaintiff in paying his attorney to file the RICO action. RICO's injury requirement would be a nullity if paying an attorney to initiate the RICO action itself sufficed as damage.").

19    Shirokov cites this case as supporting his argument that the legal fees he spent in investigating the defendants' claims are sufficient to satisfy the RICO injury requirement. (Docket No. 32 at 34; Docket No. 77 at 13). In *Lemelson,* the Court found that the costs incurred in investigating and defending vexatious litigation constitute a sufficient RICO injury to survive a motion to dismiss. 874 F.Supp. at 433. However, that case is distinguishable. First, the parties were competitors and the expenditure of attorneys' fees by the victim was an *intended* consequence of the alleged racketeering scheme. *Id.* at 432–33. Here, the expenditure of attorneys' fees is not an intended consequence, but a byproduct, of the defendants' alleged scheme: the intended consequence was the payment of settlements to the defendants. (Complaint at ¶¶ 324– 325). There are no allegations that the object of the defendants' action was the expenditure of legal fees. The object of the alleged scheme was the payment of settlement amounts. Second, that case was decided prior to *Iqbal* under the more lenient Rule 12(b)(6) standard of *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). *Id.* at 433 ("I hold that the costs incurred in investigating and defending that litigation are a sufficient RICO injury to satisfy the indulgent pleading requirements of Rule 12(b)(6).").

20    Although the Letter encourages class members to obtain legal representation, the object of the scheme was not the incursion of legal fees by class members. (Complaint, ¶¶ 324–25; Ex. N to Complaint).

21    Although this Court has found that Shirokov has alleged an injury sufficient to confer him standing under Article III of the Constitution (*see* Section III(B)(2) above) and an injury sufficient to state a Chapter 93A claim (*see* Section III(B)(14) below), the RICO statute sets forth additional requirements for a showing of injury. *See DeMauro v. DeMauro,* 115 F.3d 94, 96 (1 st Cir.1997) ("There is plainly a case or controversy under Article III; but the statutory precondition of injury to business or property must also be met."); *In re Neurontin Mktg. and Sales Practices Litig.,* 677 F.Supp.2d 479, 497 (D.Mass.2010) ("A showing of injury is generally necessary for the purposes of Article III standing ..., but the RICO statute sets forth additional requirements for a showing of injury.").

22    In that case, the plaintiff obtained an *ex parte* attachment order against the debtor's property in attempts to garnish assets of the debtor in the hands of a third party. 779 F.2d at 896. The plaintiff alleged that its rights to enforce the judgment against the debtor were lost because the garnishee falsely denied holding any of the debtor's property. *Id.* As a result, when the plaintiff moved to confirm the attachment, the district court denied the motion. The plaintiff then filed an action against the defendant claiming that defendant's failure to reveal debtor's property in its hands was a damaging lie constituting fraud on the court and causing it damage. *Id.* The Second Circuit reversed the district court's order dismissing the action and remanded the case for an evidentiary hearing to examine whether the defendant's garnishee statement was fraudulent. *Id.* at 901. If so, the district court was free to enter a judgment in the amount plaintiff would have obtained if the defendant had filed an accurate statement. *Id.*

23    Although that case states that fraud on the court may be an independent cause of action, this Court declines to follow it.

24    In addition, the Court notes that Shirokov seeks a declaration of invalidity based on copyright misuse, which is not available to him under such a claim. *Amaretto Ranch Breedables, LLC,* 790 F.Supp.2d at 1033.

25    Shirokov's claim in this respect is wrong, particularly because he is the only named plaintiff. At this stage of the litigation, the District Court must dismiss his claims if he has not stated a cause of action on his own right. *See Katz v. Pershing, LLC,* —— F.3d ——, 2012 WL 612793, at * 3 (1st Cir.2012) (citation omitted) ("Because no class was certified below, we evaluate only whether the plaintiff herself has constitutional and statutory standing to pursue the action."); *Booklocker.com, Inc. v. Amazon.com, Inc.,* 650 F.Supp.2d 89, 97 n. 3 (D.Me.2009) ("As a consequence of the precertification nature of the matter, for the purposes of assessing the pending motion to dismiss, 'the potential claims of

putative class members other than the named plaintiff are simply not before the court.' ") (citations omitted); *Simonet v. Smithkline Beecham Corp.,* 506 F.Supp.2d 77, 81 (D.P.R.2007) ("A named plaintiff who cannot establish her own case may not seek relief on behalf of other class members.") (citations omitted); *Evans v. Taco Bell Corp.,* No. 04CV103JD, 2005 WL 2333841, at * 4 (D.N.H. Sept.23, 2005) ("To be sure, [plaintiff] has filed the case as a putative class action ... But unless and until the court certifies such a class, the potential claims of putative class members other than the named plaintiff are simply not before the court.") (citations omitted).

26     The statute defines trade and commerce as:

> ... the advertising, the offering for sale, rent or lease, the sale, rent, lease or distribution of any services and any property, tangible or intangible, real, personal or mixed, any security ... and any contract of sale of a commodity for future delivery, and any other article, commodity, or thing of value wherever situate, and shall include any trade or commerce directly or indirectly affecting the people of this commonwealth.

M.G.L.c.93A, § l(b).

27     Shirokov argues that not all defendants are attorneys and therefore may not avail themselves of this argument. (Docket No. 32 at 33, 43).

---

**End of Document**            © 2023 Thomson Reuters. No claim to original U.S. Government Works.

KeyCite Yellow Flag - Negative Treatment
Report and Recommendation Adopted as Modified by Miller v. Hurst,
M.D.Tenn., September 28, 2020

2020 WL 3871143
Only the Westlaw citation is currently available.
United States District Court, M.D.
Tennessee, Nashville Division.

Jack Victor MILLER

v.

Kenneth HURST, et al.

No. 3:17-0791
|
Signed 07/09/2020

**Attorneys and Law Firms**

Jack Victor Miller, Readyville, TN, pro se.

Barry Neil Shrum, Shrum & Associates, Nashville, TN, Amy J. Everhart, Everhart Law Firm PLC, Franklin, TN, for Kenneth Hurst, et al.

Russell Sims, Dowellton, TN, pro se.

Sims Records, Dowelltown, TN, pro se.

English Music, Dowelltown, TN, pro se.

**REPORT AND RECOMMENDATION**

BARBARA D. HOLMES, United States Magistrate Judge

**To: The Honorable Aleta A. Trauger, District Judge**

**\*1** Currently pending are multiple motions: *pro se* Plaintiff Jack Miller's motion for temporary injunction (Docket Entry ("DE") 120);[1] Defendants Nita Miller Graves, Tedd Graves, and Lovingood Publishing Company's (the "Graves Defendants") motion to dismiss Plaintiff's second amended complaint, or alternatively for summary judgment (DE 123);[2] and Defendants Kenneth Hurst and Lillibeth Music's (the "Hurst Defendants") motion to join the Graves Defendants' motion to dismiss/motion for summary judgment. (DE 128.)

As an initial matter, the Court *sua sponte* LIFTS THE STAY of all proceedings previously imposed in this matter in order to affect immediate disposition of the parties' respective motions.

For the reasons that follow, the undersigned Magistrate Judge respectfully recommends that Plaintiff's motion (DE 120) be DENIED, and that the Graves and Hurst Defendants' motions to dismiss (DE 123, 128) be GRANTED, specifically dismissal without prejudice as to the copyright infringement claim and with prejudice as to all other claims, as discussed below.[3]

**I. BACKGROUND**

**A. Facts/State Court Background**[4]
**\*2** Plaintiff is a professional singer and songwriter who alleges that eight defendants—Nita Miller Graves (hereinafter "Graves"), Kenneth "Kenny" Hurst, Tedd Graves, Russell Sims, Sims Records, Lillibeth Music, Lovingood Publishing Company, and English Music—are responsible for various acts of copyright infringement and civil conspiracy pertaining to three songs that he has recorded: "Ain't Coming Home," "Burning Rubber," and "Cheater of the Year."[5] Plaintiff alleges that Graves, who is also his sister, presented copies of these recordings to Russell Sims and Tedd Graves as songs that she had written herself. Plaintiff claims that Defendants proceeded to record an album that included these songs and sell merchandise bearing the "Burning Rubber" title without his consent.[6]

Plaintiff additionally alleges that Graves filed applications for copyrights for the subject songs that contained a false claim that Graves had composed the lyrics to each of these songs. Based on such information, the U.S. Copyright Office assigned certificates of registration to Graves for "Ain't Coming Home" and "Cheater of the Year," and to both Graves and co-defendant Tedd Graves, her husband, for "Burning Rubber."

In an unrelated dispute over intellectual property, Plaintiff alleges that Graves has improperly claimed legal rights to the domain name "ProfessionalGambler.com" and the corresponding website, which involves a sports betting and handicapping business started by their father. Specifically, Plaintiff claims that following the death of their father, Graves commandeered control of ProfessionalGambler.com by representing herself as the primary account contact and transferring the account to a different domain name registrar.

2020 WL 3871143

This led to a dispute in Rutherford County Probate Court (the "Probate Case"), with the Probate Judge ultimately concluding on July 2, 2019 that the *website* connected to ProfessionalGambler.com was acquired by Graves as an asset of their father's estate, but that Plaintiff "owned the domain name...outside of the estate." (DE 114-1 at 2.) However, the Probate Judge denied Plaintiff's request to reopen the estate and "award [Plaintiff] the domain name" because the domain name was not part of the estate, thus rendering the Probate Court without authority to grant such relief. (*Id.*)

While the Probate Case was still pending, Graves sought various forms of relief related to the domain name and website in Rutherford County Chancery Court (the "Chancery Court Case"). On December 19, 2018, the presiding Chancellor issued declaratory and injunctive relief in favor of Graves after finding that Graves "is the owner of the website and domain name of professionalgambler.com." (DE 95-2 at 1.)[7] The Tennessee Court of Appeals has denied Plaintiff's multiple appeals of this decision and the Tennessee Supreme Court has denied his application for review. (DE 127-4 at 5; DE 127-5 at 1.)

### B. Procedural Background

**\*3** On September 19, 2019, the Court entered an order staying all proceedings in this matter pending the outcome of Plaintiff's most recent appeal to the Tennessee Court of Appeals. (DE 119.) The stay was implemented to avoid the risk of issuing a ruling inconsistent with the outcome of the state court proceedings, which also involved the dispute between Plaintiff and Graves as to ownership of ProfessionalGambler.com. The order required Defendants to advise this Court of the Tennessee Court of Appeals' decision within 14 days of receiving notice of said decision. (*Id.* at 2.) On October 28, 2019, the Graves Defendants filed a "notice of state case status" that notified this Court of the Tennessee Court of Appeals' denial of Plaintiff's most recent appeal on October 11, 2019. (DE 121.)[8] Following this denial, the Graves Defendants and Hurst Defendants (collectively referred to as "Defendants") filed the instant motions for dismissal or summary judgment. (DE 123, 128.)

On the same day that the Tennessee Court of Appeals dismissed Plaintiff's most recent appeal, Plaintiff filed the pending motion for a preliminary injunction. (DE 120.) Plaintiff alleges that he is "affiliated with the name ProfessionalGambler.com because he owns the trademark and conducted business there for four years," but states that he

is "not affiliated with the website currently active at the domain name[.]" (*Id.* at 5.) Plaintiff therefore requests an order requiring Graves "to take the current property down or broadcast something that is not sports betting related and harmful to Plaintiff and consumers." (*Id.*)

Plaintiff's Complaint contains claims of copyright infringement, conspiracy to convert, and fraud related to the songs "Ain't Coming Home," "Burning Rubber," and "Cheater of the Year." Plaintiff also alleges trademark infringement, unfair competition, violation of the Anticybersquatting Consumer Protection Act ("ACPA"), and violation of the Computer Fraud and Abuse Act ("CFAA") against Defendant Graves with respect to the ProfessionalGambler.com domain name. (DE 92 at ¶¶ 112-154.) Plaintiff seeks declaratory relief, injunctive relief, and damages stemming from these claims.

## II. ANALYSIS

### A. Dismissal for Failure to State a Claim

Because Defendants' motion to dismiss is dispositive of all claims in this matter, the Court will address it initially. Defendants move for dismissal of the seven claims contained in Plaintiff's Complaint: (1) copyright infringement; (2) "conspiracy to convert"; (3) fraud; (4) trademark infringement; (5) unfair competition; (6) violation of the ACPA; and (7) violation of CFAA. For the reasons below, the Court finds that the copyright infringement claim should be dismissed without prejudice, and that the remaining claims should be dismissed with prejudice.

In light of these findings, the Court additionally concludes that Plaintiff's motion for a preliminary injunction should be denied as moot.

### B. Standard of Review

A Rule 12(b)(6) motion tests whether a complaint "state[s] a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss under Rule 12(b) (6), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 444 (6th Cir. 2012) (quoting Fed. R. Civ. P. 8(a)(2)). When reviewing a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the court is required to "construe the complaint in the light most favorable to the plaintiff[ ] [and] accept all well-pleaded

Miller v. Hurst, Slip Copy (2020)

2020 WL 3871143

factual allegations as true[.]" *Matthew N. Fulton, D.D.S., P.C. v. Enclarity, Inc.,* 907 F.3d 948, 951-52 (6th Cir. 2018) (quoting *Hill v. Snyder,* 878 F.3d 193, 203 (6th Cir. 2017)).

**\*4** Matters outside of the pleadings are generally not considered when ruling on a Rule 12(b)(6) motion to dismiss. *Rondigo, L.L.C. v. Twp. of Richmond,* 641 F.3d 673, 680 (6th Cir. 2011) (citation omitted). However, the court may consider "exhibits attached [to the complaint], public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the complaint and are central to the claims contained therein," without converting the motion to dismiss into a motion for summary judgment. *Id.* at 680-81 (citing *Bassett v. Nat'l Collegiate Athletic Ass'n,* 528 F.3d 426, 430 (6th Cir. 2008)).

Of note, pleadings submitted by *pro se* plaintiffs are generally "held to less stringent standards than formal pleadings drafted by lawyers[.]" *Erickson v. Pardus,* 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007). However, the "lenient treatment" accorded to *pro se* litigants is not without limits, *Pilgrim v. Littlefield,* 92 F.3d 413, 416 (6th Cir. 1996), and even a *pro se* plaintiff "must state and support all elements of a substantive claim to avoid an adverse judgment." *Durante v. Fairlane Town Ctr.,* 201 F. App'x 338, 344 (6th Cir. 2006).

## C. Plaintiff's Claims

### 1. Copyright Infringement

Defendants argue that Plaintiff's copyright infringement claims should be dismissed because the Complaint contains no allegation that any of the three songs at issue were registered at the time the instant action was commenced. (DE 126 at 8.) Plaintiff does not dispute that "Ain't Coming Home" and "Cheater of the Year" were not registered at the time the original complaint was filed, but responds that the timing of his copyright registration with respect to "Burning Rubber" is "not a binary issue[.]" (DE 129 at 5.) Plaintiff is mistaken and his claims should be dismissed, albeit without prejudice.

A plaintiff may pursue a copyright claim only after complying with the registration requirement contained in 28 U.S.C. § 411: "no civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title." 28 U.S.C. § 411(a). The Supreme Court has noted that this requirement is "akin to an administrative exhaustion requirement that the owner must

satisfy before suing to enforce ownership rights." *Fourth Estate Pub. Benefit Corp. v. Wall-Street.com, LLC,* ––– U.S. ––––, 139 S. Ct. 881, 887, 203 L. Ed. 2d 147 (2019). Contrary to Plaintiff's assertion otherwise, the Supreme Court has held that this unambiguous requirement is satisfied "not when an application for registration is *filed,* but when the Register has *registered* a copyright after examining a properly filed application." *Id.,* 139 S. Ct. at 892 (emphasis added).[9]

The Complaint concedes that Plaintiff's attempts to register "Ain't Coming Home" and "Cheater of the Year" were unsuccessful (DE 92 at ¶ 18), which renders any claims stemming from these songs subject to dismissal. *See Malibu Media, LLC v. Doe,* No. 18-CV-10956 (JMF), 2019 WL 1454317, at *2 (S.D.N.Y. Apr. 2, 2019) ("A complaint which fails to plead compliance with § 411(a) is defective and subject to dismissal.") (internal citation omitted). The Complaint additionally alleges that Plaintiff registered "Burning Rubber" on April 23, 2017 and cites to "Exhibit B" (DE 92 at ¶ 17), although no such exhibit is attached to the Complaint. Defendants highlight a correspondence from the U.S. Copyright Office to note that registration for "Burning Rubber" was actually not completed until December 14, 2017 (DE 126 at 3), several months after Plaintiff commenced this action. Because Plaintiff does not dispute the date of this registration—his reply brief concedes that registration for this song was in fact "delayed" (DE 129 at 5)—the Court finds that the claims relating to "Burning Rubber" were brought before registration was completed and should therefore be dismissed.[10]

**\*5** Even assuming, *arguendo,* that Plaintiff has adequately pled that "Burning Rubber" was registered prior to commencement of this action, dismissal would be appropriate based on Plaintiff's failure to register "Ain't Coming Home" and "Cheater of the Year." This Court has recently examined the impact of the Supreme Court's decision in *Fourth Estate* in a nearly identical scenario involving a claimant who failed to register two of the three songs at issue prior to bringing her copyright infringement claims:

> The body of law that has emerged in the wake of *Fourth Estate* strongly suggests that allowing the claims related to *Seasons 4 U* to proceed, despite successful registration of the associated copyright following commencement of this action, would "undermine the objectives animating" the *Fourth Estate* holding. [*Izmo, Inc. v. Roadster, Inc.,* No. 18-CV-06092-NC, 2019 WL 2359228, at *2 (N.D. Cal. June 4, 2019)]. Although there is some appeal to

dismissing only the *Seasons 4 U* claims and allowing the remaining infringement claims to proceed, the Court does not find a tenable outcome in dismissal of the *Seasons 4 U* claims without prejudice and not of the claims for the other two works. *See id.* ("The fact that [plaintiff] properly 'commenced' this lawsuit as to *some* of its copyrights does not excuse its failure to comply with § 411(a) as to its other copyrights.") (emphasis in original).

*Rawls v. Paradise Artists, Inc.*, No. 3:18-cv-0417, 2020 WL 1493610, at *6 (M.D. Tenn. Mar. 27, 2020). The same reasoning dictates that each of Plaintiff's claims for copyright infringement should be dismissed in the instant matter.

The salient question, which is not addressed in Defendants' brief, is whether Plaintiff's copyright claims are subject to dismissal with prejudice. The majority of cases decided after *Fourth Estate* have held that failure to satisfy section 411(a)'s registration requirement warrants dismissal *without* prejudice. *See, e.g., Andrews Enterprises, Inc. v. Fish*, No. 2:19-CV-00484-BLW, 2020 WL 2497697, at *3 (D. Idaho May 13, 2020) (dismissing claim for copyright infringement of unregistered copyright without prejudice); *Ambrosetti v. Oregon Catholic Press*, No. 3:19-CV-00682-JD-MGG, 2020 WL 2219172, at *6 (N.D. Ind. May 7, 2020) (same); *Laake v. Dirty World LLC*, No. CV-19-5444-PHX-DMF, 2020 WL 1866124, at *2 (D. Ariz. Apr. 14, 2020) (same). Such disposition is consistent with the notion that a failure to register a copyright prior to filing a copyright infringement lawsuit is tantamount to a failure to exhaust administrative remedies, which means the party that improperly initiated the action should be afforded the opportunity to go back and fulfill any pre-suit requirements. *See Cortes-Ramos v. Martin-Morales*, 956 F.3d 36, 43 (1st Cir. 2020) ("Generally, when a plaintiff's claim is dismissed for failing to satisfy a pre-suit requirement, the dismissal should be 'without prejudice' when the plaintiff may able to satisfy the requirement in the future."). Here, Defendant concedes that Plaintiff has now registered at least "Burning Rubber," which satisfies section 411(a) and would allow him to bring a future copyright infringement action related to that work. Dismissal of Plaintiff's copyright infringement claims without prejudice is therefore warranted.

