UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Vince Lawrence, et al., | ) |
| Plaintiffs, | ) Case No.: 22-cv-05660 |
| v. | ) |
| | ) Dist. Judge John J. Tharp, Jr. |
| Trax Records, Inc., et al., | ) |
| Defendants. | ) Mag. Judge Young B. Kim |
| Irene Mayzels Barnes a/k/a Sandyee Sherman, | ) |
| Cross-Plaintiff, | ) |
| v. | ) |
| Rachael Cain, | ) |
| Cross-Defendant. | ) |

## CROSS-COMPLAINT

Cross-Plaintiff Irene Mayzels Barnes a/k/a Sandyee Sherman ("Cross-Plaintiff"), by and through her attorneys, alleges as follows against Rachael Cain ("Cain" or "Cross-Defendant"):

## INTRODUCTION

1. Trax Records was a record label founded by Larry Sherman in Chicago, Illinois in 1984.

2. Trax Records was one of the main record companies to distribute a new genre of music that originated in Chicago in the 1980's known as "House Music."

3. Larry Sherman created and designed the trademarks associated with Trax Records, and first made use of them in 1984.

4. Larry Sherman and Cross-Defendant Cain married in 1999 and subsequently became business partners.

5. During their marriage, Cain and Larry Sherman formed various companies whose names included the term "Trax", including without limitation, Trax Records Ltd., Trax Records Inc., and Precision/Trax Records.

1

6. In 2002, during their marriage, Cain, Larry Sherman, and the various business entities they owned or controlled, entered into a joint venture with Casablanca Trax Inc. ("Casablanca").

7. The Agreement for the joint venture between Cain, Larry Sherman, and Casablanca (the "CT Joint Venture") provided that Cain and Larry Sherman would find new artists and create new musical recordings, while Casablanca would market the recordings.

8. As part of their Agreement, Cain and Sherman granted the CT Joint Venture the right to use and display and to authorise others to use and display all registered and unregistered brand names, service marks, trademarks, and logos, including without limitation, TRAX RECORDS and TRAX (the "TRAX MARKS"), on an exclusive and unlimited basis.

9. As part of the Agreement between Cain, Larry Sherman, and Casablanca, Casablanca paid Cain and Larry Sherman a $20,000 advance per month, that Casablanca was to recover from the sales of recordings released by the CT Joint Venture.

10. Cain and Larry Sherman also entered into a loan agreement with Casablanca for a $100,000 loan.

11. The loan agreement gave Casablanca a security interest in the Trax Records assets, including the TRAX MARKS. This agreement granted Casablanca the right to take possession of all or any part of the collateral, including the TRAX MARKS in the event that Cain or Larry Sherman breached the loan agreement.

12. On May 26, 2005, Casablanca sued Cain and Larry Sherman, along with the various recording companies Cain and Larry Sherman operated, for breach of their agreements, including the loan agreement.

13. As part of its lawsuit, Casablanca sought to take possession of the Trax Records' assets it had a security interest in, including the TRAX MARKS.

14. In April 2006, judgment was entered against Cain, Larry Sherman, and their various entities, and Casablanca subsequently took possession and ownership of the TRAX MARKS.

15. Larry Sherman and Cain divorced in 2006.

16. In 2007 Cain filed applications with the United States Patent and Trademark Office seeking to register the TRAX MARKS, and in 2008 Cain received registrations for those trademarks.

17. Cain's trademark applications falsely and fraudulently stated that she was the owner of the TRAX MARKS, and that no other person or entity had the right to use the TRAX MARKS.

18. However, at that time, Cain had no ownership interest or right to the TRAX MARKS, as Casablanca had taken ownership of the TRAX MARKS as a result of its litigation against Cain and Larry Sherman.

19. Cain, Larry Sherman, and Casablanca continued to litigate other legal issues until 2012, when Casablanca entered into a Settlement Agreement with Cain and Larry Sherman that included a Non-Recourse Assignment that returned the Trax assets owned by Casablanca to Cain and Larry Sherman, whereby Cain and Larry Sherman received 50/50 ownership of the TRAX MARKS.

