**IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF ILLINOIS EASTERN
DIVISION**

| | | |
|---|---|---|
| VINCE LAWRENCE, JESSE | ) | |
| SAUNDERS, K'ALEXI SHELBY, | ) | |
| MARIO DIAZ, WAYNE WILLIAMS, | ) | |
| JIM MARCUS, JOHNNY FIASCO | ) | |
| MAURICE JOSHUA, LIDELL | ) | |
| TOWNSELL, JAMIE PRINCIPLE, | ) | |
| YVONNE GAGE, RALPHIE | ) | |
| ROSARIO, LEE HAGGARD, | ) | |
| RICK BARNES, MARK PANICK, | ) | |
| DEAN ANDERSON, | ) | |
| MARSHALL JEFFERSON, MERWYN | ) | |
| SANDERS, CURTIS McCLAIN, | ) | |
| NEMIAH C. MITCHELL, DUANE | ) | |
| BUFORD, STEVE POINDEXTER, | ) | |
| HARRY DENNIS, ARNOLD | ) | |
| HENNINGS, ESTATE OF SIDNEY | ) | |
| WINTERS, and NATHANIEL JONES | ) | |
| Plaintiffs, | ) | |
| | ) | |
| V | ) | Case No. 1:22 cv 5660 |
| | ) | |
| TRAX RECORDS, INC., | ) | |
| PRECISION/TRAX RECORDS, | ) | |
| an entity of unknown legal origins, | ) | |
| TRAX RECORDS LTD, a Louisiana | ) | |
| Corporation and a dissolved Illinois | ) | |
| corporation, RACHAEL SHERMAN | ) | |
| a/k/a RACHAEL CAIN p/k/a | ) | |
| SCREAMIN' RACHAEL, doing | ) | |
| business as SCREAMING | ) | |
| RACHAEL CAIN MUSIC and | ) | |
| TRAX RECORDS, SANDYEE | ) | |
| SHERMAN and THE SHERMAN | ) | |
| ESTATE. | ) | |
| | ) | |
| Defendants. | ) | |

**FIRST AMENDED COMPLAINT**

Plaintiffs, Vince Lawrence, Jesse Saunders, K'Alexi Shelby, Wayne Williams,

Mario Diaz, Wayne Williams, Jim Marcus, Johnny Fiasco, Maurice Joshua, Lidell Townsell, Yvonne Gage, Ralphie Rosario, Lee Haggard, Rick Barnes, Mark Panick, Dean Anderson, Marshall Jefferson, Merwyn Sanders, Curtis McClain, Nemiah C. Mitchell, Steve Poindexter, Duane Buford, Harry Dennis, Arnold Hennings, The Estate of Sidney Winters , and Nathaniel Jones ("Plaintiffs" or "Artists"), by their attorneys, Sean Mulroney & Associates, and Plaintiff Jamie Principle, by and through his attorneys, Duff Law PLLC, hereby submit their Complaint against defendants Trax Records, Inc., Precision/Trax Records, Trax Records Ltd., a dissolved Illinois corporation, Trax Records Ltd., a Louisiana corporation, Rachael Sherman a/k/a Rachael Cain p/k/a Screamin' Rachael d/b/a Screaming Rachael, Cain Music, Trax Records, Sandyee Sherman, and The Sherman Estate (collectively, "Defendants"), and allege as follows:

## <u>PRELIMINARY</u> <u>STATEMENT</u>

1.   There are movements in all things artistic that change the trajectory of the genre from where it began.  Such energy is evident throughout the history of Chicago music.  Chicago is famous for its innovative blues and jazz.  Both are the product of the "great migration" of blacks from the South heading to the industrial Midwest looking for steady work and a better life.  With them they brought the Delta Blues performed acoustically.  This music from the Mississippi Delta merged in Chicago with electrical instruments creating the "boogie-Woogie" style which created may of the elements that formed the basis of "rock and roll."

2.   Jazz came by way of New Orleans and its "Dixie Land" style.  It evolved in Chicago and became "Swing."

3.   Chicago is also famous for "House Music."  House Music was developed in the houses,

garages and clubs of Chicago and was initially recorded for local club-goers in the

"underground" club scenes, rather than for widespread commercial release. As a result, the

recordings were much more conceptual, and longer than the music usually played on commercial

radio stations. House musicians used new technology in innovative and unique ways of using

analog synthesizers and sequencers to create and arrange the electronic elements and samples on

their tracks, combining live traditional instruments and percussion and soulful vocals with

preprogrammed electronic synthesizers and "beat-boxes".  House, perhaps more than any other

form of black music, has birthed many offshoots and spread its sound far and wide. The

prevalence of four on the floor beats in modern dance music is largely derived from House

Musoc. House Music has influenced, in some capacity, Garage House, Eurodance, Jungle

Music, Electropop, Dubstep, Acid House, EDM and even certain elements of Alternative

Rock and Hip Hop.

4.   The one vehicle that spread House Music out from the underground clubs and parties

to the public was Trax Records.   In 1984, Trax Records was co-founded by Vince Lawrence,

Jesse Saunders and Larry Sherman.  Vince Lawrence approached Larry Sherman with the

name and logo for Trax Records.  He had been a customer of Sherman's Precision Record

Labs and presented the idea of partnering as a way to release more songs than the two

teenagers could afford to release on their own. Lawrence established the distribution network

for the brand, delivering records to both to record shops for selling and clubs for promoting.

He created a routing method that looked like a citywide paper route, allowing him to travel

from record shop to record shop like he had learned delivering the Chicago Tribune at age 14.