### 2. Conspiracy to Convert

Defendants argue that Plaintiff's "conspiracy to convert" claim is preempted by the Copyright Act and therefore subject to dismissal. (DE 126 at 15.) Notably, the Complaint fails to describe the basis for this claim, which appears to represent little more than garnish for the copyright infringement claim,

thus making it difficult to engage in meaningful analysis. If a general civil conspiracy claim, the required elements of that cause of action under Tennessee law include: (1) a common design between two or more persons; (2) to accomplish by concerted action an unlawful purpose, or a lawful purpose by unlawful means; (3) an overt act in furtherance of the conspiracy; and (4) resulting injury. *Morgan v. Brush Wellman, Inc.*, 165 F. Supp. 2d 704, 720 (E.D. Tenn. 2001) (citing *Menuskin v. Williams*, 145 F.3d 755, 770 (6th Cir. 1998)). However, a conspiracy claim "must be pled with some degree of specificity and [ ] vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim." *McGee v. Best*, 106 S.W.3d 48, 64 (Tenn. Ct. App. 2002). Plaintiff's Complaint is completely devoid of any such particularity and therefore fails to state a cause of action for civil conspiracy.

**\*6** Additionally, turning to Defendants' argument, Section 301 of the Copyright Act contains language that broadly preempts related state law claims:

> [A]ll legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright ... are governed exclusively by this title. Thereafter, no person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State.

17 U.S.C. § 301(a). Preemption of a state law claim occurs when two requirements are met: (1) the works at issue must come within the scope of the "subject matter of copyright" as set forth in Sections 102 and 103 of the Copyright Act; and (2) the rights granted under state law must be equivalent to any of the exclusive rights within the scope of federal copyright protection. *Stromback v. New Line Cinema*, 384 F.3d 283, 300 (6th Cir. 2004) (citing *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001)). These requirements are sometimes referred to, respectively, as the "subject matter" requirement and the "equivalency" requirement. *Id.*

The subject matter requirement "is satisfied if a work fits within the general subject matter of Sections 102 and 103 of the Copyright Act, regardless of whether it qualifies for copyright protection." *Id.* It cannot reasonably be disputed that all of Plaintiff's "conspiracy to convert" claims relate to Defendants' alleged copying of the three songs at issue. The Complaint even recites the alleged facts forming the basis of the "conspiracy to convert" claim under the same heading as those giving rise to the copyright infringement claims without

distinguishing them. (DE 92 at ¶¶ 112-132.) The absence of any statute or other authority on which the "conspiracy to convert" claim is based muddles this analysis, although Plaintiff's failure to differentiate the copyright infringement claims from the "conspiracy to convert" claim in any way further supports a finding that the subject matter requirement is met.

For the same reason, the Court finds that the equivalency requirement is satisfied. This prong of the analysis inquires "whether the state common law or statutory action at issue asserts rights that are the same as those protected under § 106 of the Copyright Act." *Wrench*, 256 F.3d at 455.[11] Equivalency is found to exist "if the right defined by state law may be abridged by an act which in and of itself would infringe one of the exclusive rights" contained in section 106. *Id.* at 456. To make such a determination, the Sixth Circuit has implemented the "extra element" test, which holds that "if an extra element is required instead of or in addition to the acts of reproduction, performance, distribution or display in order to constitute a state-created cause of action, there is no preemption, provided that the extra element changes the nature of the action so that it is qualitatively different from a copyright infringement claim." *Id.* Put another way: even if an extra element exists, preemption is avoided "only where the element changes the nature, rather than the scope, of the action." *Stromback*, 384 F.3d at 301 (internal citation omitted).

**\*7** As discussed *supra*, there is no indication that the "conspiracy to convert" claim represents a cause of action independent of the copyright infringement claim. Plaintiff relies on the same allegations, which are delineated under the caption of "Claims for Copyright Infringement and Conspiracy to Convert" (DE 92 at 24), and offers nothing to suggest that the "conspiracy to convert" claim is anything other than an attempt to bolster the copyright infringement claim. The "conspiracy to convert" claim therefore alters neither the scope nor the nature of the action. Plaintiff also provides no meaningful response to Defendants' arguments, but instead inaccurately characterizes Defendants' position. (DE 129 at 4.) Accordingly, the Court concludes that federal copyright law preempts the "conspiracy to convert" claim and thus finds that this claim should be dismissed with prejudice. *See Briscoe v. Fine*, 444 F.3d 478, 501 (6th Cir. 2006) (conversion claims preempted by federal statute should be dismissed with prejudice).

### 3. Fraud on the Copyright Office

Under the caption of "Fraud on the Copyright Office," the Complaint sets forth a series of confusing accusations against Defendants that include misrepresentation to the Copyright Office. (DE 92 at ¶¶ 58-80.) It is unclear whether this section of the Complaint is meant to convey a specific claim or simply recite facts, although Plaintiff includes the following allegation against Defendant Graves: "[H]er actions and the actions of the inducers are willful, intended to deceive, to defraud and to induce. Their efforts are collaborative, in sync and with full endorsement and participation from the others." (*Id.* at ¶ 80.)

To the extent that Plaintiff intends to assert a claim for "fraud on the copyright office," Defendants correctly note that no such claim exists. *See Gomba Music, Inc. v. Avant*, 62 F. Supp. 3d 632, 642 (E.D. Mich. 2014) ("Fraud on the Copyright Office is not an independent claim but, rather, an attack on the prima facie validity provided under Section 410(c).") (internal citation omitted). It is also true, however, that "some courts" have allowed claims for declaratory judgment that a copyright is invalid based on fraud perpetrated on the copyright office to proceed. *Id.* (collecting cases). Regardless, the Complaint does not demand such declaratory judgment, but instead a declaration that copyright infringement has occurred with respect to rights that Plaintiff purports to own. (DE 92 at 32.) Therefore, because such a claim, insofar as it can be considered a valid claim, seeks to protect rights that are also protected by the Copyright Act, it is subject to preemption and should be dismissed with prejudice. *See Briarpatch Ltd., L.P v. Phoenix Pictures, Inc.*, 373 F.3d 296, 307 (2d Cir. 2004) (holding that a claim that "simply seeks a declaration that [the defendant] has no rights in [the work at issue]" is preempted by the Copyright Act).

### 4. Trademark Infringement

The Complaint sets forth a claim for trademark infringement under the Lanham Act stemming from Defendant Graves' use of the ProfessionalGambler.com mark. (DE 92 at ¶¶ 133-140.) The Complaint seeks injunctive relief intended to stop unauthorized use of the mark by Graves, which Plaintiff alleges will "likely [ ] cause substantial injury to the public and to Plaintiff[.]" (*Id.* at ¶ 140.)

A trademark is defined as "any word, name, symbol, or device...used by a person...to identify and distinguish his or her goods, including a unique product, from those manufactured or sold by others and to indicate the source of

Miller v. Hurst, Slip Copy (2020)

2020 WL 3871143

the goods, even if that source is unknown." 15 U.S.C. § 1127. To survive a motion to dismiss a federal trademark claim brought under the Lanham Act, the plaintiff "must allege facts establishing that: (1) [he] owns the registered trademark; (2) the defendant used the mark in commerce; and (3) the use was likely to cause confusion." *Hensley Mfg. v. ProPride, Inc.,* 579 F.3d 603, 609 (6th Cir. 2009) (citing 15 U.S.C. § 1114(1)).

**\*8** The Complaint alleges that Plaintiff "owns PROFESSIONALGAMBLER.COM as a trademark," and that Plaintiff "submitted application and payment to federally register his mark on July 25, 2017. (Exhibit 2)." (DE 92 at ¶¶ 83, 135.) Although Plaintiff fails to attach "Exhibit 2" to the Complaint, these allegations are sufficient to establish ownership at the pleading stage.[12]

However, the Complaint articulates no allegation that Defendant Graves used the mark in commerce. The Complaint instead offers only speculation regarding her purportedly unauthorized use: "[T]hough Defendant Nita Miller Graves did not have enough time to access and alter the content of the website, if she had, it would have deceived and confused the public, who would have thought they were dealing with [Plaintiff]." (*Id.* at ¶ 111.) Even in response to Defendants' argument that this represents insufficient pleading, Plaintiff appears to concede that his claim relies on a hypothetical scenario: "Any attempt by Defendant Graves ... to use ProfessionalGambler.com[ ] in a sports-betting sense would be confusing to the public and an infringement on my rights." (DE 129 at 2.) Because Plaintiff's Complaint does not set forth facts sufficient to establish an essential element of a Lanham Act claim, the trademark infringement claim puts the cart before the horse and should be dismissed. *See Holiday Inns, Inc. v. 800 Reservation, Inc.,* 86 F.3d 619, 626 (6th Cir. 1996) ("[D]efendants' use of a protected mark ... is a *prerequisite* to the finding of a Lanham Act violation. Absent such a finding, the eight-factor test ... is irrelevant.") (emphasis in original).

### 5. Unfair Competition

Plaintiff's unfair competition claim, which is also brought pursuant to the Lanham Act (DE 92 at 2), fails for the same reasons. Although a claim of unfair competition generally does not require that a defendant actually use the plaintiff's trademark, the claim in this case relies exclusively on allegations pertaining to Graves' "unauthorized use" of the mark in question. (DE 92 at ¶¶ 142-143.) Thus, Plaintiff's unfair competition claim, like his trademark infringement

claim, fails unless he can establish that Graves used the mark in a prohibited manner. *See Bird v. Parsons,* 289 F.3d 865, 877 (6th Cir. 2002) (holding that because plaintiff's unfair competition allegations relate to defendants' alleged use of plaintiff's trademark, failure to show that defendants unlawfully used the trademark warrants dismissal). Because the Complaint contains no such allegation, the unfair competition claim should be dismissed.

The Court notes that the Complaint is laden with descriptions of alleged nefarious conduct by Defendant Graves that have nothing to do with trademark infringement or unfair competition related to ProfessionalGambler.com. Plaintiff instead alleges that Graves "hoodwink[ed]" a domain registrar as part of scheme to ultimately "seize the domain name and sell it" (DE 92 at ¶¶ 96, 101), but this allegation is controverted by state court orders showing unequivocally that Graves already owns the domain name and corresponding website. (DE 127-2; DE 127-3.)[13] Plaintiff's attempts to relitigate ownership of ProfessionalGambler.com in this Court via insufficiently pled claims of trademark infringement and unfair competition are improper, and therefore both claims should be dismissed with prejudice.

### 6. ACPA Claim

**\*9** Plaintiff asserts a claim for ACPA violations in which he accuses Defendant Graves of cyberpiracy based on her alleged "hi-jack[ing]" of the ProfessionalGambler.com domain name. (DE 92 at ¶¶ 148, 150.) Plaintiff seeks injunctive relief to prevent Graves from "selling the domain name for a quick buck[.]" (*Id.* at ¶ 151, 152.)

The ACPA aims to prevent "cybersquatting" by individuals who register a domain name that includes a famous trademark, then attempt to sell the domain names to the trademark owners, which allows the cybersquatters to "profit[ ] from the goodwill associated with the trademark." *Bird,* 289 F.3d at 880. The ACPA therefore permits a trademark owner to bring a civil action against the purported cybersquatter if the individual (1) registers, traffics in, or uses a domain name (2) that is identical or confusingly similar to a distinctive or famous trademark, and (3) has a bad faith intent to profit from the trademark. 15 U.S.C. § 1125(d)(1)(A). The ACPA delineates nine factors that are relevant when considering the "bad faith" prong of the analysis. *Id.* § 1125(d)(1)(B)(i).

The Complaint in this matter fails to adequately plead an ACPA violation in multiple ways. With respect to the first element, Defendants correctly note the absence of any allegation that Graves registered or "trafficked in" the ProfessionalGambler.com domain name. The Complaint instead states that Plaintiff filed for registration of the ProfessionalGambler.com trademark on July 25, 2017, then alleges that Graves attempted to move the domain name bearing the same name to a different registrar. (DE 92 at ¶¶ 83, 96.) There is no allegation that Graves registered a different, but comparable domain name that might have been confused with the ProfessionalGambler.com trademark. *Cf. Chanel, Inc. v. Song Xu*, No. 09-2610, 2011 WL 13269431, at \*7 (W.D. Tenn. Mar. 15, 2011) (finding that subject defendants' registration of domain names "letschanel.com," "2cchanel.com," and "chanelshow.com" were "confusingly similar" to several Chanel trademarks and thus satisfied the first and second elements). Because the Complaint contains no allegation that Graves registered a domain name, the ACPA claim fails.

Additionally, the Complaint does not set forth an allegation that Graves possessed a bad faith attempt to "profit from the trademark" at issue. Plaintiff alleges that Graves exhibited a "bad faith intent of causing harm to Plaintiff and profiting unlawfully" by selling the ProfessionalGambler.com domain name (DE 92 at ¶¶ 149, 151), but this again ignores the fact that Graves is the rightful owner of both the domain name and corresponding website. Because Graves cannot misappropriate a domain name that she owns, Plaintiff's ACPA claim fails and should be dismissed with prejudice.

### 7. CFAA Claim

Finally, Plaintiff alleges a violation of the CFAA, which, although primarily a criminal statute, contains a civil provision that imputes civil liability to an individual who commits one or more of seven different criminal infractions involving unauthorized access to a computer. *See* 18 U.S.C. § 1030(a)(1)-(7). Plaintiff in this case alleges that Defendant Graves violated section "1030(g)(4)" of the statute (DE 92 at ¶ 153), although no such provision exists. However, Plaintiff employs language similar to that set forth elsewhere in the statute, which pertains to an individual who:

> **\*10** knowingly and with intent to defraud, accesses a protected computer without authorization, or exceeds authorized access, and by means of such conduct furthers the intended fraud and obtains anything of value, unless the object of the fraud and the thing obtained consists only of

the use of the computer and the value of such use is not more than $5,000 in any 1-year period.

18 U.S.C. § 1030(a)(4).

Even liberally construing the Complaint, the Court finds that Plaintiff has failed to state a claim under the CFAA. In fact, the Complaint contains no specific allegations regarding any CFAA violation, but rather what appears to be a placeholder phrase that was never finalized before filing: "Additional language about defendant Nita Graves' violation of the Computer Fraud and Abuse Act." (DE 92 at ¶ 154.) Because there are no allegations pertaining to a "protected computer," let alone unauthorized access of such a computer, Defendants' motion to dismiss this count should be granted.

As noted above, the Court's conclusion that each of the claims in the Complaint is subject to dismissal renders Plaintiff's request for a preliminary injunction moot. The Court therefore declines to consider the merits of that motion.

### III. RECOMMENDATION

Based on the foregoing, it is respectfully RECOMMENDED that:

(1) Defendants' motions to dismiss (DE 123, 128) be GRANTED. Specifically, that Plaintiff's claim for copyright infringement be DISMISSED WITHOUT PREJUDICE and that the remaining claims set forth in the Complaint be DISMISSED WITH PREJUDICE.

(2) Defendants' motion for summary judgment (DE 124) be DENIED AS MOOT without any further action, as it merely duplicates Defendants' motion to dismiss.

(3) Plaintiff's motion for a preliminary injunction (DE 120) be DENIED.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this Report and Recommendation and must state with particularity the specific portions of this Report and Recommendation to which objection is made. Fed. R. Civ. P. 72(b)(2); Local Rule 72.02(a). Failure to file specific written objections within the specified time can be deemed to be a waiver of the right to appeal the District Court's order regarding the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985);

*Cowherd v. Milton*, 380 F.3d 909, 912 (6th Cir. 2004) (*en banc*). Any response to the objections must be filed within fourteen (14) days after service of objections. Fed. R. Civ. P. 72(b)(2); Local Rule 72.02(b).

**All Citations**

Slip Copy, 2020 WL 3871143

Footnotes

1   Although Plaintiff's motion is captioned as a "motion for temporary injunction," no such relief is available in federal court. *See Overstreet v. Lexington-Fayette Urban Cty. Gov't*, 305 F.3d 566, 571-72 (6th Cir. 2002) (noting that the Federal Rules of Civil Procedure do not recognize the existence of a "temporary injunction"). Plaintiff's brief, however, seeks a "preliminary injunction" pursuant to Rule 65. (DE 120 at 1.) Plaintiff's filing will therefore be treated and identified as a motion for a preliminary injunction.

2   The Graves Defendants filed two identical motions under two different headings on the docket: "motion to dismiss, motion to dismiss for failure to state a claim" (DE 123); and "motion for summary judgment." (DE 124.) To avoid confusion, and because the two entries both request dismissal or, alternatively, summary judgment, the Court will address only the first motion (DE 123) and recommends denying the second motion (DE 124) as moot without any further action.

3   The Graves Defendants' motion for leave to file a reply to Plaintiff's response to their motion to dismiss/motion for summary judgment (DE 130) is GRANTED. Generally, leave of court is not required to file a reply brief when a non-moving party asserts additional facts, as alleged by the Graves Defendants. (*Id.* at 1.) To the contrary, a reply brief is generally expected and must adhere to a specific format. *See* Local Rule 56.01(d). However, because the *pro se* Plaintiff's response does not directly address the Graves Defendants' statement of undisputed material facts, adherence to the requirements of Local Rule 56.01(d) will be excused.

4   Unless otherwise noted, the factual background section is based on the allegations contained in Plaintiff's "Verified Second Amended Complaint." (DE 92.) Because Plaintiff's extensive procedural maneuverings have been discussed in previous orders (DE 47, 48, 91), this Report and Recommendation will largely limit its discussion to activity occurring since the filing of the "Verified Second Complaint" (hereinafter the "Complaint"), which is the legally operative complaint. *Parry v. Mohawk Motors of Mich., Inc.*, 236 F.3d 299, 306 (6th Cir. 2000).

5   The first two songs have not been consistently identified in Plaintiff's pleadings. *See e.g.,* DE 1 at 1 ("Ain't Comin' Home"); DE 92 at 1 ("Ain't Coming Home"); *id.* at 8 ("Ain't Comin' Home This Time). *See also* DE 1 at 1 ("Burnin' Rubber (Over All My Burnin' Bridges)"); DE 92 at 1 ("Burning Rubber"); *id.* at 15 ("Burnin' Rubber"). For clarity, the Court will, as denoted above, refer to the songs as "Ain't Coming Home," "Burning Rubber," and "Cheater of the Year."

6   Plaintiff does not specify which Defendants are responsible for each of these actions, although several pictures copied and pasted into the Complaint suggest that Kenny Hurst is the artist who recorded the songs at issue. (DE 92 at ¶ 28.)

7   On July 1, 2019, the Chancery Court entered an order requiring that the domain name and accompanying website be transferred to Graves. (DE 116-1 at 1-6.)