20. Larry Sherman subsequently married Cross-Plaintiff Irene Mayzels Barnes a/k/a Sandyee Sherman, and prior to his death in 2019, Larry Sherman transferred his ownership interest in the Trax assets, including the TRAX MARKS, to Cross-Plaintiff.

21. Cain has continued to falsely and fraudulently maintain her registration of the TRAX MARKS, by representing to the United States Patent and Trademark Office in renewal applications that she is the sole owner of the TRAX MARKS, and is the only person or entity with the right to use the TRAX MARKS, despite the fact that she only currently has a 50% ownership interest in them, and despite the fact she had no ownership interest in the TRAX MARKS at the time she initially registered them.

22. Cain's false registration of the TRAX MARKS has damaged Cross-Plaintiff and Cross-Plaintiff seeks recovery of said damages, in amounts to be proven at trial, pursuant to 15 U.S.C. § 1120.

23. Further, Cross-Plaintiff seeks injunctive relief pursuant to 15 U.S.C. § 1119 and the Illinois Uniform Deceptive Trade Practices Act ("UDTPA"), 815 ILCS § 510/1 *et seq.*, and asks that

3

the register of the TRAX MARKS be amended to reflect Cross-Plaintiff as their co-owner or that Cain's current registration of the TRAX MARKS be cancelled.

## PARTIES, JURISDICTION, AND VENUE

24. Cross-Plaintiff Irene Mayzels Barnes a/k/a Sandyee Sherman is a citizen of the State of Illinois and resides in this judicial District.

25. Cross-Defendant Cain is a citizen of the State of Illinois and resides in this judicial District.

26. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, as the action raises a federal question.

27. The Court also has jurisdiction over Cross-Plaintiff's state law claims pursuant to 28 U.S.C. § 1367, because those claims are so related to the federal claim that they form part of the same case or controversy. As fully described in detail herein, Cross-Plaintiff's state and federal claims arise out of a common nucleus of operative fact; and the herein-described facts give rise both to Cross-Plaintiff's federal and state law claims as set forth below.

28. Venue is proper in this District under 28 U.S.C. § 1391 because Cross-Defendant is a citizen of, and regularly does business in, this judicial District and resides here, and/or a substantial part of the events or omissions giving rise to the claims occurred in this District.

## FACTUAL ALLEGATIONS

29. In 1983, Larry Sherman purchased Precision Pressing, a vinyl record pressing plant in Chicago Illinois.

30. In 1984, Larry Sherman founded a record label called "Trax Records" a/k/a "Precision/Trax."

31. Larry Sherman manufactured vinyl records for his "Trax Records" label at his Precision Pressing record pressing plant.

32. Larry Sherman created and designed the "Trax" trademark and first made use of the trademark in 1984.

33. Larry Sherman created the "Trax" trademark without any input from any third party, including Cain, who was not involved with Trax Records or Larry Sherman at the time.

34. In 1987, after Trax Records was firmly established, Cain was signed to Trax Records as an artist.

35. On May 1, 1999 Cain married Larry Sherman and subsequently became Larry Sherman's business partner.

36. In 2002, Cain and Larry Sherman, along with the various business entities they owned or controlled, created and entered into the CT Joint Venture with Casablanca, for purposes of creating, marketing, and selling music under the TRAX brand.

37. CT Joint Venture Agreement gave the CT Joint Venture the right to use and display and to authorise others to use and display all registered and unregistered brand names, service marks, trademarks, and logos, including the TRAX MARKS. *See* Joint Venture Agreement attached hereto as Exhibit A at ¶ 22.

38. As part of the CT Joint Venture Agreement between Casablanca and Cain and Larry Sherman, Casablanca paid Cain and Larry Sherman a $20,000 advance per month, and Casablanca was to recover these payments from the sales of recordings released by the CT Joint Venture. *See id.* at ¶ 6

39. At the same time, Cain and Larry Sherman also entered into a separate loan agreement with Casablanca in the amount of $100,000. *See id.* at ¶ 7

40. The loan agreement gave Casablanca a security interest in the Trax Records assets, including the TRAX MARKS, and granted Casablanca the right to take possession of all or any part of the collateral with power to sell, lease, or dispose of all or any part of the collateral should Cain and/or Larry Sherman breach the loan agreement. *See id.*

41. In March 2004, Casablanca and Cain and Larry Sherman amended the CT Joint Venture Agreement and agreed that if record sales made through the CT Joint Venture did not meet sales targets, Casablanca had the right to recoup all of the advances it made to Cain and Sherman,

which amounted to $367,000 at the time, which was in addition to the outstanding loan balance of $100,000.