When he arrived at each store, he had a memorized "script" much like the ones he read over

the phone selling magazine subscriptions for Time Life at age 16. Vince Lawrence also acted as the first A&R person for the label (A&R representatives search out and acquire artists for the label) recruiting friends like Marshall Jefferson, Byron Stingly and others and was himself a contributing artist. Jesse Saunders wrote "On and On," the first House record ever to be released on Trax Records to the public using is alter ego, "Lr Noiz.". Earlier that year, Vince Lawrence had helped Jesse Saunders launch his own label, "Jes Say Records." This record label was named by Vince Lawrence as well.

5.  Sherman was the owner of a record pressing facility that prior to working with Vince Lawrence and Jesse Saunders made mostly 78 rpm records for Wurlitzer jukeboxes. The partnership was meant to be a classic "win-win." Vince Lawrence and Jesse Saunders got to press/release as many records as they could sell, and Sherman got a new revenue stream. The venture was so successful initially that Sherman used the profits to fund the expansion of his pressing facility increasing from 2 presses to 8. Vince Lawrence became a conduit connecting all of his friends and inspiring many other DJs and party promoters to create songs and press them at Sherman's plant. Those who had good material but could not afford to pay to have the records pressed, had their material released on Trax Records by Sherman with the promise of receiving a fair share of the revenue.

6.  House Music was born in the 1980s from the creative impulses roaring through the underground dance scene in Chicago. Before Vince Lawrence introduced the young artists to the record making process that he leaned from his father (who had a small label), these mostly black teens were already entrepreneurs, throwing teen dances, promoting themselves as fashion designers, artists, entertainers and DJs with mobile sound systems. Starting with Vince Lawrence and Jesse Saunders, those kids combined emerging technology with

traditional dance music in a way never before heard. They composed and recorded their own songs, went to Sherman to have copies of their recordings made into single records, then ran to the clubs to get their favorite DJs (mostly school mates) to play their tracks. Because they played those tracks at every party in their teenage world, some of the songs became popular city wide. Unsatisfied with only selling records at the teen dances, Jesse Saunders and Vince Lawrence found better luck at the stores they would visit to purchase new records for their DJ gigs and they would sell them one-by-one from suitcases and out of car trunks. This is how the Chicago House Music movement began.

7. One day, a store owner, realizing these indie tracks were sought after, ordered 1000 copies. After that Vince Lawrence found every store in town, quickly selling more units than the kids could afford to press. It was Trax Records as his concept that would solve that.

8. To get the records made ("pressed") by Sherman, they paid him for each record. He became curious how these two teens (Vince Lawrence and Jesse Saunders) were coming back week after week to purchase more. That's when Vince Lawrence made the offer to partner with Sherman creating a new entity (separate from Jes Say Records and Sherman's Precision Records). To convince Sherman of the viability of his proposal, Vince Lawrence dragged Sherman from his home in Hinsdale, Illinois, at 2am to show him the new songs in action while Jesse Saunders played them to 1500 screaming teens at a weekly party held at what was formerly a furniture store. "You press em, we will promote and sell em, splitting the profits: deal?" Sherman agreed. Vince Lawrence came up with the name TRAX RECORDS and created the now iconic logo, namely, **TRAX**. It is this creation that is one of Vince Lawrence's proudest achievements, one that he expected to be equated with for the rest of his career. As long as Sherman was alive, knowing that the Trax Marks were the result of Vince

Lawrence's work and creativity, Sherman never attempted to trademark Vince Lawrence's

TRAX RECORDS or **TRAX** (the "Trax Marks"). Sherman never had any eqitable interest or

ownership in the Trax Marks and those marks were never transferred from Vince Lawrence to

Sherman..

9.  Ultimately, everyone in the teen scene wanted to make their own record and many of

these records found their way into the Trax Records catalogue. Later Sherman and

subsequently, Rachael Cain claimed publishing rights to that material, often without the artists

knowledge or authority. Sherman and Cain also "Bootlegged or Counterfeited songs and

records by simply renaming them or labeling them under Sherman's or Cains names or

entities, essentially selling them "out the back door."

10. Vince Lawrence and Jesse Saunders continued to bring artists, songs, and new retailers

into the Trax fold.  Sherman continued promising fame and fortune. There was always the

question of when they will make money; but the money never came as promised. Most of the

revenue went to build the new record plant and to support Sherman. Vince Lawrence and

Jesse Saunders never received compensation for their music or their work.

11. Most of the Artists never authorized anyone to exploit their rights in the first place.

None of those Artists ever received any accounting for the sale of those records and none of

those Artists have received compensation or royalties for their records from Trax Records. All

the Plaintiffs in this case still have their songs included in the Trax Records catalogue without

their consent.