8   The parties dispute whether the Graves Defendants' notice filing was timely. (DE 129 at 5; DE 130-1 at 1, n.1.) Regardless, the Court sees no indication that Plaintiff was prejudiced by the timing of this notice, which was filed, at most, three days after the deadline.

9   There are exceptions to the registration requirement, such as for works that are likely to be infringed prepublication and live broadcasts. *See* 17 U.S.C. §§ 408(f), 411(a), (c). However, no such exceptions apply to Plaintiff's claims.

10  Defendants deduce that Plaintiff neglected to re-attach the exhibits from his original complaint to the current Complaint, and that the "Exhibit B" citation therein references an exhibit attached to the "second amended complaint" that Plaintiff improperly filed without seeking leave from the Court. (DE 56.) Because this "second amended complaint" was stricken from the docket, there is no record of the registration of "Burning Rubber" available to the Court. This omission would normally prevent the Court from assessing Defendants' motion to dismiss without converting it into one for summary

2020 WL 3871143

judgment. *See Rondigo, supra.* However, because Plaintiff appears to accept Defendants' recitation of the contents of this exhibit, the Court will construe Defendants' characterization as an "exhibit[ ] attached [to the complaint]," thus making it appropriate for consideration under Rule 12(b)(6). *Rondigo, 641 F.3d at 680.*

11  Pursuant to section 106, the owner of a copyright has the exclusive rights to, among other things, reproduce copies of the copyrighted work, distribute copies of the copyrighted work to the public by sale, perform the copyrighted work publicly, and perform any copyrighted sound recording via digital audio transmission. 17 U.S.C. § 106.

12  Defendants note, however, that Plaintiff's trademark application was actually denied registration on the Principal Register and accepted only for the Supplemental Register (DE 126 at 19), which "confers considerably fewer advantages than principal registration" and offers "no substantive trademark rights beyond those under common law." *In re Am. Fertility Soc., 188 F.3d 1341, 1343 (Fed. Cir. 1999)* (internal citation omitted). In fact, registration on the Supplemental Register "is not evidence of ownership, validity, or the exclusive right to use[.]" *In re Bush Bros. & Co., 884 F.2d 569, 571 n.2 (Fed. Cir. 1989).*

13  The Court finds that reference to these orders issued in the Chancery Court Case does not necessitate conversion of Defendants' motion to dismiss into one for summary judgment. *See Malin v. JPMorgan, 860 F. Supp. 2d 574, 578 (E.D. Tenn. 2012)* (holding that orders from bankruptcy court "are matters of public record and therefore the Court's taking of judicial notice of the bankruptcy filings do not convert this motion into one for summary judgment") (citing *Nieman v. NLO, Inc., 108 F.3d 1546, 1554 (6th Cir. 1997)*).

---

**End of Document**

© 2023 Thomson Reuters. No claim to original U.S. Government Works.

---

Case: 1:22-cv-05660 Document #: 27-1 Filed: 03/06/23 Page 104 of 131 PageID #:312

Leaf, Inc. v. Burdeen, Not Reported in F.Supp. (1996)

1996 WL 89070

1996 WL 89070
Only the Westlaw citation is currently available.
United States District Court, N.D. Illinois, Eastern Division.

LEAF, INC., a Delaware corporation;
and Donruss Trading Cards, Inc.,
a Delaware corporation, Plaintiffs,

v.

Jeffrey L. BURDEEN, a
Michigan resident, Defendant.

No. 95 C 5959.
|
Feb. 28, 1996.

*MEMORANDUM OPINION AND ORDER*

MAROVICH, District Judge.

**\*1** Now before the Court is Defendant Jeffrey L. Burdeen's ("Burdeen") motion to dismiss Plaintiffs Leaf, Inc.'s ("Leaf") and Donruss Trading Cards, Inc.'s ("Donruss") claims of copyright infringement, unfair competition, deceptive trade practices, conversion, fraud and racketeering arising out of Burdeen's alleged unauthorized distribution of sports trading cards and sports memorabilia created, produced, marketed and sold by Plaintiffs. For the reasons set forth below, this Court grants in part and denies in part Burdeen's motion to dismiss.

*BACKGROUND*

Leaf directly, and indirectly through its licensee, Donruss, engages in the business of creating and manufacturing sports trading cards and related products. Leaf and Donruss market and sell their products throughout the United States. In furtherance of this enterprise, Leaf and Donruss have obtained licenses to use various team trade indicia as well as the names and likeness of certain professional and amateur athletes. Plaintiffs' products bear trademarks owned by them, including "LEAF," "DONRUSS," and "ELITE DOMINATOR."

Burdeen was employed by Plaintiffs from May 26, 1992 to July 21, 1994, the date on which Burdeen resigned. During that time, Burdeen served as an associate product manager for sports trading cards products, first for Leaf, and, subsequent to January 1, 1994, for Donruss, Leaf's subsidiary.

Plaintiffs allege that, during his employment, Burdeen stole an undetermined number of sports trading cards and sports memorabilia owned by Plaintiffs, including numerous items bearing copyrighted material and/or trademarks owned by Leaf and Donruss. Plaintiffs further allege that Burdeen sold the stolen merchandise through unauthorized channels of trade and in a manner inconsistent with Plaintiffs' specifications. Burdeen was allegedly paid in excess of $50,000 by various third parties for the stolen trading cards and other materials.

Plaintiffs brought this suit against Burdeen alleging that his misappropriation and unauthorized sale of their sports trading cards and other merchandise constitute: (1) copyright infringement under Section 501 of the United States Copyright Act (17 U.S.C. § 501); (2) unfair competition pursuant to both Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)) and the Illinois common law of unfair competition; (3) deceptive trade practices pursuant to the Illinois Uniform Deceptive Trade Practices Act (815 ILCS 510/1) and the Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/1); (4) conversion; (5) fraud under the common law of Illinois; and (6) racketeering pursuant to the Racketeer Influenced and Corrupt Organizations Act (RICO) (18 U.S.C. §§ 1961-66).

Burdeen moves for dismissal of Plaintiffs' claims for the following reasons: (1) Plaintiffs do not adequately identify the specific copyrighted items at issue, establish ownership of the copyrights in dispute, or plead other matters necessary to state a claim of copyright infringement; (2) Plaintiffs fail to assert a legally cognizable claim for trademark infringement in that, among other things, Plaintiffs fail to allege actual consumer confusion; (3) Plaintiffs do not make the necessary allegation in their conversion claim that Burdeen deprived Plaintiffs of their rights to immediate possession of the merchandise allegedly stolen by Burdeen; (4) Plaintiffs fail to plead their common law fraud claim with sufficient particularity to satisfy the requirements of Fed. R. Civ. P. 9(b); and (5) Plaintiffs' RICO claim neither identifies an "enterprise" nor establishes a pattern of racketeering activity.

*DISCUSSION*

Case: 1:22-cv-05660 Document #: 27-1 Filed: 03/06/23 Page 105 of 131 PageID #:313

Leaf, Inc. v. Burdeen, Not Reported in F.Supp. (1996)
1996 WL 89070

**\*2** When considering a motion to dismiss, the court tests the sufficiency of the complaint, not the merits of the suit. *Triad Assocs. v. Chicago Hous. Auth.,* 892 F.2d 583, 586 (7th Cir. 1989), *cert. denied,* 498 U.S. 845 (1990). The court must accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of the non-moving party. *Dimmig v. Wahl,* 983 F.2d 86, 87 (7th Cir. 1993). A motion to dismiss will be granted only if it is clear that the plaintiff can prove no set of facts that would entitle her to relief. *Conley v. Gibson,* 335 U.S. 41, 45-46 (1957).

A. *Plaintiffs' Complaint States A Potentially Valid Copyright Infringement Claim*
Rule 1 of the Rules of Practice for Proceedings in Copyright (the "Copyright Rules") provides that the Federal Rules of Civil Procedure (the "Federal Rules") apply to copyright proceedings only "in so far as [the Federal Rules] are not inconsistent" with the Copyright Rules. 17 U.S.C. foll. § 101. One Federal Rule which has been held applicable to copyright actions is Rule 8, which requires, *inter alia,* "a short and plain statement of the claim showing that the pleader is entitled to relief." *April Productions v. Strand Enterprises,* 79 F. Supp. 515, 516 (S.D.N.Y. 1948).

The "short and plain statement" which is required to set forth a cognizable claim for copyright infringement must, at least, include allegations that (1) the plaintiff presently owns the copyright; (2) the copyright has been registered in compliance with the Copyright Rules; and (3) the defendant has somehow infringed the copyright. *Id.* In the absence of direct evidence, the plaintiff may establish infringement by showing that (a) the defendant had access to the copyrighted material/s, and (b) a substantial similarity exists between the copyrighted material/s and the matter published by the defendant. *G.R.I. Corp. v. Golden Fifty Pharmaceutical Co., Inc.,* 185 U.S.P.Q. 674, 678 (N.D. Ill. 1974). A "substantial similarity" may be found where there is a literal copying of protected material. *Id.* (*citing* Nimmer on Copyrights § 143).

In the present matter, Plaintiffs allege in their copyright infringement claim that (1) Donruss and/or its predecessors-in-interest have obtained or have applied to obtain from the United States Copyright Office registrations of the copyrights for most of the sports trading cards at issue; (2) Donruss currently owns the copyrights to the trading cards; and (3) Burdeen misappropriated Donruss's copyrighted sports trading cards and distributed them without Plaintiffs' authorization.

Using Form 17 (28 U.S.C.A., App., Form 17), the model complaint for a copyright infringement action, as a referent, Burdeen contends that Plaintiffs' allegations are insufficient to state a claim for copyright infringement, as Plaintiffs fail to identify the certificate of registration received from the Register of Copyrights, to specify each card allegedly stolen by Burdeen, or to pinpoint the dates on, and the acts by, which Burdeen infringed Plaintiffs' copyrights.

**\*3** While Burdeen relies on *Gee v. CBS, Inc.,* 471 F. Supp. 600 (E.D. Pa. 1979) *aff'd without op.,* 612 F.2d 572 (3d Cir. 1979), in support of its arguments as to the insufficiency of Plaintiffs' copyright infringement claim, that case, in fact, counsels against dismissal of Leaf's and Donruss's claim at the present time. In *Gee,* the court dismissed a copyright infringement claim against a record company that allegedly reissued the songs of a noted musical artist without the authorization of the artist's estate. The *Gee* court stated:

> To have complied with the rule [and Form 17], plaintiffs would have had to identify *each* song composed by Bessie Smith which is the subject of the copyright claim, and for each song they would have had to allege that *they* presently own the copyright.... Plaintiffs must also allege that each work is suitably registered, provide registration numbers and state by what act or acts and on what dates defendants infringed the copyrights.

*Id.* at 644 (emphasis in original).

Yet, unlike this Court, the *Gee* court was faced with a plaintiff who was unable to flush out his claims even after conducting extensive discovery and filing two amended complaints. The *Gee* court specifically held that, "In view of the ample discovery allowed and the extensive opportunity to specify their claims, the interests of even minimal judicial decorum dictate that plaintiffs not be given a fourth [bite at the apple]." *Id.*

Here, Plaintiffs maintain that, given the surreptitious nature of Burdeen's allegedly infringing acts, they are not yet in a position to identify the particular items stolen by Burdeen and, accordingly, to provide the necessary copyright registration information. While it certainly would have been better had Plaintiffs plead their copyright infringement claim with greater specificity, Plaintiffs' claims of ownership, registration, and infringement unquestionably afford Burdeen ample notice of the claim against him. *April Productions,* 79 F. Supp. at 516. Thus, the lack of detail in Leaf's and Donruss's Complaint is not fatal to their copyright infringement claim;

Case: 1:22-cv-05660 Document #: 27-1 Filed: 03/06/23 Page 106 of 131 PageID #:314

Leaf, Inc. v. Burdeen, Not Reported in F.Supp. (1996)

1996 WL 89070

and, accordingly, this Court denies Burdeen's motion to dismiss that claim.[1]

B. *Plaintiffs' Complaint States A Potentially Valid Claim Of Unfair Competition Under The Lanham Act*

Count II of Plaintiffs' Complaint alleges that Burdeen's conduct violates section 1125(a) of the United States Trademark Act (the "Lanham Act"), 15 U.S.C. § 1051 *et seq.* Section 1125(a)(1) provides, in pertinent part:

> Any person who, on or in connection with any goods or services, or any container for goods, uses ... any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which--
>
> > (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, ...

**\*4** shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1).

To state a legally cognizable claim for relief under the Lanham Act, the Plaintiffs must allege "(1) a secondary meaning, in the trademark sense, and (2) a likelihood of confusion." *G.R.I. Corp.,* 185 U.S.P.Q. at 679 (*citing Spangler Candy Co. v. Crystal Pure Candy Co.,* 353 F.2d 641 (7th Cir. 1965); *Aerosol Research Co. v. Scovill Mfg. Co.,* 334 F.2d 751 (7th Cir. 1964)). To establish "secondary meaning," a plaintiff must show that the purchasing public associates goods designated by a certain mark with the plaintiff as the single source. *Hughes v. Design Look Inc.,* 693 F. Supp. 1500, 1507 (S.D.N.Y. 1988) (*citing Centaur Communications Ltd. v. A/S/M Communications, Inc.,* 830 F.2d 1217, 1221 (2d Cir. 1987)). To show a "likelihood of confusion," a plaintiff must allege that consumers have been, or probably will be, confused as to the origin of the goods sold by a defendant. *Raffoler, Ltd. v. Peabody & Wright, Ltd.,* 671 F. Supp. 947, 953-954 (E.D.N.Y. 1987).

Burdeen first claims that the Plaintiffs' Lanham Act claim is deficient because Plaintiffs do not allege "*actual*" consumer confusion in their Complaint. According to Burdeen, actual confusion is the "*sine qua non*" of potential liability.

*Resources Developers, Inc. v. Statute of Liberty-Ellis Island Foundation,* 926 F.2d 134, 139 (2d Cir. 1991).

On this point, Burdeen completely misses the mark. A Lanham Act plaintiff need not show actual confusion to state a valid claim for relief; rather, "the test ... is the *likelihood* of confusion, which can be proven without any evidence of actual confusion...." *Helene Curtis Industries, Inc. v. Church & Dwight Co.,* 560 F.2d 1325, 1330 (7th Cir. 1977), *cert. denied,* 434 U.S. 1070 (1978)(emphasis added). "Actual confusion" is merely one of several factors that courts can consider in determining whether a likelihood of confusion exists. *Id.* (*citing Tisch Hotels, Inc. v. Americana Inn, Inc.,* 350 F.2d 609, 611 (7th Cir. 1965)). Other factors for courts to consider include "'the degree of similarity between the marks in appearance and suggestion; the similarity of the products for which the name is used; the area and manner of concurrent use; the degree of care likely to be exercised by consumers; the strength of the complainant's mark; ... and an intent on the part of the alleged infringer to palm off his products as those of another.'" *Id.* (*quoting Carl Zeiss Stiftung v. V.E.B. Carl Zeiss Jena,* 433 F.2d 686, 705 (2d Cir. 1970) *cert. denied,* 403 U.S. 905, 91 S. Ct. 2205, 29 L. Ed. 2d 680 (1971)). Thus, Leaf's and Donruss's allegations as to Burdeen's unauthorized sale of merchandise actually produced, marketed and sold by Leaf and Donruss are more than sufficient to state a potentially valid "likelihood of confusion" claim, even in the absence of assertions of actual customer confusion.[2]

**\*5** Burdeen further contends that the Plaintiff's Lanham Act claim must fail because Plaintiffs neither suggest that Burdeen misrepresented the source of the allegedly stolen products nor allege that Burdeen did anything to lead potential customers to believe that the misappropriated products were not those of Leaf and/or Donruss. Burdeen misapprehends the protective scope of the Lanham Act, however. A claim under the Lanham Act "is not exclusive to infringement of registered trademarks; it requires, rather, that potential confusion or deception of the public threaten those economic interests *analogous to* those protected by trademark law." *Raffoler,* 671 F. Supp. at 954 n.4; *see also Clamp-All Corp. v. Cast Iron Soil Pipe Institute,* 3 U.S.P.Q.2d 1018, 1021-23 (D. Mass. 1987), *aff'd,* 851 F.2d 478 (1st Cir. 1988), *cert. denied,* 488 U.S. 1007 (1989); *M. Kramer Mfg. Co. v. Andrews,* 783 F.2d 421 (4th Cir. 1986). Indeed, the Ninth Circuit has stated that violation of the Lanham Act "has moved beyond fraudulent passing off to encompass any kind of commercial competition society deems unfair." *Smith v. Montoro,* 648 F.2d 602, 604 (9th Cir. 1981).

Case: 1:22-cv-05660 Document #: 27-1 Filed: 03/06/23 Page 107 of 131 PageID #:315

**Leaf, Inc. v. Burdeen, Not Reported in F.Supp. (1996)**

1996 WL 89070

In their Complaint, Plaintiffs allege that, by misappropriating and selling trading cards created by Plaintiffs and possessing Plaintiffs' trademarks-- "DONRUSS" and "ELITE DOMINATORS"--, Burdeen has engaged in conduct designed to capitalize on the goodwill associated with Plaintiffs' identifying marks and to mislead consumers as to Burdeen's authorization to deal in Plaintiffs' products. Given that Burdeen's conduct infringes upon rights analogous, if not identical, to those protected by trademark law, Plaintiffs' Complaint states a potentially valid claim for relief under the Lanham Act; and, accordingly, Burdeen's motion to dismiss Plaintiff's Lanham Act claim is denied.[3]

C. *Plaintiffs Conversion Claim Is Legally Sufficient*

Under Illinois law, a claim for conversion must allege: (1) a right in the property; (2) an absolute and unconditional right to the immediate possession of the property; (3) a deprivation of the right by the unauthorized and wrongful assumption of control, dominion, or ownership by a defendant; and (4) a demand for possession of the property. *Lewis v. National City Bank,* 814 F. Supp. 696, 699 (N.D. Ill. 1993), *aff'd,* 23 F.3d 410 (7th Cir. 1994). The essence of an action for conversion is "'the wrongful deprivation of one who has a right to the immediate possession of the object unlawfully held.'" *In re Thebus,* 108 Ill. 2d 255, 483 N.E.2d 1258, 1260 (1985) (*quoting Bender v. Consolidated Mink Ranch, Inc.,* 110 Ill. App. 3d 207, 441 N.E.2d 1315, 1320 (1982)).