42. On May 26, 2005, Casablanca sued Cain and Larry Sherman, along with the various recording companies Cain and Larry Sherman operated, for breach of their agreements, including the loan agreement, and, amongst other things, sought replevin of Trax assets which were collateral on the loan to Cain and Larry Sherman, including the TRAX MARKS.

43. In April 2006, judgment was entered against Cain, Larry Sherman, and their various entities.

44. As part of the judgment entered against Cain and Larry Sherman, the Trax assets, including the TRAX MARKS, were put up for sale in order to satisfy the money judgement entered against Cain and Larry Sherman.

45. On June 28, 2006, Casablanca purchased the TRAX MARKS itself in the aforementioned sale of Trax assets.

46. At approximately the same time, Cain and Larry Sherman divorced.

47. At the time of the divorce, Larry Sherman and Cain claimed to have joint and/or individual interests in various business entities.

48. Pursuant to Larry Sherman and Cain's divorce decree, Larry Sherman was given sole and exclusive possession and ownership, free from any interest of Cain, in Universal Internet Connect, and Mark-It-Sold.

49. Cain received sole and exclusive possession and ownership, free from any interest of Larry Sherman, in Scream Diva and Phuture Trax.

50. Cain and Larry Sherman remained joint owners of: Trax Records, Sanlar Publishing, Trax Continental Ltd, Phat Trax, R&L Records, Inc, R& Publishing, R+L Publishing, Demand Records, Mad Records, Hot Mix 5 Records, and Precision Record Labs Ltd.

51. The Cook County divorce decree further ordered that each party shall be entitled to one-half of the assets/equity in said jointly owned entities, and each shall be liable for one-half of

6

any debts/liabilities incurred thereon, as both Cain and Sherman acknowledged that a Judgment in favour of Casablanca had been entered against each of these entities.

52. Notwithstanding that fact that Casablanca owned the TRAX MARKS since at least June 28, 2006, that the CT Joint Venture had been granted the right to use the TRAX MARKS, and any remaining Trax Records assets not owned by Casablanca were split equally between Larry Sherman and Cain in their divorce, Cain went on to file federal trademark applications for the TRAX MARKS and falsely and fraudulently stated that she solely owned the TRAX MARKS and that no other person, firm, or corporation had the right to use the TRAX MARKS. *See* Trademark Applications attached hereto as Exhibits B and C

53. On August 20, 2007 Cain filed federal trademark application Serial Number 77258902 for TRAX , and on October 28, 2007 Cain filed federal trademark application Serial Number 77315356 for TRAX RECORDS (the "Cain Trademark Applications"). *See id.*

54. On July 15, 2008, the Cain Trademark Applications matured into federal trademark Registration Numbers 3466156 and 3466459 respectively (the "Cain Trademark Registrations"). *See* Trademark Registrations attached hereto as Exhibits D and E.

55. While Cain was submitting the Cain Trademark Applications and obtaining the Cain Trademark Registrations, Cain, Larry Sherman, and Casablanca continued to litigate a portion of their legal dispute, concerning the money judgment entered against Cain and Larry Sherman, on appeal and subsequent remand to the trial court.

56. However, the sale of the TRAX MARKS to Casablanca and Casablanca's ownership of the TRAX MARKS, at the time of the Cain Trademark Applications, was not in dispute.

57. Cain and Larry Sherman's legal disputes with Casablanca finally came to a conclusion on November 19, 2012, when the parties entered into a Non-Recourse Assignment and a Settlement Agreement with Casablanca whereby all of the Trax assets owned by Casablanca, including the TRAX MARKS, were assigned equally and individually to both Larry Sherman and Cain. *See* Non-Recourse Assignment attached hereto as Exhibit F.

58. Further, pursuant to the terms of Cain and Larry Sherman's divorce, Cain and Sherman would each have of 50% ownership interest in any Trax assets, including the TRAX MARKS.