## PARTIES

12. Plaintiff Vince Lawrence is a resident of the State of Illinois.

13. Plaintiff Jesse Saunders is a resident of the State of Nevada.

14. Plaintiff K'Alexi Shelby is a resident of the State of Illinois.

15. Plaintiff Mario Diaz is a resident of the State of Illinois.

16. Wayne Williams is a resident of the State of Illinois.

17. Plaintiff Jim Marcus is a resident of the State of Illinois.

18. Plaintiff Johnny Fiasco is a resident of Illinois.

19. Plaintiff Maurice Joshua is a resident f the State of Illinois.

20. Plaintiff Lidell Townsell is a resident of the State of Illinois.

21. Plaintiff Jamie Principle is a resident of the State of Illinois.

22. Plaintiff Yvonne Gage is a resident of the State of Illinois.

23. Plaintiff Ralphie Rosario is a resident of the State of Illinois.

24. Plaintiff Lee Haggard is a resident of the State of Illinois.

25. Plaintiff Rick Barnes is a resident of the State of Illinois.

26. Plaintiff Mark Panick is a resident of the State f Illinois.

27. Plaintiff Dean Anderson is a resident of the State of Illinois.

28. Plaintiff Marshall Jefferson is a resident of the State of Illinois.

29. Plaintiff Harry Dennis is a resident of the State of Illinois.

30. Plaintiff Merwyn Sanders is a resident of the State of Illinois.

31. Plaintiff Curtis McClain is a resident of Illinois.

32. Plaintiff Nemiah C. Mitchell is a resident of the State of Illinois.

33. Plaintiff Steve Poindexter is a resident of the State of Illinois.

34. Plaintiff Duane Buford is a resident of the State of Illinois.

35. Plaintiff Harry Dennis is a resident of the State of Illinois.

36. Plaintiff Arnold Hennings is a resident if the State of Illinois.

37. The Estate of Sidney Winters p/k/a Dezz is established in the State of Illinois.

38. Nathaniel Jones, p/k/a DJ Pierre is a resident of the stare of Illinois.

39. Defendant Trax Records, Inc. ("Trax Inc."), is a corporation created under the laws of the State of Illinois, having a principal place of business in the City of Chicago.

40. Plaintiffs are informed and believe, and based thereon allege, that Defendant Precision/Trax Records ("Precision/Trax") is an entity of unknown legal origins, having a principal place of business in the City of Chicago, and at all relevant times was owned and operated by Larry Sherman ("Sherman"). Larry Sherman died on April 8, 2020 at the age of 70.

41. Defendant, Trax Records, Ltd. ("Trax Ltd."), was a corporation created under the laws of the State of Illinois, having a principal place of business in the City of Chicago. Trax Ltd. was administratively dissolved in 1980.

42. Plaintiffs are informed and believe, and based thereon allege, that at all relevant times, Precision/Trax and Trax Ltd. conducted business through their principal owners and officers Sherman and Rachel Cain.

43. Defendant, Trax Records, Ltd. ("Trax Ltd 2."), is a corporation created under the laws of the State of Louisiana, having a principal place of business in the City of Chicago.

44. Plaintiffs are informed and believe, and based thereon allege, that at all relevant times, Trax Ltd., 2, conducted business through its principal owner and officer and Rachel Cain.

45. Defendant Rachael Sherman nee Rachael Cain, professionally known as

"Screamin' Rachael" is a resident of Chicago, Illinois. Cain operates a music publishing business through a wholly owned publishing entity "Screaming Rachael Cain Music" (hereinafter Rachael Sherman and Screaming Rachael Cain Music shall be collectively referred to as "Cain").

46. Plaintiffs are informed and believe, and based thereon allege, that Cain is an owner and officer of Defendants Trax Records, Ltd., Trax Records Ltd., 2 , Scream Gems Publishing and Screaming Rachael Cain Music, and Trax Records, Inc.

47. Plaintiffs are informed and believe, and based thereon allege, that there exists, and at all times herein mentioned there existed, a unity of interest and ownership between and among Defendant Cain, on the one hand, and Precision/Trax, Trax Ltd., Trax Records Ltd., 2 and/or Trax, Inc., on the other, such that any individuality or separateness between them has ceased, and that they and each of them are the alter egos of each other. Plaintiffs are further informed and believe, and based thereon allege, that adherence to the fiction of the separate existence of these Defendants would permit abuse of the corporate privilege and promote injustice.

48. Larry Sherman and Cain divorced in 2006.

49. Defendant Sandyee Sherman is a resident of the State of Illinois.

50. The Estate of Larry Sherman is an entity set up under the laws of the State of Illinois.

51. In 2007 Cain filed applications with the United States Patent and Trademark Office seeking to register the Trax Marks, and in 2008 Cain received registrations for those trademarks.  See Group Exhibit A.

52. Cain's trademark applications falsely and fraudulently stated that she was the owner of the Trax Marks, and that no other person or entity had the right to use the Trax Marks.

53. However, at that time, Cain had no ownership interest or right to the Trax Marks, as they were and are at all times relevant the property of Vince Lawrence.

54. Cain has continued to falsely and fraudulently maintain her registration of the Trax Marks, by representing to the United States Patent and Trademark Office in renewal applications that she is the sole owner of the Trax Marks, and is the only person or entity with the right to use the Trax Marks, despite the fact that she has no ownership interest in them, and despite the fact she had no ownership interest in the Trax Marks at the time she initially registered them.

55. Cain's false registration of the Trax Marks has damaged Vince Lawrence and he seeks recovery of said damages, in amounts to be proven at trial, pursuant to 15 U.S.C. § 1120.

## JURISDICTION AND VENUE

56. This is an action for copyright infringement arising under the Copyright Act of 1976, as amended, Title 17, United States Code §§ 101 *et seq.* (the "Copyright Act"), and pendant claims pursuant to the laws of the State of Illinois.

57. The Court has original subject-matter jurisdiction over the Copyright Act claims pursuant to 28 U.S.C. § 1331. To the extent this Complaint contains claims for relief under Illinois law, those claims are specifically authorized to be brought in this Court under the provisions of 28 U.S.C. §§ 1338(a) and 1338(b).

58. This is an action for fraudulent trademark registration arising under Title 15 United States Code §§ 1120 *et seq*. (the "Trademark Act") and pendant claims pursuant to the laws of the

State of Illinois.

59. This Court also has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332.

60. This Court has personal jurisdiction over Defendants because they are domiciled in the State of Illinois and incorporated under the laws of the State of Illinois.

61. This Court has further personal jurisdiction over Defendants because they, and each of them, conduct business continuously and systematically in Illinois for the purpose of engaging in, *inter alia,* the manufacture and distribution of sound recordings and the licensing of musical compositions created and/or owned by the Plaintiffs, as well as related activities within the State of Illinois.