Burdeen contends that Plaintiffs' conversion claim falls short of alleging that Burdeen deprived the Plaintiffs of their right to immediate possession, as the Complaint does not make clear whether Burdeen was in possession of the sports trading cards he sold "legally or illegally." This ambiguity is not fatal to Plaintiffs' conversion claim, however. In their Complaint, Plaintiffs allege that, while an employee of Donruss, Burdeen stole various materials belonging to Plaintiffs and sold those materials without Plaintiffs' consent or authorization. As Plaintiffs correctly note, "it is precisely Defendant's denial of Plaintiffs' right to possess their respective property as a result of defendant's theft of such property that Plaintiffs have alleged in this action." Thus, all facts necessary for Leaf and Donruss to state a claim of conversion under Illinois law-- ownership, right to possession, unauthorized assumption of control, and demand for possession--may reasonably be inferred from the face of Plaintiffs' Complaint.[4] Burdeen's motion to dismiss Plaintiffs' conversion claim is therefore denied.[5]

D. *Plaintiffs Fraud Claim Fails To Satisfy The Pleading Requirements of* Fed. R. Civ. P. 9(b)

**\*6** To state a cause of action for fraudulent misrepresentation under Illinois law, a plaintiff must allege that "the defendant made a false representation of a material fact knowing or believing it to be false and doing it for the purpose of inducing the plaintiff to act. The plaintiff must also allege his reasonable belief in and reliance on the statement to his detriment." *Glazewski v. Coronet Insurance Co.,* 108 Ill. 2d 243, 249, 483 N.E.2d 1263, 1266 (1985) (*citing Roda v. Berko,* 401 Ill. 335, 339-40, 81 N.E.2d 912 (1948); *Mother Earth, Ltd. v. Strawberry Camel, Ltd.,* 72 Ill. App. 3d 37, 48, 390 N.E.2d 393 (1979)); *see also, Roman v. Delta Air Lines,* 441 F. Supp. 1160, 1167 (N.D. Ill. 1977); *People ex rel. Peters v. Murphy-Knight,* 248 Ill. App. 3d 382, 387, 618 N.E.2d 459, 463 (1993). Further, Fed. R. Civ. P. 9(b) requires a plaintiff to "state with particularity" the "circumstances constituting the fraud." *See Comwest v. American Operator Services,* 765 F. Supp. 1467, 1470 (C.D. Cal. 1991).

Burdeen maintains that Plaintiffs' fraud claim fails because Plaintiffs do not plead essential elements of an Illinois fraud claim with the degree of specificity required by Rule 9(b). Specifically, Burdeen argues that Plaintiffs do not sufficiently allege that (1) Burdeen made misrepresentations to Plaintiffs concerning his distribution of the sports trading cards at issue; (2) Burdeen intended to defraud Plaintiffs; or (3) Plaintiffs reasonably relied upon Burdeen's misrepresentations. Leaf and Donruss respond that the allegations in their Complaint which suggest that Burdeen implicitly misrepresented Plaintiffs as to the nature of his activities are sufficient to place Burdeen on notice of the fraud claim. Plaintiffs further claim that it would be contrary to the liberal pleading provisions of the Federal Rules to require Plaintiffs to state their fraud claim with greater specificity until they have had the opportunity, through discovery, to obtain information primarily within Burdeen's possession.

Plaintiffs arguments are wholly without merit. Initially, contrary to Plaintiffs' contention, Rule 9(b) specifically requires that Plaintiffs do more than merely describe the basic parameters of a fraudulent scheme; instead, Plaintiffs effectively must allege "who, what, when, where, and how." *DiLeo v. Ernst & Young,* 901 F.2d 624, 627 (7th Cir.), *cert. denied,* 498 U.S. 941 (1990). As previously recognized by this Court, "The purposes of Rule 9(b) are '(1) to inform the defendants of the nature of the claimed wrong and enable them to formulate an effective response and defense; (2) to

Case: 1:22-cv-05660 Document #: 27-1 Filed: 03/06/23 Page 108 of 131 PageID #:316

Leaf, Inc. v. Burdeen, Not Reported in F.Supp. (1996)

1996 WL 89070

eliminate the filing of a conclusory complaint as a pretext for using discovery to uncover wrongs; and (3) to protect defendants from unfounded charges of fraud which may injure their reputations."' *Pucci v. Litwin,* 828 F. Supp. 1285, 1297 (N.D. Ill. 1993) (*quoting Reshal Associates, Inc. v. Long Grove Trading Co.,* 754 F. Supp. 1226, 1230 (N.D. Ill. 1990)).[6]

**\*7** Here, Leaf and Donruss do not plead their fraud claim against Burdeen with the particularity required by Rule 9(b). Initially, Plaintiffs fail to specify the nature or content of Burdeen's purported misrepresentations; their vague allegations concerning Burdeen's alleged implied representations that his dealings with Plaintiffs' products were consistent with Plaintiffs' best interests are insufficient. Moreover, Plaintiffs do not allege that Burdeen's alleged misrepresentations were intended to induce action (or inaction) on the part of Plaintiffs; and Plaintiffs do not assert that they, in fact, reasonably relied upon Burdeen's misrepresentations to their detriment. Leaf's and Donruss's mere assertion of "information and belief," absent the allegation of specific facts upon which that information and belief is founded, is insufficient to satisfy the requirements of Rule 9(b). *Comwest,* 765 F. Supp. at 1470; *In re Worlds of Wonder Securities Litigation,* 694 F. Supp. 1427, 1432-33 (N.D. Cal. 1988).

Thus, Burdeen's motion to dismiss Plaintiffs' fraud claim, as currently pled, is granted. This Court grants Leaf and Donruss leave to amend their fraud claim to add the necessary "who, what, when, where, and how."

D. *Plaintiffs Fail To Plead A Violation Of The Racketeer Influence And Corrupt Organizations Act With The Requisite Particularity*

In the final count of their Complaint, Plaintiffs allege that Burdeen violated the Racketeer Influence and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-1966. Apparently, Plaintiffs assert that Burdeen violated RICO section 1962(c), which prohibits any person employed by an enterprise from engaging in the enterprise's affairs through a pattern of racketeering activity.[7] To state a claim under section 1962(c), a plaintiff must allege the existence of (1) a "person"; (2) an "enterprise"; and, (3) a "pattern of racketeering activity" (i.e. two or more predicate acts). *Dudley Enterprises v. Palmer Corp.,* 822 F. Supp. 496, 501 (N.D. Ill. 1993). The complaint must plead each of these elements separately. *Id.*

Burdeen initially contends that Plaintiffs' RICO claim is deficient because Plaintiffs fail to identify an "enterprise." An "'enterprise is an ongoing 'structure' of persons associated through time, joined in purpose, and organized in a manner amenable to hierarchial or consensual decision-making.'" *Segreti v. Lome,* 747 F. Supp. 484, 486 (N.D. Ill. 1990) (*quoting Jennings v. Emry,* 910 F.2d 1434, 1440 (7th Cir. 1990)). As previously noted, a plaintiff alleging a claim under RICO must identify the "enterprise" through which the defendant allegedly committed the RICO violations. *Segreti,* 747 F. Supp. at 486. This identification must include details concerning the structure of the enterprise. *Id.; Jennings,* 910 F.2d at 1439-1440, 1441. Here, Plaintiffs merely allege that Burdeen was "associated with one or more enterprises affecting interstate commerce" within the meaning of RICO; Plaintiffs do not identify the date of the enterprises' formation, the names of the enterprises' members other than Burdeen, or the details of the enterprises' structures. As in *Segreti,* such a conclusory allegation of the existence of an "enterprise" is insufficient to state a viable claim under RICO. *Id.* at 486-487.[8]

**\*8** Burdeen also maintain that Plaintiffs' RICO claim is deficient because Plaintiffs' fail to pinpoint even a single predicate act (let alone two or more) that would establish a pattern of racketeering activity. In their Complaint, Leaf and Donruss allege only that Burdeen conducted the affairs of the unidentified enterprise through "repeated acts of wire fraud indictable under Section 1343 of Title 18 of the United States Code"; yet, Plaintiffs do not identify, even in general terms, any specific acts of wire fraud. Such cursory and conclusory allegations of racketeering activity are insufficient to state a cognizable RICO claim.

The Seventh Circuit has held that in claiming wire fraud as part of RICO claim, a plaintiff must comply with Federal Rule 9(b) by identifying the time, place, and content of the alleged communications, as well as the parties to the communications. *Jepson, Inc. v. Makita Corp.,* 34 F.3d 1321, 1326 (7th Cir. 1994). Loose references to wire communications in furtherance of a purported scheme to defraud will not do. *Id.* Consequently, because Leaf's an Donruss's RICO claim contains little, if anything, more than the type of loose references to wire fraud prohibited by Rule 9(b), that claim fails to set forth the requisite detail a "pattern of racketeering activity" sufficient to establish a valid claim under RICO.[9]

Thus, on the basis of Plaintiffs' present Complaint, this Court grants Burdeen's motion to dismiss Plaintiffs' RICO claim. Plaintiffs are granted leave to file an amended complaint setting forth the specific facts necessary to state a RICO section 1962(c) claim.

*CONCLUSION*

For the foregoing reasons, this Court grants Burdeen's motion to dismiss as to Plaintiffs' common law fraud and RICO claims, and denies Burdeen's motion to dismiss as to Plaintiffs' copyright infringement, federal and Illinois unfair competition, Illinois deceptive trade practices and conversion claims. Plaintiffs are granted leave to file an amended complaint within two weeks of the issuance of this Memorandum Opinion and Order setting forth the specific facts giving rise to Plaintiffs' fraud and RICO claims.

**All Citations**

Not Reported in F.Supp., 1996 WL 89070

Footnotes

1    It should be noted that Burdeen may elicit further information concerning the property allegedly stolen and/or the applicable copyright registrations through the discovery process.

2    It should be noted that since "likelihood of confusion" is an issue of fact, that issue is one properly left for resolution on summary judgment or at trial. *Raffoler, 671 F. Supp. at 953.* 947, 953-95.

3    Since Burdeen's attacks on Plaintiffs' state law unfair competition and deceptive trade practices claims are identical to his attacks on Plaintiff's Lanham Act claim, Burdeen's motion to dismiss the state law claims is similarly denied.

4    While Burdeen relies upon *National Union Fire Insurance Co. of Pittsburgh, PA v. Wilkins-Lowe & Co., 29 F.3d 337 (7th Cir. 1994),* and *Lewis v. National City Bank, 814 F. Supp. 696, 699 (N.D. Ill. 1993),* in support of its position, these cases are inapposite to the facts of the instant case. In *National Union,* the plaintiff-insurer of a stock brokerage and investment firm brought conversion actions against a bank and others for allegedly assisting the firm's agent in converting funds belonging to the firm's customers. The court held that the plaintiff's Illinois common-law conversion claim failed because there was no interpretation of the facts under which the customers' stolen funds could be considered the plaintiff's property. *National Union, 29 F.3d at 340.* Similarly, in *Lewis,* the court held that the plaintiff-broker had no cause of action under Illinois conversion law against the payee-defendant for the allegedly wrongful repossession of a boat, since the plaintiff had no absolute and unconditional right to the boat once he was in default. *Lewis, 814 F. Supp. at 699.*

Unlike in *National Union* and *Lewis,* no extraordinary circumstances that might undercut Plaintiffs' claim to absolute ownership of the sports trading cards have been identified by Defendant. Burdeen merely states that Plaintiffs' Complaint is unclear as to whether or not Burdeen took possession of the cards wrongfully. This ambiguity is not enough to warrant dismissal of Plaintiffs' conversion claim.

5    Burdeen also attacks Plaintiffs' estimate of the value of the allegedly stolen cards in order to challenge whether Plaintiff meets the minimum amount in controversy to satisfy subject matter jurisdiction based on diversity of citizenship pursuant to *28 U.S.C. § 1332(a).* However, Burdeen assumes that diversity would be the only remaining basis entitling Plaintiffs to subject matter jurisdiction after the dismissal of their claims based on questions of federal law, which, if they stood, would entitle Plaintiffs to federal subject matter jurisdiction under *28 U.S.C. § 1338(a).* Since this Court denies Burdeen's motion to dismiss the Plaintiffs' federal copyright infringement and Lanham Act claims, Plaintiffs' cause of action remains properly before this court on the basis of federal question jurisdiction. Plaintiffs need not also base jurisdiction on diversity of citizenship, and so Burdeen's contention that they fail to meet the minimum amount to satisfy jurisdiction based on diversity is irrelevant.

6    While Plaintiffs cite *Pucci* in support of their contention that a mere description of the outline of a fraudulent scheme is sufficient under *Rule 9(b),* that citation is unavailing. In *Pucci,* this Court held that a general description of alleged fraud might be sufficient in a securities fraud case, since allegations of securities fraud typically center on facts which are in the exclusive possession of the defendant/s. As this is not a securities fraud case, this Court's opinion in *Pucci* is inapposite.

7    This Court reasonably concludes that Plaintiffs intended to allege a violation of RICO subsection 1962(c) because Plaintiffs specifically mention that section in their RICO claim and because that section is the only portion of RICO which seems to provide Plaintiffs with a cause of action based on the facts contained in the Complaint.

8    It is of no avail that, in their memorandum in opposition to Burdeen's motion to dismiss, Plaintiffs identify the enterprise as comprised of Burdeen, Mr. Andrew L. Bergman and Mr. Bergman's corporation, Bergie's Sports Card Dugout, Inc., since the parties to this enterprise are nowhere mentioned in Plaintiffs' Complaint. This Court is restricted to the face of Plaintiffs' complaint in analyzing Burdeen's motion to dismiss.

9    It should be noted that, even if Plaintiffs properly had plead two or more acts of wire fraud relating to Burdeen's alleged misappropriation of Leaf's and Donruss's merchandise, it is not clear that Burden's actions would constitute the type of activity giving rise to a cause of action under RICO. Congress enacted RICO primarily to respond to the infiltration of organized crime into legitimate businesses. *Comwest,* 765 F. Supp. at 1474 (*citing Haroco, Inc. v. American Nat'l Bank & Trust Co. of Chicago,* 747 F.2d 384, 397 (7th Cir. 1984), *aff'd,* 473 U.S. 606 (1985)). Recognizing this fact, the Seventh Circuit has held that, "multiple acts of mail fraud in furtherance of a single episode of fraud involving one victim and relating to one basic transaction cannot constitute the necessary pattern [of racketeering activities to state a cause of action under RICO]." *Jones v. Lampe,* 845 F.2d 755, 757 (7th Cir. 1988).

Further, even if Plaintiffs could show that Burden acted in concert with others to misappropriate and sell Plaintiffs' merchandise, such joint action would unlikely be enough to establish an "enterprise" for RICO purposes. "An enterprise must be 'an entity separate and apart from the pattern of racketeering activity in which it engages.'" *Segreti,* 747 F. Supp. at 486 (*quoting United States v. Turkette,* 452 U.S. 576, 583 (1981)). Burdeen's alleged association with the Bergman's does not appear to have existed independently of the acts (including the acts of wire fraud) which allegedly form the crux of the relevant "pattern of racketeering activity." Thus, while Burdeen's actions form the basis for actions under the law of copyrights, trademarks, and conversion, those actions may not properly form the basis of a RICO claim. *See Dudley,* 822 F. Supp. at 504.

Resolution of these issues is not appropriate at the present time, however. Should Plaintiffs file an amended complaint setting forth the facts underlying their RICO claim in greater detail, this Court will be in a much better position to evaluate the legal propriety of that claim.

---

**End of Document**                                          © 2023 Thomson Reuters. No claim to original U.S. Government Works.

1998 WL 664949
Only the Westlaw citation is currently available.
United States District Court, N.D. Illinois.

O.T. PICKELL BUILDERS, INC.,
an Illinois corporation, Plaintiff,

v.

Slav WITOWSKI, individually and d/b/a
Witow Builders; and Alan Conn, Defendants.

No. 96 C 4233.
|
Sept. 16, 1998.

MEMORANDUM AND ORDER

MANNING, District Court J.

**\*1** This matter is before the court on the motion of plaintiff O.T. Pickell Builders, Inc. ("Pickell") to strike five affirmative defenses and to dismiss one counterclaim filed by defendant Slav Witowski, individually and d/b/a Witow Builders ("Witow"). This is a copyright infringement action brought pursuant to 17 U.S.C. § 101 *et seq.,* arising out of the defendants' alleged copying of Pickell's copyrighted architectural drawings for the construction of a house. For the reasons set forth below, Pickell's motion is granted in part and denied in part.

BACKGROUND

The affirmative defenses and counterclaim are set out in the legal analysis section below. For purposes of background and context, the court will set forth here the pertinent facts as taken from Pickell's complaint.

Pickell is a builder of luxury single-family homes in the north suburban Chicago area. Witow is also a builder of single-family homes in the same area. On or about June 8, 1992, Pickell directed Len Bauer, an architect, to prepare certain architectural drawings for a house to be located in the Village of Long Grove, Illinois. The drawings are commonly referred to as Plan No. 9221 (the "Plans"). On or about March 8, 1995, Bauer transferred to Pickell all rights in the Plans, and, on or about June 20, 1996, Bauer transferred to Pickell any and all

causes of action for infringement of the copyright interest in the Plans.

At a date unknown to Pickell, Witow obtained a copy of the Plans and gave them to Alan Conn, an architect, and allegedly instructed him to copy the design for the purpose of building a substantially similar house in Lake Forest, Illinois. After learning of the allegedly unauthorized use of the Plans, Pickell filed an application for registration of the Plans with the United States Copyright Office on or about June 30, 1995. Pickell's applications subsequently were granted copyright registration.

ANALYSIS

The court must determine whether to strike come or all of the five affirmative defenses and the one counterclaim filed by defendant Witow. With regard to the motion to strike, Rule 12(f) provides:

> Upon motion made by a party before responding to a pleading ... the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.

As this court previously observed in its October 17, 1997 ruling in this case, motions to strike are disfavored and should be denied "unless the language in the pleading has no possible relation to the controversy and is clearly prejudicial." *Cox v. Joe Rizza Ford,* No. 94–C–5688, 1996 WL 65994, \*7 (N.D.Ill. Feb.9, 1996). Courts have held that "generally pleaded defenses" are sufficient and that they are "invulnerable" to a motion to strike as long as they give "fair notice of the nature of the defense." *See Codest Eng'g v. Hyatt Int'l Corp.,* 954 F.Supp. 1224, 1228 (N.D.Ill.1996).

With regard to the motion to dismiss the counterclaim, the parties state correctly that it should be judged under the same standard as a motion to dismiss pursuant to Rule 12(b)(6). *See Carothers v. Starbucks Coffee Co.,* No. 96–C–3849, 1998 WL 325262, \*7 (N.D.Ill. June 11, 1998). In ruling on a motion to dismiss pursuant to Rule 12(b)(6), this court must presume all well-pleaded allegations of the complaint are true. *See Miree v. Dekalb County,* 433 U.S. 25, 27 n. 2, 97 S.Ct. 2490, 53 L.Ed.2d 557 (1977). A motion to dismiss pursuant to 12(b)(6) does not test whether the plaintiff will prevail on the merits, but rather tests whether the plaintiff has properly stated a claim upon which relief can be granted. This court may dismiss a complaint for failure to state a claim under

Rule 12(b)(6) only if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegation." *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984).

**\*2** In this case, Pickell seeks to strike the affirmative defenses because they are "insufficient" and not because they contain any "redundant, immaterial, impertinent, or scandalous matter." As a result, this court will analyze the motion to strike the affirmative defenses under the same basic standard for the motion to dismiss. *See Bobbitt v. Victorian House, Inc.,* 532 F.Supp. 734, 737 (N.D.Ill.1982) ("Any matter permitted to stand as an affirmative defense will be tested under a standard identical to Rule 12(b) (6)"). Because affirmative defenses and counterclaims are pleadings, they are subject to all of the pleadings requirements of the Federal Rules of Civil Procedure. *Codest,* 954 F.Supp. at 1228. Pertinent to this motion, Rule 8(a)(2) requires that such pleadings set forth a "short and plain statement of the claim," and Rule 9(b) requires that in all averments of fraud "the circumstances constituting fraud ... shall be stated with particularity."