59. Thus, at all relevant times, the TRAX MARKS were either wholly owned by Casablanca, or jointly owned by Larry Sherman and Cain.

60. Cain never has had 100% ownership of the TRAX MARKS.

61. Larry Sherman married Cross-Plaintiff Irene Mayzels Barnes a/k/a Sandyee Sherman on November 4, 2011

62. Larry Sherman transferred his ownership interest in the TRAX MARKS to Cross-Plaintiff in 2019, before he passed away.

63. Cain continues to falsely claim she solely owns the TRAX MARKS, when the TRAX MARKS are actually currently owned 50% by Cain and 50% by Cross-Plaintiff, including by recently falsely declaring herself the sole owner of the TRAX MARKS in her application to renew them. *See* Trademark Renewals attached hereto as Exhibits G and H.

## COUNT I
## VIOLATION OF THE LANHAM ACT
## 15 U.S.C. § 1120

64. Cross-Plaintiff repeats and realleges the preceding paragraphs as if fully alleged herein.

65. In each of the Cain Trademark Applications, Cain knowingly submitted materially false information by declaring that she was the owner of the TRAX MARKS, when she in fact had no ownership interest in the TRAX MARKS at the time, as set forth above. *See* Exhibits B and C.

66. Alternatively, in each of the Cain Trademark Applications, Cain knowingly submitted materially false information by declaring that she was the sole owner of the TRAX MARKS, when she in fact had only a 50% ownership interest in the TRAX MARKS at the time, as set forth above. *Id.*

8

67. In each of the Cain Trademark Applications, Cain knowingly submitted materially false information by declaring that no other person, firm, corporation, or association has the right to use the marks in commerce, when at all relevant times another party had the right to use the TRAX MARKS, as set forth above. *Id.*

68. In each of the Cain Trademark Renewals, Cain knowingly submitted materially false information by declaring that she was the sole owner of the TRAX MARKS, when she in fact had only a 50% ownership interest in the TRAX MARKS at the time, as set forth above. *See* Exhibits G and H.

69. Cain's conduct allowed her to procure registration in the Patent and Trademark Office of a mark by a false or fraudulent declaration or representation.

70. Cain's false and fraudulent registration of the TRAX MARKS is wilful, as at all times Cain was aware she did not have ownership and/or sole ownership of the TRAX MARKS.

71. Cain's false and fraudulent registration of the TRAX MARKS is wilful, as at all times Cain was aware that another party had the right to use the TRAX MARKS in commerce.

72. Cain and Larry Sherman separately continued to use the TRAX MARKS, and neither Larry Sherman nor Cross-Plaintiff abandoned either of the TRAX MARKS.

73. Cross-Plaintiff, as the current co-owner of the TRAX MARKS, has been damaged by Cain's false and improper registration of the TRAX MARKS, which has improperly prevented Cross-Plaintiff from appropriately being able to use the TRAX MARKS.

74. As a result of Cain's conduct, Cross-Plaintiff is entitled to damages in an amount to be proven at trial.

**COUNT II**
**INJUNCTIVE RELIEF PURSUANT TO 15 U.S.C. § 1119 OF THE LANHAM ACT**

75. Cross-Plaintiff repeats and realleges the preceding paragraphs as if fully alleged herein.

76. The Lanham Act provides that "[i]n any action involving a registered mark the court may determine the right to registration, order the cancelation of registrations, in whole or in part, restore canceled registrations, and otherwise rectify the register with respect to the registrations of any party to the action." 15 U.S.C. § 1119.

77. As set forth above, this action involves a registered mark.

78. As set forth above, Cain did not have the right to register or renew the TRAX MARKS in the manner in which she did, which included declaring herself the sole owner of the TRAX MARKS, and declaring that no other person or entity had the rights to use the TRAX MARKS in commerce.

79. As a result, Cross-Plaintiff is entitled to an order rectifying the register to include Cross-Plaintiff as co-owner of the TRAX MARKS or cancelling Cain's registrations.

80. Cross-Plaintiff's legal interests are adverse to Cain's. There is a substantial controversy between Cross-Plaintiff and Cain warranting equitable relief so that Cross-Plaintiff may obtain the protections that Lanham Act entitles her to receive.