62. Defendants are further subject to personal jurisdiction based on their acts of placing their products into the stream of commerce with the expectation that such products will be delivered to and viewed by consumers within the State of Illinois and within this District.

63. Venue is proper in this Judicial District because a substantial part of the events or omissions giving rise to the claim occurred here. Venue is also proper in this Judicial District pursuant to 28 U.S.C. § 1400(a).

64. Additionally, Vince Lawrence seeks injunctive relief pursuant to 15 U.S.C. § 1119 and The Illinois Uniform Deceptive Trade Practices Act ("UDTPA"), 815 ILCS § 510/1 *et seq.*, and asks that the register of the Trax Marks be amended to reflect Vince Lawrence as their owner and that Cain's current registration be cancelled.

## <u>ALLEGATIONS COMMON TO ALL COUNTS</u>

**<u>Trax Records</u>**

65. In 1984, after Sherman purchased a Chicago-based vinyl record-pressing plant, Precision Pressing, Vince Lawrence, Jesse Saunders and Sherman co-founded a record label alternatively called "Trax Records" or "Precision/Trax". Vince Lawrence named the label "TRAX RECORDS", designed its mark/logo, label template, developed its promotion and distribution network and acted as the initial A&R person for the label. Jesse Saunders was the first artist to have a song released on Trax. Because of these actions Sherman's record-pressing plant served as a primary and important distribution outlet for house music. At no time did Vince Lawrence assign or transfer the Trax Marks to Sherman or Cain.

66. In 1997, Defendant Cain was signed by Trax Records early in Trax Records existence. She was, and is, known professionally as "Screamin' Rachael." Cain would later dub herself as the "Queen of House Music," marry Sherman, and become Sherman's business partner.

67. Upon information and belief, in 2006, after a period of decline from the late 1990s to early 2000s, Cain took over Trax Records and is solely in control of its business operations, namely, the unauthorized exploitation of a catalogue consisting of the compositions and recordings created by the Plaintiffs, the name and logo created by Vince Lawrence and exploitation by sale of Trax branded merchandise and events

including the sale of counterfeited records.

68. Upon information and belief, Sherman built the catalogue claimed by Trax Records by taking advantage of the unsophisticated but creative house-music artists and songwriters by exploiting their compositions and sound recordings without permission from the rights holders. In many cases, this was done where artists had previously released their songs on their own, or on another label, completely independent from Trax.

69. Upon information and belief, Sherman and Rachel Cain have sold, licensed, or transferred the Trax catalogue on multiple occasions for substantial amounts of money and Cain continues to do so.

70. While Sherman was alive, he never attempted to register the trademark and/or logo created Vince Lawrence. Sherman knew had no right to do so. It wasn't until 2007, that Rachael Cain filed for trademark registration for both the Trax Records name and logo in her own name. Be aware that this weas done without the knowledge of Sherman. She did so without authority or notice to Vince Lawrence and despite regular assertion of those rights to the public by Vince Lawrence. See Group Exhibit A.

71. Sandyee Sherman was also married to Sherman and has made a claim to a 50% interest in Trax and its catalogue. Plaintiffs are aware that Sandyee Sherman, through her representative Rights Incorporated, is currently attempting to sell, license or transfer her alleged 50% interest in the Trax catalogue containing songs belonging to Plaintiffs. See Exhibit B.

72. Plaintiffs have repeatedly requested the return of their copyrighted music, payment for revenue received for the sale, transfer or licensing of their music, an accounting of the revenue received by the Defendants for the exploitation of their music and any documentation supporting

Defendants' alleged ownership or right to exploit the Plaintiffs' compositions or sound recordings ("Plaintiffs' Works"). To date, no Plaintiff has received any compensation or answers to those requests.

73. Each Plaintiff owns the rights to compositions and/or sound recordings that appear in the Trax catalogue without that Plaintiff's consent or approval (the "Infringed Works"). A list of the Infringed Works is attached to this complaint. *See* Exhibits C through BB. (Exhibits C through bb set forth the songs owned by each Plaintiff, the Registration Numbers as registered by the Defendants and the true ownership of each song).

**Copyright Registrations for the Compositions and the Recordings**

74. Since 1982 and forward, the Register of Copyrights issued registrations for the copyrights in Plaintiffs' Works in the name of the Plaintiffs.

75. The Register of Copyrights also issued registrations in the name of "Trax Records" for the same copyrights in Plaintiffs' Works.

76. The Plaintiffs are each original authors of each of Plaintiff's Works set forth in Exhibits C through BB.

77. Since 1984, Plaintiffs' Works have been sold, distributed, or exploited either directly by Defendants, or any one of them, or licensed by Defendants many times over to licensees throughout the world.

78. The Plaintiffs never received a single accounting or payment from Defendants for monies derived from the exploitation of their compositions and/or sound recordings.

79. To the extent that mechanical rights were lawfully licensed for the compositions

referenced in Exhibits C through BB, Defendants have wholly and completely failed to pay the Plaintiffs and continue to refuse to account for and pay to the Plaintiffs any mechanical royalties or other income derived from Defendants' exploitation of their works. Sherman and Cain also "Bootlegged or Counterfeited songs and records by simply renaming them or labeling them under Sherman's or Cains names or entities, essentially selling them "out the back door." See Exhibit CC.

80. Upon information and belief, since 1984, Defendants have generated millions of dollars in income stemming directly from their unauthorized exploitation of Plaintiffs' compositions and recordings.

## COUNT 1
## (DECLARATORY JUDGMENT -FRAUD ON COPYRIGHT OFFICE)
### (Against All Defendants)

81. Plaintiffs repeat and reallege the allegations in Paragraphs 1 through 80, as if fully set forth herein.

82. The Plaintiffs are now and at all relevant times have been the owners of the copyrights in the recordings and compositions set forth in Exhibits C through BB.