Before turning to the specific arguments, this court notes that both parties repeatedly have made arguments concerning factual matters not included in the pleadings and have cited to various factual matters uncovered in discovery in this case. This court declines any implied invitation to treat the motion to dismiss as a motion for summary judgment and therefore will only consider the allegations contained in the pleadings and arguments arising out of them. Given the incomplete development of the factual record and the partial nature of the issues before the court, this type of motion does not present the best mechanism to resolve significant disputed issues. *See, e.g., Van Schouwen v. Connaught Corp.,* 782 F.Supp. 1240, 1245 (N.D.Ill.1991) ("motions to strike can be nothing other than distractions. If a defense is clearly irrelevant, then it will likely never be raised again by the defendant and can be safely ignored. If a defense may be relevant, then there are other contexts in which the sufficiency of the defense can be more thoroughly tested with the benefit of a fuller record—such as on a motion for summary judgment").

*First Affirmative Defense*

In light of the above standards, the court now turns to Witow's first affirmative defense, which states in its entirety as follows:

Defendant Witow's house is based upon elements of architectural designs that are part of the public domain or contributions from Defendant Conn.

Pickell argues that this affirmative defense, even if true, fails to state a claim. Specifically, Pickell argues that, even if Witow's house "is based upon" either designs in the public domain or contributions from architect Conn, Witow still may have copied parts of Witow's copyrighted drawings.

This court agrees with Pickell and finds that Witow's work can still infringe on the copyrighted Plans even if Witow proves he did not copy the Plans in their entirety. The law requires the claimant to show that "constituent elements" of the work were copied. *Feist Publications, Inc. v. Rural Tel. Service Co.,* 499 U.S. 340, 361, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991). Applying this standard, even if Witow established that the drawings for his house contained elements not taken from the Plans, Pickell's claim would still stand if Witow copied original elements of the Plans. In its brief, Witow states that architect Conn's contributions were "not insubstantial" but he does not argue that they were the sole contributions. In other words, the inference is that although Conn added substantial elements, he did not completely and independently create the work. Therefore, this court will strike the first affirmative defense with prejudice.[1]

*Second, Third, and Fourth Affirmative Defenses*

**\*3** The court now turns to the second, third, and fourth affirmative defenses. They will be addressed together because they present essential'y the same issue; namely, the assertion that the copyrighted works are not original and therefore not valid. The three defenses provide in their entirety as follows:

> 2. The PLANS are not original and therefore not copyrightable.

> 3. The portion of Plan No. 9221, the PLANS, which was not derived from other sources, is not original and therefore not copyrightable.

> 4. The portion of Plan No. 9221, the PLANS, which was not derived from other sources does not depict a house, but only insubstantial elements.

These affirmative defenses seek to rebut the validity of the Plans by arguing that they are not original.

1998 WL 664949

The Supreme Court has stated that "the *sine qua non* of copyright is originality." *Feist,* 499 U.S. at 345. To be original, a work must be independently created and must have some minimal degree of creativity. *Mid America Title Co. v. Kirk,* 59 F.3d 719, 721 (7th Cir.1995).[2] Lack of originality is thus a well-recognized defense to a claim of copyright infringement. Here, Witow's three affirmative defenses directly raise that issue. This court finds that they therefore provide fair notice to Pickell of the nature of the defense. This court does not believe that Witow needs to articulate in his affirmative defense the specific ways in which the Plans are not original. In *Mid America Title,* the Seventh Circuit reversed the district court's dismissal of a copyright infringement claim for failure to specifically allege the ways in which the copyrighted work was original. *Id.* at 421–22. The Seventh Circuit stated that "the fact that the parties here have attempted to go beyond the Amended Complaint, in a fashion more suited to a summary judgment motion, demonstrates the practical necessity of dealing with this issue on the basis of something more than the Complaint." *Id.* at 422. That rational applies equally to this case.

Pickell basically concedes that the second, third, and fourth affirmative defenses raise issues of fact more suited to summary judgment when it argues in its brief that the originality requirement is minimal and that the Plans have met that requirement. While Pickell ultimately may be right, that argument is one better made on a motion for summary judgment. As noted above, this court will not engage in an analysis of the facts at this point in this case and will only consider those facts set forth in the pleadings.

Pickell also objects to the second, third, and fourth affirmative defenses to the extent that they attempt to argue that the Plans are derivative works. The court first notes that derivative works incorporate the work of others. *See* 17 U.S.C. § 101. When a work is a derivative work, the copyright protection "extends only to the material contributed by the author of such work, as distinguished from the preexisting material employed in the work, and does not imply any exclusive right in the preexisting material." 17 U.S.C. § 103(b); *Saturday Evening Post Co. v. Rumbleseat Press, Inc.,* 816 F.2d 1191, 1193 (7th Cir.1987). As the Seventh Circuit explained in *Gracen v. Bradford Exchange,* 698 F.2d 300, 305 (7th Cir.1983), "a derivative work must be substantially different from the underlying work to be copyrightable." *Id.* Based on this case law, Witow's affirmative defenses seem fairly straightforward and unobjectionable. They allege the Plans are derivative works, which do not contain sufficient

originality above and beyond the pre-existing, underlying works. This is a defense in many copyright infringement actions.

**\*4** This case contains a slight variation on the typical argument concerning derivative works. In particular, Pickell claims that it owns the copyright to the underlying, pre-existing works and that as a result it is irrelevant how much the Plans differ in originality from the underlying, pre-existing works. In other words, Pickell wishes to argue that the normal requirement that the derivative work "be substantially different" from the underlying work should not apply when the same party owns both works. In support of its argument, Pickell relies heavily on *Richmond Homes Management, Inc. v. Raintree, Inc.,* 862 F.Supp. 1517 (W.D.Va.1994), in which a district court stated that "[w]here the same creator owns both the original and derivative copyrights, the only sound interpretation of the Copyright Act is that the derivative work carries forward all preexisting copyrights in the original work." *Id.* at 1525. This court finds this general argument and the holding of *Richmond Homes* persuasive. In other words, if Pickell indeed can prove that it owns both sets of works, then Witow should not be able to argue that the Plans are invalid by virtue of the fact that they are derivative works. *See generally In re Indep. Service Orgs. Antitrust Litig.,* 964 F.Supp. 1469, 1473 (D. Kansas 1997) ("The copyright statute does not address directly the distinction between preexisting material from other authors and preexisting material from the author of the derivative work. The leading commentator on copyright law and courts which have addressed the issue have stated that an owner of a registered copyright in a derivative work does not have to register separately the preexisting work before bringing an infringement action based on the derivative work").

The problem with Pickell's argument, however, is that the pleadings do not address ownership of the preexisting works. Pickell's argument rests on the assumption that Pickell is the owner of both works, which is a matter not contained in the pleadings. This problem is illustrated in *Richmond Homes.* First, unlike the instant case, the district court in *Richmond Homes* ruled after a bench trial. 862 F.Supp. at 1520. Second, although not mentioned in Pickell's brief, the Fourth Circuit reversed the district court's ruling in *Richmond Homes,* holding that no evidence had been presented that the owners of the two works—the pre-existing, underlying works and the copyrighted derivative works—were the same or a related corporation. *Richmond Homes Management, Inc. v.*

*Raintree, Inc.,* 1995 WL 551274, *3 (4th Cir. Sept.18, 1995) (unpublished disposition).

For these reasons, the court concludes that the second, third, and fourth affirmative defenses provide fair notice to Pickell of the nature of Witow's defense and therefore will not be stricken.

### *Fifth Affirmative Defense and Counterclaim*

This court will address Witow's fifth affirmative defense and counterclaim together because both raise the same claim of fraud on the Copyright Office. The fifth affirmative defense states in its entirety:

> **\*5** Plaintiff perpetrated a fraud on the Copyright Office by failing to notify the Copyright Office that Plan No. 9221, the copyrighted plan at issue, was a derivative work and prepared by joint-authors and therefore should be estopped from prosecuting this action.

The counterclaim consists of six numbered paragraphs and asserts the same allegation as the fifth affirmative defense with little in the way of additional factual detail. Pickell makes a number of arguments in support of its motion to strike and dismiss the affirmative defense and counterclaim.

Pickell first argues that Witow must satisfy the particularity pleading requirements for fraud under Rule 9(b). Neither Pickell nor Witow has cited to any case discussing this particular point. In *Mid America Title Co. v. Kirk,* 991 F.2d 417, 421 (7th Cir.1992), the Seventh Circuit refused to apply the particularity requirement of Rule 9(b) to a plaintiff alleging copyrightable originality in a compilation claim, but it did not specifically rule on whether to apply Rule 9(b) to a claim of fraud on the Copyright Office. Reviewing the relevant case law, this court concludes that Rule 9(b) should apply to a claim of fraud on the Copyright Office. For example, in *Michael Anthony Jewelers, Inc. v. Peacock Jewelry, Inc.,* 795 F.Supp. 639, 649 (S.D.N.Y.1992), a district court applied the requirements of Rule 9(b) to such an allegation of fraud, although the court concluded that a counterclaimant sufficiently complied with the particularity requirements of Rule 9(b) when it attached the application for copyright registration and when it gave some history for the claim that the "representations of originality were false." *See also Thomson Info. Services, Inc. v. Lyons Commercial Data, Inc.,* No. 97–CIV–7716, 1998 WL 193236, *1 (S.D.N.Y. April 21, 1998) (general allegations held not sufficient for

second counterclaim which was "tantamount to a claim of fraud upon the Copyright Office").

In addition to its arguments under Rule 9(b), Pickell makes two other substantive arguments. Before analyzing them, the court will briefly review the fraud on the Copyright Office claim. A claim of fraud on the Copyright Office typically is asserted as a defense in a copyright infringement action. In general, courts have viewed the defense skeptically and have been reluctant to invalidate a copyright on the grounds of fraud on the Copyright Office. *See generally* 2 Melville B. Nimmer & David Nimmer, *Nimmer On Copyright* § 7.20[B] at 7–207 (1997) (surveying fraud on the Copyright Office case law and concluding that "courts generally follow a liberal approach to upholding even erroneous registration applications"); William F. Patry, *Copyright Law and Practice* 1223–24 (1994) (the defense of fraud on the Copyright Office "is rarely meritorious and usually stems from ignorance about the nature of the copyright, the copyright registration process, and the role of courts as the ultimate arbiter of copyrightability"). Although the case law is not entirely clear, most courts have held that, at a minimum, a party alleging fraud on the Copyright Office must allege that the copyright applicant knowingly failed to disclose certain information to the Copyright Office with the intent to defraud the copyright office and that the Copyright Office would have probably denied the copyright application if it had been made aware of the undisclosed information. *See, e.g., Whimsicality, Inc. v. Rubie's Costume Co., Inc.,* 891 F.2d 452, 456 (2d Cir.1989); *Santrayall v. Burrell,* 993 F.Supp. 173, 175–76 (S.D.N.Y.1998).

**\*6** In addition to the two requirements above, many courts also have required that a party alleging fraud on the Copyright Office show that it was prejudiced by the alleged fraud. *See, e.g., S.O.S., Inc. v. Payday, Inc.,* 886 F.2d 1081, 1086 (9th Cir.1989) (rejecting fraud on the Copyright Office defense based on failure to disclose other author's contributions because defendant could not show prejudice); *Beloit Corp. v. C3 Datatec, Inc.,* No. 93–C–447, 1995 WL 674602, *10 (E.D.Wis. Aug.23, 1995), *aff'd,* 78 F.3d 586 (7th Cir.1996) (rejecting fraud on the Copyright Office claim based on failure to disclose other contributors because defendant did not establish "it was prejudiced in any way by [the] misrepresentation"); *Franklin v. Ciroli,* 865 F.Supp. 940, 943 (D.Mass.1994) (rejecting fraud on the Copyright Office defense based on failure to list preexisting works and noting that defendants must show that the failures "(1) are knowing; (2) harmed or prejudiced the defendant in some way or

affected the validity of the copyright; and (3) may have caused the Copyright Office to reject the application")

Based solely on this case law, the court finds that the fifth affirmative defense and counterclaim are deficient. They fail to allege that Pickell knowingly and intentionally omitted the two facts (derivative works and joint authorship); that those non-disclosures, if disclosed, would have resulted in a rejection of the application; and that Witow was prejudiced by the alleged non-disclosures.

In addition to its Rule 9(b) arguments, Pickell argues that neither of the allegedly undisclosed items—that the Plans are derivative works and were prepared by joint authors—are sufficient to support a fraud claim. The court will discuss each argument in turn.

First, with regard to the failure to disclose derivative works, Pickell makes the same argument as discussed above, namely, that it owns both the underlying and derivative works. In other words, Pickell argues that if it had disclosed the derivative nature of the works to the Copyright Office that fact would not have constituted grounds for rejection of the application given the fact that it owned the underlying works. Although this argument has some persuasive force, it suffers from the fact noted above that the pleadings do not address who owns the preexisting works allegedly incorporated into the Plans.

Second, with regard to the alleged failure to disclose the existence of "joint authors," Pickell also argues that this nondisclosure cannot be material under any set of facts. Pickell argues that, even assuming that there is a joint author who was not disclosed on the application to the Copyright Office, nondisclosure could not have been material or have led to the rejection of the application because joint authors hold an undivided interest in work and both may register the work. *See* 17 U.S.C. § 201(a); *Erickson v. Trinity Theatre, Inc.,* 13 F.3d 1061, 1068 (7th Cir.1994). Thus, in contrast to its argument regarding the derivative works issue, Pickell's argument does not require this court to make factual determinations outside the pleadings. The court is inclined to agree with the argument, although there appears to be little

case law on this specific issue. In his response brief, Witow does not cite to any cases or other authority on this point. In fact, Witow seems to drop this part of his fraud claim altogether as he does not even attempt to argue this point. Therefore, this court concludes that Witow's fraud on the Copyright Office affirmative defense and counterclaim may not rely—absent other factual evidence or legal authority—on the fact that there was a joint author that allegedly was not disclosed on the application for copyright registration.

**\*7** In sum, the court will strike the fifth affirmative defense and the counterclaim without prejudice and will grant Witow leave to re-file those claims if he can do so consistent with this ruling and consistent with his obligations under Rule 11. Specifically, Witow must allege a knowing and intentional failure to disclose the existence of the derivative work, must allege that such failure was material and if disclosed would have caused a rejection of the application, and must allege that he was prejudiced by the non-disclosures. In addition, Witow must comply with the particularity pleading requirements of Rule 9(b). Finally, Witow may not rely on the fact that Pickell allegedly failed to disclose on the copyright application the existence of a joint author.

CONCLUSION

As set forth above, this court grants in part and denies in part the motion to strike the affirmative defenses [33–1] and the motion to dismiss the counterclaim [33–2]. The court grants the motion to strike the first affirmative defense with prejudice, denies the motion to strike the second, third, and fourth affirmative defenses, and grants the motion to strike the fifth affirmative defense and to dismiss the counterclaim without prejudice. Defendant Witow is given until October 9, 1998 to re-file—consistent with this ruling and his obligations under Rule 11—the affirmative defense and counterclaim alleging fraud on the Copyright Office.

**All Citations**

Not Reported in F.Supp.2d, 1998 WL 664949

Footnotes

1    Of course, if Witow can prove that architect Conn independently created the accused work, he may be able to assert a
     defense. *See, e.g., Wildlife Express Corp. v. Carol Wright Sales, Inc.,* 18 F.3d 502, 508 (7th Cir.1994).

1998 WL 664949

2    A certificate of registration provides prima facie evidence of copyright validity. *See* 17 U.S.C. § 410(c). This presumption of validity, however, is rebuttable. *See Whimsicality, Inc. v. Rubie's Costume Co., Inc.,* 891 F.2d 452, 455 (2d Cir.1989); *Runstadler Studios, Inc. v. MCM Ltd. Partnership,* 768 F.Supp. 1292, 1295 (N.D.Ill.1991).

---

**End of Document**
© 2023 Thomson Reuters. No claim to original U.S. Government Works.

2021 WL 3077668
Only the Westlaw citation is currently available.
United States District Court, N.D. Illinois, Eastern Division.

Larry HEARD a/k/a "Mr. Fingers"
and Robert Owen, Plaintiffs,

v.

TRAX RECORDS, INC., Precision/Trax
Records, an entity of unknown legal origins,
Rachel Sherman née Rachel Cain p/k/
a Screamin' Rachel, doing business as
Screaming Rachel Cain Music and Trax
Records, and John Does 1-10, Defendants.

Case No. 20-cv-03678
|
Signed 07/21/2021

**Attorneys and Law Firms**

Robert S. Meloni, Pro Hac Vice, Meloni & McCaffrey, a
Professional Corporation, New York, NY, Christopher M.
Heintskill, Levenfeld Pearlstein, Chicago, IL, for Plaintiffs.

Rosanne Ciambrone, Duane Morris LLP, Chicago, IL, for
Defendants Trax Records Inc., Rachael Cain.

Richard Patrick Darke, Duane Morris LLP, Chicago, IL, for
Defendants.

**MEMORANDUM OPINION AND ORDER**

SHARON JOHNSON COLEMAN, United States District
Judge

**\*1** Plaintiffs, Larry Heard and Robert Owens (collectively,
"Plaintiffs"), filed an eight-count Amended Complaint
against defendants, Trax Records, Inc., Precision/Trax
Records, Trax Records, Ltd., Rachel Sherman née Rachel
Cain, professionally known as "Screamin' Rachel", and
John Does 1-10 (collectively, "Defendants"), for fraud on
the copyright office (Count I), willful direct copyright
infringement of the compositions (Count II), contributory
copyright infringement (Count III), breach of contract (Count
IV), breach of the warranty of good faith and fair dealing
(Count V), unjust enrichment (Count VI), to impose a

constructive trust (Count VII), and violations of the Illinois
Consumer Fraud and Deceptive Trade Practice Act ("ICFA")
(Count VIII). Currently before the Court is Defendants'
motion to dismiss Counts I through III and V through VIII
pursuant to Federal Rules of Civil Procedure 12(b)(6) and
9(b). For the reasons outlined below, Defendants' motion to
dismiss [26] is granted in part and denied in part.

**Background**

The following facts are derived from the Amended Complaint
and accepted as true for purposes of this motion. Heard is
a composer, recording artist, record producer, and musician.
Owens is also a composer, recording artist, record producer,
and musician. Heard and Owens are both well-known for their
contributions to Chicago's house music scene and, shortly
after meeting, helped create the house music group "Fingers,
Inc."

In 1984, Heard wrote and recorded *Mystery of Love* and
*Can You Feel It*. Over the next few years, Heard wrote,
recorded, and produced *Washing Machine*. During this time,
Owens wrote *Bring Down the Walls*. In or around 1985, Heard
co-wrote, recorded, and/or produced musical compositions
entitled *Donnie*, *Never No More Lonely* (co-written with
Owens), and *Bye-Bye* (co-written with Owens).[1] According
to Plaintiffs, Heard, Owens, and several other artists
"independently carved out their own musical reputations
as the leaders in the house music movement, and their
fans easily recognized their individual favorites' music and
style." (Amend. Compl. at ¶ 46).