81. For the reasons set forth above, Cross-Plaintiff is likely to succeed on the merits of her claims.

82. The gravity of the harm to Cross-Plaintiff, absent equitable relief, outweighs any harm to Cain if such relief is granted.

83. As a result, Cross-Plaintiff requests commensurate injunctive relief.

## COUNT III
## VIOLATION OF THE ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT
## 815 ILCS § 510/1 *et seq.*

84. Cross-Plaintiff repeats and realleges the preceding paragraphs as if fully alleged herein.

85. For the reasons set forth above, Cain has engaged in deceptive trade practice in the course of her business.

86. By falsely and fraudulently registering the TRAX MARKS, and improperly asserting that only Cain has the right to use the TRAX MARKS, Cain has created a likelihood of confusion or misunderstanding in the marketplace regarding which goods and services are associated or affiliated with Trax Records.

87. By falsely and fraudulently registering the TRAX MARKS, and improperly asserting that only Cain has the right to use the TRAX MARKS, Cain causes likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of Trax goods or services sold, marketed, and/or provided by Cross-Plaintiff.

88. By falsely and fraudulently registering the TRAX MARKS, and improperly asserting that only Cain has the right to use the TRAX MARKS, Cain causes likelihood of confusion or of misunderstanding in the marketplace as to affiliation, connection, or association of Trax goods or services sold, marketed, and/or provided by Cross-Plaintiff, as individuals may assume that such goods or services are associated with Cain, when they are not.

89. Cain's conduct violates the UDTPA.

90. Cross-Plaintiff is likely to be damaged by Cain's deceptive trade practices and is entitled to injunctive relief.

91. Cain's conduct is wilful as Cain knew she did not have the right to register the TRAX MARKS as set forth above.

92. As a result, Cross-Plaintiff is entitled to an order rectifying the trademark register to include Cross-Plaintiff as co-owner of the TRAX MARKS or cancelling Cain's registrations.

93. Cross-Plaintiff's legal interests are adverse to Cain's. There is a substantial controversy between Cross-Plaintiff and Cain warranting equitable relief.

94. For the reasons set forth above, Cross-Plaintiff is likely to succeed on the merits of her claims.

95. The gravity of the harm to Cross-Plaintiff, absent equitable relief, outweighs any harm to Cain if such relief is granted.

96. As a result, Cross-Plaintiff requests commensurate injunctive relief and attorneys' fees and costs as provided for by the UDTPA.

**PRAYER FOR RELIEF**

WHEREFORE, Cross-Plaintiff respectfully prays that the Court grant the following relief:

a. Find that Cross-Defendant violated and wilfully violated the Lanham Act, and enter judgment accordingly;

b. Find that Cross-Defendant violated and wilfully violated the UDTPA, and enter judgment accordingly;

c. As to Counts II and III, provide commensurate injunctive relief for Cross-Plaintiff, as set forth above;

d. Award all damages available under Lanham Act;

e. Award reasonable attorneys' fees and costs to Cross-Plaintiff's counsel as allowed by applicable law and/or statute; and

f. Award such other and further relief as the Court deems just and appropriate.

Respectfully submitted,

IRENE MAYZELS BARNES a/k/a
SANDYEE SHERMAN

By: /s/Adam E. Urbanczyk
One of Cross-Plaintiff's Attorneys
Adam E. Urbanczyk
Brian Swift
AU LLC
564 W. Randolph St. 2nd Floor
Chicago, IL 60661
(312) 715-7312

Mark A. Bulgarelli
Ilan Chorowsky
PROGRESSIVE LAW GROUP LLC
1570 Oak Avenue, Suite 103
Evanston, IL 60201
(312) 787-2717

*Counsel for Cross-Plaintiff*

12

**Certificate of Service**

I hereby certify that a true and correct copy of Defendants' Cross Complaint will be sent via ECF to the attorneys of record at the e-mail addresses on file with the Court, as well as to Cross-Defendant Rachael Cain via her counsel Scott Jerome Spivey at his registered ECF email address.

By: /s/Adam E. Urbanczyk
One of Cross-Plaintiff's Attorneys
Adam E. Urbanczyk
AU LLC
564 W. Randolph St. 2nd Floor
Chicago, IL 60661
(312) 715-7312
adamu@au-llc.com