83. The Defendants knowingly submitted materially false information to the Copyright Office by claiming ownership in Plaintiffs' compositions and sound recordings.

84. Consequently, "Trax Records" was issued copyright registrations for compositions and recordings owned by the Plaintiffs. Upon information and belief, the "Trax Records" indicated in the Trax copyright registrations is Trax, Inc., Trax, Ltd., or one of the other Defendants, which are now owned or at that time were owned and

controlled by Sherman and/or Cain.

85. Neither "Trax Records" nor any of the other Defendants ever received a valid assignment or transfer of a n y copyright interests in any of the Plaintiffs' Works. Thus, Defendants were not, at any time since the date of the creation of the recordings, the copyright owner(s) thereof, including as of the date "Trax Records" submitted the Trax Applications.

86. The Trax copyright registrations were procured by fraud by one or more Defendants, that intentionally and fraudulently represented that they owned Plaintiffs' Works when they did not.

87. As a result, the Trax copyright registrations must be invalidated since the information provided by Defendants as to ownership and "transfer" was and is false and material.

88. Such inaccurate information was included on the Trax Applications with knowledge that it was inaccurate and such inaccuracy would have caused the Register of Copyrights to refuse registration had it known that the representations made by Defendants were false.

89. The Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq.,* authorizes this Court to declare the rights and legal relations of parties to an active controversy under its jurisdiction.

90. There is an actual, present, and existing dispute between and among the parties concerning the validity of the copyright registrations Defendants obtained for Plaintiffs' Works (the "Trax Copyright Registrations").

91. The Court's determination of the issues presented herein would be final and

conclusive insofar as the declaratory judgment sought by Plaintiffs would fully and finally resolve the parties' disputes with respect to the validity of the Trax Copyright Registrations.

**WHEREFORE,** Plaintiffs respectfully pray that the Court find in their favor and enter an order and judgment as follows: issuing a Declaratory Judgment finding that **ALL DEFENDANTS** committed Fraud on the Copyright Office with their applications for the Trax Copyright Registrations for the Plaintiffs' Works

<u>**COUNT II**</u>
<u>**(WILLFUL DIRECT COPYRIGHT INFRINGEMENT)**</u>
**(Against All Defendants)**

92. Plaintiffs repeat and reallege the allegations in Paragraphs 1 through 91, as if fully set forth herein.

93. The Plaintiffs are the authors and owners of the copyrights in and to the Plaintiff's Works set forth in Exhibits C through BB.

94. As the owner(s) of the copyrights in the infringed Plaintiff's Works, the Plaintiffs have the exclusive rights under the Copyright Act to, among other things, produce, manufacture, transmit and/or distribute phonorecords embodying them. Only Plaintiffs are able to transfer any rights in Plaintiffs' Works to a third party.

95. Defendants conduct, either directly and/or through third parties, constitutes willful infringement of Plaintiffs' Works.

96. At various times during the three-year period prior to the commencement of this action, Defendants, individually and/or collectively, copied and reproduced the Infringed Works in full, and distributed, sold, and/or licensed both physical and digital copies of

the Infringed Works, all without the authorization or consent of the Plaintiffs.

97. Defendants, individually and/or collectively, were without any license or other form or permission, whether express or implied, to copy, reproduce, duplicate, perform, record, sell, use, transmit or distribute the Infringed Works.

98. By reproducing, manufacturing, distributing, transmitting, and selling copies of the Infringed Works without any license or other form or permission, the Defendants have infringed Plaintiffs' rights in violation of the Copyright Act.

99. The Defendants' acts were in knowing and reckless disregard of Plaintiffs' rights in and to the Infringed Works, and such infringements were willful as that term is defined in the Copyright Act.

100. As a direct result of the Defendants' infringement of the Infringed Works, Plaintiffs are entitled to their actual damages with respect to each of the Infringed Works, including the Defendants' profits from such infringements, as will be proven at trial.

101. Alternatively, Plaintiffs may elect to recover statutory damages and are entitled to the maximum statutory damages available for willful infringement under 17 U.S.C. § 504, in the amount of $150,000 with respect to each timely registered work that was infringed, and to any and all other relief the Court deems just and proper under the law.

102. Plaintiffs, or either of them, are also entitled to their costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505.

103. Defendants' conduct has caused, and unless enjoined by this Court, will continue to cause Plaintiffs great and irreparable injury that cannot be adequately compensated or measured in money. Plaintiffs have no adequate remedy at law.

104.     Pursuant to 17 U.S.C. §502, Plaintiffs, and each of them, are entitled to a

permanent injunction prohibiting further infringement of the Infringed Works.

**WHEREFORE,** Plaintiffs respectfully prays that the Court find in his favor and

enter an order and judgment as follows: finding **ALL DEFENDANTS** liable for direct,

willful infringement of Plaintiffs' Works, including Defendants' profits, in such amounts

as may be found; or (ii) in the alternative and at Plaintiffs' election awarding statutory

damages pursuant to 17 U.S.C. § 504(c) in the maximum amount allowed by law; (iii)

awarding Plaintiffs the costs of this action, including reasonable attorney's fees pursuant

to 17 U.S.C. §505 relating to the infringements of Plaintiffs' Works identified in Exhibits

C through BB; and (iv) entering such further relief that this Court deems just and

appropriate, as well as Plaintiffs' costs, including reasonable attorney's fees as provided

by statute, and interest on its damages at the legal rate.

<u>**COUNT** III</u>
<u>**CONTRIBUTORY COPYRIGHT INFRINGEMENT**</u>
**(Against Cain)**

105.     Plaintiffs repeat and reallege the allegations in Paragraphs I through 104,

as if fully set forth herein.