In 1983, Larry Sherman and Jesse Saunders co-founded
the record label Trax Records, alternatively referred to as
Precision/Trax. Cain, also known as "Screamin' Rachel," was
one of the first artists signed by Trax Records. Sometime after
signing to Trax Records, Cain married Sherman and became
his business partner in the Trax Records companies. Plaintiffs
allege that Sherman and/or Cain formed various companies
whose name included the term "Trax," including Trax
Records, Ltd., Trax Records, Inc., Precision/Trax Records,
and Casablanca/Trax Records, Inc. Sherman died on April 8,
2020. By 2007, Trax Records was acquired and subsequently
controlled solely by Cain, who remains in control. According
to Plaintiffs, Cain consolidated the intellectual property
owned or controlled by the various Trax entities. In Cain's
2007 trademark application for "TRAX RECORDS," she
stated that her first use in interstate commerce of the Trax
trademarks in connection with musical sound recordings took

place on August 2, 1985 and August 2, 1988. According to Plaintiffs, Sherman, Cain, and Trax Records took advantaged of unsophisticated music artists and songwriters to build Defendants' music catalogue. Specifically, Plaintiffs allege that Defendants would have music artists and songwriters "sign away their copyrights to their musical works for paltry amounts of money up front and promises of continued royalties throughout the life of the copyrights." (*Id.* at ¶ 65).

**\*2** In December 1986, Heard executed three documents with Precision/Trax Records. Plaintiffs allege that Precision/ Trax Records was not a formal legal entity at the time, but instead, a trademark used by Sherman and/or Cain. The three documents were titled "Assignment of Copyright (Musical Composition)." Plaintiffs allege that Sherman and Cain used the unincorporated entity Precision/Trax Records as an alter ego to run their music empire. Plaintiffs also allege that those three documents "purportedly either assigned Heard's share of the copyrights in four musical compositions to Precision/ Trax and granted Precision/Trax a mechanical license to record and release those musical compositions on phonograph records[.]" (Amend. Compl. at ¶ 70).

The first document is titled "Assignment of Copyright (Musical Composition),"[2] "which purports to assign or transfer to Precision/Trax 100% 'of all publishing rights and all right, title and interest in and to the copyrights' then possessed by Heard in the musical compositions *Can You Feel It*, *Washing Machine* and *Beyond the Clouds.*" (*Id.* at ¶ 71).

Plaintiffs allege that the second document is mistitled "Assignment of Copyright (Musical Composition)" because it does not include any provisions granting copyright ownership interest in any musical compositions or any sound recordings. Plaintiffs, however, allege that the second document "purport[s] to grant Precision/Trax a non-exclusive mechanical license for the musical compositions *Can You Feel It*, *Washing Machine* and *Beyond the Clouds*, solely for the purpose of 'making and selling phonograph records.' " According to Plaintiffs, Precision/Trax agreed to pay Heard "a fixed amount of $3,000 plus 15% 'based on the sale of these records.' " (*Id.* at ¶ 72).

Plaintiffs allege that the third document is also mistitled "Assignment of Copyright (Musical Composition)" because it does not include any provisions granting copyright ownership interest in any musical compositions or any sound recordings. Plaintiffs, however, allege that the third document "purport[s] to grant Precision/Trax a non-exclusive

mechanical license for the musical composition *Bring Down the Walls* solely for the purpose of 'making and selling phonograph records.' " (*Id.* at ¶ 71). According to Plaintiffs, Precision/Trax agreed to pay Heard "a fixed amount of $3,000 plus 15% 'based on the sale of these records.' " *Id.*

In 1986 and 1987, the Register of Copyrights issued registrations to Heard, alone or together with his co-authors, including Owens, for the copyrights in certain Compositions. In 1986 and 1987, the Register of Copyrights also issued Trax Records registrations for the same copyrights in certain Compositions, as well as the Recordings. Plaintiffs allege that they are the original authors of each of the Recordings and the Compositions. Plaintiffs allege that Defendants "at all relevant times acted in concert to improperly gain control and/or ownership of Heard's and Owens' intellectual property rights for their music and exploit that ownership and control to the Defendants' individual and common benefit." The unlawful acts of Defendants included falsely claiming copyright ownership of four recordings in the Form SR copyright applications for the recordings *Can You Feel It*, *Washing Machine*, *Beyond the Clouds*, and *Bring Down the Walls*. Specifically, Defendants asserted in their application that copyright ownership had been transferred to Trax Records via a written copyright assignment agreement.

Plaintiffs allege that the Recordings and the Compositions have been "sold, distributed, or exploited either directly by the Defendants, or any one of them, or licensed by Defendants many times over to licensees throughout the world," (*Id.* at ¶ 87), since 1986. Plaintiffs allege that "some of the Recordings have been materially edited, remixed, and otherwise altered, without Heard's and/or Owen's knowledge or permission, including making derivative versions through the addition of other writers (including Cain)." (*Id.* at ¶ 88). Plaintiffs further allege that Heard nor Owens have ever received a single accounting or payment from Defendants for monies derived from their musical works.

**\*3** Upon information and belief, Plaintiffs allege that Defendants have made millions of dollars in income stemming from the Compositions and Recordings, since 1986. Plaintiffs allege that "Cain made the deals and entered into agreements with third parties for the exploitation of the songs containing the Infringed Compositions[3], knowing she had no right to do so." (*Id.* at ¶ 134). Lastly, Plaintiffs allege that Cain and Sherman were aware that they had no rights in the Infringed Compositions but nonetheless entered into these third-party agreements.

2021 WL 3077668

Based on these facts, Plaintiffs brought eight claims against Defendants: (1) fraud on the copyright office in Count I; (2) willful direct copyright infringement of the compositions in Count II; (3) contributory copyright infringement in Count III; (4) breach of contract in Count IV; (5) breach of the warranty of good faith and fair dealing in Count V; (6) unjust enrichment in Count VI; (7) to impose a constructive trust in Count VII, and (8) violations of the Illinois Consumer Fraud and Deceptive Trade Practice Act in Count VIII. Defendants now move to dismiss Counts I through III and V through VIII.

**Legal Standard**

When considering a Rule 12(b)(6) motion, the court accepts all of the plaintiff's allegations as true and views them "in the light most favorable to the plaintiff." *Lavalais v. Vill. of Melrose Park*, 734 F.3d 629, 632 (7th Cir. 2013). A complaint must contain allegations that "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). The plaintiff does not need to plead particularized facts, but the allegations in the complaint must be more than speculative. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

Additionally, Rule 9(b) requires a party alleging fraud to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). This "ordinarily requires describing the 'who, what, when, where, and how' of the fraud, although the exact level of particularity that is required will necessarily differ based on the facts of the case." *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 615 (7th Cir. 2011) (citation omitted). The particularity requirement of Rule 9(b) is designed to discourage a "sue first, ask questions later" philosophy. *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 441 (7th Cir. 2011).

**Discussion**

*Count I: Fraud on the Copyright Office*

Defendants first argue that Plaintiffs' fraud on the copyright office claim should be dismissed pursuant to Rule 9(b) because it is not plead with particularity and fails to identify the who, what, when, where, and how of the fraud. Fraud on the copyright office claims are subject to the heightened pleading requirements of Rule 9(b). *O.T. Pickell Builders, Inc. v. Witowski*, No. 96 C 4233, 1998 WL 664949, at *5

(N.D. Ill. Sept. 16, 1998) (Manning, J.). To plead fraud on the copyright office, Plaintiffs must allege: "the copyright applicant knowingly failed to disclose certain information to the Copyright Office with the intent to defraud the copyright office and that the Copyright Office would have probably denied the copyright application if it had been made aware of the undisclosed information." *Id.*, 1998 WL 664949, at *5.

Here, Plaintiffs allege that, in or around 1986 and 1987, Defendants knowingly and with the intent to defraud made false statements to the Copyright Office when they submitted their Form SR applications to register *Can You Feel It*, *Washing Machine*, *Beyond the Clouds*, and *Bring Down the Walls*. Plaintiffs allege that Defendants made false representations that Defendants obtained ownership of the copyrights via written contracts signed by Plaintiffs. Plaintiffs further allege that the Copyright Office would not have issued the registration had it known that Defendants did not own the copyrights to the musical compositions. The Court finds that Plaintiffs have sufficiently plead their fraud on the copyright office claim.

**\*4** Defendants further argue that Count I should be dismissed as to Cain because Plaintiffs do not allege any facts to support this claim against Rachael Cain personally. The Court disagrees as the Amended Complaint provides reasonable notice as to each defendant's respective role. *See P & P Mktg., Inc. v. Ditton*, 746 F. Supp. 1354, 1362 (N.D. Ill. 1990) (Rule 9(b) pleading requirements are relaxed "where the defendants are corporate insiders or control the actions of an entity"). "The key question is whether each defendant is given sufficient notice of their respective roles in order that they may answer the complaint." *Id.* (internal citation omitted). Plaintiffs allege that Cain became Sherman's business partner in Trax Records sometime after signing with Trax Records, in 1985. Given that Plaintiffs have alleged that Cain was possibly a corporate insider at the time the copyright registration application was submitted, the Court finds that Plaintiffs' pleading is sufficient.

Next, Defendants argue that Count I should be dismissed because Plaintiffs impermissibly lump the Defendants together. For the reasons explained above, Defendants' argument fails because the Amended Complaint gives each Defendant sufficient notice of their respective roles.

Defendants also argue that Count I should be dismissed because "[c]onclusory assertions ... are not sufficient to allege fraud with particularity." (Defs.' Mem. in Support of Mot. to

Dismiss at 8). Specifically, Defendants argue that Plaintiffs' claim fails because "Plaintiffs' premise the fraud claim on the legal conclusion regarding the proper interpretation of three of four documents identified in the Complaint but not attached." *Id.* The Court, however, concludes that Plaintiffs assertion that the relevant agreements did not provide Defendants ownership in the copyrights is sufficient at the motion to dismiss stage.

Lastly, Defendants argue that Count I should be dismissed because the Plaintiffs failed to attach the various agreements between Heard and Trax Records to the Amended Complaint. The Court rejects this argument as Plaintiffs are not required to attach the agreements in order to establish their claim. *See Arnold v. Janssen Pharm., Inc.*, 215 F.Supp.2d 951, 962 (N.D. Ill. 2002) (Gottschall, J.) ("[F]ederal courts, unlike Illinois state courts, do not require that critical documents be attached to the complaint.").

Defendants also moved to dismiss Count I through III for failure to state a claim under Rule 12(b)(6). As stated early, the Court finds that Plaintiffs have sufficiently plead their fraud on the copyright office claim in Count I at this stage. Moreover, Defendants' motion to dismiss Counts II and III is denied as Defendants only argument to support dismissal is that these counts should be dismissed because Count I fails.

*Count V: Warranty of Good Faith and Fair Dealing*

Defendants move to dismiss Count V arguing that it is not an independent claim. The Court agrees. *See McArdle v. Peoria School Dist. No. 150*, 705 F.3d 751, 755 (7th Cir. 2013) ("The obligation of good faith and fair dealing is used as an aid in construing a contract under Illinois law, but does not create an independent cause of action."). The Court therefore grants Defendants' motion to dismiss this Count V with prejudice.

*Count VI: Unjust Enrichment*

Defendants move to dismiss Count VI for failure to state a claim under Rule 12(b)(6). The Court notes that the first-time unjust enrichment is mentioned is in the prayer for relief contained in the Amended Complaint. The Amended Complaint merely states "Plaintiffs respectfully prays that the Court find in his favor and enter an order and judgment.... For COUNT VI awarding Plaintiffs damages against ALL DEFENDANTS for unjust enrichment in an amount to be proved at trial, but not less than $1,000,000." (Amend. Compl. at ¶ 169(f)). The Court concludes that Plaintiffs'

unjust enrichment claim is not adequately pled. Accordingly, Count VI is dismissed without prejudice.

*Count VII: Constructive Trust*

**\*5** Defendants also move to dismiss Count VII for failure to state a claim under Rule 12(b)(6). "A constructive trust is an equitable remedy, not an independent cause of action." *Elsheikh v. Falcon Holdings, LLC*, No. 10 C 2952, 2010 WL 4790908, at \*3 (N.D. Ill. Nov. 18, 2010) (Guzman, J.) (citing *People ex rel. Daley v. Warren Motors, Inc.*, 136 Ill.App.3d 505, 91 Ill. Dec. 145, 483 N.E.2d 427, 430 (Ill. App. Ct. 1985), *aff'd*, 114 Ill.2d 305, 102 Ill. Dec. 400, 500 N.E.2d 22 (Ill. 1986)). Therefore, the Court dismisses the claim without prejudice to Plaintiffs seeking a constrictive trust as relief if they prevail on their other claims.

*Count VIII: Violations of the ICFA*

Defendants move to dismiss Count VIII arguing that the Plaintiffs fail to satisfy the pleading requirements of Rule 9(b). Plaintiffs assert in their response brief that it need not allege Count VIII with particularity because unfair practices claims do not trigger the heightened pleading standard of Rule 9(b). *See Windy City Metal Fabricators & Supply, Inc. v. CIT Technology Financing Services*, 536 F.3d 663, 670 (7th Cir. 2008). However, a review of the Amended Complaint shows that the allegations related to Count VIII repeatedly refer to the practices of Defendants as false, deceptive, and misleading. Such allegations do not support the conclusion that Plaintiffs are asserting an unfair practices claim unrelated to consumer fraud. Thus, Plaintiffs must allege their claim under ICFA with particularity.

In order to state an ICFA claim based on unfair acts or practices, a plaintiff must allege: 1) a deceptive or unfair act or practice by the defendant; 2) the defendant's intent that the plaintiff rely on the deceptive or unfair practice; 3) that the unfair or deceptive practice occurred during a course of conduct involving trade or commerce; 4) actual damage to the plaintiff; and 5) that the damage was proximately caused by the deception. *David v. Bayview Loan Servicing, LLC*, No. 15-cv-9274, 2016 U.S. Dist. LEXIS 57100 at \*16, 2016 WL 1719805 at \*6 (N.D. Ill. Apr. 29, 2016) (Dow, J.); *Martis v. Pekin Mem'l Hosp. Inc.*, 917 N.E.2d 598, 603, 395 Ill.App.3d 943 (2009).

Here, the Plaintiffs' Amended Complaint alleges that Defendants violated the ICFA by "selling and distributing to the public from their offices in Chicago, Illinois, physical

recordings and digital distribution (through streaming services or otherwise) of the Recordings under the representation that they owned and controlled such works, while using the enormous goodwill and brand identifications of Heard and/or Owens[.]" (Amend. Compl. at ¶ 160). Specifically, Plaintiffs allege that Defendants have "deceived the public, consumers who have purchased those sound recordings, believing that Defendants were the exclusive owners of, and ... had the sole right to license and/or sell, the most popular sound recordings in Trax's purported catalogue, and using the enormous popularity of Heard and Owens among fans of Chicago house music to do so." (*Id.* at ¶ 167). Plaintiffs further allege that Defendants' deceptive acts or practices have proximately caused Plaintiffs' actual damages in an amount to be determined at trial but believed to be more than $1,000,000. The Court concludes that these allegations fall short of alleging with particularity the facts establishing

the "who, what, when, where, and how" of the fraud or misrepresentation. *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990). Accordingly, Count VIII is dismissed without prejudice.[4]

**Conclusion**

**\*6** For the foregoing reasons, the Court grants in part and denies in part Defendants' motion to dismiss without prejudice [26]. Further, the Court grants Plaintiffs leave to file a second amended complaint within 21 days of this order.

**IT IS SO ORDERED.**

**All Citations**

Slip Copy, 2021 WL 3077668

---

Footnotes

1    The musical compositions entitled *Can You Feel It*, *Washing Machine*, *Beyond the Clouds*, *Bring Down the Walls*, *Donnie*, *Distant Planet, and Never No More Lonely* will hereinafter be referred to as the "Compositions." The sound recordings entitled *Can You Feel It*, *Washing Machine*, *Beyond the Clouds*, *Bring Down the Walls*, *Donnie*, *Distant Planet*, and *Never No More Lonely* will hereinafter be referred to as the "Recordings."

2    It is unclear to the Court whether the first document was signed by both Heard and Sherman as the Amended Complaint appears to contain both allegations. *See id.* at ¶¶ 67 and 71.

3    The Compositions entitled *Distant Planet*, *Never No More Lonely*, and *Donnie* will hereinafter be referred to as the Infringed Compositions.

4    The Court notes that the ICFA applies only to a plaintiff that is a consumer or can meet the consumer nexus test. *See Liston v. King.com, Ltd.*, 254 F. Supp. 3d 989, 1005-06 (N.D. Ill. 2017) (Tharp, J.) ("[C]ourts have ... allowed non-consumers—both business and nonbusiness plaintiffs alike—to go forward with ICFA claims where they satisfy the 'consumer nexus' test."). Plaintiffs should keep this in mind if they wish to reallege Count VIII.

---

**End of Document**

© 2023 Thomson Reuters. No claim to original U.S. Government Works.

Lambert v. Pem-America, Inc., Not Reported in F.Supp.2d (2004)

2004 WL 422636, 2004 Copr.L.Dec. P 28,764

2004 WL 422636
United States District Court,
N.D. Illinois, Eastern Division.

Nancy LAMBERT, Plaintiff,
v.
PEM–AMERICA, INC. Defendant.

No. 03 C 3330.
|
Feb. 12, 2004.

**Attorneys and Law Firms**

Henry C. Krasnow, Colby Michael Green, Krasnow,
Saunders, Cornblath, LLP, Chicago, IL, for plaintiff/counter–
defendant.

Brian Ira Tanenbaum, Elgin, IL, for defendant/counter–
claimant.

*MEMORANDUM OPINION AND ORDER*

COAR, J.

**\*1** This case comes before the Court on Defendant
Pem–America Inc.'s ("Pem–America" or "Defendant")
motion to dismiss Plaintiff Nancy Lambert's ("Lambert"
or "Plaintiff") Amended Complaint ("Complaint") as an
improper anticipatory filing, or in the alternative, transfer
this matter to the Southern District of New York. Further, if
this Court does not dismiss or transfer Plaintiff's Complaint,
Defendant moves to dismiss Count II of her Complaint.
Additionally, Plaintiff requests that this Court enjoin the
Defendant from proceeding with its cause of action filed
in the Southern District of New York. For the reasons set
forth below: (1) Defendant's motion to dismiss Lambert's
Complaint as an improper anticipatory filing, or in the
alternative, transfer venue is DENIED; (2) Plaintiff's motion
to enjoin Defendant from proceeding in its cause of action
filed in the Southern District of New York is GRANTED;
however, Defendant is granted leave to file any claims it may
have against the Plaintiff as counterclaims to her Complaint;
and (3) Defendant's motion to dismiss Count II of Plaintiff's
Amended Complaint is GRANTED.

FACTUAL AND PROCEDURAL HISTORY

Lambert is a designer of quilts and other home products.
Pem–America is a New York corporation in the business
of designing home products for distribution and sale in the
United States. From October 1, 1999 to February 15, 2003,
Lambert designed more than 1,000 home decorating products,
including quilts, throw pillows, window treatments, and bed
skirts for Pem–America. On February 15, 2003, Plaintiff
terminated her business relationship with the Defendants.
One of the central disputes between the Parties is whether
Lambert was an independent contractor (Plaintiff's position)
when she designed home products for Pem–America, or
whether she was an actual employee (Defendant's position).
This dispute goes to the heart of the declaratory judgment
relief Plaintiff is seeking, because designating Plaintiff as an
independent contractor will mean she owns the copyrights to
the home products she designed, while designating Lambert
as an employee of Pem–America will mean that it owns the
copyrights to Lambert's designs.