106.     At various times during the three-year period prior to the commencement of

this action, the Infringed Works have been and continue to be illegally reproduced,

published, licensed and/or sold and distributed without Plaintiffs' authorization in violation

of 17 U.S.C. § 101 *et seq.*

107.     Plaintiffs own the copyrights in the Infringed Works which have been

infringed by the Defendants as hereinabove alleged.

108.     Cain is secondarily liable under the Copyright Act for such infringing acts, including for the direct infringement of Plaintiffs' exclusive copyright rights by Precision/Trax, Trax, Inc. and Trax, Ltd.

109.     Cain induced, caused, participated in, aided and abetted and/or materially contributed to the infringing conduct by Precision/Trax, Trax, Inc. and Trax, Ltd.

110.     Cain is liable as a contributory copyright infringer. Cain had actual and constructive knowledge of the infringing activity that occurred and is occurring with respect to the Infringed Compositions, and induced, caused, participated in, aided and abetted and/or materially contributed to such infringing conduct by Precision/Trax, Trax, Inc. and Trax, Ltd.

111.    The foregoing acts of infringement by Cain have been willful, intentional, and purposeful, in disregard of and indifference to Plaintiffs' rights.

112.    As a direct and proximate result of such infringement of Plaintiffs' Works and Plaintiffs' exclusive rights under copyright, Plaintiffs, or either of them, are entitled to maximum statutory damages, pursuant to 17 U.S.C. § 504(c), in the amount of $150,000 with respect to each of the Infringed Works or such other amounts as may be proper.

113.    Alternatively, at Plaintiffs' election, pursuant to 17 U.S.C. § 504(b), Plaintiffs are entitled to actual damages with respect to each of the Infringed Works, including Cain's profits from such infringements, in such amounts as will be proven at trial.

114.    Defendant's conduct is causing and, unless enjoined by this Court, will continue to cause Plaintiffs great and irreparable injury that cannot fully be compensated for or measured in money.

115.    Plaintiffs have no adequate remedy at law.

**WHEREFORE,** Plaintiffs respectfully prays that the Court find in their favor and enter an order and judgment as follows: finding **DEFENDANT RACHAEL CAIN** liable for contributory infringement of Plaintiffs' Works and (i) awarding actual damages pursuant to 17 U.S.C. §504(b), including any profits of Defendant Rachel Cain, in such amounts as may be found; or (ii) in the alternative and at Plaintiffs' election relating to the infringements of Plaintiffs' Works, awarding statutory damages pursuant to 17 U.S.C. § 504(c) in the maximum amount allowed by law; (iii) relating to the infringements, awarding Plaintiffs the costs of this action, including reasonable attorney's fees, pursuant to 17 U.S.C. §505; and (iv) entering such further relief that this Court deems just and appropriate, as well as Plaintiffs' costs, including reasonable attorney's fees as provided by statute, and interest on its damages at the legal rate.

## <u>COUNT IV</u>
## <u>(FRAUD ON TRADEMARK OFFICE)</u>
### (Against Cain)

116.    Plaintiffs repeat and reallege the allegations in Paragraphs 1 through 115, as if fully set forth herein.

117.    In 1984, Vince Lawrence came up with the name Trax Records and designed the logo for the label. He did so without input from Sherman.  At that time Rachael Cain was not involved with Trax Records, Vince Lawrence, or Sherman.

118.    On October 28, 2007, Rachael Cain filed federal trademark application Serial Nos. 77/315,356 for TRAX RECORDS and 77/258,902 for **TRAX** in her name (the "Cain Trademark Applications").  While the Cain Trademark Applications were pending, Rachael Cain filed federal trademark application Serial No. 77/465,816 for DANCE MANIA for shirts.

Rachael Cain's application for DANCE MANIA matured into Registration No. 3,579,212 but she failed to maintain the registration and the USPTO cancelled the registration on September 25, 2015. On July 15, 2008, the Cain Trademark Applications matured into federal trademark Registration Nos. 3,466,459 and 3,466,156, respectively (the "Cain Trademark Registrations").

The trademarks TRAX RECORDS and **TRAX** are referred to collectively herein as the "Trax Marks."

119.    In each of the Cain Trademark Applications, Rachael Cain knowingly submitted materially false information by declaring that she believed she was the owner of the Trax Marks, that she was unaware of any third parties that had rights in the Trax Marks, and that she was using the Trax Marks in interstate commerce.  She knew that Vince Lawrence owned the Trax Marks at the time she filed the Cain Trademark Applications.

120.    By filing the Cain Trademark Applications in her name, Cain falsely asserted that she had the rights and ownership of the Trax Marks knowing that she did not.

121.    Vince Lawrence, the owner of the Trax Marks, never assigned the Trax Marks to Rachael Cain or any of the Defendants, did not abandon either of the Trax Marks, and has suffered monetary damages arising out of Rachael Cain's infringing use and registration of the Trax Marks as well as irreparable harm to the goodwill associated with the Trax Marks.

122.    Alternatively, in each of the Cain Trademark Applications, Cain knowingly submitted materially false information by declaring that she was the sole owner of the Trax Marks, when she in fact had no ownership interest in the Trax Marks at the time, as set forth above.

123.    In each of the Cain Trademark Applications, Cain knowingly submitted materially false information by declaring that no other person, firm, corporation, or association

has the right to use the marks in commerce, when at all relevant times another party had the right to use the Trax Marks, as set forth above. Id.

124.    In each of the Cain Trademark Renewals, Cain knowingly submitted materially false information by declaring that she was the sole owner of the Trax Marks, when she in fact had no ownership interest in the Trax Marks, as set forth above. See Group Exhibit A.