On May 19, 2003, Lambert filed suit in this Court, requesting
declaratory judgment relief and alleging breach of contract.
On May 22, 2003, three days after Plaintiff filed her action
in this Court, Pem–America filed suit against Lambert in the
United States District Court for the Southern District of New
York (captioned *PEM–America v. Nancy Lambert,* Civil No.
03 Cv 3706), requesting declaratory relief related to the home
products Lambert designed, and compensation for furniture in
Lambert's possession-essentially a mirror image of the cause
of action Plaintiff filed in this Court.

DISCUSSION

Because Lambert's cause of action was filed in this Court prior
to Pem–America filing its cause of action in the Southern
District of New York, this Court must decide where these
claims should be heard, and whether the Illinois Action or
the New York Action should proceed. *See Asset Allocation
and Management Co. v. Western Employers Ins. Co.,* 892
F.2d 566, 572 (7th Cir.1989); *MSK Ins., Ltd. v. Employers
Reinsurance Corp.,* 212 F.Supp.2d 266, 267 (S.D.N.Y.2002).
For the reasons set forth below, this Court determines that this
Court should hear the Parties' dispute.

I. Was Lambert's Suit an Improper Anticipatory Filing
**\*2** Defendant contends that Lambert's suit was filed in
anticipation of its suit against her, and should be deemed an
improper anticipatory filing. Pem–America contends that it is
the "natural plaintiff" in this suit, and should have the choice
of forum. Defendants are correct when they assert that, "A

Lambert v. Pem-America, Inc., Not Reported in F.Supp.2d (2004)

2004 WL 422636, 2004 Copr.L.Dec. P 28,764

suit for declaratory judgment aimed solely at wresting the choice of forum from the 'natural' plaintiff will normally be dismissed and the case allowed to proceed in the usual way." *Allendale Mut. Ins. Co. v. Bull Data Systems, Inc.,* 10 F.3d 425, 431 (7th Cir.1993) (*citing Tempco Elec. Heater Corp. v. Omega Engineering, Inc.,* 819 F.2d 746, 747 (7th Cir.1987)). However, Pem–America does not provide sufficient evidence to demonstrate it was the "natural" plaintiff in this dispute, and that Lambert's decision to file suit at the moment she did was a race to the courthouse. Both parties have an interest in determining Lambert's relationship to Pem–America and who rightfully owns copyrights to the products she designed. If a declaratory judgment action, "will clarify and settle the disputed legal relationship and afford relief from the uncertainty and controversy that created the issues, it is usually resolved rather than dismissed." *Nuccor Corp. v. Aceros Y Marquilas de Occidente, S.A. de C.V.,* 28 F.3d 572, 578 (7th Cir.1994) (*citing Tempco,* 819 F.2d at 749). Therefore, this Court will not dismiss Lambert's Complaint as an improper anticipatory filing.

## II. Motion to Transfer Venue

Pem–America contends that even if Lambert's suit is not deemed an improper anticipatory filing, her suit should be transferred to the Southern District of New York, pursuant to 28 U.S.C. § 1404(a) (" § 1404(a)"). Under § 1404(a), a court may transfer a civil action, "for the convenience of the parties and witnesses, in the interest of justice." Transfer under § 1404(a) is appropriate if: (1) venue is proper in both the transferor and transferee court; (2) transfer is for the convenience of parties and witnesses; and (3) transfer is in the interests of justice. *Barnes v. Rollins Dedicated Carriage Services, Inc.,* 976 F.Supp. 767, 768 (N.D.Ill.1997). Whether a transfer is appropriate pursuant to § 1404(a) is left to the sound discretion of the trial court. *Bryant v. ITT Corp.,* 48 F.Supp.2d 829, 832 (N.D.Ill.1999) (*citing Heller Fin., Inc. v. Midwhey Powder Co.,* 883 F.2d 1286, 1293 (7th Cir.1989); *Coffey v. Van Dorn Iron Works,* 796 F.2d 217, 219 (7th Cir.1986)). Pem–America, the moving party, has the burden of showing that, "the transferee forum is clearly more convenient." *Coffey,* 796 F.2d at 219–20. The parties do not dispute that venue is proper in both this Court (the transferor court) and the Southern District of New York (the transferee court). Therefore, this Court will address the second and third prongs of the test to determine whether transfer of this matter to the Southern District of New York is appropriate.

### A. Convenience of Parties and Witnesses

**\*3** The court considers three factors in order to determine if transfer is convenient for parties and witnesses: (1) the plaintiff's choice of forum; (2) the site of material events; (3) the availability of evidence in each forum; and (4) the convenience of the parties litigating in the respective forums. *Barnes,* 976 F.Supp. at 768. Each of these elements will be addressed in turn.

### 1. Plaintiff's Choice of Forum

In general, a plaintiff's choice of forum is entitled to substantial deference, particularly if that choice is also the plaintiff's home forum. *Central States, Southeast and Southwest Area Pension Fund v. Salasnek Fisheries, Inc.,* 977 F.Supp. 888, 890 (N.D.Ill.1997). At all relevant times, Lambert resided in Illinois. Therefore, this Court is Plaintiff's home forum, and her choice of forum will be given substantial deference.

### 2. The Site of Material Events

While engaged in business for Pem–America, Plaintiff worked for Pem–America from her Illinois home, and her Illinois office. Therefore, this factor also weighs in favor of the Plaintiff.

### 3. Availability of Evidence in Each Forum

Defendant argues that because the Plaintiff has submitted much of the relevant evidence in this case to Defendant's New York offices, this favors litigating the case in the Southern District of New York. However, Pem–America must demonstrate that it cannot bring crucial documents to this district. *Arena Football League, Inc. v. Roemer,* 947 F.Supp. 337, 341 (N.D.Ill.1996). Pem–America has not demonstrated that this relevant evidence could not be returned to Illinois in an expeditious and economic manner if the cause of action is litigated here. Because evidence is readily accessible to either Court, this factor weighs in favor of neither party.

### 4. The Convenience of the Parties Litigating in the Respective Forums

When determining the convenience of the forum to the litigants, "the court should consider their respective residences and their ability to bear the expenses of litigating in a particular forum." *Bryant,* 48 F.Supp.2d at 834 (*citing Habitat Wallpaper and Blinds, Inc. v. K.T. Scott Ltd. Partnership,* 807 F.Supp. 470, 474 (N.D.Ill.1992)). Clearly, this Court is more convenient for Lambert, and the Southern

Lambert v. Pem-America, Inc., Not Reported in F.Supp.2d (2004)

2004 WL 422636, 2004 Copr.L.Dec. P 28,764

District of New York is more convenient for Pem–America. Further, transfer is not appropriate if it, "merely transforms an inconvenience for one party into an inconvenience for the other party." *Chemical Waste Management, Inc. v. Sims,* 870 F.Supp. 870, 876 (N.D.Ill.1994) (*citing Sage Products, Inc. v. Devon Industries, Inc.,* 148 F.R.D. 213, 216 (N.D.Ill.1993)). Therefore, convenience of one forum over the other does not weigh in favor of either the Plaintiff or the Defendant.

The Court must also consider the convenience of the Parties' witnesses. "The Court must consider not only the number of witnesses located in each forum but also the nature and importance of their testimony when weighing the convenience of the transfer to potential witnesses." *Central States,* 977 F.Supp. at 891 (*citing Rohde v. Central Railroad of Indiana,* 951 F.Supp. 746, 748 (N.D.Ill.1997)). The moving party, Pem–America, "has the burden of showing who its witnesses are, the nature of their testimony and how important that testimony will be to the case." *Id.*

**\*4** Three out of four of the critical witnesses Pem–America intends to call are employees. The convenience of employee witnesses does not weigh in favor or against transfer, as there is presumption that Pem–America can assure the testimony of these witnesses. *Central States,* 977 F.Supp. at 891 (*citing Roadmaster Corp. v. Nordictrack, Inc.,* Case No. 93 C 1260, 1993 WL 625537 at \*5 (N.D.Ill.1993)). In contrast, the Plaintiff lists five non-party witnesses who reside in Illinois. Therefore, this forum would be more convenient for witnesses, as the majority of non-employee witnesses reside in Illinois.

B. Interests of Justice

Whether a transfer under § 1404(a) will serve the interests of justice, "embraces traditional notions of judicial economy rather than the private interests of the litigants and their witnesses." *Bryant,* 48 F.Supp.2d at 834 (quoting *TIG Ins. Co. v. Brightly Galvanized Prod., Inc.,* 911 F.Supp. 344, 346 (N.D.Ill.1996)). The court makes considerations concerning whether litigants are more likely to receive a speedy trial in one district or the other, if the litigation is related to other litigation in either forum, and in a diversity action, having a federal judge try a case who is familiar with the applicable law. *Coffey,* 796 F.2d at 221. The interests of justice, "may be determinative in a particular case, even if the convenience of the parties and witnesses might call for a different result." *Id.* at 220.

*1. Speed of Trial*

The case management statistics comparing the Northern District of Illinois and the Southern District of New York show that the median time to case disposition is three months shorter in Illinois (5.5 months in Illinois compared to 8.3 months in New York). The median time to trial is three months shorter in New York (26.0 months in Illinois compared to 23.0 months in New York). Therefore, this factor favors neither the Plaintiff or Defendant.

*2. Relation of this Case to Pending Litigation*

In April 2003, Lambert was a non-party witness in an action pending in the Southern District of New York involving Pem–America, captioned *Pem–America, Inc. v. Sunham Home Fashions, LLC,* Case No. 03 Cv 1377 ("Sunham Action"). In that action, currently pending before Judge John F. Keenan of the Southern District of New York, Pem–America alleges infringement of its copyrighted design "Velvet Garden" by Sunham Home Fashions, LLC ("Sunham"). (Pl.Ex. C, p. 2). Pem–America urges that it is the author and owner of the design of "Velvet Garden" because it was created as a "work-for-hire." (*Id.* at 4). Sunham contends that the author and owner of the Velvet Garden design is Lambert and that designs she made for Pem–America were in the capacity of an independent contractor. (*Id.* at 5). During hearings related to Pem–America's motion for a preliminary injunction against Sunham, Judge Keenan took testimony and accepted briefing on the issue of whether Lambert was an employee or independent contractor. Therefore, Defendant maintains, the Southern District of New York is familiar with the facts and legal issues underlying Lambert's cause of action, which should weigh in favor of transfer to the Southern District of New York.

**\*5** Plaintiff argues that in the Sunham Action, Pem–America takes the position that Lambert's status as an employee or independent contractor is irrelevant because Lambert had nothing to do with the creation of the "Velvet Garden" design that is the subject of the Sunham Action. (Pl.Ex. C, pp. 4–5). Pem–America's Vice President of New Product Development, Larry Shapow, testified that he created the "Velvet Garden" design based on work done by Pem–America's China supplier, Best Eastern. (*Id.* at 6). Judge Keenan accepted Pem–America's testimony on that point. (*Id.* at 7). As a consequence, Judge Keenan determined this finding obviated the need to resolve the issue of whether Lambert was an employee of Pem–America or an independent contractor

Lambert v. Pem-America, Inc., Not Reported in F.Supp.2d (2004)

2004 WL 422636, 2004 Copr.L.Dec. P 28,764

(*Id.*) Therefore, Plaintiff urges, the Sunham Action no longer directly addresses Lambert's employment status.

Plaintiff is correct when she asserts that the Sunham Action no longer directly addresses her employment status. However, because testimony was taken on Lambert's employment status, the Southern District of New York does have familiarity with the facts surrounding this issue. Therefore, this factor weighs in the Defendant's favor.

*3. Having a Judge Familiar With Applicable State Law*
The Parties' state law claims involve: (1) a dispute over the ownership of property that was purchased and is located in Illinois; and (2) money Pem–America is alleged to owe Lambert. Both claims are governed by Illinois law. *See American Heavy Trading, Inc. v. General Electric Co.,* No. 93 C 3609, 1996 WL 556742 at * 3 (applying Illinois choice of law rules, holding that, "whether the defendant committed a conversion will be determined by the substantive law of the state where the alleged converter first exercised dominion over the chattel"); *Barry Gilberg, Ltd. v. Craftex Corp., Inc.,* 665 F.Supp. 585, 591 (N.D.Ill.1987) (applying Illinois choice of law, and holding that Illinois substantive law applied to an Illinois sales representative's action for compensation due from a New York manufacturer). Therefore, this factor weighs in Lambert's favor.

After weighing all factors, the Court determines that this case should not be transferred to the Southern District of New York. Plaintiff has chosen her home forum in which to litigate this cause of action. This is the situs of material events leading to this dispute between the Parties. Crucial evidence will be readily accessible to this Court. The majority of non-employee witnesses reside in Illinois. Any state law claims will be governed by Illinois law. Although there is relevant pending litigation in the Southern District of New York, that Court determined that it need not decide whether Lambert was an employee or an independent contractor. Therefore, this Court does not have to concern itself with the possibility of conflicting rulings on Lambert's employment status if it does not transfer the case. This Court determines that the factors it must consider when determining whether to transfer this litigation to the Southern District of New York weigh in favor of allowing the Plaintiff to maintain her cause of action in this forum.

**\*6** As a consequence of this Court's denial of Defendant's motion to transfer venue, Pem–America will be allowed to file its claims against Lambert in this Court as a counterclaim to

Lambert's complaint. Therefore, Defendant is enjoined from proceeding in its suit filed against Lambert in the Southern District of New York. *See Asset Allocation,* 892 F.2d at 572 ("There is overwhelming case authority that the first court has the power ... to enjoin the defendant from bringing a separate suit against the plaintiff in another court, thereby forcing the defendant either to litigate his claim as a counterclaim or abandon it.")

III. Motion to Dismiss Count II of Lambert's Complaint

Because this Court has determined that it is the proper venue to hear the Parties' claims, this Court will rule on Pem–America's motion to dismiss Count II of Lambert's complaint. For the reasons set forth below, Count II of Plaintiff's Amended Complaint is dismissed for failure to state a claim upon which relief can be granted.

A. Legal Standard
In ruling on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court, "must accept all well pleaded allegations as true. In addition, the Court must view these allegations in the light most favorable to the plaintiff." *Gomez v. Illinois State Board of Education,* 811 F.2d 1030, 1039 (7th Cir.1987). A party's claim should only be dismissed if it is clear that no set of facts in support of the claim would entitle the party to relief. *Ledford v. Sullivan,* 105 F.3d 354, 356 (7th Cir.1997) (*quoting Hishon v. King & Spaulding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984)).

B. Analysis
Pem–America contends that Count II of Lambert's amended complaint, alleging Pem–America's fraud on the Copyright office, should be dismissed. Pem–America argues: (1) Lambert's allegation that the copyright office would have rejected the copyright applications at issue is unsustainable as a matter of law; and (2) Lambert has failed to allege fraud with the requisite particularity needed to sustain her claim.

A party alleging fraud on the Copyright Office must allege that the copyright applicant knowingly failed to disclose certain information to the Copyright Office with the intent to defraud that office and that the Copyright Office would have probably denied the application if it had been made aware of the undisclosed information. *O.T. Pickell Buildings, Inc. v. Witowski,* Case No. 96 C 4233, 1998 WL 664949 at \*5 (*citing Whimsicality, Inc. v. Rubie's Costume Co., Inc.,* 891 F.2d 452, 456 (2d Cir.1989); *Santrayall v. Burrell,* 993 F.Supp. 173,

Lambert v. Pem-America, Inc., Not Reported in F.Supp.2d (2004)

2004 WL 422636, 2004 Copr.L.Dec. P 28,764

175–76 (S.D.N.Y.1998)). Many courts also have required a party alleging fraud to demonstrate that it was prejudiced by the alleged fraud. *O.T. Pickell Buildings,* 1998 WL 664949 at * 6.

In Count II of her Complaint, Lambert alleges: (1) Pem–America submitted to the Copyright Office registration forms listing it as the author of the home products Lambert designed, and designating them "works made for hire" even though Pem–America knew that Lambert was the owner of the copyrights, and that she had never transferred ownership to Pem–America; and (2) If Pem–America had not intentionally defrauded the Copyright Office, it would not have issued the fraudulent registrations. Plaintiff's claim fails, as she cannot demonstrate that the Copyright Office would have denied Pem–America's copyright application if it had been made aware of allegedly undisclosed information. Lambert and Pem–America both have competing claims to the copyrights for the home products that Lambert designed. In a situation such as the one before the Court, where the Copyright Office is faced with competing applications, both applications are accepted and ownership becomes an issue to be decided by the Courts. *Cherie Amie, Inc. v. Windstar Apparel Corp.,* 191 F.Supp.2d 343, 351 (S.D.N.Y.2001). *See also Community for Creative Non–Violence v. Reid,* 490 U.S. 730, 109 S.Ct. 2166, 104 L.Ed.2d 811 (1989). Therefore, Lambert can allege no set of facts that demonstrate that had the Copyright Office known that there were competing copyright claims for the products Lambert designed for Pem–America, it would not have issued copyrights to Defendant. Because the Court has determined that Lambert has failed to state a claim upon which relief can be granted in Count II of her Complaint, it need not address whether Lambert has plead fraud with the requisite particularity.

CONCLUSION

**\*7** For the foregoing reasons, Defendant's motion to dismiss Lambert's Complaint as an improper anticipatory filing, or in the alternative, transfer venue is DENIED; (2) Plaintiff's motion to enjoin Defendant from proceeding in its cause of action filed in the Southern District of New York is GRANTED; however, Defendant is granted leave to file any claims it may have against the Plaintiff as counterclaims to her Complaint; and (3) Defendant's motion to dismiss Count II of Plaintiff's Amended Complaint is GRANTED.

**All Citations**

Not Reported in F.Supp.2d, 2004 WL 422636, 2004 Copr.L.Dec. P 28,764

---

End of Document © 2023 Thomson Reuters. No claim to original U.S. Government Works.

Case: 1:22-cv-05660 Document #: 27-1 Filed: 03/06/23 Page 127 of 131 PageID #:335

Mohammed v. WestCare Foundation, Inc., Not Reported in Fed. Supp. (2019)

2019 WL 296563

2019 WL 296563
Only the Westlaw citation is currently available.
United States District Court, N.D. Illinois, Eastern Division.

Ahmed MOHAMMED, Plaintiff,

v.

WESTCARE FOUNDATION, INC.,
WestCare Illinois, Inc., Joe Burnett,
Thomas J. Dart, Cook County Sheriff,
Cook County, Illinois, and, Unknown
Employees at Cook County Jail, Defendants.

No. 17 C 07492
|
Signed 01/23/2019

**Attorneys and Law Firms**

Marc E. Gottreich, Robert Ryan Arroyo, Gottreich Grace & Thompson, Chicago, IL, for Plaintiff.

David J. Buishas, Andrew S. Chestnut, BatesCarey LLP, Jenna Ann McMahon, Cook County States Attorney's Office Daley Ctr., Anthony E. Zecchin, Hale Law LLC, Chicago, IL, for Defendants.