125.    Cain's conduct allowed her to procure registration in the Patent and Trademark Office of a mark by a false or fraudulent declaration or representation.

126.    Cain's false and fraudulent registration of the Trax Marks is willful, as at all times Cain was aware she did not have ownership of the Trax Marks.

127.    Cain's false and fraudulent registration of the Trax Marks is willful, as at all times Cain was aware that another party had the right to use the Trax Marks in commerce.

128.    Vince Lawrence continued to use the Trax Marks, and he did not abandoned either of the Trax Marks.

129.    Vince Lawrence, as the current co-owner of the Trax marks, has been damaged by Cain's false and improper registration of the Trax Marks, which has improperly prevented Vince Lawrence from appropriately being able to use the Trax Marks.

130.    As a result of Cain's conduct, Vince Lawrence is entitled to damages in an amount to be proven at trial.

131.    Rachael Cain procured the Cain Trademark Registrations by fraud on the USPTO. As a result, the Cain Trademark Registrations should be canceled pursuant to 15 U.S.C. § 1064(3) and Rachael Cain is liable for the damages sustained by Vince Lawrence in consequence thereof pursuant to 15 U.S.C. § 1120.

132.    The Declaratory Judgment Act, 28 U.S.C. §§ 2201, et seq., authorizes this Court to

declare the rights and legal relations of parties to an active controversy under its jurisdiction.

133.   There is an actual, present, and existing dispute between and among the parties concerning the validity of the Cain Trademark Registrations and the ownership of the Trax Marks.

134.  The Court's determination of the issues presented herein would be final and conclusive insofar as the declaratory judgment sought by Plaintiffs would fully and finally resolve the parties' disputes with respect to the Cain Trademark Registrations.

**WHEREFORE**, Plaintiffs respectfully pray that the Court find in their favor and enter an order and judgment as follows:  issuing a Declaratory Judgment finding that **RACHAEL CAIN** committed Fraud on the Trademark Office when filing the Cain Trademark Applications for Vince Lawrence's Trax Marks; ordering the cancelation of the Cain Trademark Registrations pursuant to 15 U.S.C. § 1119; finding Rachael Cain liable for the damages sustained by Vince Lawrence arising out of Rachael Cain's fraud on the USPTO pursuant to 15 U.S.C. § 1120; and entering such further relief that this Court deems just and appropriate as well as Plaintiffs' costs, including reasonable attorney's fees as provided by statute, and interest on its damages at the legal rate.

## COUNT V
## (WILLFUL, DIRECT TRADEMARK INFRINGEMENT OF THE MARKS)
### (Against Rachael Cain )

135.  Plaintiffs repeat and reallege the allegations in Paragraphs I through 134, as if fully set forth herein.

136.  Vince Lawrence is the owner of the Trax Marks and has used each continuously and substantially exclusively in connection with a variety of audiovisual media

24

and music publishing services in interstate commerce since at least as early as 1984.

137.  Through long use of his Trax Marks for goods and services in the music industry, Vince Lawrence developed a significant amount of goodwill in his Trax Marks, which the relevant consumers recognize as source indicators associated with Vince Lawrence and groundbreaking music.

138.  Defendant, Rachael Cain's bad faith use and registration of the Trax Marks in the music space to compete with Vince Lawrence, either directly and/or through third parties, creates a substantial likelihood of consumer confusion and constitutes willful trademark infringement.

139.  At various times during the three-year period prior to the commencement of this action, Rachael Cain has distributed and sold physical and digital sound recordings under the Trax Marks and/or licensed third parties to do the same without the authorization or consent of Vince Lawrence.

140.  Rachael Cain, individually and/or collectively, was without any license or other form or permission, whether express or implied, to copy, reproduce, duplicate, perform, record, sell, use, transmit or distribute sound recordings or related goods and services in connection with the Trax Marks.

141.  By reproducing, manufacturing, distributing, transmitting, and selling sound recordings and related goods and services under the Trax Marks without any license or other form or permission, Rachael Cain has infringed Vince Lawrence's rights in violation of the Trademark Act.

142.  Rachael Cain's acts were in knowing and reckless disregard of Vince

Lawrence's rights in and to the Trax Marks, and such infringements were willful and exceptional as those terms are defined in the Trademark Act.

143. As a direct result of the Rachael Cain's infringement of the Trax Marks, Vince Lawrence is entitled to treble his actual damages arising out of Rachael Cain's infringing activities, including the Defendants' profits from such infringements, as will be proven at trial.

144. Alternatively, Vince Lawrence is entitled to the maximum to statutory penalties under 15 U.S.C. § 1117 and to any and all other relief the Court deems just and proper under the law.

145. Vince Lawrence is also entitled to their costs, including reasonable attorneys' fees, pursuant to 15 U.S.C. § 1117.

146. Rachael Cain's has caused, and unless enjoined by this Court, will continue to cause Vince Lawrences great and irreparable injury that cannot be compensated or measured in money. Plaintiffs have no adequate remedy at law.

147. Pursuant to 15 U.S.C. § 1116, Plaintiffs, or either of them, are entitled to a permanent injunction prohibiting further infringement of the Trax Marks. Rachael Cain has continued to exploit the Vince Lawrence's Trax Marks including, through the worldwide sale, license and/or distribution of audio recordings in both physical formats as well as through digital service providers under the Trax Marks.

148. Rachael Cain has failed and refused to pay or account for her infringing use of the Trax Marks despite an obligation to do so.

148. Rachael Cain has received substantial income from the exploitation of Vince

Lawrence's Trax Marks and has caused a tremendous amount of consumer confusion by using the Trax Marks for goods and services that directly overlap with those provided by Vince Lawrence while targeting the same consumers using the same channels of trade.