**MEMORANDUM OPINION AND ORDER**

Virginia M. Kendall, United States District Judge

**\*1** Ahmed Mohammed filed this action seeking relief under 42 U.S.C. § 1983, Illinois law, and common law against Defendants WestCare Foundation, Inc., WestCare Illinois, Inc. (collectively "WestCare"), inmate Joe Burnett ("Burnett"), Thomas J. Dart, Cook County Sheriff ("Sheriff Dart"), Cook County, Illinois ("Cook County"), and unknown employees at Cook County Jail ("unknown employees"). (Dkt. 1). Mohammed sought damages against WestCare, Cook County, Sheriff Dart, and the unknown employees alleging violations of his Eight and Fourteenth Amendment Rights (Counts I and II); damages pursuant to common law respondeat superior against WestCare, Cook County, or Sheriff Dart as the principals of the unknown employees (Count III); indemnification claims against Cook County, Sheriff Dart and WestCare pursuant to 745 ILCS § 10/9-102 for actions of the unknown employees (Count IV);

and common law battery against Joe Burnett (Count V). Following motions to dismiss on behalf of the WestCare and Cook County defendants, Counts I and II remained only against the unknown employees, Count IV remained depending on who employed the unknown employees, and Count V remained untouched. (Dkt. 34). WestCare and Cook County now bring a motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) on the grounds that Mohammed's remaining claims are time barred by the statute of limitations. (Dkts. 38 and 41). On November 13, 2018, after WestCare and Cook County filed their motions for judgment on the pleadings, Mohammed filed a motion to extend fact discovery. (Dkt. 48). Defendants' motions for judgment on the pleadings are granted with prejudice. Mohammed's motion to extend fact discovery is denied. On the Court's own motion, the claim against Burnett is dismissed without prejudice consistent with Fed. R. Civ. P. 4(m).

**BACKGROUND**

In reviewing the parties' motions for judgment on the pleadings, the Court accepts the allegations laid out in the complaint as true. *See Harrison v. Deere & Co.,* 533 F.App'x 644, 647 (7th Cir. 2013).

On November 1, 2015, Mohammed was an inmate of the Cook County Department of Corrections. (Dkt. 1 at ¶ 15). At that time, Mohammed was housed in an "open-spaced dormitory style setting" with other inmates, including Joe Burnett. (*Id.* at ¶ 20). Both Mohammed and Burnett were participants of a substance abuse treatment program provided by WestCare. (*Id.* at ¶¶ 15, 17). As of November 1, 2015, Burnett had a history of threatened and actual altercations while in Cook County custody. (*Id.* at ¶ 21). Around 12:00 p.m. on November 1, 2015, Burnett approached Mohammed, who was in his bunk, and struck him "with a closed fist causing [Mohammed] to sustain serious and permanent injuries and disfigurement." (*Id.* at ¶ 22).

Mohammed, through retained counsel, filed his complaint on October 17, 2017, just two weeks prior to the two-year anniversary of the alleged wrongdoing. (Dkt. 1). As mentioned above, the parties engaged in briefing on defendants' motions to dismiss which the Court granted in part and denied in part. (Dkt. 34). The parties filed a joint initial status report on January 5, 2018 in which they represented to the Court that no discovery had been undertaken by either party at that point—nearly three months after the filing of the

2019 WL 296563

complaint. (Dkt. 18). On May 15, 2018, the Court ordered fact discovery to be completed by October 12, 2018. (Dkt. 33). On May 25, 2018, the Court ordered Mohammed to file an amended complaint by June 15, 2018. (Dkt. 34). Mohammed did not file an amended complaint by June 15 and has yet to do so. Cook County and WestCare filed motions for judgment on the pleadings on October 22 and 24, 2018, respectively. (Dkts. 38 and 41). On November 13, 2018, one month after the end of fact discovery, one day before the motions for judgment on the pleadings would be fully briefed, and one day prior to the end of fact discovery status hearing, Mohammed filed a motion for extension of time to complete discovery. (Dkt. 48). At a status hearing on November 14, 2018, Mr. Arroyo, on behalf of Mohammed, indicated in open court that no discovery efforts had been undertaken up to that time.

**STANDARD OF REVIEW**

**\*2** Rule 12(c) allows parties to move for a judgment based on the content of the pleadings after both the complaint and answer have been filed. *See* Fed. R. Civ. P. 12(c); *Hayes v. City of Chicago,* 670 F.3d 810, 813 (7th Cir. 2012). Rule 12(c) motions are reviewed under the same standards that apply to Rule 12(b)(6) motions. *See Richards v. Mitcheff,* 696 F.3d 635, 637-38 (7th Cir. 2012). The Court accepts all well-pleaded allegations in the complaint as true and draws all reasonable inferences in favor of the non-moving party. *Id.* The Court "need not ignore facts set forth in the complaint that undermine the plaintiff's claim or give weight to unsupported conclusions of law." *Buchanan-Moore v. County of Milwaukee,* 570 F.3d 824, 827 (7th Cir. 2009). The Court may consider the pleadings alone, including the complaint, the answer, and any documents attached thereto. *See Northern Ind. Gun & Outdoor Shows, Inc. v. City of South Bend,* 163 F.3d 449, 452 (7th Cir. 1998).

**DISCUSSION**

The statute of limitations for claims brought under 42 U.S.C. § 1983 is governed by the forum state's statute of limitations period for personal injury claims. *Williams v. Lampe,* 399 F.3d 867, 870 (7th Cir. 2005). Illinois law provides a two-year statute of limitations for personal injury claims. 735 Ill. Comp. Stat. 5/13-202. Therefore, the statute of limitations for Mohammed's personal injury claims was up on November 1, 2017. The parties agree that the statute of limitations has run on Mohammed's claims against the

unknown employees named in the complaint. However, the remaining issue is whether the doctrines of equitable tolling or equitable estoppel should apply here as to Mohammed's claims against the unknown employees. Parties are not able to use unknown or "John Doe" defendants to extend the statute of limitations indefinitely. "A plaintiff's lack of knowledge about a defendant's identity is not a 'mistake' within the meaning of Federal Rule of Civil Procedure 15(c) such that the plaintiff could amend his complaint outside the statute of limitations period upon learning the defendant's identity ... Accordingly, once the statute of limitations period expires, [Plaintiff] cannot amend his complaint to substitute a new party in place of 'John Doe.' " *Gomez v. Randle,* 680 F.3d 859, 864, n.1 (7th Cir. 2012) (internal citation omitted). Mohammed bears the burden of determining the proper parties responsible for his injuries and doing so before the statute of limitations runs. *Hall v. Norfolk Southern Ry. Co.,* 469 F.3d 590, 595 (7th Cir. 2006).

**I. Equitable Considerations**

Equitable tolling would allow Mohammed to file a claim against the unknown employees after the expiration of the statute of limitations only if he could demonstrate that he was unable to do so within the statutory time period "despite the exercise of 'reasonable diligence.' " *Hines v. City of Chicago,* 91 F. App'x 501, 502-03 (7th Cir. 2004) (quoting *Wilson v. Battles,* 302 F.3d 745, 748 (7th Cir. 2002) ). While a precise definition of "reasonable diligence" may prove elusive, the Court can turn to prior cases as guideposts in its determination. "[I]t is imperative that the plaintiff also help himself by filing his lawsuit as promptly as possible and then expeditiously engaging in the give-and-take that often is necessary to identify the proper defendant officer from among the hundreds of employees who work at the facility where the plaintiff is incarcerated." *Barwicks v. Dart,* 2016 WL 3418570, at \*6 (N.D. Ill. June 22, 2016). The Illinois Supreme Court provides that "[e]quitable tolling ... may be appropriate if the defendant has actively misled the plaintiff, or if the plaintiff has been prevented from asserting his or her rights in some extraordinary way." *Clay v. Kuhl,* 189 Ill.2d 603, 614 (2000). "Extraordinary barriers include legal disability, an irredeemable lack of information, or situations where the plaintiff could not learn the identity of proper defendants through the exercise of due diligence." *Thede v. Kapsas,* 386 Ill.App.3d 396, 403 (Ill. App. Ct. 2008).

**\*3** For his part, Mohammed argues, without any documentation or support, that the statute of limitations should be equitably tolled because "there has been a FOIA

2019 WL 296563

request, video footage obtained and plaintiff filed several inmate grievance requests which were either not responded to, responded incomplete, or declined to be acknowledged and illegible." (Dkt. 46). Mohammed also cites to Defendants' failure to comply with mandatory initial disclosures as justification for his failure to name the unknown employees. (*Id.*) Defendants' shortcomings fall far short of being classified as an "extraordinary" barrier to Mohammed's ability to comply with the statute of limitations. Plaintiff has failed to cite to any affirmative steps taken by either WestCare or Cook County that have prevented him from obtaining the identity of the unknown employees. None of the required extraordinary barriers exist in this case as Plaintiff has only pointed to a general lack of responsiveness to administrative grievances.

Mohammed bears the burden of prosecuting his case—a burden he has failed to carry nearly every step of the way. *See Hall,* 469 F.3d at 595. The record of the litigation belies Plaintiff's contention that he engaged in "all reasonable efforts[ ] to identify the names of the individual employees responsible for his alleged deprivation of constitutional rights." Mohammed, who was represented by his own lawyer, filed his complaint with just two weeks to spare before the statute of limitations ran. (Dkt. 1). With full knowledge that the clock was ticking, plaintiff's counsel sat idly by as November 1, 2017 came and went. Approximately two and a half months after the complaint was filed, the parties' joint initial status report stated that discovery had still not begun. After a ruling on defendants' motion to dismiss, the Court ordered Mohammed to file an amended complaint by June 15, 2018. Like the statute of limitations deadline before it, this court-imposed deadline came and went without any action by plaintiff's counsel. At the end of fact discovery status hearing, plaintiff's counsel reported that as of November 14, 2018, over three years from the alleged incident and more than a year after the passing of the statute of limitations, the parties had not engaged in any discovery.

Mohammed's actions throughout this litigation fall far short of any definition of "reasonable diligence" that would land him within the safe harbor of equitable tolling. While plaintiff may have engaged in some sort of extrajudicial investigation prior to the filing of his complaint, it is undisputed that no legally significant discovery has taken place since the outset of this case on October 17, 2017. Perhaps the bare minimum and most reasonable course of action would have been for Mohammed to file a motion to compel. *See e.g., Gonzalez v. Obaisi,* 2016 WL 7238814, at *6 (N.D. Ill. Dec.

13, 2016) ("there is no reason to believe that Plaintiff could not have filed a motion to compel ..."); *Dandridge v. Cook Cty.,* 2013 WL 3421834, at *6 (N.D. Ill. July 8, 2013) ("But Plaintiff's argument starts with the faulty premise that FOIA is a discovery tool ... Plaintiff's counsel decision to use FOIA, rather than to file a suit or use multiple other available avenues ... to identify the proper defendants, is not the fault of Defendants."); *see also Terry v. Chicago Police Dep't,* 200 F. Supp. 3d 719, 724-27 (N.D. Ill. Sept. 27, 2016). In order for equitable tolling to be applicable, "the statute of limitations [must have] expired through no fault or lack of diligence" on Mohammed's part. *Singletary v. Cont'l Ill. Nat'l Bank & Trust Co. of Chicago,* 9 F.3d 1236, 1241 (7th Cir. 1993).

The Seventh Circuit has addressed a strikingly similar set of factual circumstances in *Hines v. City of Chicago* and ultimately concluded the claims were barred, while at the same time addressing and disposing of an argument advocating for the application of equitable estoppel:

> The doctrine of equitable tolling allows a plaintiff to file a claim after the statute of limitations has expired, but only if she was unable to do so earlier despite the exercise of "reasonable diligence." *See Wilson v. Battles,* 302 F.3d 745, 748 (7th Cir. 2002); *Singletary v. Cont'l Ill. Nat'l Bank and Trust Co. of Chicago,* 9 F.3d 1236, 1242 (7th Cir. 1993). To show that they diligently tried to find out the names of the officers, the plaintiffs in this case point to a series of requests they made to officials in the Chicago Police Department between December 2000 and July 2001. The officials were unresponsive, either ignoring the plaintiffs' letters, referring them to other department officials, or refusing outright to provide the information. The plaintiffs finally got the information not from the police department but from the City's corporation counsel, in response to a subpoena issued in July 2002. They added the officers' names to the complaint soon thereafter.

> **\*4** The district court dismissed the claim against the officers, concluding that the plaintiffs had not been reasonably diligent. We agree. The method that finally uncovered the officers' names—the use of discovery after the filing of the lawsuit—was available to the plaintiffs long before the statute of limitations expired. *See Donald v. Cook County Sheriff's Dep't,* 95 F.3d 548, 555 & n. 3 (7th Cir. 1996) (discussing the use of discovery to identify unknown defendants) .... [Plaintiffs] have not explained why they failed to take advantage of discovery until July 2002.

Instead, the plaintiffs argue that the City's failure to respond to their earlier requests, and its failure to identify the officers in its answer to the original complaint, should estop it from raising the statute-of-limitations defense on behalf of the officers. We addressed an almost identical argument in *Ashafa v. City of Chicago,* 146 F.3d 459 (7th Cir. 1998). As here, the plaintiff in *Ashafa* wished to bring a § 1983 claim against unknown police officers, but was unable to get the police department to release their names. In rejecting Ashafa's equitable-estoppel argument, we noted that the doctrine "requires that a defendant take active steps" to delay or prevent the filing of a suit, "such as destruction of evidence or promises not to plead the statute of limitations as a defense," *id.* at 462. The plaintiff must also show "that he actually and reasonably relied on the [defendant's] misconduct," *id.* at 463. In this case, the City did nothing more than refuse to release the officers' names. We do not see how this can have induced the plaintiffs to delay filing their suit; if anything, it put the plaintiffs on notice that they needed to file suit promptly in order to obtain the names through discovery.

The plaintiffs failed to take timely advantage of available discovery procedures to find out the names of the police officers. And although the City did not fully cooperate with the plaintiffs' other investigative efforts, it did not take any active dissuasive steps on which the plaintiffs can be said to have relied.

*Hines,* 91 Fed.Appx. at 502-03.

Like the litigants in *Hines* and its referenced cases, Mohammed failed to take advantage of various discovery tools (e.g., a motion to compel) at his disposal for an extended period of time. There is little question that plaintiff comes to this court bearing a significant portion of fault in allowing the statute of limitations to lapse without naming the unknown employees. While Mohammed correctly points out that WestCare and Cook County did not fulfill certain discovery obligations, such an argument is a double-edged sword, as it only serves to highlight his neglect in prosecuting the case he brought. This, paired with a record devoid of reasonable diligence despite extensive opportunity, leads this court to the conclusion that equitable tolling is not appropriate here.

Relatedly, Mohammed argues that WestCare and Cook County should be barred from arguing the statute of limitations has run based on the doctrine of equitable estoppel. "[I]n order to invoke equitable estoppel, a plaintiff must show not only misconduct by the defendants, but also that he actually and reasonably relied on the misconduct." *Ashafa v. City of Chicago,* 146 F.3d 459, 463 (7th Cir. 1998). "In essence, equitable estoppel focuses on whether the defendant acted *affirmatively* to stop or delay the plaintiff from bringing suit within the limitations period." *Smith v. City of Chicago Heights,* 951 F.2d 834, 841 (7th Cir. 1992). "It requires that a defendant take active steps such as destruction of evidence or promises not to plead the statute of limitations as a defense." *Id.* at 462. Additionally, plaintiff must have exercised due diligence for equitable estoppel to apply. *Shropshear v. Corporation Counsel of the City of Chicago,* 275 F.3d 593, 595 (7th Cir. 2001). In *Ashafa,* the Seventh Circuit declined to find that a failure to disclose information amounted to affirmative steps to delay the plaintiff in carrying out his case. *See Ashafa,* at 463-464. Here, Mohammed simply has not identified any affirmative actions that defendants took to delay or prevent him in carrying out his case, much less that he actually relied on such actions. The record is devoid of actions that would rise to the level of destroying evidence or an overt promise not to raise the statute of limitations as a defense. The Court does not excuse the inaction of the Defendants in this matter and in no way did they operate as model parties to this litigation; however, equitable estoppel requires affirmative actions on the part of the defendant. *See Ashafa,* 146 F.3d at 462. Therefore, equitable estoppel is not appropriate in this case. Mohammed did not exhibit the required diligence and the defendants did not engage in active steps to prevent Mohammed in prosecuting his case. At any time, Mohammed could have utilized a variety of discovery tools to obtain the necessary information before the statute of limitations ran.

## II. Plaintiff's Motion to Extend Fact Discovery

**\*5** Plaintiff filed a motion for extension of time to complete fact discovery on November 13, 2018, over a year from the commencement of this litigation and more than a month after the close of fact discovery. The Federal Rules provide: "A schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16. Similarly: "When an act may or must be done within a specified time, the court may, for good cause, extend the time ... (B) on motion made after the time has expired if the party failed to act because of excusable neglect." Fed. R. Civ. P. 6(b); *see Brosted v. Unum Life Ins. Co. of America,* 421 F.3d 459, 464 (7th Cir. 2005). As the Seventh Circuit has cautioned litigants: "[I]gnoring deadlines is the surest way to lose a case. Time limits coordinate and expedite a complex process; they pervade the legal system, starting with the statute of limitations. Extended disregard of time limits (even the non-

2019 WL 296563

jurisdictional kind is ruinous." *Henderson v. Bolanda,* 253 F.3d 928, 933 (7th Cir. 2001). This sentiment rings true here as plaintiff's repeated disregard for deadlines has doomed core components of his case. Mohammed's motion for extension of time offers no explanation for his utter failure to generate any discovery or his significant delay in seeking an extension. Plaintiff has certainly neglected this case, but such neglect is not excusable here where he has shown a complete lack of initiative in pursuing his claims. Plaintiff's counsel's busy schedule is insufficient in overcoming this hurdle. *Keeton v. Morningstar, Inc.,* 667 F.3d 877, 883 (7th Cir. 2012). Because of his dilatory approach to this matter and failure to carry his burden of demonstrating excusable neglect, the motion for extension of time to complete fact discovery is denied.

Finally, the Court addresses a lingering issue regarding the battery claim (Count V) against Burnett. Summons was issued as to Joe Burnett on October 31, 2017 with alias summons issued on March 5, 2018, April 10, 2018, and May 29, 2018. Service was never made on Burnett and he has never filed an appearance on the docket. "If a defendant is not served within 90 days after the complaint is filed, the court--on motion or on its own after notice to the plaintiff--must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period." Fed. R. Civ. P. 4. 90 days from October 17, 2017, the filing of the complaint,

was January 15, 2018. As permitted by the Rules, the Court addresses the issue on its own motion. "[I]f good cause is not shown, the court has a choice between dismissing the suit and giving the plaintiff more time ("direct that service be effected within a specified time") ... Thus the plaintiff who fails to demonstrate good cause for his delay throws himself on the mercy of the district court." *United States v. McLaughlin,* 470 F.3d 698, 700 (7th Cir. 2006) (internal citations omitted). The case now sits one year past the final date to comply with service and Mohammed has apparently made no attempts at serving Burnett in seven months. In the absence of any good cause to excuse such non-compliance, the Court dismisses Count V.

**CONCLUSION**

For the foregoing reasons, WestCare and Cook County's motions for judgment on the pleadings are granted and the remaining counts against WestCare, Cook County, and the unknown employees are dismissed with prejudice. Mohammed's motion to extend fact discovery is denied. Addressing the issue *sua sponte,* the Court dismisses the count against Joe Burnett without prejudice.

**All Citations**

Not Reported in Fed. Supp., 2019 WL 296563

---

**End of Document**

© 2023 Thomson Reuters. No claim to original U.S. Government Works.