150. As a result, thereof, the goodwill Vince Lawrence spent years developing in his Trax Marks has been irreparably harmed and Vince Lawrence has been damaged in an amount to be determined at trial but believed to be greater than $1,000,000.

**WHEREFORE,** Plaintiffs respectfully pray that the Court find in his favor and enter an order and judgment as follows: finding **RACHAEL CAIN** liable for direct infringement of Vince Lawrence's Trax Marks and holding Rachel Cain liable for treble damages, including Rachael Cain's profits, in such amounts as may be found; or (ii) in the alternative and at Plaintiffs' election relating to the infringements, statutory damages pursuant to 15 U.S.C. § 1117 in the maximum amount allowed by law; (iii) awarding Plaintiffs the costs of this action, including reasonable attorney's fees, pursuant to 15 U.S.C. §1117 relating to the infringements of Plaintiffs' Trax Marks; and (iv) entering such further relief that this Court deems just and appropriate, as well as Plaintiffs' costs, including reasonable attorney's fees as provided by statute, and interest on its damages at the legal rate.

## COUNT VII
## INJUNCTIVE RELIEF PURSUANT TO 15 U.S.C. § 1119 OF THE LANHAM ACT

151. Plaintiffs repeat and reallege the allegations in Paragraphs I through 150, as if fully set forth herein.

152. The Lanham Act provides that "[i]n any action involving a registered mark the court may

determine the right to registration, order the cancelation of registrations, in whole or in part, restore canceled registrations, and otherwise rectify the register with respect to the registrations of any party to the action." 15 U.S.C. § 1119.

153.    As set forth above, this action involves a registered mark.

154.    As set forth above, Cain did not have the right to register or renew the Trax Marks in the manner in which she did, which included declaring herself the sole owner of the Trax  Marks, and declaring that no other person or entity had the rights to use the Trax Marks in commerce.

156.    As a result, Vince Lawrence is entitled to an order rectifying the register to include Cross-Plaintiff as co-owner of the Trax marks or cancelling Cain's registrations. Vince Lawrence's legal interests are adverse to Cain's. There is a substantial controversy between Vince Lawrence and Cain warranting equitable relief so that Vince Lawrence may obtain the protections that Lanham Act entitles her to receive.

157.    For the reasons set forth above, Vince Lawrence is likely to succeed on the merits of his claims.

158.    The gravity of the harm to Vince Lawrence, absent equitable relief, outweighs any harm to Cain if such relief is granted.

159.    As a result, Vince Lawrence requests commensurate injunctive relief.


## COUNT VIII

## VIOLATION OF THE ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT

## 815 ILCS § 510/1 et seq.

160.    Plaintiffs repeat and reallege the allegations in Paragraphs I through 159, as if fully set forth herein.

161.    By falsely and fraudulently registering the Trax Marks, and improperly asserting that only Cain has the right to use the Trax Marks, Cain has created a likelihood of confusion or misunderstanding in the marketplace regarding which goods and services are associated or affiliated with Trax Records.

162.    By falsely and fraudulently registering the Trax Marks, and improperly asserting that only Cain has the right to use the Trax Marks, Cain causes likelihood of confusion or misunderstanding as to the source, sponsorship, approval, or certification of Trax goods or services sold, marketed, and/or provided by Vince Lawrence.

163.    By falsely and fraudulently registering the Trax Marks, and improperly asserting that only Cain has the right to use the Trax Marks, Cain causes likelihood of confusion or misunderstanding in the marketplace as to affiliation, connection, or association of Trax goods or services sold, marketed, and/or provided by Vince Lawrence, as individuals may assume that such goods or services are associated with Cain, when they are not.

164.    Cain's conduct violates the UDTPA.

165.    Vince Lawrence is likely to be damaged by Cain's deceptive trade practices and is entitled to injunctive relief.

166.    Cain's conduct is willful as Cain knew she did not have the right to register the Trax Marks as set forth above.

167.    As a result, Vince Lawrence is entitled to an order rectifying the trademark register to include him as owner of the Trax Marks and cancelling Cain's registrations.

168.    Vince Lawrence's legal interests are adverse to Cain's.

169.    There is a substantial controversy between Vince Lawrence and Cain warranting

equitable relief.

170.    For the reasons set forth above, Vince Lawrence is likely to succeed on the

merits of his claims.

171.    The gravity of the harm to Vince Lawrence, absent equitable relief, outweighs any harm

to Cain if such relief is granted.

      **WHEREFORE**, Plaintiffs respectfully prays that the Court find in his favor and

enter an order and judgment as follows: against **ALL DEFENDANTS** a judgment that

the Defendants' conduct violates the UDTPA and requests injunctive relief,  and entering such

further relief as this Court deems just and appropriate, as well as Plaintiffs' costs,

including reasonable attorney's fees as provided by statute, and interest on its damages at

the legal rate.

## JURY DEMAND

      Pursuant to Fed. R. Civ. P. 38(b), Plaintiffs demand a trial by jury of all issues

which are so triable.

                     Respectfully submitted,

                     s/s: Sean Mulroney
                     Attorney for the Plaintiffs

Dated: May 10,2023

ARDC #6196973
Sean M. Mulroney & Associates
516 N. Ogden Ave., Suite 191
Chicago, IL 60607
(312) 756-0011
sean@seanmulroney.com

*Attorneys for the Plaintiffs*

Anderson J. Duff (4860383)
Duff Law PLLC
43-10 Crescent St. Ste. 1217
New York, New York 11101
(646) 450-3607
ajd@hoganduff.com

*Attorneys for Plaintiff*
*Jamie Principle*